UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO: 04-10735-RWZ

NEW ENGLAND STORM, LLC., )
MELISSA A. KORPACZ, JD )
    Plaintiffs, )
)
v. )
)
WOMEN'S PROFESSIONAL FOOTBALL LEAGUE ("WPFL") et al )

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY RESTRAINING ORDER**

Plaintiff Melissa A. Korpacz and The New England Storm. (hereinafter "Plaintiff") respectfully submits this memorandum in support of its motion for an emergency temporary restraining order against Defendants.

I.    **SUMMARY.**

This case arises from the egregious, brazen conduct of the Defendants, who are former Associate Teams, employees and/or team owners affiliated with the Women's Professional Football League (Hereinafter "WPFL") whose contracts expired in December 2003, yet they continue to conduct business on behalf of the WPFL. The evidence overwhelmingly and conclusively establishes that in March of 2004, the Defendants unlawfully and improperly expelled Plaintiff Korpacz and her team from the WPFL a league in which she is a Founding member and 1/3 owner. This expulsion was carried out to accomplish their own hidden agendas of obtaining the same status,

1

recognition and monetary rewards, which rightfully belongs to Plaintiff and her team as Founders of the WPFL. Additionally the evidence shows that for their own benefit, Defendant's have knowingly and willfully continued to use the Plaintiff's intellectual property without the permission of Plaintiff. Despite not having valid executed contracts to date, Defendants have even continued to represent themselves as the WPFL Board of Directors by means of soliciting and signing of additional teams into the league, spending WPFL funds, placing notices regarding the Plaintiff on the WPFL website. Additionally, Defendants have unilaterally stolen confidential information and proprietary rights, all of which were provided to Defendants by Plaintiff solely for use in starting a franchise.

Defendants are set to announce the 2004 WPFL schedule on may 15, 2004 without the Plaintiff or her team on said schedule and refuse to recognize that they failed to follow the proper WPFL Bylaws and unlawfully and improperly expelled Plaintiff from her league, thus necessitating the commencement of this action and the instant motion.

## II.  FACTUAL BACKGROUND

As set forth in greater detail in Plaintiff's Verified Complaint (filed April 12, 2004) and the Declaration of Melissa Korpacz filed herewith, Plaintiff Korpacz is the Owner and General Manager of New England Storm, Women's Professional Football Team, sister team to the World Champion New England Patriots. The New England Storm holds a football roster of 45, has a medical staff of 7, coaching staff of 6 and management staff of 6. The New England Storm has been in existence since 1999. One of the Defendant's, the Women's Professional Football League, is a league in which

Plaintiff Korpacz is a Founding Member and 1/3 owner. The WPFL and listed individual and Defendant's currently associated with the WPFL illegally colluded to expel Plaintiff Korpacz and her Founding Team from the WPFL to benefit their own hidden agendas.

Plaintiff New England Storm and Plaintiff Korpacz' reputation, business ethics both here in New England and across the United States as well as the future of the league in which she helped create will be irreparably harmed unless this Court grants the requested preliminary injunctions and attachments against all listed defendants for their illegal actions which took place up to and including March 6th and 7th 2004 when the illegal expulsion of Plaintiff Korpacz and her team took place.

## III. ARGUMENT

Under Massachusetts law, a party is entitled to a preliminary injunction when it can demonstrate that (1) there is a substantial likelihood of success on the merits of its claims, (2) the injunction is necessary to prevent irreparable harm to the moving party, and (3) the risk of irreparable harm to the moving party in the absence of injunctive relief outweighs the risk of irreparable harm to the adverse party if injunctive relief is granted. See Packaging Industries Group v. Cheney, 380 Mass. 609, 617 n.12 (1980), See also Sciaba Construction Corp. v. Massachusetts Turnpike Authority, 412 Mass. 606, 608 (1992) (in ruling on a request for injunctive relief, the judge should initially evaluate in combination the moving party's claim of injury and its likelihood of success on the merits).

The determination of whether a preliminary injunction should issue in light of these factors rests in the sound discretion of the judge. See Foreign Auto Import, Inc. v. Renault Northeast, Inc., 367 Mass. 464, 472-73 (1975). Here, Plaintiff Korpacz and Plaintiff New England Storm meet each of these requirements and thus is entitled to the requested temporary restraining order.

