vii.    potential players for the 2004 New England Storm,

viii.   potential sponsors for the New England Storm both past and present,

ix.    potential employees of the New England Storm both past and present, all potential business associates of the New England Storm both past and present,

x.    potential customers of the New England Storm both past and present,

xi.    the City of Medford, the Mayor of Medford,

xii.    the New England Patriots, the National Football League,

xiii.   Mt. Auburn Hospital,

xiv.   Boston Red Sox,

xv.    NFL,

xvi.    PAX TV,

xvii.   Fox Sports Net

xviii.  Various other companies throughout New England as sampled in Plaintiff's 2003 Game Day Program (See Exhibit 1V) and others and attempted to induce them to terminate those relationships with the Plaintiff Korpacz and Plaintiff New England Storm.

Upon further review of the facts, this Court will find that Defendant's conduct was so egregious with respect to the remaining counts, that there is no way they can win. The Defendants violated Plaintiff's contract, breached their fiduciary duties, misrepresented, colluded, and interfered in every possible means with the Plaintiff and her team. Defendants illegally expelled Plaintiff Korpacz and her team, Plaintiff New England Storm, despite continuous calls for intervention on the part of Plaintiffs to the WPFL Board of Directors due to Defendant Lisa I. Vessey's flagrant and continuous violations of the WPFL Policy and Procedure Manual, Bylaws and Due Process Rights of Plaintiff Korpacz and her team. Despite still having yet to sign contracts with the WPFL, all Defendants illegally colluded to expelled Plaintiff Korpacz and her team from a league in which she is a Founding Member and 1/3 owner. Despite Plaintiff's objections, said Defendants continued and continue to conduct business as the WPFL Board of Directors, and are attempting to restructure the WPFL to give themselves a bigger monetary interest, also in violation of Plaintiff's rights.

At the time all named Defendants expelled Plaintiff Korpacz and her team, from the WPFL, they utilized and stripped away everything that Plaintiff Korpacz, as a Founding Member had created for the WPFL over the past four years including but not limited to her proprietary interests, copyright interests, benefits as a trustee of the WPFL trust, over 700,000 units in WPFL Promotions, life-time protected territory, over $250,000.00 investment, voting rights, etc.

Up to and including the expulsion hearing, the Defendants refused to responded to Plaintiff's requests, and systematically violated her rights, ignored the Bylaws, and then Defendants sat in judgment of Plaintiff without contracts and made decisions regarding

alleged issues that allegedly happened when they were not even part of the WPFL. In turn, the Defendants simply expelled Plaintiff and her team and proceeded to take all of Plaintiff's aforementioned confidential, intellectual property and are using that information for themselves on behalf of the WPFL in violation of contractual, common law and statutory obligations.

Defendant's contracts with the WPFL expired on December 31, 2003 and never renewed said contracts. Accordingly, Defendant's did not even have contracts with the very league in which they are barring Plaintiff and her team from. Plaintiffs on the other hand has a valid executed contract with the WPFL and at the time of their expulsion was one of only 4 teams that had such a contract. At the time of Plaintiffs expulsion the Defendants did not have legal basis to represent the WPFL and to act as a WPFL Board Member as their contracts had expired on December 31, 2003. Defendants were advised of such time and time again.

Finally, all named Defendants are liable to Plaintiff Korpacz and Plaintiff New England Storm for intentionally interfering with Plaintiff Korpacz' and New England Storm's contractual relations with various third parties and for engaging in an ongoing pattern of unfair and deceptive trade practices. In Defendants expelling Plaintiff and her team, it has permitted Defendants to misappropriate funds, utilize confidential information, take away Plaintiff's monetary interests, units, etc all for the Defendants benefit in order to be able to restructure the WPFL without Plaintiff Korpacz' approval. This is as a result of Defendant becoming aware that Plaintiff was not going to agree to give up her Founding Member rights and/or agree to a restructure of the WPFL. Thus, Defendants illegally colluded to rid the WPFL of one of its Founding Members, even

though they are aware that they are doing so in violation of their contractual, common law and statutory obligation.

**B.**    **Plaintiff Korpacz and Plaintiff New England Storm Will Suffer Immediate And Irreparable Harm If Injunctive Relief Is Denied.**

Plaintiff Korpacz and her team are and will continue to suffer immediate and irreparable harm if one of the aforementioned injunctions are not granted, either (1) the New England Storm is placed on the WPFL schedule or (2) the Defendant's are prohibited from playing football just as the Plaintiff and her team is and (3) Defendant's are allowed to continue to conduct business and the restructure of the WPFL without the Plaintiff's consent.

