UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO: 04-10735-RWZ

NEW ENGLAND STORM, LLC., )
MELISSA A. KORPACZ, JD )
    Plaintiffs, )
 )
v. )
 )
WOMEN'S PROFESSIONAL )
FOOTBALL LEAGUE ("WPFL") et al )
 )

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED REQUEST FOR EMERGENCY TEMPORARY RESTRAINING ORDER AGAINST THE DEFENDANT WOMEN'S PROFESSIONAL FOOTBALL LEAGUE

Plaintiff Melissa A. Korpacz ("Korpacz") and Plaintiff New England Storm, LLC ("Storm") (hereinafter "Plaintiffs") respectfully submit this memorandum in support of their renewed request for an emergency temporary restraining order ("TRO") against Defendant Women's Professional Football League ("WPFL").

Plaintiff Storm is now represented by counsel for purposes of this Renewed Request and any further hearing on Plaintiffs' Motion for a Preliminary Injunction. Also, in light of the concerns expressed by the Court during the hearing on May 14, 2004, Plaintiffs file concurrently herewith their Response to Defendants' Motion to Dismiss and Plaintiffs' Motion for Leave to File an Amended Verified Complaint in compliance with the applicable Federal and Local Rules and the requested thirty (30) pages in length.

1

## I. JURISDICTION

During the hearing on Plaintiffs' original Request for Emergency Temporary Restraining Order, the Court indicated that questions regarding personal jurisdiction over the defendants could potentially prevent it from granting the relief requested. Plaintiffs submit that any defense based on lack of personal jurisdiction and/or improper venue has been waived by most of the defendants, including particularly, Defendant Women's Professional Football League ("WPFL").

Specifically, Cooley Manion Jones, LLP appeared in the case on behalf of the WPFL ("WPFL") and all but three of the other 18 named defendants ("Defendants") with the filing of Defendants' Motion to Dismiss on May 10, 2004. See Defendants' Motion to Dismiss.

In that Motion, Defendants' requested that Plaintiffs' Verified Complaint be dismissed for failure to comply with, among other things, Fed. R. Civ. P. 8. That request is, for all intents and purposes and in substance, a motion to strike under Fed. R. Civ. P 12(f). Alternatively, Defendants requested that Plaintiffs be required to replead their Verified Complaint in a form that fully complies with the applicable Federal and Local Rules. That request is, for all intents and purposes and in substance, a motion for a more definite statement under Fed. R. Civ. P. 12(e).

Because Defendants' Motion omitted any other defense which Rule 12 "permits to be raised by motion," including lack of personal jurisdiction (Rule 12(b)(2)) and improper venue (Rule 12(b)(3)), those defenses were waived with the filing of Defendants' Motion. Fed. R. Civ. P. 12(g).

In any event, Plaintiffs' Renewed Request for Emergency Temporary Restraining Order is limited to the WPFL, its officers, directors, attorneys, employees, agents, successors and assigns, and any person or entity in active concert or participation with any of them, with actual notice thereof. Even if the WPFL has not waived its objection to personal jurisdiction, it is clear that any challenge to such jurisdiction by the WPFL will likely be denied. The evidence of record shows that the WPFL has committed acts which have caused injury in this district, and derives substantial revenue through business activities conducted in this district, which activities are directly related to Plaintiffs' causes of action, through its sponsorship of the New England Storm team and by bringing other WPFL teams to this district to play the New England Storm team. In addition to these activities, the WPFL has used marketing materials, including media guides, logos, trademarks and other intellectual property, created, distributed and owned by Plaintiff Korpacz, without her permission in the district as well as elsewhere, in the course of conducting the business affairs of the league. The WPFL thus has sufficient contacts with this district to confer personal jurisdiction.

For these reasons, the Court the authority to enter the relief against the WPFL requested by Plaintiffs.

## II. SUMMARY

This case arises from the egregious, brazen conduct of the Women's Professional Football League (hereinafter "WPFL"), which is now being represented by former Associate Teams, employees and/or team owners affiliated with WPFL whose contracts

3

officially expired in December 2003. Yet they continue to conduct business on behalf of the WPFL.

