UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 04-10735-RWZ

NEW ENGLAND STORM, LLC., )
MELISSA A. KORPACZ, JD )
    Plaintiffs, )
 )
v. )
 )
WOMEN'S PROFESSIONAL )
FOOTBALL LEAGUE ("WPFL") et al )

### DECLARATION OF MELISSA KORPACZ IN SUPPORT OF PLAINTIFFS' RENEWED REQUEST FOR EMERGENCY TEMPORARY RESTRAIING ORDER

I, Melissa Korpacz, do hereby declare and state that the following is based upon my personal knowledge and I believe all of my statements to be true, except where based upon information and belief, and as to those statements, I am informed and believe them to be true.

1. I am the sole owner Plaintiff New England Storm, LLC ("Storm") Women's Professional Football Team, which is also a plaintiff in the above-captioned action.

2. I submit this Declaration in support of the Plaintiffs' Renewed Request for an Emergency Temporary Restraining Order against Defendant Women's Professional Football League ("WPFL").

3. This controversy dates back to prior to the 2003 WPFL season, however, on March 6, 2004, it came to a head when my team, Plaintiff Storm and I were improperly and unlawfully expelled from the WPFL in which I am a Founding Member and one-third owner and have been since 2000.

4. After a perfect year in 2003 in which zero infractions, fines or grievances were filed against myself or Plaintiff Storm, and after being nominated for six Executive Office positions at the semi-annual owners meeting in November 2003 and leaving said meeting on great terms with everyone in the WPFL, Defendants commenced their illegal conduct described in Plaintiffs' Verified Complaint and began to illegally collude to, and did so, expel Plaintiff Storm and myself from the WPFL on March 6, 2004 at a semi-annual owners meeting, to benefit a hidden agenda.

5. At the time of Plaintiffs' expulsion, the WPFL was in fact using the improper Bylaws as the original Founding Member Bylaws were never properly amended per Article XVIII.

6. Because the Original Founding Member Bylaws were never properly amended and there are no minutes to disprove otherwise, any and all Board Meeting business conducted since new officers took office is suspect at best. With the exception of the semi-annual owner meetings, all other Board Meeting notices issued to Board members, per the original Founding Member Bylaws Article XVII, were never properly provided and the correct due time was not provided.

7. On information and belief, the Article VIII Hearings and expulsions of Plaintiffs were in direct violation of the WPFL Bylaws.

8. Per the WPFL Bylaws Article VIII Section 2 B (7), Plaintiffs have exhausted all of the remedies available to them as the decisions expelling them are "final and without further appeal."

9. Those representing themselves as the WPFL who were involved in Plaintiffs' expulsion from the WPFL did not and do not have valid executed contracts with the WPFL and their prior contracts with the WPFL officially expired on December 31, 2003 and at the time of the Plaintiffs' expulsions, only three teams (including Plaintiff Storm) had authority to conduct any WPFL business and/or represent the WPFL Board of Directors as they had Member Team License Contracts.

10. The Associate Teams refused to re-sign new contracts until the Founding Members issued a new proposed restructure that would place all teams on an equal status with the Founding Members and do away with the Member Team status. I refused to agree to this restructuring so long as Lisa I. Vessey, a Commissioner of the WPFL appointed by the 2003 WPFL Board of Directors, was refusing to follow and abide by the WPFL Bylaws and apply those Bylaws equally and fairly to all. This refusal would have blocked the proposed restructure, as the WPFL needed a unanimous vote of the Founding Members, including my vote as a Founding Member.

11. I continuously called for the WPFL Board of Directors to intervene regarding Lisa I. Vessey's flagrant and continuous violations of the WPFL Policy and Procedure Manual, Bylaws and Due Process Rights of Plaintiff Storm and me.

12. It is documented that for months up to and including the expulsion hearing, the Board refused to respond to my requests for help from the Board regarding continuous violations, and systematically violated her rights and ignored the Bylaws.

13. Despite my objections, representatives of the Associate Teams continued and continue to conduct business as the WPFL Board of Directors, and are attempting to restructure the WPFL to give themselves a bigger monetary interest, in violation of my rights and those of Plaintiff Storm and in direct violation of the Founding Members intent as defined clearly in the Articles of Incorporation of the WPFL filed with the Secretary of State of the State of Texas.

