UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 MAY 27  P 4: 32

U.S. DISTRICT COURT
DISTRICT OF MASS.

NEW ENGLAND STORM, LLC and )
MELISSA KORPACZ, JD, )
 )
            Plaintiffs, )
v. ) Civil Docket Number:
 ) 04-10735-RWZ
WOMEN'S PROFESSIONAL FOOTBALL )
LEAGUE ("WPFL"), et al., )
 )
            Defendants. )
 )

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' RENEWED REQUEST FOR EMERGENCY TEMPORARY RESTRAINING ORDER**

COMES NOW the Women's Professional Football League ("WPFL"), Lisa I. Vessey, Beth Markell, Charlene Daniels, Jennifer Cada, Robin Howington, Dawn Berndt, Shelly Squires, Jody Taylor, Long Beach Aftershock, Ester Pichardo, Debbie Gentz, The Toledo Reign, Beth Razzoog, Delaware Griffins, Alena Malatesta, Dayton Rebellion, Sarah McClain, Syracuse Sting, Cabrina Gilbert, Houston Energy Football, Inc., Arizona Caliente, Indiana Speed, Sandy Ballard, Missouri Avengers, Becky McCann, Minnesota Vixen, Dallas Diamonds, Kristy Benenhaley, New York Dazzles Football, Neil Scheier, Los Angeles Amazons, Aubrey Duncan, Kay Carter, SoCal Scorpions, Christine Sugget, Ann Bagala, and Natalie Gorman (collectively, "Defendants") and submit this memorandum of law in support of their opposition to the plaintiffs' renewed application for an emergency temporary restraining order. For the following reasons this Court should deny plaintiffs' request for a temporary restraining order.

I.  **Factual Background**

The WPFL was formed in 1999, to create a professional league for women's tackle football. The WPFL was incorporated in 2002, under the laws of the state of Texas, as a non-profit corporation.[1] The WPFL is currently comprised of 16 Member and Associate teams.

The WPFL enacted a Constitution and By-laws to enumerate the procedures for the operation of the league. Those By-laws also detail the procedure for dealing with violations of the By-laws and other conduct detrimental to the league, including the expulsion of teams from the league.

On February 23 and 24, 2004, the WPFL notified plaintiffs that the league and other WPFL teams had charged plaintiffs with 29 violations of the By-Laws and other league rules and regulations. Plaintiffs responded to those charges both in writing an in person at a special meeting held on March 6 and 7, 2004. During the meeting, evidence was presented and the board sustained 24 of the 29 charges against plaintiffs. A majority of the board then voted, pursuant to the By-Laws, to expel plaintiffs.[2]

II.  **Argument**

   A.  **Applicable Standard**

Injunctive relief is a drastic remedy that a court should not grant unless the movant, by a clear showing, carries its burden of persuasion. Wright & Miller, 11 Federal Practice and Procedure, 2948

---

[1] As a non-profit corporation, no corporate stock was authorized or issued, despite plaintiffs' false assertion that Korpacz owns 1/3 of the WPFL.

[2] Plaintiff failed to take any steps to challenge the ruling of the board or prevent the WPFL from playing its scheduled games until she knew the WPFL was poised to release its schedule.

2

(1973). In order to obtain a temporary restraining order that burden of persuasion requires plaintiffs to clearly demonstrate a likelihood of success on the merits, irreparable injury to the plaintiffs if the injunction is not granted, that the injury to the plaintiffs outweighs any harm which granting injunctive relief would inflict on the defendant, and that the public interest will not be adversely effected by the granting of injunctive relief. *Lanier Professional Services, Inc. v. Ricci*, 192 F.3d 1, 3 (1st Cir. 1999)(the Court applies the federal preliminary injunction standard in diversity cases). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Services, Inc. v. Sprintcom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

Here, it is patently clear that plaintiffs cannot meet their burden of demonstrating a likelihood of success on the merits because plaintiffs were expelled from the WPFL by vote of a majority of teams eligible to vote pursuant to the WPFL's Constitution and By-Laws that were legally in effect at the time of the hearing.

    B.   **The Constitution And By-laws Were Effective and Followed**

Plaintiffs were expelled pursuant to Article VIII §§ 2(A) and 2(B) of the Constitution and By-Laws because a majority of the WPFL board of directors found that plaintiffs had committed 24 separate violations of the Constitution and By-Laws, and the rules and regulations of the WPFL, as set forth in the WPFL Policy and Procedures Manual, during the period from March 2002 to February 2004.

