96. Contrary to Vessey's aforementioned comment, Plaintiff Korpacz had never submitted any previous appeals to the Board regarding Vessey's decisions, only a consent to action as Plaintiffs have always been denied their right to an appeal process or proper procedures under the WPFL Bylaws.

97. Vessey indicated that she would forward by U.S. mail the evidence upon which the findings set forth above are based. To date, neither teams or Plaintiffs have received said evidence packages that were used as a means to expel Plaintiffs.

98. To this date, Vessey has never provided the "clear and convincing" evidence she publicized and claimed to have in support of her charge that Plaintiff Korpacz "deliberately violated the terms of her July 9, 2003 suspension."

99. As a result of Vessey's calling for charges in her "Report of Investigation" letter, several other individuals affiliated with the WPFL issued charges against Plaintiff Korpacz. Each of these individuals simply submitted a letter to the Commissioner in support of their charges. No supporting documentation was attached to the letters. In turn, on February 23, 2003, Plaintiff Korpacz was served with Article VIII charges when Vessey issued 29 counts against Plaintiff Korpacz and her team, Plaintiff Storm.

100. Plaintiff Korpacz had not played three of the teams whose representatives submitted charges in two seasons, and 95% of the charges were two to three years old.

101. Not one piece of evidence or even a single document was presented or required by Vessey to be presented to support Plaintiffs' proposed expulsion from the WPFL. The only evidence submitted was in the nature of hearsay. On the other hand, Plaintiff Korpacz had a mountain of evidence and documentation to disprove allegation after allegation.

102. Vessey was told that Plaintiff Korpacz had not paid for the previous year of stadium use.

103. Plaintiff Korpacz and the Mayor of Medford came to the agreement that the matter would be discussed once the stadium commission was appointed. Said Stadium Commission was appointed on February 18, 2004.

104. On or about February 24, 2004, Vessey issued another set of Article VIII Charge against Plaintiff Korpacz indicating that Plaintiff was in arrears more than $2,500 to the City of Medford. Vessey therefore stated that Plaintiffs were not in good standing. Per the WPFL Bylaws, good standing relates to money owed to the WPFL, not how a team conducts their individual business affairs.

105. At the same time of the aforementioned Article VIII issuance, Vessey suspended Plaintiff Korpacz and Plaintiff Storm from the WPFL indefinitely.

106. Plaintiff Korpacz was given five days to respond to the Article VIII Charge.

107. Vessey stated in above correspondence "I understand that counsel for the League also may be commenting on this matter.

108. Plaintiff Korpacz inquired into whom the "league counsel" was as the WPFL Board never voted to obtain "counsel" beyond simply having an attorney review the proposed restructure. Plaintiff Korpacz requested this information three times from the WPFL. Plaintiff Korpacz was never responded to, nor has ever been responded to this date.

109. On February 29, 2004, a meeting was held via conference call to discuss status of an Associate Team, Austin Rage. Plaintiff Korpacz was not permitted to attend this meeting.

110. During the above meeting the owners of Austin Rage, another Founding Member Team were issued a $15,000.00 fine for alleged violations, due to be paid on May 1, 2004. This in essence terminated another Founding Member Team's existence from the WPFL.

111. Until a hearing was convened, Vessey barred Plaintiff Korpacz from voting at any Board meeting, and held all funds held by the WPFL, including any license fees paid on the account

of Plaintiff Storm or any funds held by WPFL Promotions, and ordered that said funds shall remain on deposit pending further action by the Board.

112. The WPFL Bylaws indicate that the only members not allowed to attend Board Meetings are those teams not in "good standing". Good standing is defined as teams that are more than $2,500.00 in arrears to the WPFL. Plaintiffs were not more than $2,500.00 in arrears to the WPFL.

113. As of March 2, 2004, there were only five Member Teams with current, legally executed contracts with the WPFL.

114. On that date, the Member Teams held a meeting to discuss the direction of the WPFL and the WPFL's future, during which they terminated Vessey as the Commissioner of the WPFL. She was notified the day after the Member Teams' meeting of her termination and informed that her presence at the upcoming owners semi-annual March meeting was not required.

