Clerk's Office
USDC, Mass.
Date 6-30-04
By _____
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO: 04-10735-RWZ

MELISSA A. KORPACZ, JD and )
NEW ENGLAND STORM, LLC )
    Plaintiffs, )
 )
v. )
 )
WOMEN'S PROFESSIONAL FOOTBALL LEAGUE )
("WPFL"), et al )
    Defendants. )

ORIGINAL

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO TRANSFER VENUE

    Now comes the Plaintiffs Melissa A. Korpacz ("Korpacz") and New England

Storm, LLC ("Storm") (hereinafter collectively "Plaintiffs") and respectfully submit this

Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue to the

Southern District of Texas. Defendants' Motion to Transfer is merit less and should be

denied.

## BACKGROUND[1]

    This case arises from the egregious, brazen conduct of the Defendant WPFL,

which is now being represented by former Defendant Associate Teams, affiliated with the

WPFL whose contracts officially expired in December 2003 and have no authority to act

on behalf of the league. Upon information and belief and based on evidence and

witnesses who have recently come forward, Defendants colluded as early as September

---

[1] Plaintiffs incorporate by reference herein the facts set forth in their Amended Complaint.

2003 to expel Plaintiff Korpacz and Plaintiff Storm from the WPFL to benefit their own hidden agendas. (*See Exhibit A - Declaration of Dawn Sisler, Former Co-Owner of the Defendant Indiana Speed to be originally submitted in support of Plaintiffs' Motion for Reconsideration for and Emergency TRO.*)

While Defendants would like this Court believe that this is simply a case of a disgruntled team owner who received proper notice and was then properly expelled from the WPFL, they could not be more misleading. Defendants contend this case begins on February 23, 2004 with the "proper notification" of Plaintiffs of their Article VIII Hearing. (*See Defendant's Opposition to Plaintiffs' Renewed Request For Emergency Temporary Restraining Order, p. 4)*[2] But that is simply not the case. Plaintiffs' Amended Complaint[3] sets out the dispute between the parties began significantly prior to Plaintiffs' expulsion and Defendants unlawful ongoing pattern of abuse, collusion, and improper and unfair business practices actions began as early as 2003 and are the basis of this complaint.[4]

Since Plaintiffs filed their Amended Complaint, Defendants have issued their 2004 schedule without the Plaintiff Storm on it and have virtually suffocated the Plaintiffs' business and acted in a cavalier manner in doing so. Moreover, recently, Vessey on behalf of Defendants has also expelled another Founding Member[5] and has continued to proceed with a restructure. Ironically, it was Ms. Kennamer along with

---

[2] Defendant's Opposition to Plaintiffs' Renewed Request For Emergency Temporary Restraining Order was submitted on May 27, 2004.

[3] Plaintiffs Amended Complaint includes seven causes of action against the Defendants

[4] It is Plaintiffs' contention that their expulsion was carried out to accomplish a hidden agenda of the Defendant Associate Teams to restructure the WPFL over the objections of Founding Members and Member Teams thereof, so that the Defendant Associate Teams would be granted the same/equal recognition and monetary rewards as the Member Teams regardless of longevity or the extent of their investment in the league.

[5] Dee Kennamer is a co-Founding Member of the WPFL and is the co-owner of the Austin Rage. Ms. Vessey expelled the Austin Rage in June 2004.

Plaintiff Korpacz who were the two Founding Members most outspoken and in disagreement with Commissioner Vessey's failure to apply the WPFL Bylaws equally to all, including Plaintiffs, and her attempt to restructure and take over the WPFL.

After exhausting all of the remedies available to her through the WPFL Bylaws, Plaintiffs are left with no alternative but to proceed with this lawsuit in order to restore their business reputations, as well as to begin to repair the damage that has been done to the WPFL and secure the future of the league.[6] However, based upon the devastation and hardship Defendants have caused Plaintiff Korpacz and Plaintiff Storm, granting Defendants' Motion to Transfer will in essence amount to a dismissal of Plaintiffs' case against the Defendants, because Plaintiffs do not have the financial means to fight this case in Texas.

