UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MELISSA A. KORPACZ and )
NEW ENGLAND STORM, LLC, )
)
        Plaintiffs, )
)
    v. )        Civil Action
)        No. 04-10735-RWZ
WOMEN'S PROFESSIONAL FOOTBALL LEAGUE )
et al., )
)
        Defendants. )
_____ )
WOMEN'S PROFESSIONAL FOOTBALL LEAGUE, )
LONG BEACH AFTERSHOCK, )
THEE TOLEDO REIGN, )
DELAWARE GRIFFINS, )
SYRACUSE STING, )
HOUSTON ENERGY, )
ARIZONA CALIENTE, )
INDIANA SPEED, )
MISSOURI AVENGERS, )
MINNESOTA VIXEN, )
DALLAS DIAMONDS, )
NEW YORK DAZZLES, )
LOS ANGELES AMAZONS, )
SOCAL SCORPIONS, )
)
        Counter-plaintiffs, )
)
    v. )
)
MELISSA A. KORPACZ and )
NEW ENGLAND STORM, LLC, )
)
        Counter-defendants. )
_____ )

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND JURY DEMAND

        Defendants Women's Professional Football League (the "WPFL"),

Long Beach Aftershock, Thee Toledo Reign, Delaware Griffins, Syracuse

Sting, Houston Energy, Arizona Caliente, Indiana Speed, Missouri

Avengers, Minnesota Vixen, Dallas Diamonds, New York Dazzles, Los

Angeles Amazons and SoCal Scorpions, by their undersigned attorneys,
state the following in response to plaintiffs' Amended Complaint:

### PARTIES

1.    Defendants lack information sufficient to admit or deny the
allegations in paragraph 1.

2.    Defendants lack information sufficient to admit or deny
plaintiff Korpacz's  allegations regarding her residency or ownership
of plaintiff New England Storm, LLC ("Storm").  Defendants deny that
plaintiff Korpacz or plaintiff Storm hold a lifetime Member License
Agreement or other contract with the WPFL.  Defendants lack
information sufficient to admit or deny plaintiff Korpacz's
allegations regarding her position within the entity calling itself
"WPFL Promotions, LLC."  Defendants lack information sufficient to
admit or deny plaintiff Korpacz's allegations regarding her position
within the entity calling itself the "WPFL Irrevocable Trust."
Defendants deny that plaintiff Korpacz has any standing within the
WPFL by virtue of the incorporation documents filed on behalf of the
WPFL.

3.    Defendants admit that the WPFL is a Texas non-profit
corporation.  Answering further, defendants state that the WPFL has
been recognized by the Internal Revenue Service as a tax-exempt
organization under Section 501(c)(6) of the Internal Revenue Code.
Defendants admit that the WPFL's principal place of business is
currently located at 5631 Dorbrandt Street in Houston, Texas.

4.    Defendants admit that the Long Beach Aftershock women's professional football team is a California corporation with a place of business located at 1827 Ximeno Avenue in Long Beach, California.

5.    Defendants admit that Thee Toledo Reign women's professional football team is an Ohio limited liability company with a place of business located in Elmore, Ohio.

6.    Defendants admit that the Delaware Griffins women's professional football team is a Delaware corporation with a place of business located at 2731 Duncan Road in Wilmington, Delaware.

7.    Defendants lack information sufficient to admit or deny the allegation that the Dayton Rebellion is currently an operating entity. Answering further, defendants state that the Dayton Rebellion women's professional football Team withdrew from the WPFL on or before May 1, 2004. Defendants lack information sufficient to admit or deny plaintiffs' allegations regarding the Dayton Rebellion's current form of organization or its current place of business. Defendants admit that the Dayton Rebellion women's professional football team formerly maintained a place of business in Xenia, Ohio.

8.    Defendants admit that the Syracuse Sting women's professional football team is a New York corporation with a place of business located at 407 N. Wolcott in Syracuse, New York.

9.    Defendants lack information sufficient to admit or deny the allegations regarding the Houston Energy's current form of organization or place of business in that a proposed change in ownership is still in progress. Defendants admit that the entity which formerly operated the Houston Energy women's professional

3

football team was a Texas corporation with a place of business located at 5631 Dorbrandt Street in Houston, Texas.

10.   Defendants admit that the Arizona Caliente women's professional football team is an Arizona corporation with a place of business located at 15261 N. 61st Drive in Glendale, Arizona.

11.   Defendants admit that the Indiana Speed women's professional football team is an Indiana limited liability company with a place of business located at 212 W. 10th Street in Indianapolis, Indiana.

12.   Defendants admit that the Missouri Avengers women's professional football team is a Missouri limited liability company with a place of business located at 2847 S. Weaver Avenue in Springfield, Missouri.

13.   Defendants admit that the Minnesota Vixen women's professional football team is a Minnesota corporation with a place of business located in St. Paul, Minnesota.

14.   Defendants admit that the Dallas Diamonds women's professional football team is a Texas limited liability company with a place of business located at 232 Belmont Street in Hurst, Texas.

15.   Defendants admit that the New York Dazzles women's professional football team is a New York limited liability company with a place of business located at 10 Eastland Avenue in Rochester, New York.

16.   Defendants admit that the Los Angeles Amazons women's professional football team is a California corporation with a place of business located at 1992 Juanita Avenue

4

in Pasadena, California.

17.   Defendants admit that the SoCal Scorpions women's
professional football team is a California limited liability company
with a place of business located in San Diego, California.

### Jurisdiction and Venue

18.   Defendants deny the allegations in paragraph 18.

19.   Defendants deny the allegations in paragraph 19.

### Facts Applicable To All Counts

20.   Defendants lack information sufficient to admit or deny
plaintiffs' allegations regarding events that took place in 2001
before the WPFL was in existence.  Defendants deny that plaintiff
Korpacz or any other person or entity can legally "own" the WPFL or
receive any capital distributions from it because the WPFL is a tax-
exempt non-profit corporation.  Answering further, defendants state
that plaintiff Korpacz and the other two "founders" of the WPFL
breached their fiduciary duties as officers and directors of the WPFL
by pursuing unlawful private inurement without disclosing prohibited
conflicts of interest and without obtaining the informed consent of a
majority of disinterested WPFL directors.  Defendants lack information
sufficient to admit or deny plaintiffs' allegations regarding the
history of any predecessor organization that may have operated under
the name "Women's Professional Football League" or "WPFL."

21.   Defendants lack information sufficient to admit or deny
plaintiffs' allegations regarding the actions of the three "founders"
with respect to the creation of separate entities.  Defendants admit
that the WPFL is a Texas non-profit corporation organized in 2002 but

deny that plaintiffs have accurately described the WPFL's purposes and authority.  Defendants lack information sufficient to admit or deny plaintiffs' allegations regarding the entity calling itself the "WPFL Trust."  Defendants deny that the entity calling itself "WPFL Promotions" has any legal contract, irrevocable or otherwise, with the WPFL or its constituent teams.

