UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NEW ENGLAND STORM, LLC and<br>MELISSA KORPACZ, JD,<br><br>Plaintiffs,<br>5.<br><br>WOMEN'S PROFESSIONAL FOOTBALL<br>LEAGUE, et. al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Docket Number:<br>04-10735-RWZ |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRE-JUDGMENT ATTACHMENT

COME NOW Defendants/Counter-Plaintiffs Women's Professional Football League ("WPFL"), Long Beach Aftershock, The Toledo Reign, Delaware Griffins, Dayton Rebellion, Syracuse Sting, Houston Energy Football, Inc., Arizona Caliente, Indiana Speed, Missouri Avengers, Minnesota Vixen, Dallas Diamonds, New York Dazzles Football, Los Angeles Amazons, and Southern California Scorpions (collectively "Defendants"), and file this opposition to plaintiffs' motion for pre-judgment attachment. In support thereof, Defendants would respectfully show unto the Court as follows:

### I.
### SUMMARY OF ARGUMENT

Plaintiffs' motion for attachment should be denied for three reasons. First, attachment is a proceeding *in rem* and plaintiffs offer no evidence that Defendants own property in Massachusetts. Second, this filing marks the third time plaintiffs have attempted to obtain equitable relief on an emergency basis from this Court. Both previous efforts failed because plaintiffs could not demonstrate a likelihood of success on the merits. Because they offer nothing new in the current motion, this attempt should likewise fail. Finally, as the documents

plaintiffs attached to their motion now reveal, they have not suffered any damages as a consequence of Defendants' actions.

## II.
## ARGUMENT AND AUTHORITIES

A.  <u>There Is No Evidence That Defendants Own Property In Massachusetts</u>

Attachment has long been recognized as an *in rem* proceeding. *Cooper v. Reynolds*, 77 U.S. 308, 319 (1870). It is axiomatic that in a proceeding *in rem*, the *res* must be located within the jurisdiction of the court issuing the process. *See,* 6 Am. Jur 2d Attachment and Garnishment § 26. Consequently, property located outside the state cannot be attached. *Cox v. Central Vermont R. Co.*, 187 Mass. 596, 609 (1905); Shapiro, Perlin & Connors, 48 Mass. Practice, *Collection Law,* §4:17 (3rd Ed. 2000) (a plaintiff may attach only real or personal property of a foreign corporation which is located in Massachusetts); *Id.* at §5:18 (property located outside Massachusetts cannot be reached by trustee process).

Plaintiffs seek a pre-judgment attachment of "any and all Bank Accounts, Personal Property, Real Property, and Game Revenue" held by any of the 15 corporations named as Defendants in this case. Plaintiffs' Motion for Pre-Judgment Attachment ("Attachment Motion") at 1. They make no effort, however, to identify accounts, property, or other assets located within the Commonwealth of Massachusetts. That is because there are none. That is hardly surprising, as all 15 Defendants are foreign corporations and none has a principal place of business in Massachusetts. *See* Plaintiffs' Amended Complaint at ¶¶ 3–17. Consequently, plaintiffs' motion must fail because there is no property that is subject to attachment.

B.  <u>Plaintiffs Still Cannot Demonstrate A Likelihood Of Success On The Merits</u>

FED R. CIV. P. 64 governs the procedure for obtaining the pre-judgment remedies of

attachment and trustee process. In pertinent part it provides:

> all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought.

*Id.*

As such, Massachusetts law controls plaintiffs' attempt to attach Defendants' property. MASS. R. CIV. P. 4.1 and 4.2 articulate Massachusetts law controlling attachment and trustee process. Pursuant to that law, plaintiffs bear the burden of demonstrating, by a preponderance of the evidence, the necessary predicates for the attachments. *Aetna Casualty and Sur. Co. v. Rodco Autobody*, 138 F.R.D. 328, 323 (D. Mass. 1991). Courts in Massachusetts have long recognized that the "central question" when considering a motion for attachment--just as it is it when considering a request for a temporary restraining order--is whether plaintiffs are "likely to prevail on the merits." *Anderson Foreign Motors Corp. v. New England Toyota Distrib., Inc.*, 475 F. Supp. 973, 978 (D. Mass. 1979); *Boston Trading Group v. Carter*, 561 F.Supp 1175, 1176 (D. Mass. 1983) (Zobel, J.) (a showing of "reasonable likelihood of success on the merits" required for issuance of attachment or trustee process); *see also* MASS. R. CIV. P. 4.1(c) and 4.2(c) (no attachment unless Court finds there is a reasonable likelihood plaintiff will recover judgment).

