UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MELISSA A. KORPACZ and                          )
NEW ENGLAND STORM, LLC,                          )
                                                 )
            Plaintiffs,                          )
                                                 )
      v.                                         )      Civil Action
                                                 )      No. 04-10735-RWZ
WOMEN'S PROFESSIONAL FOOTBALL LEAGUE             )
et al.,                                          )
                                                 )
            Defendants.                          )
_____)

## DEFENDANT DAYTON REBELLION'S ANSWER, AFFIRMATIVE DEFENSES, AND JURY DEMAND

Defendant Dayton Rebellion ("Defendant"), by its undersigned attorneys, state the following in response to plaintiffs' Amended Complaint:

### PARTIES

1.    Defendant lacks information sufficient to admit or deny the allegations in paragraph 1.

2.    Defendant lacks information sufficient to admit or deny plaintiff Korpacz's allegations regarding her residency or ownership of plaintiff New England Storm, LLC ("Storm"). Defendant denies that plaintiff Korpacz or plaintiff Storm hold a lifetime Member License Agreement or other contract with the WPFL. Defendant lacks information sufficient to admit or deny plaintiff Korpacz's allegations regarding her position within the entity calling itself "WPFL Promotions, LLC." Defendant lacks information sufficient to admit or deny plaintiff Korpacz's allegations regarding her position within the entity calling itself the "WPFL Irrevocable Trust." Defendant denies that plaintiff Korpacz has any standing within the

` WPFL by virtue of the incorporation documents filed on behalf of the WPFL.

3.   Defendant admits that the WPFL is a Texas non-profit corporation.  Answering further, Defendant states that the WPFL has been recognized by the Internal Revenue Service as a tax-exempt organization under Section 501(c)(6) of the Internal Revenue Code. Defendant admits that the WPFL's principal place of business is currently located at 5631 Dorbrandt Street in Houston, Texas.

4.   Defendant admits that the Long Beach Aftershock women's professional football team is a California corporation with a place of business located at 1827 Ximeno Avenue in Long Beach, California.

5.   Defendant admits that Thee Toledo Reign women's professional football team is an Ohio limited liability company with a place of business located in Elmore, Ohio.

6.   Defendant admits that the Delaware Griffins women's professional football team is a Delaware corporation with a place of business located at 2731 Duncan Road in Wilmington, Delaware.

7.   Defendant lacks information sufficient to admit or deny the allegations contained in paragraph 7.

8.   Defendant admits that the Syracuse Sting women's professional football team is a New York corporation with a place of business located at 407 N. Wolcott in Syracuse, New York.

9.   Defendant lacks information sufficient to admit or deny the allegations regarding the Houston Energy's current form of organization or place of business in that a proposed change in ownership is still in progress.  Defendant admits that the entity

2

which formerly operated the Houston Energy women's professional football team was a Texas corporation with a place of business located at 5631 Dorbrandt Street in Houston, Texas.

10.   Defendant admits that the Arizona Caliente women's professional football team is an Arizona corporation with a place of business located at 15261 N. 61st Drive in Glendale, Arizona.

11.   Defendant admits that the Indiana Speed women's professional football team is an Indiana limited liability company with a place of business located at 212 W. 10th Street in Indianapolis, Indiana.

12.   Defendant admits that the Missouri Avengers women's professional football team is a Missouri limited liability company with a place of business located at 2847 S. Weaver Avenue in Springfield, Missouri.

13.   Defendant admits that the Minnesota Vixen women's professional football team is a Minnesota corporation with a place of business located in St. Paul, Minnesota.

14.   Defendant admits that the Dallas Diamonds women's professional football team is a Texas limited liability company with a place of business located at 232 Belmont Street in Hurst, Texas.

15.   Defendant admits that the New York Dazzles women's professional football team is a New York limited liability company with a place of business located at 10 Eastland Avenue in Rochester, New York.

3

16.    Defendant admits that the Los Angeles Amazons women's professional football team is a California corporation with a place of business located at 1992 Juanita Avenue in Pasadena, California.

