UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MELISSA A. KORPACZ and )
NEW ENGLAND STORM, LLC, )
            Plaintiffs, )
   v. ) Civil Action
            ) No. 04-10735-RWZ
WOMEN'S PROFESSIONAL FOOTBALL LEAGUE )
et al., )
           Defendants. )

WOMEN'S PROFESSIONAL FOOTBALL LEAGUE, et al )
           Counter-plaintiffs, )
   v. )
MELISSA A. KORPACZ and )
NEW ENGLAND STORM, LLC, )
           Counter-defendants. )

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CASE SCHEDULING ORDER

COME NOW Defendants/Counter-Plaintiffs Women's Professional Football League ("WPFL"), Long Beach Aftershock, Thee Toledo Reign, Delaware Griffins, Dayton Rebellion, Syracuse Sting, Houston Energy Football, Inc., Arizona Caliente, Indiana Speed, Missouri Avengers, Minnesota Vixen, Dallas Diamonds, New York Dazzles Football, Los Angeles Amazons, and Southern California Scorpions (collectively "Defendants"), and file this opposition to plaintiffs' Motion to Modify Case Scheduling Order. In support thereof, Defendants would respectfully show unto the Court as follows:

I. **SUMMARY OF ARGUMENT**

Plaintiffs' Motion to Modify Case Scheduling Order should be denied because plaintiffs have abused the discovery process with <u>thousands</u> of overbroad and irrelevant discovery requests in order to harass the Defendants and drive up the costs of litigation. With a stated intent to prevent the WPFL from playing football if her team is not permitted to play in the league, and an intimate knowledge of Defendants' limited resources, plaintiffs have attempted to use the discovery process as a sword to force Defendants to either reinstate plaintiffs or possibly face dissolution. Plaintiffs efforts have thus far failed to put Defendants out of business. They should not be given three more months to try to accomplish this goal. Moreover, plaintiffs should not be rewarded for their own failure to timely complete the discovery that they now deem necessary.

II. **FACTUAL BACKGROUND AND ARGUMENT**

A. <u>Plaintiffs Have Abused the Discovery Process</u>

1. On October 13, 2004, this Court held a Scheduling Conference. At that time, Defendants brought to the Court's attention its fear that, based on the plaintiffs' stated intent not to allow Defendants to play football if her team was not included, the numerous motions they had already filed, and the fact that, unlike Defendants, plaintiffs would incur no legal fees, plaintiffs would abuse the discovery process to deplete Defendants' limited resources and overburden and harass Defendants. <u>See</u> the Joint Statement, attached as <u>Exhibit 1</u>.

2

2.  Based on those concerns, the straightforward nature of the plaintiffs' claims, and plaintiffs' demonstrated lack of damages, Defendants asked this Court to limit the discovery available to plaintiffs.

3.  In response, this Court issued a Scheduling Order which limited discovery to 50 depositions, 2 sets of requests for production, and 20 depositions.[1] See Scheduling Order, attached hereto as Exhibit 2. Pursuant to the Scheduling Order, discovery closed on December 31, 2004. Id.

4.  Despite these protections the Court put in place, plaintiffs have abused the discovery process in order to harass Defendants and run up the costs of this litigation.

5.  First, in August and September 2004, plaintiffs served interrogatories on each of the 15 Defendants. Each of these consisted of one interrogatory which asked every defendant to state the basis for its denial of each allegation contained plaintiffs' 210 paragraph Amended Complaint. See plaintiffs' First Sets of Interrogatories to each defendant, attached hereto as Exhibit 3. These interrogatories are objectionable for a number of reasons, most notably the fact that they are overly broad, unduly burdensome, and violate Fed. R. Civ. P. 33(a)(2). Because many of the Amended Complaint's paragraphs contained multiple allegations, plaintiffs' interrogatories sought to force each defendant to answer in excess of 250 items. Together,

---

[1] While granting plaintiffs' request for 20 depositions, the Court indicated that number of depositions hopefully would not be necessary based on the expanded written discovery and limited resources of the parties.

3

Defendants would have been required to prepare more than 3,000 responses.

