UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MELISSA A. KORPACZ and )
NEW ENGLAND STORM, LLC, )
 )
      Plaintiffs, )
 )
v. )   Civil Action
 )   No. 04-10735-RWZ
WOMEN'S PROFESSIONAL FOOTBALL LEAGUE )
et al., )
 )
      Defendants. )
_____)
WOMEN'S PROFESSIONAL FOOTBALL LEAGUE, )
LONG BEACH AFTERSHOCK, )
THEE TOLEDO REIGN, )
DELAWARE GRIFFINS, )
SYRACUSE STING, )
HOUSTON ENERGY, )
ARIZONA CALIENTE, )
INDIANA SPEED, )
MISSOURI AVENGERS, )
MINNESOTA VIXEN, )
DALLAS DIAMONDS, )
NEW YORK DAZZLES, )
LOS ANGELES AMAZONS, )
SOCAL SCORPIONS, )
 )
      Counter-plaintiffs, )
 )
v. )
 )
MELISSA A. KORPACZ and )
NEW ENGLAND STORM, LLC, )
 )
      Counter-defendants. )
_____)

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

     The defendants Women's Professional Football League ("WPFL"), the Long Beach Aftershock ("Aftershock"), the Toledo Reign ("Reign"), the Delaware Griffins "("Griffins"), the Syracuse Sting ("Sting"), Houston Energy Football, Inc. ("Energy"), the Indiana Speed ("Speed"), the Missouri Avengers ("Avengers"), the Minnesota Vixens ("Vixens"), the Dallas Diamonds ("Diamonds"), New York Dazzle Football ("Dazzle"), the Arizona Caliente ("Caliente"), the Los Angeles Amazons ("Amazons"), and the Southern California Scorpions ("Scorpions") (collectively,

"Defendants"), submit this Memorandum in support of their Motion for Summary Judgment. In support thereof, Defendants would respectfully show unto the Court as follows:

I.  **INTRODUCTION**

Plaintiffs brought suit against the WPFL and fourteen (14) different league teams, alleging multiple causes of action. Despite the number of counts in the Amended Complaint, the gravamen of plaintiffs' claims revolve around their allegation that the New England Storm and Melissa Korpacz were unlawfully expelled from the WPFL in March 2004. While Defendants disagree that plaintiffs' expulsion was in any way unlawful, or that Defendants defamed plaintiffs or infringed on any alleged protectable interest plaintiffs have in any intellectual property, it is of no import in this case. That is because, even if plaintiffs could prove these allegations, all of plaintiffs' claims must still fail because plaintiffs have not, and cannot, prove an essential element of all of their claims - namely that plaintiffs suffered any damages as a result of the allegations contained in their Amended Complaint. Consequently, plaintiffs cannot prevail on their claims as a matter of law, and summary judgment pursuant to FED. R. CIV. P. 56 is appropriate.

II.  **STATEMENT OF UNDISPUTED FACTS**

1.  The Women's Professional Football League, Inc. was incorporated in 2002, under the laws of the State of Texas, as a non-profit corporation. Affidavit of Dawn Berndt at 4. As a non-profit corporation, no corporate stock was authorized or issued. *Id.*

2.  In February of 2004, after years of problems and unresolved

2

conflicts, the WPFL served a Notice of Charges on Plaintiffs Korpacz and The New England Storm in accordance with Article VIII, § 2(B)(1) of the Constitution and Bylaws of the WPFL. See <u>Exhibit A</u> to the Affidavit of Dawn Berndt.

3. In that document, four team owners and the WPFL Commissioner charged plaintiffs with thirty-eight (38) different violations of the league's Bylaws and Policy and Procedures Manual. *Id.* The charges included: the unauthorized use of a credit card; issuing checks on insufficient funds; failing to appear and play a scheduled game; defying a formal resolution of the WPFL board of directors; groping an opposing player's breasts (by plaintiff Korpacz) in the locker room in front of her team; use of profane, offensive and unprofessional language; as well as other behavior deemed detrimental to the league. *Id.*

4. After a full hearing, plaintiffs were expelled from the league and notice of the expulsion was posted on the WPFL website in March of 2004. Amended Complaint at 21, Press Release notice of expulsion, attached as Exhibit 4 to the Affidavit of Brian Gross.