### A. There Is A Substantial Likelihood That Plaintiff's Korpacz and Plaintiff New England Storm Will Succeed On The Merits Of Its Claims.

There is compelling evidence that Plaintiff Korpacz and Plaintiff New England Storm will prevail on all of her claims i.e., breach of contract, libel, slander, defamation of character, misrepresentation, negligent misrepresentation, fraud, fraudulent inducement, deceit, tortuous interference with advantageous relationships, tortuous interference with contractual relationships, intentional interference with contractual relationships, interference with prospective contractual relationships, breach of fiduciary duties, misappropriation of funds, nondisclosure, intentional infliction of emotional distress, negligent infliction of emotional distress, illegal conspiracy, collusion, anticipatory breach of contract and unfair and deceptive business practice Mass. G.L. c. 93A § 11.

1. **BREACH OF CONTRACT**

There is a likelihood that Plaintiff Korpacz and her team will succeed on breach of contract theory as there was a License Agreement between Plaintiff Korpacz and the WPFL was entered into and signed and dated January 1, 2002. The Defendant's continuously breached their contract with the Plaintiff and her team by engaging in one or more of the below continuous behaviors:

a. The Defendant's representations to Plaintiff Korpacz in the aforementioned License Agreement giving Plaintiff the right to participate as a Member Team in the WPFL in accordance with the terms and conditions of the WPFL Bylaws and Constitution were untrue and inaccurate at the time they were made.

b. The Defendant representations to Plaintiff Korpacz in the aforementioned License Agreement that the WPFL Bylaws and Policy and Procedure Manual including any modifications made from time to time with approval in writing by the WPFL board of Directors were untrue and inaccurate at the time they were made.

c. The Defendant representations that they would abide by and follow the WPFL Bylaws and Policy and Procedure Manual was untrue and inaccurate at the time they were made.

d. The Defendant participation and representation at the March 2004 Arizona Meeting, and in Plaintiff's Article VIII Hearing was a breach of Plaintiff's contract with the WPFL.

e. The Defendant participation and representation at the March 2004 Arizona Meeting, and in Plaintiff's Article VIII Penalty Phase was a breach of Plaintiff's contract with the WPFL.

f. The Defendant participation and representation at the March 2004 Arizona Meeting, in Plaintiff's expulsion was a breach of Plaintiff's contract with the WPFL.

    g. The Defendant participation and representation in the continuous violation of Plaintiff's Due Process rights since Defendant Vessey's arrival was a breach of Plaintiff's contract with the WPFL.

    h. Defendant breached the contract with Plaintiff Korpacz and The New England Storm by allowing Defendant Vessey to continue to target Plaintiff Korpacz and her team in an ongoing pattern for a period of 13 months.

    i. Defendant breached the contract with Plaintiff Korpacz and The New England Storm by failing to respond to Plaintiff Korpacz's requests for the Board to intervene and protect Plaintiff Korpacz and her team from Defendant Vessey's ongoing patterns of abusive behavior, abuse of power and actions beyond the scope of the WPFL Bylaws.

    j. Defendant breached the contract with Plaintiff Korpacz and The New England Storm by failing to recognize that the majority Member Teams had terminated Defendant Vessey yet invited said Defendant to the March meeting without permission of the Member Teams.

    k. Defendant breached the contract with Plaintiff Korpacz and The New England Storm by inviting and encouraging Defendant Vessey to continue to act in the capacity of Commissioner of the WPFL as well as Chairperson of the Board meeting in March.

By failing to honor their contractual obligations and the continuous interference, breach, and violation of Bylaws Defendant's, have injured Plaintiff Korpacz and her team's right

to rely on the Membership License Agreement and WPFL Bylaws as a means of protecting its legitimate business interest.