The purpose of the Member License Agreement is to protect and give those owners who pay a large sum of money, their territory, Units, higher status, etc., unlike Associate License Agreements which most of the Defendants had. Additionally, Plaintiff Korpacz is a Founding Member in this league and she has a significant amount of money, time, confidential and proprietary information invested in this league, which well exceeds the interests, and/or investments of those who illegally participated in her expulsion.

Plaintiff Korpacz currently has a 33-person roster, is in the mist of Strength 7 Conditioning Programs and is scheduled to begin tryouts on April 17th with 160 potential players scheduled to tryout. Plaintiff also has numerous sponsors in line for the upcoming season and has already sold season tickets and committed business for opening game day advertising. A failure to place Plaintiff Korpacz and her team on the WPFL schedule at this point while this matter is pending, will ultimately be suffocating Plaintiff's business and the New England Storm entirely from which they will not be able

7

to recover. Based upon all the facts, there is compelling evidence that Defendants have misappropriated confidential information, illegally colluded, breached fiduciary duties owed to the Plaintiff and are now trying to restructure the WPFL and break and irrevocable contract with WPFL Promotions, which is where all the Founding members hold their interests. This injury is sufficient to warrant injunctive relief even without proof of lost business. See W.B. Mason, Civ. No. 00-5042 BLS at 10 (citing Middlesex Neurological Assoc., Inc. v. Cohen, 3 Mass. App. Ct. 126, 132 (1975)). In addition, money damages alone will not compensate Plaintiff Korpacz and her team because at least some of the injury caused by the Defendants' conduct – the loss of goodwill, injury to reputation, etc. – will be difficult to quantify. Plaintiff Korpacz and her team will continue to suffer harm if they are not immediately placed on the WPFL schedule, and/or the Defendants are prevented from continuing to move forward in the WPFL without Plaintiff Korpacz and her team as a Founding Member and the Defendants continue to move forward with the proposed restructure of the WPFL.

**C.**     **The Defendants Will Not Suffer Any Substantial Immediate And Irreparable Harm If Injunctive Relief Is Granted.**

In moving for an emergency TRO, Plaintiff Korpacz is primarily seeking to preserve the status quo, in that her team, the New England Storm be placed on the schedule and be permitted to play football in the WPFL. In fact if Plaintiff Korpacz and her team are placed on the schedule, this will reduce the number of flight trips within her usual division and the cost will decrease to the WPFL teams, which are seeking to play in New England Storm's division. In the alternative, Plaintiff Korpacz is seeking that Defendant's be prohibited from engaging in the business of or playing football until this

8

matter is resolved in a court of law. It is Plaintiff's contention that Defendants did not

and do not have contracts with the WPFL when they maliciously and intentionally

interfered and expelled Plaintiff Korpacz and her team from the WPFL. If one of the

aforementioned injunctions is not granted, and the New England Storm is either not

placed on the schedule or the Defendants are not prohibited from playing football just as

the Plaintiff and her team is, the harm to Plaintiff Korpacz and her team's goodwill and

confidential information, proprietary interest will far exceed any harm that may result to

the defendants if their teams are permitted to play football for the 2004 season and

continue on as the WPFL without the Plaintiff and her team. See Boston Athletic Ass'n

v. International Marathons, Inc., 392 Mass. 356 (1984) (issuing preliminary injunction

prohibiting promoter from using funds received by sponsors of marathon because risk of

loss to association was far greater than risk of loss to promoter); see also Town of

Westwood v. Adams Russell Co., 24 Mass. App. Ct. 914, 916 (1987) (injunction may be

issued where it is apparent that risk of irreparable harm to moving party outweighs

similar risk of irreparable harm to opposing party) (rescript opinion). Plaintiff Korpacz

and her team have far more to lose in terms of players, staff, sponsors, etc. as opposed to

the WPFL placing the New England Storm on their schedule. In the alternative, all

parties should be required to cease and desist in playing football until the matter can be

resolved.

Even if this Court does not make such a presumption that Plaintiff will be

irretrievably harmed, which it should, there is ample evidence of record. First,

Defendants have literally stolen Plaintiff rights and unlawfully and improperly expelled

said Plaintiff from her league. Thus, if Defendants are not enjoined, sponsors, potential

sponsors, players, staff, etc will be misled into believing that Plaintiff is engaged in unethical business practices and ultimately leave her team. Such a result would truly be a manifest injustice.