The evidence overwhelmingly and conclusively establishes that, in March of 2004, the WPFL unlawfully and improperly expelled Plaintiff Korpacz and Plaintiff Storm from the WPFL, a league of which Korpacz is a Founding Member and a one-third owner, and of which Plaintiff Storm is a Member Team. This expulsion was carried out to accomplish a hidden agenda of the Associate Teams to restructure the WPFL over the objections of Founding Members and Member Teams thereof, so that the Associate Teams would be granted the same/equal recognition and monetary rewards as the Member Teams regardless of longevity or the extent of their investment in the league. Additionally, the evidence shows that for its own benefit and that of the Associate Teams, the WPFL has knowingly and willfully continued to use intellectual property created and owned by Plaintiff Korpacz in the form of trademarks, logos, slogans, media guides and the like, without her permission. The WPFL has unilaterally stolen confidential information and proprietary rights, owned by Plaintiff Korpacz, all of which were provided for the Associate Teams by Plaintiff Korpacz solely for use in starting a franchise. Moreover, despite not having valid executed contracts to date with former Associate Team representatives, the WPFL has allowed those individuals to continued to represent themselves as the WPFL Board of Directors by means of soliciting and signing of additional teams into the league, spending WPFL funds, placing notices regarding Plaintiffs on the WPFL website. Per the WPFL Bylaws Article VIII, Section 2 B(7), Plaintiffs have exhausted all of the remedies available to them as the decisions expelling them from the league are "final and without further appeal."

The WPFL is set to announce the 2004 WPFL schedule imminently without Plaintiff Storm listed on said schedule, and refuses to recognize that it continuously failed to follow the proper WPFL Bylaws and ultimately unlawfully and improperly expelled Plaintiffs from the league, thus necessitating the commencement of this action and the instant request for an emergency TRO.

### III. **FACTUAL BACKGROUND**

As set forth in greater detail in Plaintiffs' Verified Complaint (filed April 12, 2004) and the Declaration of Melissa Korpacz filed herewith, Plaintiff Korpacz is the Owner and General Manager of Plaintiff Storm, Women's Professional Football Team, sister team to the World Champion New England Patriots. Plaintiff Storm carries a football roster of 45 team players, has a medical staff of 7, coaching staff of 6 and management staff of 6. Plaintiff Storm has been in existence since 1999.

The WPFL is a league of which Plaintiff Korpacz is a Founding Member and one-third owner. The WPFL, which is currently illegally associated with former Associate Team owners whose contracts officially expired on December 31, 2003, colluded to expel Plaintiff Korpacz and Plaintiff Storm from the WPFL to benefit the hidden agendas of Associate Teams and their representatives in the league.

Because, on information and belief, the WPFL will be issuing the 2004 WPFL game schedule within the next week or two, the business reputations, of Plaintiffs, both here in this district and across the United States, as well as the future of the league which Plaintiff Korpacz helped create, will be irreparably harmed unless this Court grants the

requested emergency TRO against the WPFL requested by Plaintiffs to preserve the status quo until such time that Plaintiffs' claims can be resolved on their merits.

## IV.     **ARGUMENT**

After a perfect year in 2003 in which zero infractions, fines or grievances were filed against Plaintiffs by the WPFL, and after Plaintiff Korpacz was nominated for six Executive Office positions at the semi-annual owners meeting in November 2003 and left the meeting on great terms with everyone in the WPFL, Defendants commenced their illegal conduct described in Plaintiffs' Verified Complaint. During the months of January and February 2004, members of the WPFL illegally colluded to and did so expel Plaintiff Korpacz and Plaintiff Storm from the WPFL on March 6, 2004 at a semi-annual owners meeting, to benefit a hidden agenda.

The ongoing treatment, expulsion and Article VIII Hearing regarding Plaintiff Korpacz' and Plaintiff Storm's expulsions were in direct violation of the WPFL Bylaws. At the time of Plaintiffs' expulsions, the WPFL was using the improper Bylaws as the original Founding Member Bylaws were never properly amended. Also at the time of the Plaintiffs' expulsions, only three teams (including Plaintiff Storm) had authority to conduct any WPFL business and/or represent the WPFL Board of Directors as they were the only teams that had Member Team License Contracts. All remaining teams had Associate Team License Agreements and their contracts had officially expired on December 31, 2003. The Associate Teams refused to re-sign new contracts until the Founding Members issued a new proposed restructure that would place all teams on an equal status with the Founding Members and do away with the Member Team status.