14. Two of the teams who voted against Plaintiffs at the expulsion hearing had not even played a season yet in the WPFL or executed a contract with the league. Another team that voted against Plaintiffs has folded and is no longer part of the WPFL. Yet they were permitted to hear all of the allegations regarding me without any evidence and have a deciding voice as to whether I, a Founding Member, should be voted out of the league, which I created.

15. At the time the Board expelled me and Plaintiff Storm from the WPFL, it stripped away everything that I had created and worked for as a Founding Member for the WPFL over the past four years, including but not limited to, my proprietary interests, copyright interests, benefits as a trustee of the WPFL trust, over 700,000 units in WPFL Promotions, LLC, the ownership entity of the WPFL, life-time protected territory in New England where her team plays, over $250,000.00 investment, voting rights, and the like.

16. The WPFL violated Plaintiffs' contract, breached its fiduciary duties to Plaintiffs, misrepresented, colluded, and interfered in every possible means with Plaintiffs time and time again, to force an unlawful and improper restructuring of the league.

17. Based upon the improper and unlawful expulsions, this action was filed on April 12, 2004 against the WPFL and all teams, team owner and/or individuals who participated in the unlawful expulsions of Plaintiff Storm and myself.

18. On information and belief, the expulsions were carried out to accomplish a hidden agenda of the Associate Teams to restructure the WPFL over the objections of Founding Members and Member Teams thereof, so that the Associate Teams would be granted the same/equal recognition and monetary rewards as the Member Teams regardless of longevity or the extent of their investment in the league.

19. The WPFL has knowingly and willfully continued to use intellectual property created and owned by me in the form of trademarks, logos, slogans, media guides and the like, without her permission and has unilaterally stolen confidential information and proprietary rights, all of which were provided for the Associate Teams by me solely for use in starting a franchise.

20. Despite not having valid executed contracts to date with former Associate Team representatives, the WPFL has allowed those individuals to continued to represent themselves as the WPFL Board of Directors by means of soliciting and signing of additional teams into the league, spending WPFL funds, placing notices regarding Plaintiffs on the WPFL website.

21. The WPFL refuses to recognize that it continuously failed to follow the proper WPFL Bylaws and ultimately unlawfully and improperly expelled Plaintiffs from the league.

22. By expelling Plaintiff Storm, and me the Board of the WPFL has misappropriated funds, utilized intellectual property and confidential information owned by me, taken away Plaintiffs' monetary interests, units, and other property.

23. I am a Founding Member in the WPFL and have a significant amount of money, time, and intellectual property invested in the league.

24. I have a Member License Agreement which is to protect and give the owners of Member Teams, who have invested a larger sums of money and larger amounts of time in their territory, units, higher status, and the like compared to Associate Teams.

25. Upon information and belief, the WPFL is set to release its 2004 schedule within one week or two weeks of this date.

26. Attached herewith is a printout from the Houston Energy website indicating that the WPFL schedule will be released by June 1, 2004. (Exhibit 1)

27. Attached herewith is a printout from the Missouri Avengers website indicating that the schedule will be completed by May 10, 2004. (Exhibit 2)

28. Plaintiffs filed a Motion for Preliminary Injunction with this Court, however, due to the urgency created by the upcoming WPFL schedule release date, Plaintiffs must seek this Emergency TRO for the protection of their business name and reputation as well as those of its sponsors, players, staff and others involved with the team.

29. If Plaintiff Storm is not included on the WPFL schedule and the WPFL is permitted to move forward without the Plaintiff Storm on the 2004 WPFL schedule, the WPFL by its unauthorized unjustified, unlawful expulsions will

6

have virtually suffocated Plaintiffs' business and the irreparable harm to Plaintiff Storm and me will be devastating.

30. If I am not included in the WPFL conference calls and Board of Directors meetings, the WPFL will be permitted to move forward without me as a Founding Member, and it will be able to virtually undue all that I and the other Founding Members have worked for over the past four years, and the resulting irreparable harm will be devastating to me personally.

31. The business reputations of Plaintiff Storm and me, both here in this district and across the United States, as well as the future of the league which I helped create, will be irreparably harmed unless this Court grants this requested emergency TRO prior to the issuance of the game schedule. This TRO will preserve the status quo for Plaintiffs who will ultimately have their day in court to have the WPFL answer for its illegal actions in expelling us from the league.