*See* the February 23, 2004 Notice of Charges, attached hereto as <u>Exhibit A</u>. These violations included, but were not limited to: (1) the willful failure to appear and play in games on the schedule in violation of Article VIII §2(A)(5);[3] (2) the unauthorized use of credit cards belonging to other team owners on three occasions in violation of state and federal law, as well as §11, Item 10 of the WPFL Policy and Procedures Manual; (3) the passing of bad checks on a number of occasions in violation of state law and Articles VII §5 and VIII §2(A)(2); (4) entering an opposing team's locker room and grabbing the breasts of a player in violation of state and federal law, and §§ 10 and 11 of the Policy and Procedures Manual;[4] and (5) the failure to fulfill their contractual obligations to other league teams in violation of Article VIII §2(A)(3) of the Constitution and By-Laws. *See* <u>Exhibit A</u>.

Pursuant to the Article VIII §2(B), several teams issued charges against plaintiffs, and plaintiffs were notified in writing of the charges against them on February 23 and 24, 2004. *See* <u>Exhibit A</u>. Plaintiffs responded to the charges and plaintiffs were given notice of a special meeting of the WPFL board of directors to hear the charges against them, pursuant to the By-Laws, which was held on March 6 and 7, 2004.[5]

---

[3] The willful failure to present the team and its players at the time and place it is scheduled to play is, by itself, grounds for termination.

[4] Violation of the WPFL's Sexual Harassment Policy is grounds for immediate termination. WPFL Policy and Procedures Manual §11.

[5] March 6 and 7, 2004 were the same dates of a previously scheduled Annual Meeting of the board of directors.

Plaintiffs assert that their expulsion was ineffective on the mistaken premise that the By-Laws pursuant to which plaintiffs were expelled were not the operative By-Laws, and thus, Defendants did not follow the correct procedure for expelling plaintiffs. Plaintiffs' argument is seriously misguided.

The WPFL adopted its first By-Laws on March 8, 2002. *See* Constitution and By-Laws of Women's Professional Football League executed March 8, 2002, attached as Exhibit 1 to the Affidavit of Robin Howington ("Howington Affidavit"). These By-Laws were subsequently legally amended on January 5, 2003, pursuant to the procedures outlined in the By-Laws. *See* Howington Affidavit.[6] Although the By-Laws were legally amended, it does not matter for purposes of plaintiffs' expulsion proceedings. You see, the procedures for termination enumerated in Article VIII of each of the two iterations of the By-Laws are identical. *See* Howington Affidavit. The only difference between the two By-Laws is the special meeting notice provisions contained in Article XV. *See Id.* Article XV of the March 8, 2002 By-Laws requires 14 days notice, whereas the amended By-Laws require only 5 days notice. *See Id.* This difference in the provision of notice is, however, immaterial because plaintiffs waived these notice provisions by agreeing to have the charges heard at the special meeting held on March 6 and 7. *See* March 1, 2004 letter from Missi Korpacz to the WPFL Board of Directors, attached hereto as Exhibit B. Consequently, whether or not the By-Laws were legally

---

[6] The amended By-Laws are attached as Exhibit 2 to the Howington Affidavit.

amended, Defendants followed the proper procedures for expulsion of plaintiffs.

Significantly, this is not the first time a WPFL team has been expelled pursuant to the current Constitution and By-Laws. In April 2003, three months after the By-Laws were amended, the Wisconsin Riveters were expelled pursuant to the amended By-Laws. Plaintiffs herein did not challenge the validity of the WPFL Constitution and By-laws at that time; to the contrary, they voted to expel the Riveters.[7] *See* Howington Affidavit.

### C. The Associate Teams Were Authorized to Vote

Plaintiffs contend that the expulsion vote of the board of directors was ineffective because the license agreements with the Associate Teams had allegedly expired as of December 31, 2003 and, thus, the Associate Teams did not have the "right" to vote. This is completely inaccurate. At a semi-annual league meeting held in November 2003, the league voted to extend the license agreements of the Associate Teams. *See* 2003 WPFL Board of Director's Meeting Minutes November 9-10, attached hereto as Exhibit C. Plaintiff Korpacz was present and voiced no objection to the extension. *See Id.*

More fundamentally, the status of the license agreements is irrelevant for determining who has the right to vote. The determination of who has the right to vote is set forth in the Constitution and By-Laws. Article IV, Section I provides "for voting purposes at Board Meetings, only directors representing Teams in Good

---

[7] Since their expulsion from the WPFL, the Wisconsin Riveters are playing football in another league, the National Women's Football Association.

6

Standing shall be entitled to vote." "Good Standing" is defined in Article III, Section IV as teams that are "no more than $2,500 in arrear on any dues, assessments or monetary sums owing to the WPFL." Thus, any team that is not more than $2,500 in arrears is in good standing and therefore eligible to vote. Since all the teams at the March 2004 meeting were in good standing, they were entitled to vote and their decision to expel plaintiffs was effective.