115. Even after her termination, Vessey emailed Plaintiff Korpacz and once again threatened her removal from the Arizona meeting.

116. Vessey sent Plaintiff Korpacz another correspondence stating "as always we are open to any reasonable proposals for an amicable resolution of the charges, including your voluntary withdrawal from the league, and the possibility of some other non-voting or advisory position being offered. Your continued misrepresentations and threats do not serve you well if you have any hope of exploring options short of suspension or permanent expulsion."

117. Vessey is a non-vested party in the WPFL and has never invested one penny into the WPFL or any of its teams.

118. Two days before the Owners meeting in Arizona, one Board member sent out correspondence indicating that she had received "unanimous consent" to suspend the rules to reset the start of the regular March meeting, thereby calling the special meeting regarding Plaintiffs first.

This "unanimous consent" was never recorded properly. Plaintiffs were not provided the proper fourteen (14) days notice per the Founding Members Bylaws.

118. On March 6 and 7, 2004, representatives of all of the Associate Team Defendants appeared in Phoenix Arizona for the semi-annual owners meeting.

119. Upon entering the room, two documents were in front of each seat (1) one relating disciplinary procedures according to Roberts Rules of Order, and (2) a new "Confidentiality Agreement."

120. The owner of the Arizona Knighthawks and fellow Member Team owner immediately called to the attention of the entire Board that (1) the Commissioner Vessey had been terminated by the Member Teams and therefore had no authority to conduct the meeting, and (2) the Associate Teams contracts had expired thus giving them no legal rights to vote in the meeting.

121. Vessey demanded that he return to his seat and she continued to (1) act in the capacity of Commissioner of the WPFL despite having been terminated by the Member Teams, and (2) continued to act as Chair of the WPFL Board meeting.

122. Although their contracts had expired on December 31, 2003 and they had not renewed or paid any sum of money for renewal, Associate Teams were granted voted rights by Vessey and continued to vote on all WPFL matters for the remainder of the 2-day meeting.

123. Upon noticing the "Confidentiality Agreement" had been doctored from its original content, Kennamer and Plaintiff Korpacz brought this to the attention of individuals in the room.

124. Specifically, Plaintiff Korpacz, Kennamer and Howington's names were removed from the standard Confidentiality Agreement, which had been the same for three years, and the language had been amended to indicate that the "WPFL Binder" belonged to the WPFL as a whole and to remove the above "Founding Members" names without their permission.

125. Vessey had all Associate Team Defendants present at the meeting vote on whether

19

they wanted to have the new Confidentiality Agreement without the "Founding Members" names on it.

126. Plaintiff Korpacz did not sign the new Confidentiality Agreement, as she did not authorize the unilateral taking away of her name on the original Agreement.

127. Plaintiff Storm was the only team barred from voting after Vessey put the matter to a vote by those Associate Teams that did not currently have contracts.

128. Defendant's then proceeded to the Special Meeting against Plaintiff Korpacz and Plaintiff Storm.

129. Plaintiff Korpacz was required to sit in front of all Defendants and state "guilty or not guilty" to the alleged 29 charges.

130. Plaintiff Korpacz' time was limited to an opening statement to respond to the charges against her and Plaintiff Storm, rebuttal and/or remarks. Plaintiff Korpacz was not given the opportunity to cross-examine any witnesses presented by the charging parties. Plaintiff Korpacz was made to defend herself with respect to each and every charge regardless of the date of alleged incidents, or the lack of evidence to support the allegation(s).

131. Plaintiff was found guilty on all but two charges by the "Board" even where there was indisputable evidence in the form of documentation to support Plaintiffs' responses and defenses to the charges.

132. Defendants presented no physical evidence to support any of their allegations, including a charge that wrongfully accused Plaintiff Korpacz of commission of a crime.