## ARGUMENT

### I. Defective Motion.

Defendants' Motion to Transfer should first and foremost be denied because Defendants failed to comply with the Local Rules 7.1 in filing. Specifically, the Motion is defective on its face and warrants denial because Defendants' counsel failed to confer with Plaintiffs or their counsel of record to attempt to resolve or narrow the issues. Defendants also failed to certify that such a conference occurred as required by Local Rule 7.1. However, if the Court is inclined to consider Defendant's Motion to Transfer, the Court should the deny the Motion for the reasons set forth below.

**I.** The Defendants' argument that venue in Massachusetts is inconvenient and this lawsuit should be transferred to the Southern District of Texas is wholly without

---

[6] Since Plaintiff Korpacz' and fellow Founding Member Dee Kennamer's unlawful expulsions the number of WPFL teams has decreased. This has not happened in the 3 years of the WPFL being under the control and structure of the Founding Members.

3

merit. While ultimately the decision to transfer a case under § 1404(a) rests within the sound discretion of the court, the burden of proof for transfer of venue lies with the Moving party. Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 719 (1st Cir 1996), cert. denied 520 U.S. 1155 (1997); Hasbro v. Clue Computing, Inc., 994 F. Supp. 34 (D. Mass. 1997). The First Circuit in Nowak held that a plaintiff should not be deprived of the advantage of his own jurisdiction except under a clear showing of facts which either "(1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the courts own administrative or legal problems." Nowak, 94 F.3d at 720, quoting Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947). In this case, Massachusetts is Plaintiffs home venue, Massachusetts has a strong connection to this case, Plaintiffs' injuries were caused and felt in Massachusetts and it is neither oppressive nor vexing to Defendants to have the case proceed in this District.


A. **The Factors Relevant to a § 1404(a) Transfer Do Not Favor Texas.**

In making its determination as to whether or not to transfer an action pursuant to § 1404, the Court must balance several factors, while bearing in mind the fact that a plaintiff's choice of forum is entitled to "great weight." Home Owners Funding Corp. of America v. Centry Bank, 695 F.Supp. 1343, 1347 (D. Mass. 1988); Tool Co. v. Oakbrook Int'l, Inc., 56 F.Supp.2d 134, 141 (D. Mass. 1999). The Defendants here simply cannot meet their burden to justify a transfer pursuant to § 1404(a).


4

It is well settled that in determining whether an action should be transferred under § 1404(a), a court must examine factors which fall into two groups: (1) those relating to the convenience of the litigants, and (2) those relating to the public and private interest in the fair and efficient administration of justice. International Software Sys., Inc. v. Amplicon, Inc., 77 F.3d 112,115 (5th Cir. 1996); Gulf Oil Corp v. Gilbert, 330 U.S. 501, 508-09 (1947). Additionally, it is important to remind the Court that under the applicable venue statute, a plaintiff is entitled to choose the forum and is not obligated to file an action in the most convenient forum, only in a proper forum. See Sussman v. Bank of Israel, 56 F.3d 450, 457 (2d Cir. 1995).

Nevertheless, to rebut Defendants' representations made to the Court; Plaintiffs below have summarized the convenience factors relevant to this Motion to include the following: (1) the weight accorded to the Plaintiffs' choice of forum; (2) the convenience of the parties material witnesses and the cost of obtaining attendance of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the place of the wrong; (5) the possibility of delay and prejudice if transfer is granted; (6)the relative means of the parties; and (7) the location of counsel. See Atari v. United Parcel Service, Inc., 211 F.Supp.2d 360, 362 (D. Mass. 2002); Anadigics, Inc. v. Raytheon, Co., 903 F.Supp. 615, 617 (S.D. NY 1995).

The public interest factors relevant to this Motion include: (1) local interest in adjudicating the dispute; (2) the avoidance of unnecessary problems in conflict of laws; (3) time, cost and ease in which the trial can be conducted, and all other practical considerations relative to trial. See Robertson v. Kiamichi Railroad Co., LLC, 42

F.Supp.2d 651, 655 (E.D. Tex. 1999); <u>Reed v. Fina Oil and Chemical Co.</u>, 995 F.Supp. 705, 714 (E.D. Tex. 1998).