22.   Defendants lack information sufficient to admit or deny plaintiffs' allegations regarding the entity calling itself the "WPFL Trust."  Defendants deny the remaining allegations in paragraph 22.

23.   Defendants lack information sufficient to admit or deny plaintiffs' allegations regarding the terms of the so-called "Founding Member Team License Agreements."  Defendants deny that plaintiff Storm or any other team or person was ever granted "lifetime membership in the WPFL."  Answering further, defendants state that plaintiff Korpacz and the other two "founders" of the WPFL breached their fiduciary duties as officers and directors of the WPFL by pursuing unlawful private inurement without disclosing prohibited conflicts of interest and without obtaining the informed consent of a majority of disinterested WPFL directors.

24.   Defendants are unable to admit or deny plaintiffs' allegations regarding the "appointment" of plaintiff Korpacz as Executive Director of the WPFL because the allegation is vague as to the time period in question.  Defendants deny the remaining allegations in paragraph 24.  Answering further, defendants state that plaintiff Korpacz damaged the reputation of the WPFL and caused the WPFL to lose valuable business opportunities by failing to maintain

reasonable standards of personal behavior in her dealings with potential sponsors and vendors.

25.    Defendants lack information sufficient to admit or deny plaintiffs' allegations regarding events that took place in 2001 before the WPFL was in existence.

26.    Defendants deny the allegations in paragraph 26.  Answering further, defendants state that the materials contained in the so-called "WPFL Binder" belong to the WPFL and were fairly used by the WPFL and its constituent teams at all relevant times.

27.    Defendants lack information sufficient to admit or deny the allegations in paragraph 27.

28.    Defendants deny the allegations in paragraph 28.

29.    Defendants deny the allegations in paragraph 29.

30.    Defendants lack information sufficient to admit or deny plaintiffs' allegations regarding the work done by the firm of Hill, Holiday.  Defendants deny the remaining allegations in paragraph 30.

31.    Defendants lack information sufficient to admit or deny plaintiffs' allegations regarding events that took place in 2001 before the WPFL was in existence.

32.    Defendants lack information sufficient to admit or deny plaintiffs' allegations regarding events that took place on January 17, 2002.

33.    Defendants lack information sufficient to admit or deny plaintiffs' allegations regarding events that took place on March 8, 2002.  Defendants deny that any document signed by plaintiff Korpacz and the two other "founders" in March 2002 is still in effect or

avails said parties of any rights or privileges with respect to the WPFL.

34.   Defendants admit that plaintiff Storm failed to appear for a scheduled game but deny that plaintiffs were without fault. Answering further, defendants state that plaintiff Storm's forfeit constituted grounds for suspension or expulsion under WPFL Bylaws, and in addition, required plaintiffs to pay an automatic fine of $10,000. Defendants deny the remaining allegations in paragraph 34.

35.   Defendants deny the allegations in paragraph 35.

36.   Defendants deny the allegations in paragraph 36.

37.   Defendants admit that the WPFL board ordered plaintiffs to pay a $10,000 fine but deny the remaining allegations in paragraph 37.

38.   Defendants admit the allegations in paragraph 38.

39.   Defendants deny the allegations in paragraph 39.   Answering further, defendants state that plaintiffs violated WPFL rules and breached contractual and legal obligations owed to the WPFL and its constituent teams, which acts required that discipline be imposed.

40.   Defendants deny the allegations in paragraph 40.

41.   Defendants admit that plaintiffs paid compensation to the Syracuse Sting but deny that the payment was in accordance with WPFL directives.

42.   Defendants deny the allegations in paragraph 42.

43.   Defendants deny the allegations in paragraph 43.

44.   Defendants state that the former and current WPFL Bylaws contain additional provisions that define or relate to good standing. Defendants therefore deny the allegations in paragraph 44.

8

45.   Defendants deny the allegations in paragraph 45.

46.   Defendants admit that plaintiff Korpacz sent an e-mail on May 23, 2003, but deny the remaining allegations in paragraph 46.

47.   Defendants admit that plaintiff Storm's suspension was not lifted but deny the remaining allegations in paragraph 47.

48.   Defendants deny the allegations in paragraph 48.

49.   Defendants admit that plaintiffs were in violation of several WPFL Bylaws as of June 3, 2003 and ineligible for reinstatement to good standing.  Defendants deny the remaining allegations in paragraph 49.

50.   Defendants deny the allegations in paragraph 50.

51.   Defendants admit that a telephone conference took place on or about June 4, 2003 which included plaintiff Korpacz, Dee Kennamer, Lisa Vessey and Erich Kennedy.

52.   Defendants admit that conditions for plaintiff Storm's reinstatement were discussed but deny that plaintiffs have accurately described those conditions.  Defendants deny the remaining allegations in paragraph 52.

53.   Defendants admit that Dee Kennamer told plaintiff Korpacz that the WPFL would not allow plaintiff Storm to play during the 2003 season if the conditions for reinstatement were not satisfied promptly.  Defendants deny the remaining allegations in paragraph 53.

54.   Defendants deny the allegations in paragraph 54.

55.   Defendants deny the allegations in paragraph 55.

56.   Defendants deny the allegations in paragraph 56.

57.    Defendants lack information sufficient to admit or deny plaintiff Korpacz's allegations regarding her state of mind on or about June 5, 2003.  Defendants deny that plaintiffs complied with all conditions required for reinstatement.  Answering further, defendants state that plaintiff Korpacz concealed her failure to pay arrears owed to the City of Medford which conduct constituted grounds for suspension or expulsion under WPFL Bylaws.

58.    Defendants deny that plaintiffs have accurately stated the ruling issued by the Commissioner.  Defendants deny the remaining allegations in paragraph 58.

59.    Defendants admit that plaintiffs were not notified of the details of the suspension within one week.  Answering further, defendants state that the WPFL did not have a suspension policy in place at the time of plaintiffs' violations; however, plaintiffs were notified in writing of the terms of suspension as soon as the policy was approved.

60.    Defendants deny the allegations in paragraph 60.

61.    Defendants admit that the Executive Director of the WPFL requested a limited exception to the terms of suspension, which exception was granted.  Defendants admit that plaintiff Korpacz was forbidden to speak to the press during the period of suspension except as authorized in the Official Notice of suspension.

62.    Defendants deny the allegations in paragraph 62.

63.    Defendants deny the allegations in paragraph 63.

64.    Defendants deny the allegations in paragraph 64.  Answering further, defendants state that plaintiff Korpacz concealed her

violations of the terms of suspension, which conduct constituted grounds for an additional suspension or expulsion under WPFL Bylaws.

65.    Defendants deny the allegations in paragraph 65.

66.    Defendants admit that a meeting of the WPFL board began on November 9, 2003 and was adjourned on November 10, 2003.