On two previous occasions, Plaintiffs could not demonstrate a likelihood of success to this Court, and still they cannot. On May 13, 2004, plaintiffs sought an emergency temporary restraining order from this Court. That request was denied. On May 24, 2004, plaintiffs renewed their attempt to obtain a temporary restraining order. That request was similarly denied. In the order denying the second request, this Court advised plaintiffs that:

> [a]fter consideration of the parties' submissions, including affidavits,

3

> defendant's by-laws, charging documents, responses and minutes of the proceedings. *I am not persuaded that plaintiffs are likely to succeed on the merits*, nor is it clear that they will suffer irreparable harm. The motion is denied.

Order of June 1, 2004 (emphasis added).

In their memorandum in support of their motion for pre-judgment attachment, plaintiffs concede that "the Court, in denying [their] earlier requests for a TRO indicated that Plaintiffs had failed to show to its satisfaction a sufficient likelihood of success on the merits." Memorandum In Support of Plaintiffs' Motion for Pre-Judgment Attachment ("Attachment Memorandum") at 3. They suggest, however, that the discovery of "new witnesses and new evidence" justifies yet another reconsideration of this issue. Attachment Memorandum at 5. Plaintiffs then list five new "discoveries" they contend warrant reconsideration of this Court's prior rulings. A comparison of plaintiffs' prior allegations with its current "revelations" reveals that nothing new is being offered. The "new witnesses and new evidence" relate to two categories of claims. First, that the WPFL and Associate Teams have colluded to improperly expel plaintiffs from the league, and second, that plaintiffs' intellectual property and proprietary material is being improperly used.

This is not new evidence. It is simply a rehash of old claims. In their first motion for emergency temporary restraining order, plaintiffs made these same two claims. Specifically, that the WPFL and Associate Teams "[i]llegally colluded to and did so expel Plaintiff Korpacz and her Founding Team, the New England Storm from the WPFL to benefit their own hidden agendas[]" (First TRO Motion at 2); and "[k]nowingly and willfully violated Plaintiffs' copyrights, proprietary rights and various common law and state law rights." (First TRO Motion at 4).

4

Plaintiffs offer one "new" piece of evidence, the Affidavit of Dawn Sisler (Exhibit 19), to support their allegations concerning the Defendants' alleged collusion. That, however, is not new evidence, as it is the same exhibit originally attached as Exhibit A to plaintiffs' renewed request for temporary restraining order. It did not then, nor does it now shed any light on whether Defendants unlawfully expelled plaintiffs, and certainly does not demonstrate that plaintiffs will likely succeed on that claim.

Fifteen of the remaining "new" exhibits are simply collections of documents containing the words, "It's Our Turn to Play," a slogan plaintiff Korpacz has repeatedly alleged is her property. *See, e,g.*, Exhibits 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16 ,17, 18, and 22. The remaining 6 exhibits are comprised of outdated and irrelevant financial information (New England Storm tax returns for 2001 and 2002; net income for the league for 2003) and the affidavits of plaintiff Korpacz and Martin Donahue. All of this "new" evidence relates to plaintiffs' claim that Defendants are unlawfully using intellectual property allegedly belonging to plaintiffs. Although these exhibits may be "new," they do nothing to demonstrate a likelihood of success on the merits of plaintiffs' claim because they fail to show that plaintiffs have a mark that can be protected under the Lanham Act, or that Defendants' use of these materials has caused confusion among consumers.

Through their motion and the affidavits of Melissa Korpacz and Martin Donohue, plaintiffs allege that they are the owners of certain intellectual property – namely the WPFL logo, the slogan "It's Our Turn To Play," and a "football with eyelashes" logo. As demonstrated in Defendants' opposition to plaintiffs' renewed motion for temporary restraining order, however, the WPFL logo is a registered trademark of the WPFL. *See* Exhibit D to the Defendants

Memorandum in Support of Their Opposition To Plaintiffs' Renewed Request For Temporary Restraining Order. Consequently, plaintiffs cannot seriously aver that they have any ownership interest in it.

Plaintiffs offer the affidavit of Martin Donahoe to support their claim to ownership of the slogan "It's Our Turn To Play," and a "football with eyelashes" logo. Noticeably absent from plaintiffs submission is any evidence that plaintiffs have trademarked or copyrighted this material. Whether or not plaintiffs actually own this intellectual property, plaintiffs have not, and cannot, demonstrate that Defendants have violated the Lanham Act or any other laws through their use of these items.

In order to do so, plaintiffs must first show that these qualify for protection as unregistered marks under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a); *Boston Beer Co. Limited Partnership v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d. 175, 180 (1st Cir. 1993). Descriptive or generic terms require plaintiffs to demonstrate that the term has acquired a secondary meaning, i.e. a special association with a particular source of consumer products or services, before the mark can be protected. *See Id.* at 181; see also Flynn v. AK Peters, Ltd, 377 F.3d 13, 19 (1st Cir. 2004). Neither the affidavits of Martin Donohue and Melissa Korpacz, nor any other evidence presented by plaintiffs, present any evidence that a secondary meaning has attached to these marks.