17.    Defendant admits that the SoCal Scorpions women's professional football team is a California limited liability company with a place of business located in San Diego, California.

### Jurisdiction and Venue

18.    Defendant denies the allegations in paragraph 18.

19.    Defendant denies the allegations in paragraph 19.

### Facts Applicable To All Counts

20.    Defendant lacks information sufficient to admit or deny plaintiffs' allegations regarding events that took place in 2001 before the WPFL was in existence.  Defendant denies that plaintiff Korpacz or any other person or entity can legally "own" the WPFL or receive any capital distributions from it because the WPFL is a tax-exempt non-profit corporation.  Answering further, Defendant states that plaintiff Korpacz and the other two "founders" of the WPFL breached their fiduciary duties as officers and directors of the WPFL by pursuing unlawful private inurement without disclosing prohibited conflicts of interest and without obtaining the informed consent of a majority of disinterested WPFL directors.  Defendant lacks information sufficient to admit or deny plaintiffs' allegations regarding the history of any predecessor organization that may have operated under the name "Women's Professional Football League" or "WPFL."

21.    Defendant lacks information sufficient to admit or deny plaintiffs' allegations regarding the actions of the three "founders"

4

with respect to the creation of separate entities. Defendant admits that the WPFL is a Texas non-profit corporation organized in 2002 but deny that plaintiffs have accurately described the WPFL's purposes and authority. Defendant lacks information sufficient to admit or deny plaintiffs' allegations regarding the entity calling itself the "WPFL Trust." Defendant denies that the entity calling itself "WPFL Promotions" has any legal contract, irrevocable or otherwise, with the WPFL or its constituent teams.

22. Defendant lacks information sufficient to admit or deny plaintiffs' allegations regarding the entity calling itself the "WPFL Trust." Defendant denies the remaining allegations in paragraph 22.

23. Defendant lacks information sufficient to admit or deny plaintiffs' allegations regarding the terms of the so-called "Founding Member Team License Agreements." Defendant denies that plaintiff Storm or any other team or person was ever granted "lifetime membership in the WPFL." Answering further, Defendant states that plaintiff Korpacz and the other two "founders" of the WPFL breached their fiduciary duties as officers and directors of the WPFL by pursuing unlawful private inurement without disclosing prohibited conflicts of interest and without obtaining the informed consent of a majority of disinterested WPFL directors.

24. Defendant is unable to admit or deny plaintiffs' allegations regarding the "appointment" of plaintiff Korpacz as Executive Director of the WPFL because the allegation is vague as to the time period in question. Defendant denies the remaining allegations in paragraph 24. Answering further, Defendant states that

plaintiff Korpacz damaged the reputation of the WPFL and caused the WPFL to lose valuable business opportunities by failing to maintain reasonable standards of personal behavior in her dealings with potential sponsors and vendors.

25. Defendant lacks information sufficient to admit or deny plaintiffs' allegations regarding events that took place in 2001 before the WPFL was in existence.

26. Defendant denies the allegations in paragraph 26. Answering further, Defendant states that the materials contained in the so-called "WPFL Binder" belong to the WPFL and were fairly used by the WPFL and its constituent teams at all relevant times.

27. Defendant lacks information sufficient to admit or deny the allegations in paragraph 27.

28. Defendant denies the allegations in paragraph 28.

29. Defendant denies the allegations in paragraph 29.

30. Defendant lacks information sufficient to admit or deny plaintiffs' allegations regarding the work done by the firm of Hill, Holiday. Defendant denies the remaining allegations in paragraph 30.

31. Defendant lacks information sufficient to admit or deny plaintiffs' allegations regarding events that took place in 2001 before the WPFL was in existence.

32. Defendant lacks information sufficient to admit or deny plaintiffs' allegations regarding events that took place on January 17, 2002.

33. Defendant lacks information sufficient to admit or deny plaintiffs' allegations regarding events that took place on March 8,

6

2002. Defendant denies that any document signed by plaintiff Korpacz and the two other "founders" in March 2002 is still in effect or avails said parties of any rights or privileges with respect to the WPFL.