6. Despite feeling that its objections to the interrogatories were justified given the abusive nature of the discovery requests, Defendants supplemented their answers by stating the basis for its defense, and the overall basis for its denial of the allegations contained in the Amended Complaint. See November 8, 2004 letter to Melissa Korpacz and Defendants Supplemental Answers to Plaintiffs' First Set of Interrogatories, attached hereto as Exhibits 4 and 5, respectively.

7. Plaintiffs further abused the discovery process through their First Set of Requests for Production to the WPFL, which consisted of 173 separate requests. See plaintiffs' First Set of Requests for Production to the WPFL, attached hereto as Exhibit 6. Despite pointing out the abusive nature of the requests and demanding that plaintiffs revise the requests, plaintiffs not only refused to do so, but served an additional 1,709 requests on Defendants.[2] See Exhibit 4. All of this despite the fact that Defendants told plaintiffs that they would produce non-privileged documents in their possession once a protective order was in place.

8. If that were not enough, plaintiffs then served their Second Set of Interrogatories, which consisted of a total of 658

---

[2] Plaintiffs served 179 requests on the New York Dazzles, 124 on the Indiana Speed, 130 on the Dallas Diamonds, 108 on the Long Beach Aftershock, 128 on the Syracuse Sting, 128 on Thee Toledo Reign, 128 on the Arizona Caliente, 122 on the LA Amazons, 138 on the SoCal Scorpions, 130 on the Minnesota Vixen, 126 on the Missouri Avengers, 144 on the Houston Energy, and 124 on the Delaware Griffins.

4

interrogatories.[3] As one can imagine with that many interrogatories, the vast majority of them are irrelevant to plaintiffs' case and are propounded solely to harass the Defendants and cause them to expend more of their limited resources to defend this case.

9. Plaintiffs now want three more months presumably to propound further discovery and take the 20 depositions that they failed to notice, let alone take, prior to the discovery deadline. If given the opportunity, Plaintiffs will continue to abuse the discovery process to harass Defendants and force them to spend additional funds to defend this case, in hopes of forcing them to allow her back into the league or out of business.

    B.    <u>Plaintiffs Should Not be Given the Opportunity to Do Discovery Which They Failed to Do In a Timely Manner.</u>

1. Despite having 2 ½ months to complete discovery, Plaintiffs now come to this Court contending that they need more time. They do so based on the false claim that it was Defendants' actions which caused their failure to timely complete discovery. In truth, it is not the Defendants who have prevented plaintiffs from completing their discovery. Plaintiffs request an extension of the discovery deadline because they failed to

---

[3] Plaintiffs served 37 interrogatories on the New York Dazzles, 48 on the Indiana Speed, 48 on the Dallas Diamonds, 42 on the Long Beach Aftershock, 47 on the Syracuse Sting, 41 on Thee Toledo Reign, 46 on the Arizona Caliente, 42 on the LA Amazons, 48 on the SoCal Scorpions, 45 on the Minnesota Vixen, 39 on the Missouri Avengers, 47 on the Houston Energy, 35 on the Delaware Griffins, 44 of the Dayton Rebellion, and 49 on the WPFL.

5

take the steps necessary to complete their discovery in a timely manner.

2. At this Court's Scheduling Conference, and in numerous correspondence to plaintiffs, Defendants indicated that they would produce documents responsive to plaintiffs' requests for production to the WPFL and subpoena to the Northern Ice as soon as plaintiffs agreed to a Protective Order, due to the confidential nature of many of the documents. See November 19, 2004 e-mail to Korpacz, November 22, 2004 e-mail to Korpacz, December 5, 2004 e-mail to Korpacz, and December 6, 2004 letter to Korpacz, attached hereto as Exhibit 7.

3. Consequently, Defendants produced a total of 1,146 pages of documents on December 3, 9, 10, and 13, 2004, upon reaching agreement with respect to the Protective Order. These documents consist of all documents produced by the Northern Ice in response to plaintiffs' subpoena. In addition, the WPFL produced all relevant documents that it had in its possession. Defendants did not withhold any documents based on a claim of privilege.