5. Following their expulsion, plaintiffs brought the instant action against the WPFL and fourteen (14) different league teams, alleging multiple causes of action.[1] These causes of action stem from plaintiffs' allegation that their expulsion was unlawful. *See* Amended Complaint at p. 21.

---

[1] In their original Complaint, Plaintiffs also brought claims against 28 individuals and three additional league teams. In their Amended Complaint, plaintiffs dropped all twenty-eight individual defendants, as well as the three additional league teams, and brought seven causes of action against the current Defendants. Amended Complaint at pp. 2-3, and 22-29.

6. Plaintiffs also claim that Defendants infringed on intellectual property plaintiffs' allege that they own. *See* Amended Complaint at pp. 22-23.

7. One of those items of intellectual property, the WPFL logo, is, however, a registered trademark owned by and registered in the name of the WPFL. *See* Certification of Registration, attached as Exhibit B to the Affidavit of Dawn Berndt.

8. In addition, plaintiff Korpacz gave the other members of the WPFL permission to use the "football eyes" graphic and "It's Our Turn to Play!" slogan. *See* March 21, 2002 e-mail from Melissa Korpacz, attached as Exhibit C to the Affidavit of Dawn Berndt.

9. In addition, plaintiffs allege that Defendants converted funds that belonged to plaintiffs that were contained in the WPFL bank account. *See* Amended Complaint at p. 27.

10. The funds in the WPFL bank account, however, were never segregated for any specific purpose or otherwise specifically identified. Affidavit of Dawn Berndt at 5.

11. Finally, plaintiffs allege that Defendants defamed them. Amended Complaint at pp. 27-28. It should be noted, however, that the Notice of Charges was sent only to directors of the WPFL. Affidavit of Dawn Berndt at 5.

12. With respect to all of plaintiffs' claims, plaintiffs have failed to produce any evidence that they have suffered damages as a result of the allegations contained in the Amended Complaint. The New England Storm was not a profitable franchise. *See* 2001 and 2002 Profit or Loss From Business statements, attached as Exhibits 1 and 2,

4

respectively, to the Affidavit of Brian Gross. In 2001, the New England Storm booked profits of just over $200. *Id.* The following year, it suffered a loss of approximately $8,000. *Id.* Moreover, plaintiff Korpacz was never paid a salary for her work with the New England Storm. *Id.* at line 26: Wages.

### III. ARGUMENT

#### A. Standard for Summary Judgment

Summary judgment is a device that "has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991). A party should be granted summary judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *McConnell v. Texaco, Inc.*, 727 F. Supp. 751, 755 (D. Mass. 1990). Although the moving party bears the burden of affirmatively demonstrating the absence of a triable issue, once that burden is met the party opposing the motion must allege specific facts establishing the existence of a genuine issue of material fact. *McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals*, 880 F. Supp. 900, 904 (D. Mass. 1995) (internal citations omitted). "In this context, 'genuine' means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* While it is true that "[a]ll reasonable inferences must be indulged in

favor of the non-moving party when assessing whether disputed issues of fact are sufficient to block summary judgment, [] even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Id.* at 905.

In the current case, summary judgment is appropriate because plaintiffs have not, and cannot, prove an essential element of all of their claims - namely that plaintiffs suffered any damages as a result of the allegations contained in their Amended Complaint. The plaintiffs' averments of damages rest solely upon conclusory allegations and unsupported speculation. As a result, plaintiffs cannot prevail on their claims as a matter of law, and the Court should enter summary judgment pursuant to FED. R. CIV. P. 56.

### B.   Choice of Law

The crux of plaintiffs' complaint is that the expulsion of the New England Storm and Melissa Korpacz was an improper violation of the WPFL Bylaws and related rules of corporate governance. In cases involving issues of corporate governance, Massachusetts courts apply the law of the state of incorporation pursuant to the "internal affairs" doctrine. *Gabriel v. Preble*, 396 F.3d 10, 13 (1st Cir. 2005). Plaintiffs acknowledge and concede that the WPFL is a Texas corporation. Amended Complaint at 3. As a consequence, the substantive law of Texas applies to this dispute.