2.  **MISREPRESENTATION**

Plaintiff Korpacz and Plaintiff New England Storm have a substantial likelihood of proving at trail that Defendant's misrepresented their intentions to Plaintiff Korpacz at one time or another including but not limited to:

a.  The Defendant's representations to Plaintiff Korpacz at the onset of their business relationship that she would not transfer the WPFL logo to any other entity other than WPFL Promotions were untrue and inaccurate at the time Defendant made them.

b.  Defendant's representations to Plaintiff that no checks over the amount of $500 would be issued without dual signatures were untrue and inaccurate at the time Defendants made them.

c.  The Defendant's representations at the November 2003 owner meeting that she was qualified for the job of Treasurer and had the CPA education as suggested in the WPFL Bylaws for the position of WPFL Treasurer were untrue and inaccurate at the time Defendant made them.

d.  The Defendant's representations of the agreed upon style and look for the 2003 Championship sweatshirt were untrue and inaccurate at the time Defendant made them. Specifically, Plaintiff Korpacz did not consent to the use of her slogan "It's our turn to play!" on the back of all Championship Game Sweatshirts.

e. The Defendant's representations that all Associate Teams had signed the "new" Associate team contracts with expiration dates were untrue and inaccurate at the time Defendant made them.

f. The Defendant's representations in the 11 charges she submitted against Plaintiff Korpacz resulting in Plaintiff Korpacz's February 23, 2004 Article VIII hearing of were untrue and inaccurate at the time Defendant made them.

g. The Defendant's representations of Plaintiff Korpacz' statements as indicated in Defendant Vessey's January 22nd Notice of Ruling regarding the Northern Ice vs. Florida Stingrays charges were untrue and inaccurate at the time Defendant made them.

h. The Defendant's representations that Defendant Sheier was a "Member Team" based upon her knowledge that he had in fact not complied with the Member Teams demands set forth paid to pay the required amount of $25,000 up front in order to secure his Member Team License were untrue and inaccurate at the time Defendant made them.

i. The Defendant's continuous representations to Defendant Vessey since Defendant Vessey's arrival to the WPFL that Plaintiff Korpacz is a "detriment to women's professional football" was untrue and inaccurate at the time Defendant made them.

j. As a direct result of the Defendant's misrepresentations, the Plaintiff was expelled from the WPFL in which she is a Founding Member and 1/3 owner.

k.  The Defendant's representations to Defendant Kennamer that Plaintiff "stole" a portion of the 2003 Championship Game Day proceeds were absolutely untrue and inaccurate at the time Defendant made them.

l.  The Defendant's representations to all incoming teams that they should "be aware" of Plaintiff, Missi Korpacz were untrue and inaccurate at the time Defendant made them.

As a direct result of the Defendant's misrepresentations, the Plaintiff has suffered and continues to suffer damages.

## 3. BREACH OF FIDUCIARY DUTIES

Plaintiff Korpacz and Plaintiff New England Storm have a substantial likelihood of proving at trail that Defendant's Breach a number of their Fiduciary Duties owed to Plaintiff Korpacz and her team the New England Storm at one time or another including but not limited to:

1. Defendants owed a duty to the Plaintiff and breached their fiduciary duty by signing the confidentiality agreement presented to them at the March 2004 meeting knowing that the confidentiality agreement had been unilaterally changed and that Plaintiff objected and had not given permission for said change of the document which gave away her proprietary rights.

2. Defendant owed Plaintiff Korpacz and her team, Plaintiff New England Storm, a fiduciary duty not to illegally collude for the removal of Plaintiff's team or herself.

3. Defendant owed Plaintiff Korpacz and her team, Plaintiff New England Storm, a fiduciary duty to recognize Plaintiff Korpacz's position as a Founding Member of the Women's Professional Football League. She has a lifetime membership in said League which also grants her a bigger piece of the intake proceeds when generated by the WPFL, and/or WPFL Promotions.

4. Defendant owed Plaintiff Korpacz and her team, Plaintiff New England Storm a fiduciary duty not to collude in their attempts to illegally destroy the irrevocable contract between WPFL and WPFL Promotions which as a Founding Member, Plaintiff Korpacz is a majority shareholder. If Defendant's are unsatisfied that they do not have as many shares as Plaintiff and her fellow Founding Members, then said Defendant's are free to purchase their own units for a fair price and have been given the opportunity to do so on several occasions. However, the discussion and colluding of "doing away" with WPFL Promotions after four years of work, knowing that this is where the Founding Members placed their assets and proprietary interests in creating the WPFL, is tantamount to anticipatory breach of contract and Defendant's should be forewarned in proceeding.