Second, if Defendants are not enjoined, on information and belief, they will release their schedule and continue to operate and ultimately destroy all that Plaintiff has worked for over the past four years. Given the recent addition of teams, it is all but certain that at least some new teams will be deceived into purchasing a license agreement which the customers believe came from the Founding members. Based upon the aforementioned facts collectively, and the fact that the WPF schedule is set to be release within 48 hours, Plaintiff, in the absence of the relief it requests from this Court, will suffer immediate and irreparable harm.

### D. Plaintiff Has Raised Serious Questions And The Balance Of Hardships Tips Sharply In Its Favor.

Plaintiff has carried it burden under the alternative test recognized by the Ninth Circuit for determining whether a preliminary injunction should issue. Plaintiff has obviously raised serious questions, leaving only the balance of hardships to address at this point. Given Plaintiff valuable intellectual property rights and business reputation, meticulously created over years of effort, on the one hand, and the Defendants' cavalier and callous disregard of those rights and reputation, on the other, it is Plaintiff who has far more to lose both in the short and long terms.

The Defendants are not "innocent" participants who did not know what they were doing was illegal or who happened to independently attend a meeting in March and expel Plaintiff and her team. On the contrary, the Defendants committed this reprehensible

conduct while continuing to be affiliated with Plaintiff and her league. Thus, any "hardship" flowing from this Court's decision is equitably and properly placed on the Defendants and not on Plaintiff.

### E. Plaintiff Should Not Be Required To Post A Bond.

Under the provisions of Fed.R.Civ.P. 65(c), the Court has broad discretion to determine the appropriate amount of a bond in the event injunctive relief is granted. *People ex rel. Van de Kamp v. Tahoe Regional Plan*, 766 F.2d 1319 (9th Cir. 1985), *modified*, 775 F.2d 998 (1985). In view of Plaintiff's strong showing of likely success on the merits, the substantial evidence of Defendants' bad faith and improper and unlawful expulsion of Plaintiff and her team, the fact that Defendants do not have valid executed contracts, did not create a league of their own and have not released a schedule yet, shows that they are unlikely to sustain significant, if any, harm as a result of this Order, and the fact that Plaintiff has been forced to incur substantial expense, humiliation and loss of business in seeking this relief as a result of Defendants' intransigence and unwillingness to settle this matter, the Court should exercise its discretion and require no bond.

## III.    CONCLUSION

For all of the foregoing reasons, Plaintiff Korpacz and the New England Storm's motion for an emergency TRO should be granted for either of the following:

A - Enter an order requiring that (1) Plaintiff Korpacz and her team, New England Storm Women's Professional Football ("WPFL") Team be allowed to participate in the 2004 WPFL Season and be placed on the upcoming schedule set to be released May 15, 2004; (2) Plaintiff Korpacz be authorized and permitted access to all Board meetings and

voting matters until this matter is resolved on its merits; (3) the New England Storm logo be placed back on the WPFL website; (4) the Notice of Expulsion issued by the WPFL Commissioner on March 7, 2004 be vacated and removed from the WPFL website pending the outcome of this litigation;

**OR**

B – Enter an order (1) enjoining Defendants from releasing the WPFL schedule without the Plaintiff and her team listed on said schedule, (2) enjoining Defendants from playing football or engaging in the business of women's football under the auspices of "WPFL", "Women's Professional Football League" or *any* other name in the United States, including but not limited to playing football in general, and/or operating as a football franchise, etc.; and (3) enjoining the Defendants from engaging in any football business relationships with any/all of the persons and entities named in the Complaint.

As grounds for this motion, Plaintiff submits its accompanying Memorandum In Support of this Request for Emergency Temporary Restraining Order, the Declaration of Melissa Korpacz and Exhibits thereto, all of which are being filed contemporaneously herewith. A Verified Complaint was previously filed with this Court on April 12, 2004. Plaintiff is also filing contemporaneously herewith its Proposed TRO.

**AND**

Such further relief as the Court deems just and equitable.

Respectfully submitted,

Dated: May 13, 2004

_____
Melissa A. Korpacz. - Pro Se Plaintiff
P.O. Box 808 Medford, MA  02155
781-866-9700 (phone) 781-393-0665 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for each other party by facsimile and first class mail on May 13, 2004:

Brian D. Gross
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA  02110

Carlton D. Wilde, Jr.
FRANKLIN, CALDWELL & JONES, PC
1001 McKinney, 18th Floor
Houston, TX 77002

_____