6

Plaintiff Korpacz refused to agree to this restructuring so long as Defendant Lisa I. Vessey, a Commissioner of the WPFL appointed by the 2003 WPFL Board of Directors, was refusing to follow and abide by the WPFL Bylaws and apply those Bylaws equally and fairly to all. This refusal would have blocked the proposed restructure, as the WPFL needed a unanimous vote of the Founding Members, including that of Plaintiff Korpacz. Accordingly, Plaintiff Korpacz' decision initiated a world-wind of retaliation against her and Plaintiff Storm. To this date, the Associate Teams have not executed contracts with the WPFL or Plaintiffs, and are illegally representing themselves as members of the WPFL Board of Directors and continuing to conduct WPFL business without the authority to do so.

Under Massachusetts law, a party is entitled to injunctive relief when it can demonstrate that (1) there is a substantial likelihood of success on the merits of its claims, (2) the injunction is necessary to prevent irreparable harm to the moving party, and (3) the risk of irreparable harm to the moving party in the absence of injunctive relief outweighs the risk of irreparable harm to the adverse party if injunctive relief is granted. *See Packaging Industries Group v. Cheney*, 380 Mass. 609, 617 n.12 (1980), *See also Sciaba Construction Corp. v. Massachusetts Turnpike Authority*, 412 Mass. 606, 608 (in ruling on a request for injunctive relief, the judge should initially evaluate in combination the moving party's claim of injury and its likelihood of success on the merits).

The determination of whether a preliminary injunction should issue in light of these factors rests in the sound discretion of the judge. See Foreign Auto Import, Inc. v. Renault Northeast, Inc., 367 Mass. 464, 472-73 (1975). Here, Plaintiff Korpacz and

Plaintiff Storm meet each of these requirements and thus are entitled to the requested TRO.

    A.    **There Is A Substantial Likelihood That Plaintiff's Korpacz and Plaintiff New England Storm Will Succeed On The Merits Of Its Claims.**

There is compelling evidence that Plaintiff Korpacz and Plaintiff Storm will prevail on all most, if not all, of their claims alleged in considerable detail in their original Verified Complaint, and to be alleged more concisely and selectively in their Amended Verified Complaint to be filed imminently. Upon review of the facts, this Court will find that the WPFL's ongoing pattern of conduct towards Plaintiff Korpacz and Plaintiff Storm was so unfair and egregious, that there is no way that the WPFL can contend that its actions are justifiable. The WPFL violated Plaintiffs' contract, breached its fiduciary duties to Plaintiffs, misrepresented, colluded, and interfered in every possible means with Plaintiffs time and time again, all in an attempt to force an unlawful and improper restructuring of the league. The end result of this conduct was that the WPFL illegally expelled Plaintiff Korpacz and Plaintiff Storm, despite continuous calls for intervention on the part of Plaintiffs to the WPFL Board of Directors regarding Lisa I. Vessey's flagrant and continuous violations of the WPFL Policy and Procedure Manual, Bylaws and Due Process Rights of Plaintiffs. Despite still having yet to sign contracts with the WPFL, the Associate Teams still affiliated with the league, illegally colluded to expelled Plaintiff Korpacz from a league of which she is a Founding Member and a one-third owner. Despite Plaintiffs' objections, representatives of the Associate Teams continued and continue to conduct business as the WPFL Board of Directors, and are attempting to restructure the WPFL to give themselves a bigger monetary interest, in

8

violation of Plaintiffs' rights and in direct violation of the Founding Members' intent as defined clearly in the Articles of Incorporation of the WPFL filed with the Secretary of State of the State of Texas.

At the time the Board expelled Plaintiff Korpacz and Plaintiff Storm from the WPFL, it stripped away everything that Plaintiff Korpacz created and worked for as a Founding Member for the WPFL over the past four years, including but not limited to, her proprietary interests, copyright interests, benefits as a trustee of the WPFL trust, over 700,000 units in WPFL Promotions, LLC, the ownership entity of the WPFL, life-time protected territory in New England where her team plays, over $250,000.00 investment, voting rights, and the like.