32. This past weekend I was scheduled to hold our 5th Annual New England Storm Mini-Camp as they have done for the previous 4 years at Worcester State College. Due to the state of limbo the Defendants have placed me and Plaintiff Storm in, the Mini-Camp was cancelled and ultimately in one weekend Plaintiffs lost approximately $7,500.00 alone in Mini-Camp fees. The cost for Mini-Camp is $150.00 per veteran and rookie. Minimum attendees Plaintiffs have had each year are 50 people, whereas the maximum is 125 people. $7,500.00 represents the amount Plaintiffs lost if only 50 potential players attended this weekend. On information and belief, far more would have attended and if we had reached the

125 mark, that would have been a loss of $18,500.00 to Plaintiffs this past weekend alone.

33. Plaintiffs also have numerous sponsors in line for the upcoming season and have already sold season tickets and committed business for opening game day advertising

34. Upon information and belief, Defendants are now trying to restructure the WPFL and break the irrevocable contract with WPFL Promotions, which is where all the Founding Members hold their interests.

35. Money damages alone will not compensate Plaintiff Storm and me because at least some of the injury caused by the WPFL's conduct -- the loss of goodwill, injury to reputation, etc. – will be impossible to quantify.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24 day of May 2004 at Boston, Massachusetts.

                                            /s/ Melissa A. Korpacz
                                            Melissa A. Korpacz





**Energy Poll**

Will Houston come back to avenge their title in the 2004 season?

○ Yes

○ No

○ Too early to tell



**PLAYER SPOTLIGHT**



Have a question or comment for the Energy?
Contact us at info@houstonenergyfootball.com

RESERVE YOUR SEATS TODAY!

## NEWS

Congratulations to all the women that attended tryouts this past month. The 2004 Houston Energy roster has been selected and will be coming soon on the team page. Check out our new additions.

MINI-CAMP DATES:

APRIL 17th-ROOKIES ONLY (10 am)

May 1ST-ROOKIES ONLY (10 am)

May 15th-VETERAN AND ROOKIES (10am)

ALL MINI-CAMPS WILL BE HELD AT THE PEARLAND DAD'S CLUB.

**AROUND THE LEAGUE**

*THE WPFL WELCOMES TWO NEW TEAMS FOR THE UPCOMING 2004 SEASON*

 

**UPCOMING EVENTS**

THE WOM
ENERGY 20
NOW AVAIL.
7677 TO O
TODA'





*Laura Cantu QB #4*

**2nd season
Height: 5'7"
Weight: 157
DOB:08/30/1985
Occupation:** Laura attended Pearland High School where she competed in Volleyball, Softball and Basketball.

The 2004 WPFL Season Schedule will be released by June 1st. Season tickets are now available for $75.00 which includes 5 home games to be played at Rice Stadium. For more info or to purchase tickets call 713-926-7677.





Copyright 2000-2003 by The Houston Energy. The Houston Energy Logo design is a registered trademark of the Women's Professional Football League logos and uniform designs are registered trademarks of the teams indicated. No portion of this site may be reproduced without the express written pe Houston Energy Football Organization. All Rights Reserved.





**We are proud to announce our inaugural season with the WPFL.**

**We invite any woman who has the dream of playing tackle football to come tryout for our team.**

### News

### COME BE A PART OF HISTORY!

The WPFL is a professional full contact women's American tackle football league. The Missouri Avengers are proud to announce their inaugural season with the WPFL.

We would like to invite any woman who has the dream of playing tackle football to come and tryout.

We play a 10-game schedule, consisting of 5 home and 5 away games. Games are held on Saturday evenings. Transportation and hotel for all away games are paid for.

### OPEN TRYOUTS THROUGH APRIL!

Think you have what it takes? We are holding tryouts through the month of April and would love to see you come out for the team!

Tryout Format: 40yd. Dash, Short Shuttle, Agility Drills, Ball Handling Drills. No football equipment necessary. Wear comfortable clothing and sneakers or cleats.

### TRYOUT FEE: $60.00 (MUST BE PAID DAY OF TRYOUT)

Participants must be 18 or older, display an excellent attitude, a willingness to learn, and athletic skills.

### PRACTICE LOCATION AND TIMES

The practice field is located at the corner of S. National and Montclair in Springfield, MO. Practice times are as follows:

Practice Monday   6:00 p.m. - 8:00 p.m.
Practice Thursday 6:00 p.m. - 8:00 p.m.
Practice Saturday 8:00 a.m. - 12:00 p.m.

If interested in coaching or playing for the Missouri Avengers, please contact the team office at 417-890-5452.

586

Copyright ©: 2004 Missouri Avengers Athletic Association. All rights reserved.