### D. Plaintiffs' Misstatements of Fact

In their Renewed Request for Emergency Temporary Restraining Order, plaintiffs make a number of statements that are not completely accurate. For instance, plaintiffs state that they enjoyed a "perfect" year in 2003 with "zero infractions, fines or grievances" filed against them. Memorandum in Support of Renewed Request for Emergency Temporary Restraining Order ("Memorandum in Support of Plaintiffs' Renewed Motion") at p. 6. This simply is not true. For example, plaintiff Korpacz was suspended for four games during the 2003 season for being in arrears with money owed another team owner, the stadium in which plaintiffs played their home games, and the WPFL for its license fees. See Affidavit of Lisa Vessey. Not only was Korpacz suspended for four games, she was found to have violated the terms of her suspension. See Id.

Plaintiffs also contend they are the sole owners of various "trademarks, logos, slogans, media guides and the like." See Memorandum in Support of Plaintiffs' Renewed Motion at p. 4. This, again, simply is not true. The WPFL's logo is a registered trademark owned and registered in the name of the Women's Professional Football

League, not plaintiffs. *See* United States Patent and Trademark Office Registration No. 2,683,763, registered on February 4, 2003, attached hereto as <u>Exhibit D</u>. These are just a few examples of the misstatements contained in Memorandum in Support of Plaintiffs' Renewed Motion.

### III. <u>Motion to Transfer Venue</u>

Plaintiffs cite FED. R. CIV. P. 12(g) for their argument that by filing the motion to dismiss, Defendants have waived the right to challenge jurisdiction and venue. Memorandum in Support of Plaintiffs' Renewed Motion at p. 2. As the Court is well-aware, the waiver provision of Rule 12(g) applies only to the filing of a pleading. FED. R. CIV. P. 7(a) lists documents that constitute pleadings. They are limited to six documents: (1) a complaint; (2) an answer; (3) a reply to a counter-claim; (4) an answer to a cross-claim; (5) a third-party complaint; and (6) a third-party answer. Rule 7 "explicitly excludes everything else from it definition of pleadings." *Burns v. Lawther*, 53 F.3d 1237, 1241 (11th Cir. 1995). A motion to dismiss does not constitute a pleading. *Keene Lumber Co. v. Leventhal*, 165 F.2d 815, 823 (1st Cir. 1948)(motion to dismiss is not a responsive pleading).

Defendants respectfully urge this Court to transfers this action to the United States District Court for the Southern District of Texas, Houston Division for two reasons. First, the Southern District of Texas is an available forum. The gravamen of plaintiffs' complaint is that certain actions of the WPFL were improper. The WPFL is a Texas corporation with its principal place of business in Houston,

Texas. Clearly, the WPFL is amenable to process in the Southern District.

Second, the balancing of private and public interests favors dismissal and transfer. For instance, all league documents are located in Houston. *See* Affidavit of Robin Howington, attached hereto as <u>Exhibit</u> . League officials likely to be called as witnesses reside in the Southern District. *See Id*. Potential conflicts of laws would be avoided and enforcement of any judgment against the league (a Texas corporation) would be simplified.

**IV. Conclusion**

For the foregoing reasons, it is clear that plaintiffs cannot satisfy their burden of demonstrating a likelihood of success on the merits. Moreover, the balancing of interests favors dismissal and transfer of plaintiffs' causes of action to the United States District Court for the Southern District of Texas. Consequently, Plaintiffs' Renewed Request for Emergency Temporary Restraining Order Against Defendant Women's Professional Football League should be denied, and the case should be transferred to the Southern District of Texas, Houston Division.

<u>**Request for Hearing**</u>

Defendants request a hearing on their Opposition to Plaintiffs' Renewed Request for Emergency Temporary Restraining Order Against Defendant Women's Professional Football League if the Court deems such hearing necessary.

Respectfully submitted,
DEFENDANTS,
By their Attorneys,

Brian D. Gross
BBO No. 637718
COOLEY MANION JONES, LLP
21 Custom House Street
Boston, MA 022110-3536
(617) 737-3100

Carlton D. Wilde, Jr.
Pro Hac Vice
FRANKLIN, CARDWELL & JONES, P.C.
1001 McKinney
Houston, TX 77002

Dated: May 27, 2004

### CERTIFICATE OF SERVICE

I, Brian D. Gross, attorney for Defendants in the above-captioned action, hereby certify that I served a copy of the foregoing to all counsel of record via facsimile and first class mail, postage prepaid on this 27th day of May, 2004.

Brian D. Gross

125626v1