133. All of Defendants' charges against Plaintiffs were either untrue, misrepresented, two to three years old, or allegedly took place when Vessey was not even connected with the WPFL.

134. Due to a lack of evidence, Vessey later withdrew five of her charges against Plaintiff Korpacz; however, Vessey had already defamed Plaintiff Korpacz.

135. Vessey's allegations defamed Plaintiff Korpacz' character, credibility and were meant to induce sister WPFL teams to wrongfully and unlawfully remove Plaintiff and her team, Plaintiff Storm, from the WPFL.

136. Plaintiff Korpacz was escorted into the conference room 45 minutes later and Vessey informed Plaintiff Korpacz that she and her team, Plaintiff Storm, had been expelled from the WPFL.

137. At that moment in time, the WPFL and the Associate Team Defendants placed the previous five years of work that the Plaintiff Korpacz had accomplished in founding and developing the WPFL and Plaintiff Storm in severe jeopardy including but not limited to the loss of current sponsors, players, potential players, coaches, staff, business relationships, and the like.

138. Plaintiff Korpacz arrived back in Boston on Monday evening, March 8, 2004. By that time, the WPFL had already placed a press release on the front page of their website announcing the expulsion of Plaintiff Korpacz and her team, Plaintiff Storm. On the WPFL web site information and logos regarding the Florida Stingrays and Austin Rage remained, even though they were previously expelled from the WPFL.

139. On March 10, 2004, Our Sports Central.com, an online new reporting site, reported the expulsion of Plaintiff Korpacz and her team, Plaintiff Storm, from the WPFL.

140. On March 16, 2004, Plaintiffs received "Formal Notice of Expulsion" letter from Vessey.

141. On information and belief, Defendants were aware at the time of the expulsion of Plaintiff Korpacz and Plaintiff Storm that there were at least six competing women's football teams in the New England area and that an announcement of the expulsions would ultimately destroy Plaintiffs and their business.

142. Defendants acted unlawfully, willfully and maliciously in expelling Plaintiffs from the

WPFL and in placing notices of the expulsions on the front page of the WPFL web site.

143. After Plaintiffs' expulsions, the WPFL Executive Board issued a "gag order" against all remaining Defendants in the WPFL, which prohibited everyone from speaking to Plaintiff Korpacz.

144. On or about March 21, 2004, the WPFL issued a proposed restructure of the league to the team owners.

145. The only way to have the successful proposed restructure pass was to rid the WPFL of the Plaintiff Korpacz and her team Plaintiff Storm, as approval of the restructuring.

146. Because the Plaintiffs' Membership License Agreement expressly states that the WPFL Board of Directors must make modifications to the WPFL Bylaws with approval in writing, and because this was never done, the Bylaws that were used to expel Plaintiffs are the wrong Bylaws. The correct Bylaws that are still in effect are the original ones that were created by the Founding Members of the WPFL.

## COUNT I
## FALSE DESIGNATION OF ORIGIN AND AFFILIATION

### (All Defendants)

1. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1-146 above.

2. Plaintiff Korpacz is the creator, originator and owner of certain intellectual property relating to the WPFL and Plaintiff Storm, which intellectual property includes certain trademarks, logos, slogans, marketing materials, commercials and concepts, and other commercial materials.

3. Since Plaintiffs' unlawful expulsions from the WPFL, Defendant WPFL and the Associate Team Defendants have used and continued to use Plaintiff Korpacz' intellectual property on the WPFL website, in the operation of the WPFL and the various teams without Plaintiff Korpacz' authorization or permission.

22

4. Defendants' continued use of Plaintiff Korpacz' intellectual property conveys the misleading commercial impression to the public that such use is approved by, sponsored by or somehow affiliated or connected by Plaintiff Korpacz.

5. The aforesaid acts of Defendants constitute false designations of origin and affiliation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

6. The aforesaid acts have caused, and unless restrained by the Court, will continue to cause Plaintiff Korpacz to suffer irreparable harm in this District and elsewhere.