### B. **The Convenience Factors Relevant to Venue Clearly Favors Massachusetts**.

### 1. **The Weight Accorded to the Plaintiffs' Choice of Forum**

It is well settled that a Plaintiff's choice of forum is entitled to "great weight," <u>Hasbro</u>, 994 F. Supp. at 46. Moreover, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255 (1981); <u>Northern Light Technology v. Northern Lights Club</u>, 97 F. Supp. 2d. 96 (D. Mass. 2000). As a result, a defendant must make a "strong showing that their choice of forum is superior." <u>Hasbro</u>, 994 F. Supp. at 46-47. In this case, Defendants have failed to make a strong and convincing showing demonstrating that in the interest of justice the "great weight" given to plaintiff's choice of forum should be disregarded and have utterly failed to meet their burden on their Motion to Change Venue.

### 2. **The Convenience of the Parties, Material Witnesses and the Cost of Obtaining Attendance of Witnesses in Massachusetts.**

Defendants attempt to mislead this Court into believing that since two of the three Founding Members reside in Houston, this case should be transferred to Texas. The truth of the matter is that Ms. Vessey has also unlawfully expelled the second Founding Member, Dee Kennamer from the WPFL. In addition, Ms. Kennamer has agreed to

travel to Massachusetts. *(See Exhibit B - Declaration of Dee Kennamer, Co-Founding Member and Former Executive Officer of the WPFL)*

In addition, Plaintiffs are informed and believe that the other Founding Member, Robin Howington has sold her team. Ms. Howington was the owner of Defendant Houston Energy and is the only WPFL executive located in Houston. If Ms. Howington sold Defendant Houston Energy, then per the WPFL Bylaws, Ms. Howington is longer able to have access to the confidential league documents that were kept at her place of business, which was also a "front" for the "WPFL office." Alternatively, if Ms. Howington did not sell her team and she is still on the executive board serving as the Treasurer of the WPFL, Plaintiffs contend that she is the only person located in Houston, Texas that would be called as a "key witness" as Ms. Kennamer will be here in Massachusetts testifying on behalf of Plaintiffs. All other executive officers are from other states and would have to travel regardless. *See Exhibit C - WPFL Website Contact Page as of June 30, 2004 – Omitting Mentioning Robin Howington as Holder of Any Executive Office.*

A major factor that Defendants failed to inform the Court of is that all of the members of the WPFL Executive Board are scattered across the United States. The reality is that according to the administration page on the WPFL website, none of the WPFL Executive Board members, who may be called to testify as a witness, resides in Houston. *See Exhibit D – WPFL Website Administration Page, Which specifically lists each Executive Officer and the City and States they are from.* The administration page lists where each Executive Officer of the WPFL resides. Id. This page does not identify Ms. Howington as being an Executive Officer. Moreover, according to this WPFL

website, there are no executive officers listed as residing in Houston, Texas at all. None of the executive officers are from the same state. The administration page identifies all the WPFL executive officers are from New York, Arizona, Chicago, San Diego and Dallas. So WPFL's alleged "key witnesses" will have to travel regardless whether the forum for this lawsuit is Texas or Massachusetts.

It is well settled that the party seeking the transfer bears the burden of showing which witnesses will be called and what their testimony will be. See Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991) (a party seeking transfer must "specify the key witnesses to be called accompanied by a general statement as to what their testimony will entail". Here, Defendants fail to identify or even mention the "key witnesses" and/or documents that are allegedly located in Texas. They simply assert that one of the Texas witnesses, Ms. Kennamer is a co-founder and former executive officer of the WPFL. Defendants fail to inform the Court that they have not even communicated Ms. Kennamer. If Defendants had spoken to Ms. Kennamer, they would have learned that Ms. Vessey has recently expelled Ms. Kennamer from the WPFL. Moreover, Ms. Kennamer has agreed to travel to Massachusetts to testify in this case. *See Exhibit B – Declaration of Dee Kennamer, Co-Founding Member and Former Executive Officer of the WPFL.*

Defendants have not identified a single witness who would suffer a special or unusual burden if this case were to continue in Massachusetts. In fact, Defendants have made no showing whatsoever of any such special or unusual burden and their vague reference in their Motion to the "Texas parties and inconvenience of witnesses" without any other detailed explanation cannot satisfy any special or unusual burden or

circumstance warranting the transfer of this case to Texas. Digital, 960 F. Supp. at 471;
Northern Light, 97 F. Supp. 2d at 107; Hasbro, 994 F. Supp. at 46-47 ("Burden in
maintaining a business while litigating this action should be tempered by modern means
of communication that allow a party to litigate in one state while remaining for the
majority of the time in his own state").