67.    Defendants deny the allegations in paragraph 67.

68.    Defendants deny the allegations in paragraph 68.

69.    Defendants deny the allegations in paragraph 69.

70.    Defendants admit the allegations in paragraph 70.

71.    Defendants deny the allegations in paragraph 71.

72.    [Plaintiffs omitted paragraph 72.]

73.    Defendants admit that a committee of the board prepared a report but deny that the committee's "proposed restructure" served the best interests of the WPFL or was compliant with the WPFL's tax-exempt status.  Defendants lack information sufficient to admit or deny plaintiffs' allegation that the committee's proposal was based on the structure of the National Football League.

74.    Defendants deny the allegations in paragraph 74.

75.    Defendants deny the allegations in paragraph 75.

76.    Defendants are informed and believe that Dee Kennamer entered the WPFL Office without permission and may have tampered with evidence that is relevant to this cause.  Defendants deny the remaining allegations in paragraph 76.

77.    Defendants deny the allegations in paragraph 77.

78.   Defendants admit that the Commissioner notified the WPFL
board in writing on January 22, 2004 that the license agreement of the
Florida Stingrays was suspended pursuant to WPFL Bylaws.

79.   Defendants admit that the Florida Stingrays had violated
the WPFL's policies and procedures and were under threat of discipline
at the time the team was preparing to play in the 2003 Championship
Game.  Answering further, defendants state that it was agreed that no
disciplinary action would be taken against the Florida Stingrays until
after the Championship Game in order to avoid negative publicity that
might be detrimental to the WPFL.  Defendants deny the remaining
allegations in paragraph 79.

80.   Defendants deny the allegations in paragraph 80.

81.   Defendants admit that the Commissioner notified the WPFL
board in writing on January 22, 2004 that a fine had been imposed
against the Florida Stingrays.  Defendants deny the remaining
allegations in paragraph 81.

82.   Defendants deny that any defamatory statements were ever
issued by the Commissioner or any other WPFL officer.  Answering
further, defendants state that only WPFL board members and officers
were privy to the Commissioner's ruling.  Defendants deny the
remaining allegations in paragraph 82.

83.   Defendants deny the allegations in paragraph 83.

84.   Defendants deny that any defamatory statements were ever
issued by the Commissioner or any other WPFL officer.  Defendants
admit that plaintiff Korpacz, Dee Kennamer and Robin Howington were
called upon to explain their apparent self-dealing and other

questionable actions and omissions that occurred while they were serving as officers and directors of the WPFL. Answering further, defendants state that only WPFL board members and officers were privy to the Commissioner's January 22, 2004 Notice.

85.    Defendants admit that on January 22, 2004, the Commissioner issued a written ruling regarding a grievance submitted by the Northern Ice football team.  Defendants deny that the ruling contained any defamatory statements.  Answering further, defendants state that only WPFL board members and officers were privy to the Commissioner's ruling.

86.    Defendants admit that plaintiff Korpacz filed one or more grievances against the Commissioner but deny the remaining allegations in paragraph 86.

87.    Defendants deny the allegations in paragraph 87.

88.    Defendants admit that the Commissioner, pursuant to Article V, Section 4(a) of the WPFL Bylaws, notified board members of the commencement of an investigation relating to allegations that plaintiff Korpacz had covertly violated the terms of her July 2003 suspension.

89.    Defendants admit that a Storm player had come forward to testify against plaintiff Korpacz.  Answering further, defendants state that the player was excused from testifying because certain board members provided clear and convincing first-hand evidence to sustain the finding that plaintiff Korpacz had violated the terms of her July 2003 suspension.

90.    Defendants admit that plaintiff Korpacz demanded
information but deny the allegations in paragraph 90.

91.    Defendants admit that the Commissioner imposed a $200 fine
against plaintiff Storm for failing to deliver merchandise or a refund
to a website customer after charging the customer's credit card, and
for failing to respond to communications from the customer regarding
the unfilled order.  Defendants admit that plaintiff Korpacz appealed
the fine.  Answering further, defendants state that plaintiff's appeal
was rejected by the WPFL board.

92.    Defendants admit the allegations in paragraph 92.

93.    Defendants admit that plaintiffs have quoted a portion of
the Commissioner's Report of Investigation.  Answering further,
defendants state that plaintiffs have omitted certain other statements
in the Report that are necessary in order to convey the true substance
of the Report.  Specifically, plaintiffs omit the following two
sentences:  "If aggrieved parties are not willing at this time to
substantiate their claims that [plaintiff Korpacz] presents an
unacceptable business risk to the League, then they should be barred
from making such allegations in the future.  Fundamental fairness
requires the board to determine once and for all whether Missi Korpacz
and the New England Storm should be suspended or expelled so that, if
[plaintiff Korpacz] is vindicated, she and the Team can move forward
and fulfill their contractual obligations without fear that stale
grievances will be renewed during the 2004 season."

94.    Defendants admit that the Commissioner required all complaints against plaintiffs to be presented by a specific date. Defendants deny the remaining allegations in paragraph 94.

95.    Defendants admit that plaintiffs have quoted a portion of the Commissioner's Report of Investigation.  Answering further, defendants state that plaintiffs have omitted certain other material statements that are necessary in order to convey the true substance of the Report.

96.    Defendants deny the allegations in paragraph 96.

97.    Defendants deny the allegations in paragraph 97.

98.    Defendants deny the allegations in paragraph 98.  Answering further, defendants state that the WPFL board found plaintiff Korpacz guilty of violating the terms of her July 2003 suspension at the hearing that took place on March 6, 2004.

99.    Defendants admit that several WPFL board members, owners and employees filed charges against plaintiff Korpacz and plaintiff Storm, which charges and specifications were forwarded to plaintiffs in accordance with WPFL Bylaws.  Defendants deny the remaining allegations in paragraph 99.

100.    Defendants deny the allegations in paragraph 100.

101.    Defendants deny the allegations in paragraph 101.

102.    Defendants admit that the Medford, Massachusetts City Attorney reported to the Commissioner that plaintiff Storm had failed to pay rent for games played during the 2002 and 2003 seasons and was in arrears to the City in an amount in excess of $8,000.  Answering further, defendants state that the City Attorney also reported that

plaintiff Korpacz had issued checks to the City on more than one
occasion which were returned due to insufficient funds.

103. Defendants lack information sufficient to admit or deny
plaintiffs' allegations regarding any agreement with the Mayor of
Medford. Defendants admit that the City of Medford formed a stadium
commission which was authorized to approve leases for the facility
previously rented by plaintiff Storm. Answering further, defendants
state that the Medford City Attorney reported that the stadium
commission had declined to offer a lease to plaintiff Storm for the
2004 season due to non-payment of rent, among other reasons.