Even if the plaintiffs could demonstrate that these unregistered marks are eligible for protection under the Lanham Act, they are not likely to succeed in demonstrating that Defendants' use of plaintiffs' marks create confusion in the minds of consumers, which is the key inquiry in an infringement case. *Flynn v. AK Peters, Ltd*, 377 F.3d 13, 19 (1st Cir. 2004). In

fact, plaintiffs have supplied <u>no</u> evidence of likely confusion, including no evidence concerning actual confusion or the strength of the mark. *See Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987).

Most importantly, however, plaintiffs must demonstrate that Defendants' use of these unregistered marks was without their consent. *See United States Hosiery Corporation v. The Gap, Inc.*, 707 F.Supp. 800, 810 (W.D.N.C. 1989). This is something plaintiffs simply have not, and cannot, do. In fact, the evidence demonstrates that just the opposite is true. In an e-mail dated March 21, 2002, plaintiff Korpacz offered these materials to any team that wanted to use them, encouraging Defendants to "feel free to manipulate the words and place your logo in it and send it out to newspapers." *See* March 21 2002 e-mail from Melissa Korpacz, attached as <u>Exhibit A</u> to the Affidavit of Dawn Berndt.

In sum, despite plaintiffs' "new" evidence and witnesses, plaintiffs have again failed to offer any new evidence that Defendants unlawfully expelled plaintiffs from the WPFL, and have failed to offer any evidence: (1) that their unregistered marks are eligible for protection under the Lanham Act; or (2) that Defendants' use of the marks created consumer confusion and was without their consent. Consequently, Plaintiffs have again failed to demonstrate any likelihood of success on the merits of their claims.

C. <u>Plaintiffs Have No Damages For Which They Need The Security Of An Attachment</u>

The purpose of a pre-judgment attachment is to provide a plaintiff with security for the money damages which the plaintiff has demonstrated a reasonable likelihood of obtaining. Shapiro, Perlin & Connors, 48 Mass. Practice, *Collection Law*, §4:5 (3rd Ed. 2000). Massachusetts law provides that an attachment "may be entered only . . . upon a finding by the

court that there is a reasonable likelihood that the plaintiff will recover judgment *in an amount equal to or greater than the amount of the attachment*[.]" *VLT, Inc. and Vicor Corp. v. Lucent Technologies, Inc., et al.*, 2002 WL 511519 at 1 (D. Mass), quoting *Johnson v. Koplovsky Foods, Inc.*, 5 F.Supp.2d 48, 51. Thus, plaintiffs must show that they have or will suffer damages in an amount equal to or greater than the $204,000 attachment they seek.[1] As the exhibits to their own motion for attachment reveal, plaintiffs have not only failed to do so, they also have not, and cannot, demonstrate that Defendants' actions, if unlawful, caused them <u>any</u> damages.

Exhibits 1 and 2 to plaintiffs' Attachment Memorandum consist of Profit or Loss From Business statements for the plaintiff New England Storm for years 2001 and 2002, which plaintiff Korpacz filed with the Internal Revenue Service. A review of those statements reveals that in 2001, the New England Storm made $223.00. The following year, in 2002, the team suffered a loss of $7,979. Consequently, plaintiffs have failed to carry their burden of demonstrating not only that they have a reasonable likelihood of obtaining a judgment in excess of $204,000, but that they have in fact suffered any damages as a result of Defendants' actions.

### III.
### CONCLUSION

Plaintiffs were properly expelled from the WPFL, in accordance with league by-laws and procedures, due to multiple examples of improper conduct. Such conduct included: (1) issuing checks returned for insufficient funds; (2) publicly fondling the breasts of an opposing player; (3) failing to appear for and play scheduled games; (4) unauthorized credit card use; and (5) violating terms of a suspension. As plaintiffs continue to file meritless motions, their true intentions -- to harass Defendants and force them to spend monies on legal fees -- becomes increasingly clear.

---

[1] It appears that the $204,000 amount of the requested attachment is an arbitrary number.

For this reason and the others contained herein, plaintiffs' motion for pre-judgment attachment should be denied.

## REQUEST FOR HEARING

Defendants request a hearing on their Opposition to Plaintiffs' Motion for Pre-Judgment Attachment if the Court deems such hearing necessary.

Respectfully submitted,

The Defendants/Counter-Plaintiffs,
By Their Attorneys,

Brian D. Gross
BBO No. 637718
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110-3536
(617) 737-3100

and

Carlton D. Wilde
Pro Hac Vice
FRANKLIN, CARDWELL & JONES
1001 McKinney, 18th Floor
Houston, TX 77002

Dated: September 20, 2004

## CERTIFICATE OF SERVICE

I, Brian D. Gross, attorney for the Defendants/Counter-Plaintiffs in the above-captioned action, hereby certify that I served a copy of the foregoing upon all counsel of record via first class mail, postage prepaid, on this 20th day of September, 2004.

Brian D. Gross

131062v1