34. Defendant admits that plaintiff Storm failed to appear for a scheduled game but deny that plaintiffs were without fault. Answering further, Defendant states that plaintiff Storm's forfeit constituted grounds for suspension or expulsion under WPFL Bylaws, and in addition, required plaintiffs to pay an automatic fine of $10,000. Defendant denies the remaining allegations in paragraph 34.

35. Defendant denies the allegations in paragraph 35.

36. Defendant denies the allegations in paragraph 36.

37. Defendant admits that the WPFL board ordered plaintiffs to pay a $10,000 fine but deny the remaining allegations in paragraph 37.

38. Defendant admits the allegations in paragraph 38.

39. Defendant denies the allegations in paragraph 39. Answering further, Defendant states that plaintiffs violated WPFL rules and breached contractual and legal obligations owed to the WPFL and its constituent teams, which acts required that discipline be imposed.

40. Defendant denies the allegations in paragraph 40.

41. Defendant admits that plaintiffs paid compensation to the Syracuse Sting but deny that the payment was in accordance with WPFL directives.

42. Defendant denies the allegations in paragraph 42.

43. Defendant denies the allegations in paragraph 43.

44. Defendant states that the former and current WPFL Bylaws contain additional provisions that define or relate to good standing. Defendant therefore denies the allegations in paragraph 44.

45. Defendant denies the allegations in paragraph 45.

46. Defendant admits that plaintiff Korpacz sent an e-mail on May 23, 2003, but deny the remaining allegations in paragraph 46.

47. Defendant admits that plaintiff Storm's suspension was not lifted but deny the remaining allegations in paragraph 47.

48. Defendant denies the allegations in paragraph 48.

49. Defendant admits that plaintiffs were in violation of several WPFL Bylaws as of June 3, 2003 and ineligible for reinstatement to good standing. Defendant denies the remaining allegations in paragraph 49.

50. Defendant denies the allegations in paragraph 50.

51. Defendant admits that a telephone conference took place on or about June 4, 2003 which included plaintiff Korpacz, Dee Kennamer, Lisa Vessey and Erich Kennedy.

52. Defendant admits that conditions for plaintiff Storm's reinstatement were discussed but deny that plaintiffs have accurately described those conditions. Defendant denies the remaining allegations in paragraph 52.

53. Defendant admits that Dee Kennamer told plaintiff Korpacz that the WPFL would not allow plaintiff Storm to play during the 2003 season if the conditions for reinstatement were not satisfied promptly. Defendant denies the remaining allegations in paragraph 53.

54. Defendant denies the allegations in paragraph 54.

8

55.  Defendant denies the allegations in paragraph 55.

56.  Defendant denies the allegations in paragraph 56.

57.  Defendant lacks information sufficient to admit or deny plaintiff Korpacz's allegations regarding her state of mind on or about June 5, 2003.  Defendant denies that plaintiffs complied with all conditions required for reinstatement.  Answering further, Defendant states that plaintiff Korpacz concealed her failure to pay arrears owed to the City of Medford which conduct constituted grounds for suspension or expulsion under WPFL Bylaws.

58.  Defendant denies that plaintiffs have accurately stated the ruling issued by the Commissioner.  Defendant denies the remaining allegations in paragraph 58.

59.  Defendant admits that plaintiffs were not notified of the details of the suspension within one week.  Answering further, Defendant states that the WPFL did not have a suspension policy in place at the time of plaintiffs' violations; however, plaintiffs were notified in writing of the terms of suspension as soon as the policy was approved.

60.  Defendant denies the allegations in paragraph 60.

61.  Defendant admits that the Executive Director of the WPFL requested a limited exception to the terms of suspension, which exception was granted.  Defendant admits that plaintiff Korpacz was forbidden to speak to the press during the period of suspension except as authorized in the Official Notice of suspension.