4. It is telling that in their motion, plaintiffs fail to specifically mention any additional discovery that they will be unable to complete if the discovery deadline is not extended. As discussed below, any argument that is based on plaintiffs' need to take depositions is specious at best. There is no reason why plaintiffs could not have reviewed the documents produced by Defendants and taken the depositions they deem necessary before

the close of discovery. The fact is, plaintiffs failed to properly notice the deposition of *any* fact witness before the close of discovery. In fact, former WPFL Commissioner Lisa Vessey is the only fact witness whose deposition plaintiffs even attempted to notice. Despite having the opportunity to take that deposition prior to the discovery deadline, plaintiffs failed to do so.

5. In November, Plaintiffs noticed the deposition of Lisa Vessey, individually. On November 30, Defendants informed plaintiffs that their Notice of Deposition was ineffective because Ms. Vessey is not a party to the suit. Despite this defect, Defendants offered to waive service of a subpoena if plaintiffs would agree to a date and location that was mutually convenient. See November 30, 2004 letter to Melissa Korpacz and Thomas O'Konski, attached hereto as Exhibit 8. Plaintiffs refused that offer and vowed to serve Vessey with a subpoena. Plaintiffs, however, failed to do so prior to the discovery deadline.

6. The real reason plaintiffs did not take Ms. Vessey's, or any other, deposition and need more time to complete discovery, is because of their own failure to timely propound discovery requests. Based on the time of service, Defendants' responses to plaintiffs' Second Set of Interrogatories to all Defendants and plaintiffs' Requests for Production to 13 of the Defendants are not due until January 3 and 10, 2005, respectively – after the deadline for discovery. Plaintiffs did not take the

7

depositions, and seek an extension of discovery, because due to their own neglect, they did not have the responses and documents responsive to these discovery requests prior to the discovery deadline.

III. CONCLUSION

The present case is not a complex or complicated one. The gravamen of plaintiffs' case can be boiled down to two issues: (1) whether the WPFL lawfully expelled plaintiffs from its league; and (2) whether Defendants have unlawfully used intellectual property which allegedly belongs to plaintiffs. Two and a half months was more than enough time for plaintiffs to discover their case. As discussed above, plaintiffs failed to do so in a timely manner. Plaintiffs' past abuse of the discovery process demonstrates that they seek additional time for discovery solely to harass Defendants and further run up the costs of this litigation (costs that the pro se plaintiff Korpacz does not incur), in the hopes of forcing Defendants to reinstate plaintiffs or fold.[4] Based on the nature of the case, the plaintiffs' demonstrated lack of damages, plaintiffs' discovery abuses, and its own failure to timely pursue discovery,

---

[4] Through their abusive discovery tactics, plaintiffs are running up the costs of the litigation with impunity. Unlike the Defendants, plaintiff Korpacz represents herself pro se, and plaintiff Storm is represented by pro bono counsel. Moreover, despite a provision in the WPFL Constitution and Bylaws which provides that plaintiffs must pay the legal fees of the WPFL and each defendant team should they not completely prevail in this suit, plaintiffs can do so with impunity because any judgment for legal fees on Defendants' behalf is likely uncollectible.

8

plaintiffs' Motion to Modify Case Scheduling Order should be denied.

> The Defendants/
> Counter-Plaintiffs,
>
> By Its Attorneys,
>
> _____
> Brian D. Gross
> BBO No. 637718
> COOLEY MANION JONES LLP
> 21 Custom House Street
> Boston, MA 02110-3536
> (617) 737-3100
>
> and
>
> Carlton D. Wilde
> Pro Hac Vice
> FRANKLIN, CARDWELL & JONES
> 1001 McKinney, 18th Floor
> Houston, TX 77002

Dated: January 4, 2005

### CERTIFICATE OF SERVICE

I, Brian D. Gross, attorney for the Defendant/Counter-Plaintiff in the above-captioned action, hereby certify that I served a copy of the foregoing upon all counsel of record via first class mail, postage prepaid, on this 4th day of January, 2005.

_____
Brian D. Gross

135569v1

9