C.  **Plaintiffs' Claims Concerning Their Expulsion From the WPFL Must Fail, as a Matter of Law, Because Plaintiffs Cannot Demonstrate that They Suffered Any Damages as a Result of the Expulsion.**

As stated above, the gravamen of the claims presented by plaintiffs in this action are based on the contention that plaintiffs were unlawfully expelled from the Women's Professional Football League. As a result of that expulsion, plaintiffs have enumerated a number of various claims in their Amended Complaint, which include breach of contract, tortious interference with an advantageous business relationship, and tortious interference with a contractual relationship.[1] While these are diverse causes of action, each is based on the plaintiffs' inability to compete in the Women's Professional Football League as a result of the expulsion. They also share an essential element that must be proven for plaintiffs to prevail – namely that plaintiff suffered actual damage or injury as a result of the Defendants' actions. *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484, 486 (1952); *Stamp-Ad, Inc. v. Barton Raben, Inc.,* 915 S.W.2d 932, 936 (Tex.App.–Houston [1st Dist.] 1996).

In order to establish that a plaintiff has suffered damages, the plaintiff must demonstrate through evidence that actual injury has occurred. In Texas, four types of damages can be recovered for

---

[1] Plaintiffs also bring a claim for unfair and deceptive business practices, pursuant to M.G.L. c. 93A § 11 based on their alleged unlawful expulsion from the WPFL. Plaintiffs cannot prevail on this claim as a matter of law for a number of reasons. First, Texas law applies to this matter, and Chapter 93A is a creature of Massachusetts law, not recognized in Texas. Further, because the actions about which plaintiff complains occurred in Illinois, Texas, and Arizona, the action upon which the 93A claim is based did not occur "primarily and substantially" within Massachusetts. *See Arthur D. Little International, Inc. v. Dooyang Corp.,* 928 F.Supp. 1189, 1208-1209 (D. Mass. 1996)(93A is designed to protect against in-state frauds). Finally, as discussed in detail in this section above, plaintiffs have no evidence that they suffered damages

economic injury: (1) loss of profits; (2) loss of credit; (3) loss of goodwill; and (4) exemplary damages. *Texas Instr., Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 278-79 (Tex. 1994)(lost profits); *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 688 (Tex. 1981)(loss of credit); *Texas & Pac. Ry. v. Mercer*, 90 S.W.2d 557, 560 (Tex. 1936)(loss of goodwill); *American Nat'l Pet. Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990) (exemplary damages). The facts of the case, however, determine which measure of damages is proper. *Vance v. My Apartment Steak House*, 677 S.W.2d 480, 481 n.1 (Tex. 1984); *Weitzul Const., Inc. v. Outdoor Environs*, 849 S.W.2d 359, 363 (Tex.App.–Dallas 1993).

In a case such as the present one, damages, if any, are measured by the profits lost by plaintiffs as a result of their expulsion. *See Atlas Copco Tools, Inc. v. Air Power Tool & Hoist, Inc.*, 131 S.W.3d. 203, 209 (Tex.App.-Fort Worth 2004)(held that "the proper measure of damages is lost net profits" in a tortious interference case), *see also Maxvill-Glasco Drilling Company, Inc. v. Royal Oil and Gas Corp.*, 800 S.W.2d 384, 386 (Tex.App.-Corpus Christi 1990)(the measure of damages for breach of contract is the same as for tortious interference, in this case net profits).² It is axiomatic, however, that a plaintiff cannot recover for lost profits in the absence of proof that plaintiff would have lost profits in the future. In Texas, the rule has long been that in order to recover lost profits, a

---

as a result of their expulsion from the WPFL.
² It would be the same result under Massachusetts law. *RGJ Associates, Inc. v. Stainsafe, Inc.*, 300 F.Supp.2d 250, 253 (D. Mass. 2004), quoting *King v. Exxon Co., U.S.A.*, 618 F.2d 1111, 1119 (5th Cir. 1980) (the proper measure of damages for "contract of indefinite duration []. . . is the net profit that would have been earned by the plaintiff . . .")

8

plaintiff must show either (1) a history of profitability or (2) the actual existence of future contracts from which lost profits can be calculated with reasonable certainty. *Southwest Battery v. Owen*, 115 S.W.2d 1097, 1099 (Tex. 1938). Without objective facts, figures, and data <u>from historical profitability</u> or <u>evidence establishing the existence of future contracts</u>, lost profits are mere speculation and cannot be recovered. *Aquila Southwest Pipeline v. Harmony Exploration*, 48 S.W.3d 225, 245 (Tex.App.-San Antonio 2001, pet. denied.)(emphasis added).