5. The Defendants breached their fiduciary duty owed to Plaintiff Korpacz and Plaintiff New England Storm by failing to receive express written authorization from the Plaintiff to utilize Plaintiff's slogan "It's Our Turn to Play!"

6. The Defendants breached their fiduciary duty owed to Plaintiff Korpacz and Plaintiff New England Storm by ordering the Plaintiff Korpacz to deliver to Defendant Syracuse Sting 5,000 units of Plaintiff's own personal units to satisfy a judgment of the New England Storm. The Defendant's did not have authority to mandate Plaintiff to make this transaction.

7. The Defendant Austin Rage had a fiduciary duty owed to the Plaintiff due to their position as a Founding Member Team in the WPFL.

8. The Defendant Austin Rage breached their fiduciary duty to the Plaintiff by engaging in all of the conduct noted in the forgoing paragraphs. Each of those actions were detrimental to the interests of their sister WPFL Member Team, Plaintiff New England Storm and owner, Plaintiff Korpacz.

9. The Defendant Kennamer as an Alternate WPFL Board Member had a fiduciary duty to the Plaintiff due to her position as a fellow Board Member in the WPFL.

10. The Defendant Kennamer breached her fiduciary duty to the Plaintiff by engaging in all of the conduct noted in the forgoing paragraphs, as each of those actions was detrimental to the interests of Plaintiff Korpacz and her team, New England Storm.

11. The Defendant Roebuck had a fiduciary duty to the Plaintiff due to her position as a Board Member in the WPFL.

12. The Defendants owed the Plaintiff a fiduciary duty to act with due diligence at the March 2004 Arizona Meeting, and breach that fiduciary duty by participating in Plaintiff's Article VIII Hearing, Plaintiff's Penalty Phase,

and overall participation and representation at the March 2004 Arizona Meeting and ultimately in the Plaintiff's expulsion.

13. The Defendants owed the Plaintiff a fiduciary duty as a WPFL Board Member to intervene at the Plaintiff's request to stop the continuous violation of Plaintiff's Due Process rights since Defendant Vessey's arrival.

14. The Defendants breached their fiduciary duty owed to Plaintiff Korpacz and her team, the New England Storm by allowing Defendant Vessey to continue to target Plaintiff Korpacz and her team in an ongoing pattern for a period of 13 months.

15. The Defendants breached their fiduciary duty owed to Plaintiff Korpacz and Plaintiff New England Storm by failing to respond to Plaintiff Korpacz's requests for the Board to intervene and protect Plaintiff Korpacz and her team from Defendant Vessey's ongoing patterns of abusive behavior, abuse of power and actions beyond the scope of the WPFL Bylaws.

16. The Defendants owed the Plaintiff a fiduciary duty to recognize that the majority Member Teams had terminated Defendant Vessey.

17. The Defendants breached their fiduciary duty owed to Plaintiff Korpacz and Plaintiff New England Storm by inviting Defendant Vessey to the March meeting without permission of the Member Teams.

18. The Defendants breached their fiduciary duty owed to Plaintiff Korpacz and Plaintiff New England Storm by inviting and encouraging Defendant Vessey to continue to act in the capacity of Commissioner of the WPFL as well as Chairperson of the Board meeting in March.

19. The Defendants breached their fiduciary duty owed to the Plaintiff by failing to reduce to writing the alleged directive which was the original basis for Defendant Vessey's June 2003 indefinite suspension of Plaintiff and her team. Said Board directive was allegedly verbally given and stated that Plaintiff must "maintain a GM and/or Team Manager" for a certain length of time. It is apparent that there was a discrepancy between the language that was remembered from that meeting on the part of the Defendants and the Plaintiff. Accordingly, if the Defendant's had not breached their duty to place all directives in writing, then there would be no ambiguity in the facts of the directive.

20. In failing to fulfill their aforementioned fiduciary responsibility to the Plaintiff by placing the directive to the Plaintiff in writing, the Defendant's prevented said Plaintiff any reasonable means of defending herself or having access to some documentation to refer back to either confirm or rebut Defendant Vessey's abusive allegations.