As documented for months up to and including the expulsion hearing, the Board refused to respond to Plaintiffs' requests for help from the Board regarding continuous violations, and systematically violated her rights and ignored the Bylaws. Then Associate Team Owners (13 of whom were not even in the WPFL at the time of the 29 alleged charges that were brought against Plaintiffs) were permitted to sit in judgment of Plaintiffs without contracts and make decisions regarding issues that allegedly happened when they were not a part of the league. Two of the teams who voted against Plaintiffs sat the expulsion hearing had not even played a season yet in the WPFL or executed a contract with the league. Another team that voted against Plaintiffs has folded and is no longer part of the WPFL. Yet they were permitted to hear all of the allegations regarding Plaintiff Korpacz without any evidence and have a deciding voice as to whether Korpacz, a Founding Member, should be voted out of the league, which she created. In all, the former Associate Team owners simply expelled Plaintiff and Plaintiff Storm and

proceeded to take all of Plaintiff Korpacz' aforementioned rights, interests and intellectual property and are using that property for themselves on behalf of the WPFL in violation of contractual, common law and statutory obligations.

Because the former Associate Team owner's contracts with the WPFL expired on December 31, 2003 and their contracts were never renewed, they did not have contracts with the league at the time they voted to expel Plaintiffs. On information and belief, they still do not have contracts with the league as of this date. Plaintiffs, on the other hand, have a valid executed contract with the WPFL and at the time of their expulsions, Plaintiff Storm was one of only four teams that had such a contract. At the time of Plaintiffs' expulsions, the people representing the WPFL Board did not have a legal basis to represent the WPFL and to act as WPFL Board Members as their contracts had expired on December 31, 2003. Defendants were advised of such time and time again.

Finally, the WPFL is liable to Plaintiff Korpacz and Plaintiff Storm for intentionally interfering with Plaintiff Korpacz' and Plaintiff Storm's contractual relations with various third parties and for engaging in an ongoing pattern of unfair and deceptive trade practices. By expelling Plaintiff Korpacz and Plaintiff Storm, the Board of the WPFL has misappropriated funds, utilized intellectual property and confidential information owned by Plaintiff Korpacz, taken away Plaintiffs' monetary interests, units, and other property, all for the benefit of the Associate Teams in order to be able to restructure the WPFL without Plaintiffs' approval. This is as a result of the former Associate Teams becoming aware that Plaintiffs were not going to agree to give up their Founding Member rights and/or agree to a restructure of the WPFL. Thus, over a period of time, they illegally colluded to rid the WPFL of one of its Founding Members, even

though they are aware that they are doing so in violation of their contractual, common law and statutory obligation.

### B. Plaintiff Korpacz and Plaintiff New England Storm Will Suffer Immediate And Irreparable Harm If Injunctive Relief Is Denied.

On information and belief, the WPFL will be issuing the 2004 WPFL game schedule within the next week or two. The business reputations of Plaintiff Storm and Plaintiff Korpacz, both here in this district and across the United States, as well as the future of the league which Plaintiff Korpacz helped create, will be irreparably harmed unless this Court grants this requested emergency TRO prior to the issuance of the game schedule. This TRO will preserve the status quo for Plaintiffs who will ultimately have their day in court to have the WPFL answer for its illegal actions in expelling Plaintiffs from the league.

Plaintiffs are suffering, and will continue to suffer immediate and irreparable harm if the WPFL is not enjoined and restrained from allowing Plaintiffs to continue to operate in and as part of the WPFL, pending resolution of this litigation on its merits. For example, during the weekend of May $14^{th} - 16^{th}$ Plaintiffs were scheduled to hold our 5th Annual New England Storm Mini-Camp as they have done for the previous 4 years at Worcester State College. Due to the state of limbo the Defendants have placed Plaintiffs, the Mini-Camp was cancelled and ultimately in one weekend Plaintiffs lost approximately $7,500.00 alone in Mini-Camp fees. The cost for Mini-Camp is $150.00 per veteran and rookie. Minimum attendees Plaintiffs have had each year are 50 people, whereas the maximum is 125 people. $7,500.00 represents the amount Plaintiffs lost if only 50 potential players attended this weekend. On information and belief, far more

would have attended and if we had reached the 125 mark, that would have been a loss of $18,500.00 to Plaintiffs this past weekend alone. Plaintiffs also have numerous sponsors in line for the upcoming season and have already sold season tickets and committed business for opening game day advertising

      The purpose of the Member License Agreement is to protect and give the owners of Member Teams, who have invested larger sums of money and larger amounts of time in their territory, units, higher status, and the like compared to Associate Teams. Specifically, Plaintiff Korpacz is a Founding Member and has a Founding member License in the WPFL and she has a significant amount of money, time, and intellectual property invested in the league, which well exceeds the interests, and/or investments of the representatives of the Associate Teams who have illegally participated in and executed her expulsion.