7. Plaintiff Korpacz has no adequate remedy at law.

## COUNT II
## BREACH OF CONTRACT

### (Defendant WPFL)

1. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1-146 above.

2. Plaintiffs were ready willing and able to perform, and did perform all of its obligations under their Member License Agreement (the "Agreement") with the WPFL since the year 2000. The Agreement was supported by valid consideration.

3. Defendant WPFL breached the Agreement with Plaintiffs by failing to render the contracted services agreed upon in the Agreement and/or by providing those services it did perform in complete disregard of the proper standard of professional care.

4. Defendant WPFL breached the Agreement with Plaintiffs by failing to act in accordance with all the terms and conditions of the applicable and appropriate WPFL Bylaws and Constitution.

5. Defendant WPFL breached the Agreement with Plaintiffs by allowing and continuing to allow Associate Teams, Defendants, whose contracts expired on December 31, 2003, to represent themselves as members of the WPFL Board and conduct WPFL business, without executing new contracts.

6. Defendant WPFL has breached the Agreement with Plaintiffs by failing to receive approval in writing by the WPFL Board with respect to any/all modifications made to the WPFL Bylaws prior to Defendants effectively switching to a new set of WPFL By-laws which were used to expel Plaintiffs.

7. Defendant WPFL has breached the Agreement with Plaintiffs by allowing individuals to participate in the March 2004 semi-annual owners meeting in Phoenix, Arizona, and in Plaintiffs Article VIII Hearing, Penalty Phase and unlawfully and improperly expulsion Plaintiffs from the WPFL without a valid executed contract or a legal basis to conduct business on the part of the WPFL.

8. Defendant WPFL has breached the Agreement with Plaintiffs by continuously failing to respond to Plaintiff Korpacz' requests for Board intervention and protection from Defendant Vessey's ongoing patterns of abusive behavior, abuse of power and actions beyond the scope of the WPFL Bylaws.

9. Defendant WPFL has breached the Agreement with Plaintiffs by allowing Defendant Vessey to issue a "Report of Investigation" indicating that she had "clear and convincing" evidence to support the immediate suspension of Plaintiff. Yet, this "clear and convincing" evidence was never supported or presented to date, yet was the basis for her correspondence to the Board, which ultimately called for the influx of charges against Plaintiffs (ranging from two –three years old) within fifteen days.

10. Defendant WPFL has breached the Agreement with Plaintiffs by failing to maintain and/or deliver proper WPFL Board minutes on numerous occasions, by failing to maintain proper documentation as required by the Secretary in the WPFL Bylaws preventing Plaintiffs from being able to refer back to minutes and defend themselves against accusations which later resurfaced.

11. Defendant WPFL has breached the Agreement with Plaintiffs by attempting to induce Associate Team Defendants into filing of unsupported charges against Plaintiff Korpacz.

12. Based upon the actions alleged in the foregoing paragraphs and as a direct result of Defendants' breaches, Plaintiff Korpacz and Plaintiff Storm have suffered and continue to suffer damages.

13. As a direct result of Defendants' breaches, Plaintiffs have been significantly harmed in an amount no less than $1,300,000.00 and other amounts to be proven at trial.

## COUNT III
## TORTUOUS INTERFERENCE WITH
## ADVANTAGEOUS BUSINESS RELATIONSHIPS

**(All Defendants)**

1. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1-146 above.

2. Plaintiffs have ongoing and prospective advantageous business relations with various businesses, doing business, or interested in doing business with Plaintiff Storm and have had such throughout the past four years. With improper motive and/or improper means, Defendants have interfered with these business relations, resulting in harm to the Plaintiffs.

3. Defendants had knowledge that Plaintiff Korpacz and Plaintiff Storm have certain existing business relationships, were in the mist of negotiating certain contractual relationships, and/or contemplating certain business relations of economic benefit to both Plaintiff Korpacz and Plaintiff Storm as they had done so for the past four years.