On the other hand, Plaintiffs' witnesses will include several of the players from
the 2003 New England Storm team, the officials from the 2003 season, the staff of the
2003 season, and other witnesses to dispute Vessey's and the WPFL Board's allegations
and to testify about the impact of the ongoing misconduct of Defendants unleashed on
Plaintiffs. The vast majority of these witnesses are residents of Rhode Island and
Massachusetts. Additional witnesses are likely to be drawn from those individuals who
have come forward to assist Plaintiffs' with their case and offer evidence to support
Plaintiffs suit. Moreover, some of these witnesses have already agreed to come to
Massachusetts. *See Exhibit E – Declaration of Natalie Gorman, Former Co-Owner of
Southern California Scorpions; See Exhibit F – Declaration of Rufino Uribe, Owner of
the Arizona Knighthawks, and Former Member Team of the WPFL.* Again, without
question, a transfer to Texas will not lessen any inheritable inconvenience because
Defendants as well as their witnesses will have to travel either way. Accordingly, the
convenience of the parties' factor weighs in favor of maintaining the dispute in
Massachusetts.

3. **The Location of Relevant Documents and Relative Ease of Access to Sources of
   Proof**

Each of the separate Defendant teams' documents are under their own custody
and control and are accessible where each defendant team resides, not in Texas. The

9

Defendants allege that the WPFL conducted and/or conducts the actions, which result in the suspension or expulsion of a team from its principal place of business at 5631 Dorbrant Street, Houston, Texas. *See Defendants' Motion to Transfer at p. 4.* This contention is completely false.

Ms. Vessey as the Commissioner of the WPFL is the only person with the authority to issue a suspension. Additionally, to date, any and all documents relating to a team's suspension or expulsion have been generated from where Ms. Vessey resides in Chicago, Illinois and not from Houston, Texas. *See Exhibit G – Austin Rage's Envelope and Notice of Termination/Expulsion Postmarked from Chicago, Illinois, which have generated from Ms. Vessey; Exhibit H – Envelope and Correspondences to Arizona Knighthawks Regarding Notice of Suspension Postmarked from Chicago, Illinois, which have generated from Ms. Vessey.* Moreover, Plaintiffs are informed and believe neither that Ms. Vessey, nor any of the other team owners with the exception of the Founding Members and Beth Markell[7] has ever been to the WPFL office. The WPFL office is simply a room in an industrial setting with a desk containing a phone and a computer on it, nothing more. With the exception of a few Founding Member meetings, there have never been any WPFL meetings held there. Contrary to Defendant's contention, the documents, which relate to or are related to the suspension or expulsion of the Plaintiffs or any other team were generated in Chicago, Illinois where Ms. Vessey resides.

Plaintiffs have sound reason for filing this suit in Massachusetts because jurisdiction and venue are proper here and as noted earlier, Plaintiffs' witnesses, documents and other materials pertinent to the issues raised in Plaintiffs' Amended Complaint are also located in or in close proximity to Massachusetts. Plaintiff Storm is a

---

[7] Beth Markell is the Co-Owner of the Defendant Syracuse Sting.

Women's Professional Football Team with a lifetime license from the WPFL for the

territory of Massachusetts. Plaintiff Korpacz is a Massachusetts resident. Plaintiff Storm

maintains documents related to the WPFL at its headquarters in Massachusetts. These

documents include documents relating to the development of the WPFL and

correspondence including emails between the Founding Members and fellow WPFL

Team owners, former Commissioner Vessey and others. Moreover, per the WPFL

Bylaws Article VI Section 1, the Secretary of the WPFL, is to "perform such duties as (a)

maintenance of the records of the WPFL…". Upon information and belief, Charlene

Daniels of Indiana is still the Secretary of the WPFL. Accordingly, WPFL documents

should rightfully be in Indiana. *See Exhibit I - WPFL Bylaws Article VI Section 1(a)*.

With respect to the documents relating to the disputed trademarks and copyrights

misappropriated by Defendants, witnesses from Plaintiffs' advertising agencies are

located in Boston, Massachusetts and Plaintiffs' logo and trademark that were created for

the WPFL are easily accessible, as the person who created resides in Minneapolis, MN.