104. Defendants admit that the Commissioner issued a second set
of charges based on the Medford City Attorney's report that plaintiff
Storm was in arrears to the City of Medford in an amount in excess of
$8,000. Answering further, defendants state that WPFL Bylaws
authorize suspension or expulsion of any team which fails or refuses
to fulfill its contractual obligations to any third party in such a
way as to adversely affect the WPFL. Defendants deny the remaining
allegations in paragraph 104.

105. Defendants admit that the Commissioner suspended plaintiff
Storm until a hearing could be convened. Defendants deny the
remaining allegations in paragraph 105.

106. Defendants admit that plaintiffs were given the required
notice of a special meeting of the board that was called to hear and
rule on the charges dated February 23, 2004. Answering further,
defendants state that plaintiffs waived notice with respect to the
second set of charges dated February 24, 2004. Defendants

affirmatively state that plaintiff Korpacz agreed in writing "that the [second set of] charges may be heard at 9:00 a.m., on March 6, 2004, as part of the Article VIII proceedings commenced on February 23, 2004."

107. Defendants deny that the quoted sentence was contained in any notice to plaintiffs regarding the Article VIII charges brought against them. Answering further, defendants state that the quoted sentence appears in a letter from the Commissioner to the Executive Director and the WPFL board regarding the status of the Austin Rage football team.

108. Defendants admit that plaintiff Korpacz inquired about the attorneys hired by the WPFL but deny the remaining allegations in paragraph 108.

109. Defendants admit that a meeting was held via conference call to discuss the status of the Austin Rage. Defendants also admit that the WPFL board did not allow plaintiff Korpacz to attend the meeting due to the suspension that was imposed on February 24, 2004.

110. Defendants admit that the WPFL board ruled that the Austin Rage football team had violated WPFL Bylaws, and that the WPFL board ordered the Austin Rage to pay damages and a fine totaling $15,000 on or before May 1, 2004. Defendants deny the remaining allegations in paragraph 110.

111. Defendants admit that plaintiffs were suspended on February 24, 2004. Defendants deny that plaintiffs have stated the complete terms of the suspension.

112. Defendants deny the allegations in paragraph 112.

113.  Defendants deny the allegations in paragraph 113.

114.  Defendants lack information sufficient to admit or deny plaintiffs' allegations regarding discussions that took place at a meeting that was not authorized by WPFL Bylaws or attended by a quorum of WPFL board members.  Defendants deny that the Commissioner was terminated by the WPFL board.

115.  Defendants deny that the Commissioner was terminated by the WPFL board.  Answering further, defendants admit that plaintiff Korpacz was informed that Robert's Rules would be enforced at the special WPFL board meeting in accordance with WPFL Bylaws.  Defendants deny the remaining allegations in paragraph 115.

116.  Defendants admit the allegations in paragraph 116. Answering further, defendants state that plaintiffs have omitted other material statements contained in the Commissioner's correspondence.

117.  Defendants are unable to admit or deny plaintiffs' allegations regarding the Commissioner's "non-vested" status as that term is unintelligible.  Defendants admit that the Commissioner has not invested any money in the WPFL or any of its teams.  Answering further, defendants state that no person or entity can lawfully "own" the WPFL or receive capital distributions from it because the WPFL is a tax-exempt organization.  Defendants additionally state that the WPFL Bylaws prohibit the Commissioner from having any ownership interest in any WPFL team.

118.  Defendants admit that the Executive Director of the WPFL obtained unanimous consent to proceed with the Article VIII hearing

against plaintiffs before the start of the board's semi-annual
meeting.  Defendants deny the remaining allegations in paragraph 118.

118[sic].  [Plaintiffs have misnumbered this paragraph.]
Defendants admit that directors and alternate directors who were
authorized to attend WPFL board meetings were present at the March 6,
2004 special meeting and at the regular semi-annual meeting that
followed.

119.  Defendants admit that a chapter of Robert's Rules was
copied and distributed to board members at the special meeting on
March 6, 2004, and that a confidentiality agreement was presented for
signature.  Answering further, defendants state that duplicate copies
of the charges against plaintiffs also were on the table.

120.  Defendants admit that then-director Rufino Uribe initially
attempted to claim the floor and was ruled out of order in accordance
with Robert's Rules.  Answering further, defendants state that Mr.
Uribe was given the floor in due course, and that Mr. Uribe declined
to present any motion regarding the Commissioner's continuing
authority.  Defendants deny the remaining allegations in paragraph
120.

121.  Defendants admit that the Commissioner ruled that Mr. Uribe
was out of order and that the Commissioner continued to preside over
the meeting with the consent of the WPFL board.  Defendants deny the
remaining allegations in paragraph 121.

122.  Defendants deny the allegations in paragraph 122.
Answering further, defendants state that all teams in attendance at
the March 6, 2004 board meeting were under contract with the WPFL.

123. Defendants admit that plaintiff Korpacz disagreed with the language set forth in the Confidentiality Agreement that was approved by WPFL board members.  Defendants deny the remaining allegations in paragraph 123.

124. Defendants deny the allegations in paragraph 124.

125. Defendants admit that the WPFL board approved the Confidentiality Agreement as drafted.  Defendants deny the remaining allegations in paragraph 125.

126. Defendants admit that plaintiff Korpacz did not sign the Confidentiality Agreement but deny the remaining allegations in paragraph 126.

127. Defendants admit that plaintiffs were under suspension and, therefore, were not allowed to vote until the board ruled on the pending Article VIII charges against plaintiffs.  Defendants deny the remaining allegations in paragraph 127.

128. Defendants admit that the WPFL board commenced a hearing on the Article VIII charges against plaintiffs pursuant to proper notice and in accordance with WPFL Bylaws.

129. Defendants admit that the Article VIII hearing was conducted in accordance with Robert's Rules and WPFL Bylaws, which call upon charged parties to admit or deny guilt.

130. Defendants admit that the Article VIII hearing was conducted in accordance with Robert's Rules and WPFL Bylaws. Defendants deny the remaining allegations in paragraph 130.

131. Defendants admit that plaintiffs were found guilty on almost all of the 29 charges dated February 23, 2004. Defendants deny the remaining allegations in paragraph 131.

132. Defendants deny the allegations in paragraph 132.

133. Defendants deny the allegations in paragraph 133.

134. Defendants deny the allegations in paragraph 134.

135. Defendants deny the allegations in paragraph 135.

136. Defendants admit the allegations in paragraph 136.

137. Defendants deny the allegations in paragraph 137.

138. Defendants lack information sufficient to admit or deny the allegations regarding plaintiff Korpacz's travel on or about March 8, 2004. Defendants admit that a notice of expulsion was posted on the WPFL's website in accordance with a WPFL board resolution adopted on March 6, 2004. Defendants deny the remaining allegations in paragraph 138.

139. Defendants lack information sufficient to admit or deny the allegations in paragraph 139.

140. Defendants admit the allegations in paragraph 140.

141. Defendants deny the allegations in paragraph 141.

142. Defendants deny the allegations in paragraph 142.

143. Defendants admit that a directive was issued which prohibited board members from having any contacts with plaintiffs without the prior knowledge and consent of the Executive Director or the Commissioner. Defendants deny the remaining allegations in paragraph 143.