62.  Defendant denies the allegations in paragraph 62.

63.  Defendant denies the allegations in paragraph 63.

64.  Defendant denies the allegations in paragraph 64. Answering further, Defendant states that plaintiff Korpacz concealed her violations of the terms of suspension, which conduct constituted grounds for an additional suspension or expulsion under WPFL Bylaws.

65.  Defendant denies the allegations in paragraph 65.

66.  Defendant admits that a meeting of the WPFL board began on November 9, 2003 and was adjourned on November 10, 2003.

67.  Defendant denies the allegations in paragraph 67.

68.  Defendant denies the allegations in paragraph 68.

69.  Defendant denies the allegations in paragraph 69.

70.  Defendant admits the allegations in paragraph 70.

71.  Defendant denies the allegations in paragraph 71.

72.  [Plaintiffs omitted paragraph 72.]

73.  Defendant admits that a committee of the board prepared a report but deny that the committee's "proposed restructure" served the best interests of the WPFL or was compliant with the WPFL's tax-exempt status.  Defendant lacks information sufficient to admit or deny plaintiffs' allegation that the committee's proposal was based on the structure of the National Football League.

74.  Defendant denies the allegations in paragraph 74.

75.  Defendant denies the allegations in paragraph 75.

76.  Defendant is informed and believe that Dee Kennamer entered the WPFL Office without permission and may have tampered with evidence that is relevant to this cause.  Defendant denies the remaining allegations in paragraph 76.

77.  Defendant denies the allegations in paragraph 77.

78. Defendant admits that the Commissioner notified the WPFL board in writing on January 22, 2004 that the license agreement of the Florida Stingrays was suspended pursuant to WPFL Bylaws.

79. Defendant admits that the Florida Stingrays had violated the WPFL's policies and procedures and were under threat of discipline at the time the team was preparing to play in the 2003 Championship Game. Answering further, Defendant states that it was agreed that no disciplinary action would be taken against the Florida Stingrays until after the Championship Game in order to avoid negative publicity that might be detrimental to the WPFL. Defendant denies the remaining allegations in paragraph 79.

80. Defendant denies the allegations in paragraph 80.

81. Defendant admits that the Commissioner notified the WPFL board in writing on January 22, 2004 that a fine had been imposed against the Florida Stingrays. Defendant denies the remaining allegations in paragraph 81.

82. Defendant denies that any defamatory statements were ever issued by the Commissioner or any other WPFL officer. Answering further, Defendant states that only WPFL board members and officers were privy to the Commissioner's ruling. Defendant denies the remaining allegations in paragraph 82.

83. Defendant denies the allegations in paragraph 83.

84. Defendant denies that any defamatory statements were ever issued by the Commissioner or any other WPFL officer. Defendant admits that plaintiff Korpacz, Dee Kennamer and Robin Howington were called upon to explain their apparent self-dealing and other

questionable actions and omissions that occurred while they were serving as officers and directors of the WPFL. Answering further, Defendant states that only WPFL board members and officers were privy to the Commissioner's January 22, 2004 Notice.

85.  Defendant admits that on January 22, 2004, the Commissioner issued a written ruling regarding a grievance submitted by the Northern Ice football team. Defendant denies that the ruling contained any defamatory statements. Answering further, Defendant states that only WPFL board members and officers were privy to the Commissioner's ruling.

86.  Defendant admits that plaintiff Korpacz filed one or more grievances against the Commissioner but deny the remaining allegations in paragraph 86.

87.  Defendant denies the allegations in paragraph 87.

88.  Defendant admits that the Commissioner, pursuant to Article V, Section 4(a) of the WPFL Bylaws, notified board members of the commencement of an investigation relating to allegations that plaintiff Korpacz had covertly violated the terms of her July 2003 suspension.

89.  Defendant admits that a Storm player had come forward to testify against plaintiff Korpacz. Answering further, Defendant states that the player was excused from testifying because certain board members provided clear and convincing first-hand evidence to sustain the finding that plaintiff Korpacz had violated the terms of her July 2003 suspension.