In the present case, plaintiffs cannot, as a matter of law, prevail on their claims based on plaintiffs' expulsion from the WPFL because they cannot demonstrate any lost profits. In their Calculation of Damages, plaintiffs contend that they suffered damages of $390,000 as a result of their expulsion.[3] This is but a bald assertion, as the plaintiffs have not produced, nor can they produce, evidence beyond speculation that the New England Storm lost any profits, or that Melissa Korpacz lost any income, and thus suffered any damages, as a result of their expulsion. That is because the New England Storm has no history of profitability, despite competing in the WPFL for five years. The team's profit and loss statements demonstrate that the Storm made a profit of just $223 in 2001, but <u>lost</u> approximately $8,000 the next year (the most recent year for which plaintiff has produced evidence of the Storm's finances). *See*

---

[3] Plaintiffs allege damages of $90,000 for loss of income (without specifying the cause of that lost income) and $300,000 as a result of Defendants' alleged tortious interference. *See* Plaintiffs' Calculation of Damages, attached as Exhibit 3 to the Affidavit of Brian Gross. The plaintiffs offered this calculation of damages with no corroborating evidence to substantiate the calculation in violation of Fed. R. Civ. P. 26(a)(1)(C). The numbers appear to

2001 and 2002 Profit or Loss From Business statements attached as <u>Exhibits 1 and 2</u>, respectively, to the Affidavit of Brian Gross. Moreover, those same documents reveal that plaintiff Korpacz was not paid a salary by the New England Storm for her work with the team. *Id.* at line 26: Wages. Therefore, Korpacz lost no wages or income as a result of her expulsion and the expulsion of her team.

Thus, plaintiffs have failed to offer any evidence that could establish a history of profitability or the actual existence of future contracts from which lost profits could be calculated with reasonable certainty. As a result, any claim of damages by plaintiffs is based purely on speculation and must fail as a matter of law because plaintiffs cannot establish nor demonstrate that they have suffered actual damages, and summary judgment should enter.

### D. **Plaintiffs Cannot Prove Damages as a Result of Any Alleged Conversion of Funds Contained in the WPFL Bank Account.**

Under Texas law, money can be converted only if it can be identified as a specific chattel. *Estate of Townes v. Townes*, 867 S.W.2d 414, 419 (Tex. App.-Houston [14th Dist.] 1993, writ denied). To qualify as a specific chattel, the money must be (1) delivered for safekeeping, (2) intended to be kept segregated, (3) substantially in the form on which it is received or an intact fund, and (4) not the subject of a title claim by its keeper. *Id.* at 419-20.

As a matter of law, money that is not segregated or specifically identified cannot be converted. *Phippen v. Deere & Co.*, 965 S.W.2d 713, 724 (Tex. App.-Texarkana 1998, no pet.)(no suit for conversion because security agreement did not require defendant to segregate

---

be arbitrary.

funds or keep money in any particular form); *Eckman v. Centennial Sav. Bank*, 757 S.W.2d 392, 398 (Tex. App.-Dallas 1988, writ denied)(no suit for conversion because construction loan did not create a specific, identifiable, segregated fund); *Gronberg v. York*, 568 S.W.2d 139, 144 (Tex. App.-Tyler 1978, writ ref'd n.r.e.)(no suit for conversion because plaintiff sought repayment of money wrongfully withheld from his commissions that was not specifically identified).

In this case, plaintiffs accuse the WPFL of "seizing and exercising unlawful control" over the WPFL bank accounts. Amended Petition at 27. Plaintiffs state that they have been damaged in the amount of $50,000 as a result of these allegations. *See* Plaintiffs' Calculation of Damages, attached as <u>Exhibit 3</u> to the Affidavit of Brian Gross. Despite the requirements of FED. R. CIV. P. 26(a)(1)(C), plaintiffs failed to provide any basis or evidence which supports those alleged damages. Plaintiffs failed to do so because they cannot provide evidence of those damages. That is because the funds in the WPFL bank account are used as general operating funds of the league, and have never been segregated for any specific purpose or otherwise specifically identified. Affidavit of Dawn Berndt at 5. Consequently, because plaintiffs cannot specifically identify any funds in the WPFL bank account that were segregated or belonged to them, plaintiffs cannot prevail on a cause of action for the conversion of those funds as a matter of law.

### E. Summary Judgment Should Enter With Respect to Plaintiffs' Defamation Claims Because Plaintiffs Cannot Demonstrate that the Statements Meet the Definition of Defamation, Or that They Were Damaged as a Result.