## 4. TORTUOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS

Plaintiff Korpacz and Plaintiff New England Storm have a substantial likelihood of proving at trail that Defendant's Breach a number of their Fiduciary Duties owed to Plaintiff Korpacz and her team the New England Storm at one time or another including but not limited to:

a. Defendant had knowledge that Plaintiff Korpacz and Plaintiff New England Storm had existing business relationships, were in the mist of negotiating

contractual relationships, and/or contemplating business relations of economic benefit for both Plaintiff Korpacz and her team as she had done so for the past four years.

b. Defendant by means of her malicious conduct since her arrival and continuing until the present with:

   a. The public placement/notification of Plaintiff Korpacz and Plaintiff New England Storm's expulsion listed on the front page of the WPFL website;

   b. The issuing of National Press Releases relating to Plaintiff Korpacz and Plaintiff New England Storm's expulsion;

   c. Making false allegations and/or statements during Plaintiff Korpacz Article VIII hearing publicized to the assembly and

   d. By issuing a "Gag Order" to all individuals in the WPFL not speak to Plaintiff Korpacz regarding the WPFL when in fact Defendant has no existing contract with said league and was terminated by the Member Teams who are the only teams with current valid executed contracts, is clear and convincing evidence to support the contention that Defendant has used several of the aforementioned inappropriate means to intentionally and maliciously interfere with the business relationships the Plaintiff has or could have had with, including but not limited to:

   a. The Women's Professional Football League,

   b. WPFL Promotions, LLC,

   c. Current WPFL Teams and Team owners,

d. Current WPFL Teams and Team owners,

e. Current WPFL Teams and Team owners that Plaintiff Korpacz was and should be negotiating with in her capacity as a Founding Member to restructure the League.

f. New England Storm 2003 professional football players,

g. potential players for the 2004 New England Storm,

h. potential sponsors for the New England Storm both past and present,

i. potential employees of the New England Storm both past and present, all potential business associates of the New England Storm both past and present,

j. potential customers of the New England Storm both past and present,

k. the City of Medford, the Mayor of Medford,

l. the New England Patriots, the National Football League,

m. Mt. Auburn Hospital,

n. Boston Red Sox,

o. NFL,

p. PAX TV,

q. Fox Sports Net

r. Various other companies throughout New England as sampled in Plaintiff's 2003 Game Day Program (See Exhibit 1V) and others and attempted to induce them to terminate those relationships with the Plaintiff Korpacz and Plaintiff New England Storm.

Defendant has intentionally and maliciously interfered with the business relationships the Plaintiff had or could have had with the public as a whole as a direct result of their expulsion of Plaintiff Korpacz and her team, the New England Storm. Because there are several other local women's football teams that are constantly trying to compete and/or affiliate themselves with the New England Storm name, due to the used improper motive and means web site posting and national press releases, Plaintiff has lost the advantage of hundreds of potential players to said teams out of fear that there will be no New England Storm this season. As a result Plaintiff Korpacz has potentially lost hundreds of thousands of dollars in revenue.

Defendant Vessey intentionally and maliciously interfered with the business relationships the Plaintiff with her employee Erich Kennedy as referred to in the facts above.

Defendant Vessey intentionally and maliciously interfered with the business relationships the Plaintiff has with her employee Erich Kennedy as referred to in the facts above.

Defendant Vessey intentionally and maliciously interfered with the business relationships the Plaintiff had with a customer as referred to in the facts above.

Defendant Vessey intentionally and maliciously interfered with the four year business relationships the Plaintiff had the City of Medford as referred to in the facts above.