      Plaintiff Storm currently has a 45-person roster, is in the midst of Strength 7 Conditioning Programs and was scheduled to begin tryouts on April 17, 2004 with 160 potential players scheduled to tryout. Plaintiffs also have numerous sponsors in line for the upcoming season and have already sold season tickets and committed business for opening game day advertising. A failure to place Plaintiff Korpacz and Plaintiff Storm on the WPFL schedule at this point while this matter is pending, will ultimately devastate Plaintiff Korpacz' sole livelihood, and Plaintiff Storm entirely, injuries from which they will not be able to recover. Based upon all the facts, there is compelling evidence that the WPFL has misappropriated intellectual property of Plaintiff Korpacz, illegally colluded and breached fiduciary duties owed to Plaintiffs, and are now trying to restructure the WPFL and break the irrevocable contract with WPFL Promotions, which is where all the

Founding Members hold their interests. This injury is sufficient to warrant injunctive relief even without proof of lost business. *See W.B. Mason*, Civ. No. 00-5042 BLS at 10 (citing *Middlesex Neurological Assoc., Inc. v. Cohen*, 3 Mass. App. Ct. 126, 132 (1975)).

Money damages alone will not compensate Plaintiff Korpacz and Plaintiff Storm because at least some of the injury caused by the WPFL's conduct – the loss of goodwill, injury to reputation, etc. – will be impossible to quantify. Plaintiff Korpacz and Plaintiff Storm will continue to suffer harm if they are not immediately placed on the WPFL schedule, and/or the WPFL is not prevented from continuing to move forward with a proposed restructuring without Plaintiff Korpacz and Plaintiff Storm as part of it.

### C. The WPFL Will Not Suffer Any Substantial Immediate And Irreparable Harm If Injunctive Relief Is Granted.

In moving for an emergency TRO, Plaintiffs are only seeking to preserve the status quo as it existed before the WPFL engaged in its illegal expulsions of Plaintiffs from the league. In fact, if Plaintiff Korpacz and Plaintiff Storm are placed on the upcoming schedule for 2004, this will actually reduce the number of flight trips within their usual division and decrease the costs to the WPFL teams, which are seeking to play in Plaintiff Storm's division. If the requested relief is not granted, and Plaintiff Storm is either not placed on the schedule or the WPFL is not prohibited from playing football without Plaintiff Korpacz and Plaintiff Storm involved in the league, the harm to Plaintiff Korpacz and Plaintiff Storm will far exceed any harm that may result to the WPFL if its teams are permitted to play football for the 2004 season and continue on as the WPFL without Plaintiffs. *See Boston Athletic Ass'n v. International Marathons, Inc.*, 392 Mass. 356 (1984) (issuing preliminary injunction prohibiting promoter from using funds

received by sponsors of marathon because risk of loss to association was far greater than risk of loss to promoter); *see also Town of Westwood v. Adams Russell Co.*, 24 Mass. App. Ct. 914, 916 (1987) (injunction may be issued where it is apparent that risk of irreparable harm to moving party outweighs similar risk of irreparable harm to opposing party). Plaintiff Korpacz and Plaintiff Storm have far more to lose in terms of players, staff, sponsors, and the like. If the WPFL is not enjoined as requested by Plaintiffs, sponsors, potential sponsors, players, staff, and others will be misled into believing the Plaintiffs have engaged in unethical business practices and ultimately leave the team. Such a result would truly be a manifest injustice.

Finally, if the WPFL is not enjoined as requested by Plaintiffs, on information and belief, it will undoubtedly release its schedule and continue to operate and ultimately destroy all that Plaintiffs have worked for over the past four years. Given the recent addition of teams, it is all but certain that at least some new teams will be deceived into purchasing a license agreement believed to come from the Founding Members.