4. Defendants, by means of their malicious and intentional conduct, have interfered with prospective business relations of Plaintiffs with at least with the following: the WPFL, WPFL Promotions, LLC, current WPFL Teams and Team owners, future WPFL Teams and Team owners, current WPFL Teams and Team owners that Plaintiff Korpacz was and should be negotiating with in her capacity as a Founding Member to restructure the WPFL, Plaintiff Storm's 2003 professional football players, potential players of plaintiff Storm's

25

2004 team, potential sponsors for the Plaintiff Storm both past and present, potential employees of the Plaintiff Storm both past and present, potential customers of the Plaintiff Storm both past and present, New England Patriots, the National Football League, Mt. Auburn Hospital, Boston Red Sox, PAX TV, Fox Sports Network.

5. On information and belief, certain businesses have refrained from doing business with Plaintiff Storm based at least in part upon the aforementioned activities of the Defendants.

6. Plaintiffs have been damaged by Defendants' tortuous interference with Plaintiffs' advantageous business relations, and will continue to be irreparably damaged by Defendants' conduct unless and until the Court enjoins Defendants from engaging in such conduct.

## COUNT IV
## TORTUOUS INTERFERENCE WITH A
## CONTRACTUAL RELATIONSHIP

### (All Defendants)

1. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1-146 above.

2. Defendants had complete knowledge that Plaintiff Korpacz and her team, Plaintiff Storm, had existing contracts with the WPFL and WPFL Promotions, Plaintiff Storm employees, players, vendors, and various other third parties and companies.

3. With full knowledge of Plaintiffs' contracts, in an attempt to induce third parties to break their existing contracts with Plaintiff Korpacz and Plaintiff Storm and WPFL Promotions, Defendants have used and continue to use their improper, malicious methods and intentional means to interfere with such contracts and induce contracting entities and individuals to breach such contracts.

26

4. As a direct result of Defendants' intentional and malicious inducement of third parties to break their contractual business relationship(s) with Plaintiffs, Plaintiffs have suffered and continue to suffer damages.

5. Plaintiffs will continue to be irreparably damaged by Defendants' conduct unless and until the Court enjoins Defendants from engaging in such conduct.

## COUNT V
## CONVERSION

### (All Defendants)

1. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1-146 above.

2. By virtue of the foregoing and their positions in the WPFL, Defendants have seized and exercised unlawful control over the WPFL bank accounts, without right, and have wrongfully used and transferred money from those accounts for their own personal use and gain, including using said money to defend this action.

3. Defendant' have allowed Vessey to unlawfully convert money being held in WPFL Promotions belonging to Plaintiff Korpacz personally.

4. As a direct result of Defendants' conduct, Plaintiffs have been significantly harmed in an amount no less than $1,300,000.00, and other amounts to be proven at trial.

## COUNT VI
## DEFAMATION

### (All Defendants)

1. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1-146 above.

2. Defendants release of Plaintiff Korpacz' Article VIII charges imputing that Plaintiff Korpacz committed crimes of stealing and/or credit card fraud from other sister teams has the effect of holding Plaintiffs up to scorn, hatred, ridicule and contempt, in the minds of the segment of the community in which Plaintiffs regularly do business.

27

3. Defendants' defamatory statements were maliciously and intentional made and used against Plaintiff Korpacz and have ultimately harmed Plaintiff Korpacz in her profession by insinuating an imputed unfitness for and misconduct in Plaintiff Korpacz' capacity as a team owner.

4. Defendants' malicious and defamatory statements regarding Plaintiff Korpacz and her team, Plaintiff Storm, have caused Plaintiffs' to be exposed to hatred, contempt and ridicule of the public, thus resulting in actual damage and injury to their reputation.

5. As a direct result of Defendants' conduct, Plaintiffs have been significantly harmed in an amount no less than $1,300,000.00, and other amounts to be proven at trial.