4. **The Place of the Wrong**

Once again, viewing the facts alleged in Defendants' Motion to Transfer, the

Defendants are attempting to mislead this Court when they argue that the bulk of the

wrongdoings of the Defendants occurred in Texas. In fact, as stated previously, the

primary offender that carried out the Board's actions was Commissioner Vessey prior to

her termination by the majority Member Teams on March 2, 2004. Vessey works and

resides in Chicago, Illinois and as noted previously, Ms. Vessey has never even been to

the WPFL Office. Vessey is the party who issued all of the unlawful and improper

directives against Plaintiffs beginning in June of 2003. Although former Executive

11

Director Robin Howington resides in Texas and as Ms. Vessey claims, Ms. Howington may have initiated the allegations against Plaintiffs, the ultimate unlawful directives and violations of the Bylaws against Plaintiffs did not occur in Texas. In fact Vessey issued most of her "findings and rulings" via email or regular mail from Chicago, Illinois.

Simply because there is a "WPFL office" in Houston does not mean that is where the wrongful conduct occurred. Plaintiffs have asserted that from each of their respective states, Defendants have violated Plaintiffs' rights and/or breached Plaintiffs' contract with the WPFL, and ultimately caused harm to Plaintiffs here in Massachusetts, including: Beth Markell from New York as Executive Director, Jennifer Cada from Arizona as Associate Executive Director, Lisa Vessey from Chicago as Commissioner, Charlene Daniels from Indiana as Secretary, Robin Howington from Houston as Former Executive Director and Treasure, Dawn Berndt from Dallas as Director of Team Expansion, and the individual teams from Southern California, Los Angeles, Dallas, Arizona, Indiana, Missouri, New York, Delaware, and Minnesota. Clearly, Defendants have failed to satisfy their burden with respect to showing that the place of the wrongful conduct was "only" or even "primarily" in Houston.

### 5. **The Possibility of Delay and Prejudice if Transfer is Granted**

While Defendants argue that administratively there would be no delay in the length of time for the cases to be heard in either jurisdiction, the reality is that transferring this case would cause Plaintiffs to have to start anew. Additionally, Defendants have already started to treat this litigation in a cavalier manner. For example, Counsel for the Defendants has refused to schedule a 26(f) conference despite the repeated requests of Plaintiff Korpacz.

Plaintiff Korpacz first verbally requested the 26(f) conference from Attorney Brian D. Gross on June 7, 2004. Mr. Gross indicated that he would return Plaintiff Korpacz' call after conferring with Texas counsel. He has yet to do so. On June 9, 2004, Plaintiff Korpacz sent a correspondence to Carlton Wilde of Franklin, Cardwell and Jones in Houston, Texas to follow up her conversation with Attorney Gross and again requested a 26(f) conference. Plaintiff Korpacz received no response. On June 16, 2004 Plaintiff Korpacz sent another correspondence to Attorney Wilde yet again requesting a 26(f) conference. In this correspondence Plaintiff Korpacz gave Attorney Wilde a direct telephone number she could be reached. Additionally both correspondences were sent via fax as time was of the essence.

Defense counsel finally responded to Plaintiffs request on June 27, 2004, when Plaintiff Korpacz received a correspondence dated June 17, 2004 via regular mail from Attorney Wilde. In this correspondence, Defense counsel refused to set a date with plaintiffs for a 26(f) conference and instead offered to have the conference 4 weeks from the date in which they indicated they sent the correspondence. Regardless, this clearly shows the dilatory tactics used by defendants as it has to date now been one month since Plaintiffs first requested for a 26(f) conference. *See Exhibit J – Correspondence to Defendant's Attorney requesting 26(f) Conference and Response.*

### 6. **The Relative Means of the Parties.**

WPFL is a league with 14 teams and portrays itself to have vast resources, while Plaintiff Storm is a small company with far less resources and will suffer a greater financial burden if it is forced to litigate this dispute in Texas. Furthermore, Defendants have lead Plaintiffs and this Court to believe they have the ability to litigate in

13

Massachusetts and have not indicated otherwise. It was Defendants who indicated that

Plaintiffs could be made whole by monetary payments.