144. Defendants admit that a set of proposed resolutions was submitted to WPFL board members by the Executive Director on March 22, 2004. Defendants deny the remaining allegations in paragraph 144.

145. Defendants deny the allegations in paragraph 145.

146. Defendants deny the allegations in paragraph 146.

### COUNT I

1.    Defendants incorporate herein by reference their answers to paragraphs 1 through 146 above as though fully set forth in this paragraph 1 of Count I.

2.    Defendants deny that plaintiff Korpacz is the originator or owner of the WPFL name and trade mark, or any other intellectual property relating to the WPFL. Defendants lack knowledge sufficient to admit or deny the allegations regarding the origination and ownership of intellectual property relating to plaintiff Storm.

3.    Defendants deny the allegations in paragraph 3 of Count I.

4.    Defendants deny the allegations in paragraph 4 of Count I.

5.    Defendants deny the allegations in paragraph 5 of Count I.

6.    Defendants deny the allegations in paragraph 6 of Count I.

7.    Defendants deny the allegations in paragraph 7 of Count I.

### COUNT II

1.    Defendants incorporate herein by reference their answers to paragraphs 1 through 146 above as though fully set forth in this paragraph 1 of Count II.

2.    Defendants deny the allegations in paragraph 2 of Count II.

3.    Defendants deny the allegations in paragraph 3 of Count II.

4.    Defendants deny the allegations in paragraph 4 of Count II.

5.    Defendants deny the allegations in paragraph 5 of Count II.

6.    Defendants deny the allegations in paragraph 6 of Count II.

7.    Defendants deny the allegations in paragraph 7 of Count II.

8.    Defendants deny the allegations in paragraph 8 of Count II.

9.    Defendants deny the allegations in paragraph 9 of Count II.

10.    Defendants deny the allegations in paragraph 10 of Count II.

11.    Defendants deny the allegations in paragraph 11 of Count II.

12.    Defendants deny the allegations in paragraph 12 of Count II.

13.    Defendants deny the allegations in paragraph 13 of Count II.

## COUNT III

1.    Defendants incorporate herein by reference their answers to paragraphs 1 through 146 above as though fully set forth in this paragraph 1 of Count III.

2.    Defendants deny the allegations in paragraph 2 of Count III.

3.    Defendants deny the allegations in paragraph 3 of Count III.

4.    Defendants deny the allegations in paragraph 4 of Count III.

5.    Defendants deny the allegations in paragraph 5 of Count III.

6.    Defendants deny the allegations in paragraph 6 of Count III.

## COUNT IV

1.    Defendants incorporate herein by reference their answers to paragraphs 1 through 146 above as though fully set forth in this paragraph 1 of Count IV.

2.    Defendants deny the allegations in paragraph 2 of Count IV.

3.    Defendants deny the allegations in paragraph 3 of Count IV.

4.    Defendants deny the allegations in paragraph 4 of Count IV.

5.    Defendants deny the allegations in paragraph 5 of Count IV.

## COUNT V

1.    Defendants incorporate herein by reference their answers to paragraphs 1 through 146 above as though fully set forth in this paragraph 1 of Count V.

2.    Defendants deny the allegations in paragraph 2 of Count V.

3.    Defendants deny the allegations in paragraph 3 of Count V.

4.    Defendants deny the allegations in paragraph 4 of Count V.

## COUNT VI

1.    Defendants incorporate herein by reference their answers to paragraphs 1 through 146 above as though fully set forth in this paragraph 1 of Count VI.

2.    Defendants deny the allegations in paragraph 2 of Count VI.

3.    Defendants deny the allegations in paragraph 3 of Count VI.

4.    Defendants deny the allegations in paragraph 4 of Count VI.

5.    Defendants deny the allegations in paragraph 5 of Count VI.

## COUNT VII

1.    Defendants incorporate herein by reference their answers to paragraphs 1 through 146 above as though fully set forth in this paragraph 1 of Count VII.

2.    Defendants lack information sufficient to admit or deny the allegations in paragraph 2 of Count VII.

3.    Defendants deny that all of them are engaged in trade or commerce in the Commonwealth of Massachusetts.    Defendants admit that they are engaged in trade or commerce elsewhere in the United States.

4.    Defendants deny the allegations in paragraph 4 of Count VII.

5.    Defendants deny the allegations in paragraph 5 of Count VII.

6.    Defendants deny the allegations in paragraph 6 of Count VII.

7.    Defendants deny the allegations in paragraph 7 of Count VII.

## Defendants' Affirmative Defenses

### FIRST DEFENSE

Defendants deny each and every material allegation of the complaint except as specifically admitted.

### SECOND DEFENSE

Defendants deny that the plaintiffs are entitled to the damages claimed or to the relief demanded.

### THIRD DEFENSE

Defendants state that the causes of action in plaintiffs'

complaint did not accrue nor were brought within the time limited by
statute for commencement of such actions.

### FOURTH DEFENSE

Defendants state that the Court lacks subject matter jurisdiction
over the causes of action alleged in plaintiffs' complaint pursuant to
applicable statutes.

### FIFTH DEFENSE

Defendants state that the plaintiffs' complaint fails to state a
cause of action upon which relief can be granted.

### SIXTH DEFENSE

Defendants state the plaintiffs have failed to join a party or
parties necessary for a just adjudication of this matter and have
further omitted to state any reasons for such failure.

### SEVENTH DEFENSE

Defendants state that the plaintiffs willingly, knowingly, and
voluntarily assumed the risk of the alleged damages for which relief
is sought in this matter.

### EIGHTH DEFENSE

Defendants state that the plaintiffs' claims against this
defendant are barred because the damages or losses experienced, if
any, were not due to any act or failure to act of this defendant, but
were caused solely by the acts of a third-party or parties for whose
acts or failure to act this defendant is not responsible.

### NINTH DEFENSE

Defendants state that the plaintiffs are guilty of contributory
negligence, comparative negligence and/or assumption of the risk and

that damages, if any, recovered by the plaintiffs from this defendant
should be reduced in proportion to the said fault of the plaintiffs.

**TENTH DEFENSE**

Defendants state Plaintiffs lack standing to bring the causes of
action detailed in their Amended Complaint.

**ELEVENTH DEFENSE**

Defendants state that the plaintiffs' claims are barred by
estoppel or waiver.

**TWELFTH DEFENSE**

Defendants state that the plaintiffs have failed to mitigate
damages and the plaintiffs are therefore, barred from recovery.

**THIRTEENTH DEFENSE**

Defendants state that all alleged statements made by Defendants
were truthful and privileged.

**FOURTEENTH DEFENSE**

Defendants state that the plaintiffs are guilty of laches in
bringing this action and are therefore barred from recovery.