90. Defendant admits that plaintiff Korpacz demanded information but deny the allegations in paragraph 90.

91. Defendant admits that the Commissioner imposed a $200 fine against plaintiff Storm for failing to deliver merchandise or a refund to a website customer after charging the customer's credit card, and for failing to respond to communications from the customer regarding the unfilled order. Defendant admits that plaintiff Korpacz appealed the fine. Answering further, Defendant states that plaintiff's appeal was rejected by the WPFL board.

92. Defendant admits the allegations in paragraph 92.

93. Defendant admits that plaintiffs have quoted a portion of the Commissioner's Report of Investigation. Answering further, Defendant states that plaintiffs have omitted certain other statements in the Report that are necessary in order to convey the true substance of the Report. Specifically, plaintiffs omit the following two sentences: "If aggrieved parties are not willing at this time to substantiate their claims that [plaintiff Korpacz] presents an unacceptable business risk to the League, then they should be barred from making such allegations in the future. Fundamental fairness requires the board to determine once and for all whether Missi Korpacz and the New England Storm should be suspended or expelled so that, if [plaintiff Korpacz] is vindicated, she and the Team can move forward and fulfill their contractual obligations without fear that stale grievances will be renewed during the 2004 season."

94. Defendant admits that the Commissioner required all complaints against plaintiffs to be presented by a specific date. Defendant denies the remaining allegations in paragraph 94.

95. Defendant admits that plaintiffs have quoted a portion of the Commissioner's Report of Investigation. Answering further, Defendant states that plaintiffs have omitted certain other material statements that are necessary in order to convey the true substance of the Report.

96. Defendant denies the allegations in paragraph 96.

97. Defendant denies the allegations in paragraph 97.

98. Defendant denies the allegations in paragraph 98. Answering further, Defendant states that the WPFL board found plaintiff Korpacz guilty of violating the terms of her July 2003 suspension at the hearing that took place on March 6, 2004.

99. Defendant admits that several WPFL board members, owners and employees filed charges against plaintiff Korpacz and plaintiff Storm, which charges and specifications were forwarded to plaintiffs in accordance with WPFL Bylaws. Defendant denies the remaining allegations in paragraph 99.

100. Defendant denies the allegations in paragraph 100.

101. Defendant denies the allegations in paragraph 101.

102. Defendant admits that the Medford, Massachusetts City Attorney reported to the Commissioner that plaintiff Storm had failed to pay rent for games played during the 2002 and 2003 seasons and was in arrears to the City in an amount in excess of $8,000. Answering further, Defendant states that the City Attorney also reported that

plaintiff Korpacz had issued checks to the City on more than one
occasion which were returned due to insufficient funds.

103. Defendant lacks information sufficient to admit or deny
plaintiffs' allegations regarding any agreement with the Mayor of
Medford. Defendant admits that the City of Medford formed a stadium
commission which was authorized to approve leases for the facility
previously rented by plaintiff Storm. Answering further, Defendant
states that the Medford City Attorney reported that the stadium
commission had declined to offer a lease to plaintiff Storm for the
2004 season due to non-payment of rent, among other reasons.

104. Defendant admits that the Commissioner issued a second set
of charges based on the Medford City Attorney's report that plaintiff
Storm was in arrears to the City of Medford in an amount in excess of
$8,000. Answering further, Defendant states that WPFL Bylaws
authorize suspension or expulsion of any team which fails or refuses
to fulfill its contractual obligations to any third party in such a
way as to adversely affect the WPFL. Defendant denies the remaining
allegations in paragraph 104.

105. Defendant admits that the Commissioner suspended plaintiff
Storm until a hearing could be convened. Defendant denies the
remaining allegations in paragraph 105.

106. Defendant admits that plaintiffs were given the required
notice of a special meeting of the board that was called to hear and
rule on the charges dated February 23, 2004. Answering further,
Defendant states that plaintiffs waived notice with respect to the
second set of charges dated February 24, 2004. Defendant