Plaintiffs' claim that Defendants have defamed them must also fail. Plaintiffs assert that "Defendants release of Plaintiff Korpacz's Article VIII charges" defamed her. Amended Complaint at p. 27. It is unclear from that allegation whether plaintiffs base their claim on the Notice of Charges upon which the expulsion was based, or the press release which announced the expulsion. It matters not, however, to which of these statements plaintiffs refer because neither of these statements are defamatory as a matter of law. As a consequence, and because plaintiffs have no evidence that these statements caused them any economic harm, summary judgment is appropriate.

To prove an action for defamation, plaintiff must demonstrate the statement at issue was false. *Musser v. Smith Protective Servs.*, 723 S.W.2d 653, 655 (Tex. 1987). In this case, there is no dispute as to the truth of the statement contained in the press release, posted on the WPFL website, which announced the plaintiffs had been expelled from the League for violation of the WPFL Bylaws. *See* Press Release announcing expulsion, attached as <u>Exhibit 4</u> to the Affidavit of Brian Gross. That is due to the fact that plaintiffs were actually expelled from the WPFL due to violations of the league Bylaws. Therefore, due to the truth of the statement, that action simply cannot form the basis of a defamation claim.

In addition, there exists a qualified privilege for

communications "made in good faith on subject matter in which the author has an interest or with reference to which he has a duty to perform to another person having a corresponding interest or duty." *Houston v. Grocers Supply Co., Inc.*, 625 S.W.2d 798, 800 (Tex.App.-Houston [14th Dist.] 1981), *Bergman v. Oshman's Sporting Goods, Inc.*, 594 S.W.2d 814, 816 (Tex.App.-Tyler, 1972)("Accusations against an employee by his employer . . . made to a person having a corresponding interest or duty in the matter to which the communication relates, are qualifiedly privileged"). That qualified immunity extends to the Notice of Charges upon which plaintiffs' expulsion was based because the statements contained therein were published by the Commissioner of the WPFL only to the members of the Board of Directors, as dictated by the WPFL Bylaws. *See* Affidavit of Dawn Berndt at 6, Constitution and By-Laws of Women's Professional Football League Article VIII § 2(B)(2), attached as Exhibit 5 to the Affidavit of Brian Gross.[4] As a result, the statements contained in the Notice of Charges cannot be defamatory as a matter of law.

As is the case with the rest of plaintiffs' causes of action, their defamation claim must also fail, even if they could prove that the statements were defamatory, because plaintiffs have not, and cannot, present any evidence that they suffered damages as a result of Defendants' actions. Moreover, plaintiffs failed to plead special damages, a necessary element to recover on a claim for defamation. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex.

---

[4] Plaintiffs claim that they were expelled pursuant to the wrong set of Bylaws. That allegation is of no import, however, as the language of both sets of Bylaws are identical with respect to this provision. Affidavit of Brian Gross at 7.

13

1984). In the context of defamation actions, special damages require some form of pecuniary loss. *Hurlburt V. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766-67 (Tex. 1987). Absent pleading and proof of special damages, plaintiffs cannot recover in an action for defamation. As discussed above, plaintiffs have not, and cannot, meet this burden.

> **F.  Plaintiffs Trademark Infringement Claim Must Fail as a Matter of Law Because the Evidence Demonstrates that No Infringement Occurred and Plaintiffs Suffered No Damages.**

In this case, plaintiffs allege that they are the owners of certain intellectual property - namely the WPFL logo, the slogan "It's Our Turn To Play!," and a "football with eyelashes " logo. They further allege that this intellectual property merits trademark protection, and that Defendants have infringed on that trademark protection. The evidence demonstrates, however, that not only did Defendants not infringe on any alleged trademarks, but that plaintiffs have no evidence that they suffered any damages as a result of any alleged infringement. Consequently, plaintiffs' claim must fail.

Although plaintiffs contend that they own the WPFL's logo, plaintiffs have not and cannot offer any evidence to support that claim. In fact, the evidence demonstrates just the opposite, that the logo is owned by the WPFL. The WPFL's logo is a registered trademark owned and registered in the name of the Women's Professional Football League, not plaintiffs. *See* United States Patent and Trademark Office Registration No. 2,683,763, registered on February 4, 2003, attached as <u>Exhibit B</u> to the Affidavit of Dawn Berndt. Consequently, plaintiffs cannot seriously aver that they have any ownership interest in it. And, as a matter of law, the WPFL could not have infringed on

14

its own registered trademark.