As a direct result of Defendants' tortuous interference with a magnitude of the Plaintiff's advantageous business relationships, the Plaintiff has suffered and continues to suffer damages.

    a. also in the WPFL not speak to Plaintiff Korpacz regarding the WPFL, knowingly interfere with Plaintiff and her third party contract(s) specifically relating to WPFL, WPFL Promotions and sister teams.

c. Because there are several other local women's football teams that are constantly trying to compete and/or affiliate themselves with the New England Storm name, due to the used improper motive and means web site posting and national press releases, Plaintiff has lost the advantage of hundreds of potential players to said teams out of fear that there will be no New England Storm this season. As a result Plaintiff Korpacz has potentially lost hundreds of thousands of dollars in revenue.

d. Defendants specifically used the aforementioned means of the Web Site postings and the issuing of National Press Releases as well as other methods listed in previous sections to interfere with the Plaintiff Korpacz and her team's contractual relationships with third parties, including but not limited to:

    a. The New England Storm 2003 professional football players,

    b. sponsors for the New England Storm,

    c. employees of the New England Storm (including but not limited to medical, coaching, game day,)

    d. business associates of the New England Storm,

    e. customers of the New England Storm both,

    f. The New England Patriots and others and attempted to induce them to terminate those relationships with the Plaintiff Korpacz and Plaintiff New England Storm,

    g. Mt. Auburn Hospital,

    h. Boston Red Sox,

    i. PAX TV.

e. Various other companies throughout New England as sampled in Plaintiff's 2003 Game Day Program (See Exhibit 1V)

f. As a direct result of Defendants' intentional and malicious interference with third parties and their contractual business relationship(s) with Plaintiff Korpacz and her team, Plaintiff New England Storm, the Plaintiff has suffered and continues to suffer damages..

## 5. SLANDER

Plaintiff Korpacz and Plaintiff New England Storm have a substantial likelihood of proving at trail that Defendant's slandered the Plaintiff and her team at one time or another including but not limited to:

    a. Defendant's maliciously defamed Plaintiff Korpacz and Plaintiff New England Storm by publicly announcing the expulsion of Plaintiff Korpacz and her team, the New England Storm via means of the WPFL web site and National Press Releases.

    b. The defamatory statements were false because the Defendant's did not have valid executed contracts with the WPFL to be in such a position to

expel Plaintiff Korpacz and/or her team from the league in which she is a Founding Member. Accordingly, their voting and business results from that weekend which were issued to the public were misleading and false.

c. Never had such a publication on the WPFL been made regarding any other team which had been removed by means of suspension, expulsion, etc.

d. Said announcement(s) relating to Plaintiff Korpacz and her team's expulsion was malicious and intentional.

e. Defendants had knowledge that Plaintiff Korpacz and Plaintiff New England Storm had existing and/or prospective contractual relationships, throughout the New England area.

f. Defendants had knowledge that Plaintiff Korpacz and Plaintiff New England Storm were in the middle of their pre-season Strength & Conditioning Program which was an annual Storm tradition in its fifth year, meant to prepare female athletes tying out for the New England Storm in April 2004. The New England Storm had 37 athletes participating at the time of their expulsion.

g. The Defendant's had knowledge that the Plaintiff had an on line registration form for all prospective players interested in trying out for the 2004 New England Storm in April and May of 2004. At the time of the expulsion Plaintiff Korpacz had 163 names on said list.

h. Because there are several other local women's football teams that are constantly trying to compete and/or affiliate themselves with the New England Storm name, due to the libel and slanderous web site posting and national press releases, not only was Plaintiff Korpacz and her team exposed to hatred, contempt and ridicule of the public at the hands of the Defendant's, but Defendants as a result also possibly caused Plaintiff a loss of hundreds of potential players to her team due to fear after reading the Defendants web site postings and national press releases because of the inferences that can be drawn from Defendant's libel and slanderous publications. As a result Plaintiff Korpacz has potentially lost hundreds of thousands of dollars in revenue.

i. As a result of Defendants malicious defamation of Plaintiff Korpacz and her team, the New England Storm, Plaintiff's were exposed to hatred, contempt and ridicule of the public, thus resulting to actual damage and injury to their reputation to the following including but not limited to:

   i. The Women's Professional Football League,

   ii. WPFL Promotions, LLC,

   iii. Current WPFL Teams and Team owners,

   iv. Current WPFL Teams and Team owners,

   v. Current WPFL Teams and Team owners that Plaintiff Korpacz was and should be negotiating with in her capacity as a Founding Member to restructure the League.

   vi. New England Storm 2003 professional football players,