Considering the aforementioned facts as a whole, Plaintiffs, in the absence of the relief they request from this Court, will suffer immediate and irreparable harm.

### D. Plaintiffs have Raised Serious Questions And The Balance Of Hardships Tips Sharply In Its Favor.

Plaintiffs have carried their burden under the alternative test recognized by the Ninth Circuit for determining whether a preliminary injunction should issue. Plaintiffs have obviously raised serious questions regarding the unlawfulness of Defendants' conduct, leaving only the balance of hardships to address at this point. Given Plaintiff Korpacz' valuable intellectual property rights and business reputation, meticulously

created over years of effort, on the one hand, and the Defendants' cavalier and callous disregard of those rights and reputation on the other, it is Plaintiffs who have far more to lose both in the short and long terms.

As stated previously, the WPFL is now being represented by former Associate Teams who until recently were legally affiliated with the WPFL. That affiliation terminated on December 31, 2003. Despite the fact that those former teams have no legal authority to continue to engage in WPFL business or act as the WPFL, they not only removed Plaintiff Korpacz from positions within the WPFL as a Founding Member, they additionally expelled Plaintiffs, thus taking away Plaintiff Korpacz' entire territory within New England that she acquired over the past five years, all Plaintiff Korpacz' proprietary rights and investment of over $250,000.00 that she has injected into the WPFL which she created with only three teams and which has since grown to 18 teams. Additionally, within the past month, since the Plaintiffs' expulsions, the WPFL has held several meetings to discuss the restructuring of the WPFL, yet again still to this date have signed no contracts. The WPFL has also within the past months continued to allow individuals without valid executed contracts to represent the WPFL Board of Directors, spend money from the WPFL Bank account, utilize all proprietary rights belonging to the Plaintiff Korpacz that were unilaterally taken from her upon her expulsion and sign additionally teams into the league. Plaintiffs have been informed regularly of the WPFL's continuous illegal activities and have obtained additional information that the WPFL representatives intend to breach their irrevocable contract with WPFL Promotions, LLC in which Plaintiff Korpacz is also a majority shareholder.

The individuals representing themselves as the WPFL have no authority and/or permission from Plaintiff Korpacz to engage in any of these activities or to continue to represent them or bar Plaintiffs from the WPFL or WPFL business. Simply because there are more Associate Teams than Member Teams in number, that does not give the Associate Teams the authority to illegally bar, expel or suspend Member Teams and/or Founding Members from the league. The WPFL allowed itself to be controlled unlawfully by the Associate Teams to foster their personal agendas, to the detriment of the Member Teams including Plaintiff Storm.

Thus, any "hardship" flowing from the Court's decision of Plaintiffs' request for relief is equitably and properly placed on the WPFL and not on Plaintiffs.

### E. Plaintiff Should Not Be Required To Post A Bond.

Under the provisions of Fed.R.Civ.P. 65(c), the Court has broad discretion to determine the appropriate amount of a bond in the event injunctive relief is granted. *People ex rel. Van de Kamp v. Tahoe Regional Plan*, 766 F.2d 1319 (9th Cir. 1985), *modified*, 775 F.2d 998 (1985). Considering Plaintiffs' strong showing of likely success on the merits, the substantial evidence of the WPFL's bad faith and improper and unlawful expulsion of Plaintiffs, the fact that individuals representing themselves as the WPFL do not have valid executed contracts, did not create a league of their own and have not released a schedule yet, the WPFL is not likely to sustain significant, if any, harm as a result of this Order. Because Plaintiffs have been forced to incur substantial expense, humiliation and loss of business in seeking this relief as a result of Defendants' intransigence and unwillingness to settle this matter, the Court should exercise its discretion and require no bond.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiffs' request for an emergency TRO should be granted.

Dated: May 24, 2004

Respectfully submitted,
Plaintiff Melissa Korpacz

_____
Melissa A. Korpacz. - Pro Se
P.O. Box 808 Medford, MA 02155
781-866-9700 (phone)
781-393-0665 (fax)


Plaintiff New England Storm, LLC
By its Attorneys,

_____
Thomas C. O'Konski BBO# 377475
Kevin Gannon BBO# 640931
Cesari and McKenna, LLP
88 Black Falcon Avenue
Boston, MA 02210
617-951-2500 (phone)
617-951-3927 (fax)