## COUNT VII
## UNFAIR AND DECEPTIVE BUSINESS PRACTICES CHAPTER 93A Section 11
### (All Defendants)

1. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1-146 above.

2. Plaintiffs are engaged in trade or commerce in the Commonwealth of Massachusetts.

3. Defendants are engaged in trade or commerce in the Commonwealth of Massachusetts and across the United States.

4. By virtue of the foregoing actions, Defendants have continuously and systematically engaged in a pattern of ongoing unfair and deceptive business practices with respect to Plaintiff Korpacz and Plaintiff Storm. Defendants' to date continue to engage in such conduct.

5. Defendants' aforementioned conduct constitutes unfair and deceptive acts or practices in violation of Mass. G.L. c. 93A.

6. Defendant committed these unfair and deceptive acts or practices willfully and knowingly.

7. As a direct result of Defendant's violation of Mass. G.L. c. 93A, Plaintiffs have been significantly harmed in an amount no less than $1,300,000.00, and other amounts to be proven at trial.

**WHEREFORE, Plaintiffs demand that the Court:**

1. Enter a judgment against Defendants on Counts 1 through VII of this Amended Complaint and award damages to Plaintiff Korpacz and Plaintiff Storm in an amount of $1,300,000.00 or an amount to be determined at trial;

2. Hold all Defendants jointly and severally liable for the above damages;

3. Order Defendants to pay treble damages, costs and attorneys' fees to Plaintiffs pursuant to M.G.L. c. 93A, §§2, 11;

4. Order the immediate attachment of all Defendants' bank accounts until this matter is resolved in a full trial on the merits;

5. Order that the audiocassette that was utilized to tape the March 2004 Arizona Owners meeting be preserved as evidence for this proceeding;

6. Order the immediate removal of Plaintiffs' Notice of Expulsion on front page of WPFL Web Site;

7. Order an immediate Notice of Retraction of the expulsions equal in size to the expulsion notice, on the front page of the WPFL web site;

8. Order Defendants to cease and desist from using the name WPFL and any of Plaintiff Korpacz' intellectual property or proprietary information without Plaintiff Korpacz' consent;

9. Order Defendants to cease in their attempts to negotiate and/or the restructure the WPFL without the participation of Plaintiffs;

10. Order Defendants to cease and desist from continuing to operate and/or conduct business as the WPFL Board of Directors without the participation of Plaintiffs;

11. Enjoin Defendants from entering into or signing any team or individual contracts with the WPFL without the express written consent of the Plaintiff Korpacz.

12. Order Defendants to cease their attempts to prevent the Plaintiff Storm from participating in the 2004 WPFL Season;

13. Order Defendants to cease their attempts to exclude Plaintiff Korpacz from all Board Meetings and Voting matters until this matter is resolved in a full trial on the merits;

14. Enjoin Defendants from playing football, under the auspices of "WPFL", "Women's Professional Football League" or *any* other name in the United States;

15. Enjoin Defendants from engaging in any business relationships with any/all of the persons and entities named in this Amended Complaint including but not limited to the playing of each other in WPFL sponsored football games.

16. Enter such further relief, as the Court deems just and equitable.

17. Plaintiff requests a jury trial on all of the aforementioned counts.

Dated: May 27, 2004

_____
Melissa A. Korpacz. - Pro Se
P.O. Box 808 Medford, MA  02155
781-866-9700 (phone)
781-393-0665 (fax)


Plaintiff New England Storm, LLC
By its Attorneys,

_____
Thomas C. O'Konski BBO# 377475
Kevin Gannon BBO# 640931
Cesari and McKenna, LLP
88 Black Falcon Avenue
Boston, MA  02210
617-951-2500 (phone)
617-951-3927 (fax)

30

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for each other party by facsimile and first class mail on May 27, 2004:

Brian D. Gross
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110

Carlton D. Wilde, Jr.
FRANKLIN, CALDWELL & JONES, PC
1001 McKinney, 18th Floor
Houston, TX 77002

*[signature]*