On the other hand, in light of the fact that Plaintiffs were not able to play this

season and given the fact that Defendants have released the 2004 schedule without

Plaintiff Storm on it, Defendants have practically left Plaintiff Korpacz indigent. Plaintiff

Korpacz is a pro se litigant who has lost her business, all source of income and as a result,

has recently lost her apartment. In essence, they have taken away her livelihood and find

no remorse in that. At present all of Plaintiff Korpacz' assets are tied up in the WPFL

and upon information and belief the Defendants are spending any/all funds that can be

used to satisfy judgment to defend this lawsuit. Additionally, because Plaintiff Korpacz

gave up a prospective law career after graduating from law school in 1999 and invested

all of her time and money into the WPFL and the New England Storm, she currently has

no source of income.

7. **The Location of Counsel**

The most important factor that should be considered is that Plaintiffs will loose their

pro bono counsel if this Court should grant Defendants' Motion to Transfer. Plaintiffs'

pro bono counsel is Cesari and McKenna, LLP located in Boston, Massachusetts. A

transfer will cause Plaintiffs to loose the benefit of their representation. Massachusetts is

also a place of considerable convenience for Plaintiff Korpacz as she has access to the

offices of Cesari and McKenna, LLP in order to assist her with this lawsuit. This will

also likely cease if the case should be transferred.

14

8. **Overall The Convenience Factors Weighs Heavily in Favor of Plaintiffs**

The "convenience" factors weigh heavily in favor of this Court denying Defendants' Motion to Transfer Venue to Texas. Massachusetts is where Plaintiffs' documents are located, where many of its likely witnesses reside and where its pro bono counsel is located. Massachusetts has a strong interest in protecting companies who chose to conduct business here. Further, it is neither oppressive nor vexing to the WPFL to have the case proceed in this District. The WPFL is a company that actively markets its league in Massachusetts. Requiring the WPFL to come to Massachusetts to litigate this case would not be an overwhelming burden. Defendants' unsupported allegations that it would be inconvenient for them to litigate in Massachusetts are insufficient by themselves to overcome the facts demonstrating Plaintiffs' clear convenience and interest in litigating this action in Massachusetts.

C. **The Public Interest Factors Relevant to Venue, Favor Massachusetts**.

1. **Local Interest In The Subject Matter**

Defendants' argument regarding local interest in misapplied. Specifically, there is a strong local interest in resolving this dispute in Massachusetts where Plaintiff Storm has its principal place of business, Plaintiff Korpacz resides and where the injury to them was and is felt.

As a matter of policy, all Defendants should not be allowed to cause injury to the Plaintiffs as they did here in Massachusetts and throughout the United States and be insulated from suit except in Defendant WPFL's own home state. If the injury did not occur in Massachusetts or Defendants did not conduct business in Massachusetts, the

15

outcome may be different. However, Defendants have caused injury, and are continuing

to cause injury, in Massachusetts. Thus this factor also weighs in favor of Plaintiffs.

### 2. **Familiarity With The Governing Law**

Defendants' contention that this case should be transferred to Texas because the

Texas Court would be "at home" with the governing law is a flawed argument. The

choice of law provision in the contract between Plaintiffs and Defendant WPFL is

completely silent and Defendants have cited no authority for their contention that Texas

law applies. Even if Texas law does apply to certain aspects of this case, this Court has

the ability to understand and apply the law where and to the extent necessary.

### CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Honorable

Court deny Defendants' Motion to Transfer.

Respectfully submitted,
Plaintiff Melissa Korpacz

Dated: June 30, 2004

Melissa A. Korpacz. - Pro Se
P.O. Box 808 Medford, MA 02155
781-866-9700 (phone)


Plaintiff New England Storm, LLC
By its Attorneys,

Thomas C. O'Konski BBO# 377475
Kevin Gannon BBO# 640931
Cesari and McKenna, LLP
88 Black Falcon Avenue
Boston, MA 02210
617-951-2500 (phone)
617-951-3927 (fax)

16

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for each other party by facsimile and first class mail on June 30, 2004:

Brian D. Gross
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA  02110

Carlton D. Wilde, Jr.
FRANKLIN, CALDWELL & JONES, PC
1001 McKinney, 18th Floor
Houston, TX 77002