**FIFTEENTH DEFENSE**

Defendants state that process and/or service of process was
insufficient.

**SIXTEENTH DEFENSE**

Defendants state that the Amended Complaint fails to comply with
Fed. R. Civ. P. 9(b) in failing to set forth with particularity the
fraud alleged.

## SEVENTEENTH DEFENSE

Defendants state that Plaintiffs' contract claims must fail because of a lack or failure of consideration.

WHEREFORE, defendants request that this Honorable Court:

A.    Dismiss plaintiffs' Counts I-VII with prejudice;

B.    Enter declaratory judgment in favor of the WPFL declaring that the WPFL and its constituent teams acted lawfully at all relevant times;

C.    Enter final judgment against plaintiffs and in favor of Defendants, as the prevailing parties, in the amount of Defendants' reasonable court costs and attorney fees; and

D.    Award such other and further relief as the Court deems just and equitable.

## DEFENDANTS' COUNTERCLAIM AGAINST MELISSA A. KORPACZ AND NEW ENGLAND STORM, LLC

Defendants/Counter-plaintiffs Women's Professional Football League (the "WPFL"), Long Beach Aftershock, Thee Toledo Reign, Delaware Griffins, Syracuse Sting, Houston Energy, Arizona Caliente, Indiana Speed, Missouri Avengers, Minnesota Vixen, Dallas Diamonds, New York Dazzles, Los Angeles Amazons and SoCal Scorpions, by their undersigned attorneys, state the following as their counterclaim against Melissa A. Korpacz and New England Storm, LLC:

### Parties, Jurisdiction and Venue

1.    The Women's Professional Football League is a Texas non-profit corporation which has been recognized by the Internal Revenue Service as a tax-exempt organization under Section 501(c)(6) of the Internal Revenue Code.

2.    The Long Beach Aftershock women's professional football team is a California corporation with a place of business located at 1827 Ximeno Avenue in Long Beach, California.   The team is operating under a license agreement with the WPFL and is in good standing pursuant to WPFL Bylaws.

3.    Thee Toledo Reign women's professional football team is an Ohio limited liability company with a place of business located in Elmore, Ohio.   The team is operating under a license agreement with the WPFL and is in good standing pursuant to WPFL Bylaws.

4.    The Delaware Griffins women's professional football team is a Delaware corporation with a place of business located at 2731 Duncan Road in Wilmington, Delaware.   The team is operating under a license agreement with the WPFL and is in good standing pursuant to WPFL Bylaws.

5.    The Syracuse Sting women's professional football team is a New York corporation with a place of business located at 407 N. Wolcott in Syracuse, New York.   The team is operating under a license agreement with the WPFL and is in good standing pursuant to WPFL Bylaws.

6.    The Houston Energy women's professional football team is or was a Texas corporation with a place of business located at 5631 Dorbrandt Street in Houston, Texas.   The team is operating under a license agreement with the WPFL and is in good standing pursuant to WPFL Bylaws.

7.    The Arizona Caliente women's professional football team is
an Arizona corporation with a place of business located at 15261 N.
61st Drive in Glendale, Arizona.

8.    The Indiana Speed women's professional football team is an
Indiana limited liability company with a place of business located at
212 W. 10th Street in Indianapolis, Indiana.  The team is operating
under a license agreement with the WPFL and is in good standing
pursuant to WPFL Bylaws.

9.    The Missouri Avengers women's professional football team is
a Missouri limited liability company with a place of business located
at 2847 S. Weaver Avenue in Springfield, Missouri.  The team is
operating under a license agreement with the WPFL and is in good
standing pursuant to WPFL Bylaws.

10.    The Minnesota Vixen women's professional football team is a
Minnesota corporation with a place of business located in St. Paul,
Minnesota.  The team is operating under a license agreement with the
WPFL and is in good standing pursuant to WPFL Bylaws.

11.    The Dallas Diamonds women's professional football team is a
Texas limited liability company with a place of business located at
232 Belmont Street in Hurst, Texas.  The team is operating under a
license agreement with the WPFL and is in good standing pursuant to
WPFL Bylaws.

12.    The New York Dazzles women's professional football team is
a New York limited liability company with a place of business located
at 10 Eastland Avenue in Rochester, New York.  The team is operating

under a license agreement with the WPFL and is in good standing pursuant to WPFL Bylaws.

13.   The Los Angeles Amazons women's professional football team is a California corporation with a place of business located at 1992 Juanita Avenue in Pasadena, California.  The team is operating under a license agreement with the WPFL and is in good standing pursuant to WPFL Bylaws.

14.   The SoCal Scorpions women's professional football team is a California limited liability company with a place of business located in San Diego, California.  The team is operating under a license agreement with the WPFL and is in good standing pursuant to WPFL Bylaws.

15.   Counter-defendant Korpacz is a resident of Massachusetts. Counter-plaintiffs are informed and believe that counter-defendant New England Storm, LLC ("Storm") is or was doing business in Massachusetts.

16.   This Court has personal jurisdiction over counter-defendants Korpacz and Storm because they reside in this District or are doing business in this District.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

17.   This Court has subject matter jurisdiction over counter-plaintiffs' claims pursuant to 28 U.S.C. § 1332(a) because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

18.   This Court has supplemental jurisdiction over counter-plaintiffs' claims pursuant to 28 U.S.C. § 1367(a) because the claims

are related to the subject matter of the action that is within the
Court's original jurisdiction.

**COUNT I**

(On Behalf Of The WPFL Against Counter-Defendants)

19.   Counter-plaintiff WPFL incorporates herein by reference
paragraphs 1 through 18 above.

20.   Some time prior to February 7, 2002, a firm by the name of
Compass Design, Inc. created the artwork and design of the WPFL logo.

21.   The WPFL entered into a written contract with Compass
Design to purchase the intellectual property on February 7, 2002.

22.   The WPFL paid the sums required to purchase the
intellectual property, which was then permanently transferred to the
WPFL pursuant to the contract.

23.   The WPFL registered its trade name and mark with the United
States Patent and Trademark Office on or about February 3, 2003, under
Registration No. 2,683,763.

24.   The WPFL possesses the exclusive right to use and display
the WPFL trade name and mark.

25.   The WPFL has entered into contracts with each of its
constituent teams which continue in effect and provide, among other
things, that the WPFL will grant a license to each team permitting
certain authorized uses of the WPFL trade name and mark.

26.   Counter-defendants Melissa A. Korpacz and New England
Storm, LLC ("Storm") were expelled from the WPFL by the WPFL board on
March 6, 2004 in accordance with WPFL Bylaws.

27.   Upon being expelled, counter-defendant Storm's membership in the WPFL terminated immediately, and all rights and interests previously granted to counter-defendants Korpacz and Storm also terminated, including the right to use and display the WPFL's registered trade name and mark.