Plaintiffs have offered the affidavits of Martin Donahoe and Melissa Korpacz to support their claim to ownership of the slogan "It's Our Turn To Play!," and a "football with eyelashes" logo.[5] Noticeably absent, however, is any evidence that plaintiffs have registered a trademark or copyright for this material. Whether or not plaintiffs actually own this intellectual property, plaintiffs have not, and cannot, demonstrate that Defendants have violated the Lanham Act or any other laws through their use of these items. In order to do so, plaintiffs must demonstrate that Defendants' use of these unregistered marks was without their consent. *See United States Hosiery Corporation v. The Gap, Inc.*, 707 F.Supp. 800, 810 (W.D.N.C. 1989). This is something plaintiffs simply are unable to do. In fact, the evidence demonstrates that just the opposite is true. In an e-mail dated March 21, 2002, plaintiff Korpacz offered these materials to any team that wanted to use them, encouraging Defendants to "feel free to manipulate the words and place your logo in it and send it out to newspapers." *See* March 21 2002 e-mail from Melissa Korpacz, attached as <u>Exhibit A</u> to the Affidavit of Dawn Berndt.

Moreover, even if the plaintiffs could somehow successfully meet the burden of proof necessary to establish that infringement has occurred, which they cannot, the plaintiffs claim must still fail because they cannot prove the requisite damages. A monetary award is not automatically available upon a finding of trademark infringement. *See Aktiebolaget Electrolux v. Armitron Int'l, Inc.*, 999 F.2d 1, 5

---

[5] The affidavits of Martin Donahoe and Melissa Korpacz were submitted by

15

(1st Cir. 1993). A plaintiff must not only prove an infringement, but must also demonstrate an actual harm or injury, such as lost profits or the diversion of sales to the defendant. *Id.*, *Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986) ("a plaintiff must show actual harm to its business, a diversion of sales, for example, in order to recover damages").

Despite the fact that plaintiffs aver that they have been damaged in the amount of $600,000 as a result of Defendants alleged infringement, as discussed in detail above, plaintiffs have no evidence that they lost any profits or income as a result of the Defendants' use of these marks.[6] Accordingly, summary judgment is appropriate because plaintiffs cannot prove that Defendants' use of these marks infringed on plaintiffs' alleged intellectual property rights, or caused them actual pecuniary harm.

## IV. CONCLUSION

Plaintiffs were properly expelled from the WPFL as a result of repeated offensive and egregious behavior, conduct in violation of both the WPFL Bylaws and Policy and Procedures Manual. Rather than go quietly, plaintiffs have opted for a "scorched earth" strategy in hopes of spending the WPFL into submission. They have done so despite the fact that the evidence clearly demonstrates that they have suffered no damages as a result of their expulsion. Such behavior

---

plaintiffs as exhibits to their Motion for Attachment.
[6] Plaintiffs assert that they have suffered damages totaling $600,000 as a result of their "Loss of Intellectual Property." *See* plaintiffs' Calculation of Damages, attached as <u>Exhibit 3</u> to the Affidavit of Brian Gross. This amount appears to be arbitrary, as plaintiffs offer no evidence, such as lost profits, to justify the amount of claimed damages. *See Id.*

16

should not be tolerated or rewarded. Based on the foregoing, Defendants respectfully submit summary judgment should be granted.

                                     Respectfully submitted,
                                     Defendants,
                                     By their attorneys,

                                     /s/ Brian D. Gross
                                   Brian D. Gross, BBO #637718
                                   Patrick S. Tracey, BBO #659626
                                   COOLEY MANION JONES, LLP
                                   21 Custom House Street
                                   Boston, MA 022110-3536
                                   (T) 617-737-3100
                                   (F) 617-737-0374

                                   and

                                   Carlton D. Wilde
                                   Pro Hac Vice
                                   FRANKLIN, CARDWELL & JONES
                                   1001 McKinney, 18th Floor
                                   Houston, Texas 77002
                                   (T) 713-222-6025
DATED: April 29, 2005               (F) 713-222-0938

**CERTIFICATE OF SERVICE**

This is to certify that on this 29th day of April, 2005 a true and correct copy of the foregoing motion was served upon all counsel of record via first class mail, postage prepaid.

                                     /s/ Brian D. Gross
                                     Brian D. Gross