28.   Counter-defendants Korpacz and Storm continue to use and display the WPFL's protected trade name and mark without the consent of the WPFL.

29.   Counter-defendants Korpacz and Storm have failed or refused to cease and desist using or displaying the protected trade name and mark of the WPFL despite their knowledge that such use or displays are prohibited.   Counter-defendants Korpacz and Storm have asserted in this action and otherwise they intend to use and display the WPFL's protected name and mark without the WPFL's permission.

30.   Counter-defendants Korpacz and Storm no longer have any affiliation with the WPFL.   Counter-defendants' continued use or display of the WPFL's protected trade name and mark create a likelihood of confusion among WPFL sponsors, vendors, players and other interested members of the public, including WPFL fans.

31.   If counter-defendants are not enjoined from using or displaying the WPFL's protected trade name and mark, the WPFL's sponsors, vendors and fans are likely to associate counter-defendants with the WPFL to the detriment of the WPFL and its constituent teams.

32.   Damages that have been suffered or will be suffered by counter-defendants' unauthorized use or display of the WPFL trade name and mark are difficult to quantify because of the intangible nature of

the harm to the reputations of the WPFL and its constituent teams that has been or will be caused by the perception that counter-defendants are affiliated with the WPFL and its constituent teams.

WHEREFORE, counter-plaintiff WPFL requests that this Honorable Court:

A.    Enter final judgment in favor of the WPFL declaring that the WPFL possesses the exclusive right to use and display the WPFL trade name and mark;

B.    Enter final judgment permanently enjoining counter-defendants from using or displaying the WPFL trade name and mark without the express written consent of the WPFL;

C.    Enter final judgment against counter-defendants and in favor of counter-plaintiff WPFL, as the prevailing party, in the amount of counter-plaintiff's reasonable court costs and attorney fees; and

D.    Award such other and further relief as the Court deems just and equitable.

### COUNT II

(On Behalf Of All Counter-Plaintiffs Against Counter-Defendants)

33.    Counter-plaintiffs incorporate herein by reference paragraphs 1 through 18 above.

34.    Counter-defendant Storm entered into a contract with the WPFL which provided, among other things, that counter-defendant Storm would comply with WPFL Bylaws and the WPFL's established policies and procedures.

35.    Counter-defendants Korpacz and Storm committed at least 27
separate violations of the WPFL Bylaws and the League's policies and
procedures, which violations constitute grounds for expulsion from the
WPFL.

36.    Counter-defendants Korpacz and Storm were expelled from the
WPFL by the WPFL board on March 6, 2004 in accordance with WPFL
Bylaws.

37.    Certain provisions of the WPFL Bylaws continue to be
enforceable against counter-defendants despite counter-defendants'
expulsion from the WPFL.

38.    Article V, Section 9 of the WPFL Bylaws, which is
enforceable against counter-defendants in this action, provides as
follows:

"Except as otherwise provided in these Bylaws, the decision or
action in every matter is final, binding and conclusive and
without appeal with the WPFL.  In addition, any Team or agent or
employee of the WPFL, individually or in her or his official
capacity, or against the WPFL, any Team, or any Team employee,
director or officer, agrees to pay the attorney's fees and costs
of defending such action or proceeding if the person or Team who
brings the suit does not completely prevail in the suit or
proceeding."

39.    Counter-defendants have filed this action against counter-
plaintiffs in contravention of their contractual obligations to the
WPFL and its constituent teams.

40.    Counter-plaintiffs have incurred and will continue to incur
substantial expenses and attorney fees to defend counter-defendants'
unmeritorious action.

41.    Counter-plaintiffs are entitled to indemnification of their reasonable costs and attorney fees pursuant to counter-defendants' contract with the WPFL.

WHEREFORE, counter-plaintiffs request that this Honorable Court:

A.    Enter final judgment in favor of the WPFL declaring that the WPFL lawfully expelled plaintiffs;

B.    Enter final judgment in favor of the WPFL and its constituent teams and against counter-defendants in the amount of counter-plaintiffs' reasonable court costs and attorney fees; and

C.    Award such other and further relief as the Court deems just and equitable.

**COUNT III**

(On Behalf of All Counter-Plaintiffs Against Melissa A. Korpacz)

42.    Counter-plaintiffs incorporate herein by reference paragraphs 1 through 18 above.

43.    Counter-defendant Korpacz was an officer and director of the WPFL in or around January 2002 when the WPFL was organized as a Texas non-profit corporation.  Counter-defendant Korpacz was removed as an officer of the WPFL some time in 2002 but continued to serve as a director until she was expelled from the WPFL on March 6, 2004.

44.    While counter-defendant Korpacz was serving as an officer and director of the WPFL, counter-defendant Korpacz, along with two other individuals, Dee Kennamer and Robin Howington (hereinafter referred to as the "Founders"), developed a plan that was intended to enable them to pursue private inurement at the expense of the WPFL and its constituent teams.

45.   Counter-defendant Korpacz and the other two Founders, besides incorporating the WPFL as a non-profit corporation, also incorporated a for-profit entity, called "WPFL Promotions, LLC" ("Promotions") which is a Texas limited liability company.   The sole business purpose of the "Promotions" entity is to profit from marketing activities conducted on behalf of the WPFL.

46.   The Founders, including counter-defendant Korpacz, purported to adopt an "irrevocable" relationship with Promotions which called for the WPFL to transfer 60% or more of its operating funds and 100% of its sponsorship and broadcasting revenues to Promotions in perpetuity, without a contract, without demonstrating a clear benefit to the WPFL, and without obtaining or documenting the affirmative votes of a majority of disinterested directors.

47.   The Founders, including counter-defendant Korpacz, simultaneously granted themselves 750,000 units each in Promotions, although they were not required to pay any money to the WPFL or to Promotions in consideration of acquiring their units.

48.   The Founders, including counter-defendant Korpacz, additionally appointed themselves trustees of an entity called the "WPFL Irrevocable Trust."   Counter-plaintiffs are informed that the WPFL Irrevocable Trust exists or existed for the purpose of administering a block of ownership units in Promotions which the Founders intended to distribute to themselves and select WPFL teams.

49.   The Founders, including counter-defendant Korpacz, suppressed or concealed information concerning their activities from the other officers and directors of the WPFL.   For example, the

Founders concealed or failed to disclose that Dee Kennamer, who was
also acting as the WPFL's Certified Public Accountant ("CPA"), had
prepared an application for recognition of tax-exempt status with the
Internal Revenue Service.  Neither the Commissioner nor any directors
other than the Founders were informed that an application had been
submitted.

50.   Counter-plaintiffs are informed and believe that Dee
Kennamer, with the knowledge and consent of counter-defendant Korpacz,
made material misrepresentations in the application concerning the
remuneration that the Founders and select teams would be receiving
from the operations of the WPFL, or failed to disclose other material
facts that were necessary in order to make her other statements not
misleading.

51.   At the time the WPFL's application for tax-exempt status,
only two teams besides the Founders' teams were deemed eligible to
receive distributions from Promotions.  The majority of WPFL teams,
then called "Associate" Teams, produced the vast majority of the
WPFL's revenues, which consist of League dues, annual license fees and
fines.  Associate teams were not allowed to own any Promotions units
and they had no say in how revenues would be deployed or distributed.

52.   Despite repeated demands, the Founders, including counter-
defendant Korpacz, failed or refused to provide information and
documents which would demonstrate that the Founders were acting in the
best interests of the WPFL and had complied with applicable laws
concerning tax-exempt organizations.

53.    Counter-plaintiffs are informed and believe that Dee Kennamer lacked the knowledge and experience to prepare an application for recognition of tax-exempt status.  Counter-defendant Korpacz knew or should have known that Ms. Kennamer was not qualified to render expert advice regarding the organization of the WPFL and its relationship with Promotions.  Counter-defendant Korpacz did not disclose the relevant facts to the WPFL or other WPFL directors even though she had a duty to do so.

54.    The Founders, as beneficiaries of the arrangement they created, were operating under prohibited conflicts of interest.  Counter-defendant Korpacz knew or should have known that she and the other two Founders were violating their fiduciary duties to the WPFL by pursuing private inurement without full disclosure, and without taking reasonable steps to determine the legality of the arrangement they created, such as consulting an attorney or disinterested CPA.  Counter-defendant Korpacz did not disclose the relevant facts to the WPFL or other WPFL directors even though she had a duty to do so.

55.    On or about July 1, 2004, Dee Kennamer, with the knowledge and consent of counter-defendant Korpacz, made a demand that the WPFL transfer over 60% of its operating funds to Promotions, of which counter-defendant Korpacz and the other two Founders are the major beneficiaries.  Ms. Kennamer and counter-defendant Korpacz did not provide a contract, proposal or marketing plan that would tend to show any benefit to the WPFL from the proposed transaction.

56.    Counter-plaintiffs are informed and believe that the proposed transaction with Promotions offers little or no benefit to

the WPFL and its constituent teams, or in the alternative, is substantially less beneficial than other options which are not burdened by prohibited conflicts of interest or private inurement problems.

57.    The WPFL has been forced to hire counsel to evaluate the arrangement foisted upon the WPFL and its constituent teams by the Founders, including counter-defendant Korpacz.

58.    The WPFL has been informed that the Internal Revenue Service ("IRS") intends to audit the WPFL, at the WPFL's request, to determine whether the remuneration sought by the Founders, including counter-defendant Korpacz, amounts to unlawful private inurement. Counter-plaintiffs are informed and believe that additional attorney fees or accountant fees will necessarily be incurred in connection with the impending IRS examination.

WHEREFORE, counter-plaintiffs request that this Honorable Court:

A.    Enter declaratory judgment in favor of the WPFL and against counter-defendant Korpacz declaring that she breached her fiduciary duties;

B.    Enter final judgment against counter-defendant Korpacz in the amount of counter-plaintiffs' damages, including attorney fees, accountant fees and any IRS penalties, as proven at trial;

C.    Enter final judgment against counter-defendant Korpacz and in favor of counter-plaintiffs, as the prevailing parties, in the amount of counter-plaintiffs' reasonable court costs and attorney fees; and

D.    Award such other and further relief as the Court deems just
and equitable.

## COUNT IV

(On Behalf of All Counter-Plaintiffs Against Melissa A. Korpacz)

59.    Counter-plaintiffs incorporate herein by reference
paragraphs 1 through 18 above.

60.    Counter-defendant Korpacz was a director of the WPFL until
she was expelled from the WPFL on March 6, 2004.

61.    Counter-defendant Korpacz was an agent of the WPFL in her
capacity as an officer of the entity calling itself "WPFL Promotions."

62.    As a director and agent of the WPFL, counter-defendant
Korpacz was a fiduciary of the WPFL.

63.    Counter-defendant Korpacz, while acting as a director and
agent of the WPFL, failed to maintain acceptable standards of personal
behavior in her dealings with prospective sponsors, vendors, venues,
law enforcement officials, players and members of the public.

64.    Counter-defendant Korpacz's bad behavior included the use
of profanity and other discourteous or belligerent speech, physical
intimidation, as well as threats of legal action that were unjustified
and unauthorized by the WPFL.  Counter-plaintiffs are informed and
believe that counter-defendant Korpacz also misrepresented her
standing and authority within the WPFL.

65.    Counter-plaintiffs have been damaged by the actions of
counter-defendant Korpacz in that the reputation of the WPFL and its
constituent teams has been harmed.  Counter-plaintiffs are informed
and believe that but for counter-defendants' misconduct, the WPFL and

its constituent teams would have developed advantageous business relationships with certain vendors.  Such damages are hard to quantify because of the intangible nature of the harm.

WHEREFORE, counter-plaintiffs request that this Honorable Court:

A.    Enter declaratory judgment in favor of the WPFL and against counter-defendant Korpacz declaring that breached her fiduciary duties;

B.    Enter final judgment against counter-defendant Korpacz in the amount of counter-plaintiffs' damages as proven at trial;

C.    Enter final judgment against counter-defendant Korpacz and in favor of counter-plaintiffs, as the prevailing parties, in the amount of counter-plaintiffs' reasonable court costs and attorney fees;

D.    Enter final judgment permanently enjoining counter-defendant Korpacz from holding herself out as an agent of the WPFL;

E.    Enter final judgment permanently enjoining counter-defendant Korpacz from interfering with counter-plaintiffs' business and contractual relationships;

F.    Enter final judgment permanently enjoining counter-defendant Korpacz or her privies from ever seeking readmission into the WPFL;

G.    Enter final judgment against counter-defendant Korpacz and in favor of counter-plaintiffs, as the prevailing parties, in the amount of counter-plaintiffs' reasonable court costs and attorney fees; and

H.    Award such other and further relief as the Court deems just and equitable.

## JURY DEMAND

The Defendants and Counter-Plaintiffs demand a trial by jury on all issues so triable.

> The Defendants/Counter-Plaintiffs,
> By Their Attorneys,
>
> Brian D. Gross
> BBO No. 637718
> COOLEY MANION JONES LLP
> 21 Custom House Street
> Boston, MA  02110-3536
> (617) 737-3100
>
> and
>
> Carlton D. Wilde
> Pro Hac Vice
> FRANKLIN, CARDWELL & JONES
> 1001 McKinney, 18th Floor
> Houston, TX  77002

Dated:  August 26, 2004

## CERTIFICATE OF SERVICE

I, Brian D. Gross, attorney for the Defendants/Counter-Plaintiffs in the above-captioned action, hereby certify that I served a copy of the foregoing upon all counsel of record via first class mail, postage prepaid, on this 26th day of August, 2004.

Brian D. Gross