# EXHIBIT 1

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

# Profit or Loss From Business
### (Sole Proprietorship)

▶ Partnerships, joint ventures, etc., must file Form 1065 or Form 1065-B.

▶ Attach to Form 1040 or Form 1041. ▶ See Instructions for Schedule C (Form 1040).

OMB No. 1545-0074

**2001**

Attachment
Sequence No. 09

| Name of proprietor | Social security number (SSN) |
|---|---|
| Melissa Korpacz | 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 |

**A** Principal business or profession, including product or service (see the instructions)

Professional women's football team

**B** Enter code from instructions ▶

**C** Business name. If no separate business name, leave blank.

New England Storm LLC

**D** Employer ID no. (EIN), if any

**E** Business address ▶ 379 Main Street #3

City, state, ZIP Medford, MA 02155

**F** Accounting method: **(1)** ☒ Cash **(2)** ☐ Accrual **(3)** ☐ Other (specify) ▶

**G** Did you "materially participate" in the operation of this business during 2001? If "No," see instructions for limit on losses. ☒ Yes ☐ No

**H** If you started or acquired this business during 2001, check here ........................................................ ▶ ☐

## Part I Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. Caution. If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see instructions and check here ........ ▶ ☐ | **1** | 103,361 |
| 2 | Returns and allowances ................................................... | **2** | 301 |
| 3 | Subtract line 2 from line 1 .................................................. | **3** | 103,060 |
| 4 | Cost of goods sold (from line 42 on page 2) ...................................... | **4** | 16,019 |
| 5 | Gross profit. Subtract line 4 from line 3 ......................................... | **5** | 87,041 |
| 6 | Other income, including Federal and state gasoline or fuel tax credit or refund (see instructions) ....... | **6** | |
| 7 | Gross income. Add lines 5 and 6 ............................................ ▶ | **7** | 87,041 |

## Part II Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | |
|---|---|---|---|---|---|
| 8 Advertising ................ | **8** | 2,438 | 19 Pension & profit-sharing plans | **19** | |
| 9 Bad debts from sales or services (see instructions) ..... | **9** | | 20 Rent or lease (see instructions): | | |
| | | | a Vehicles, machinery, and equipment | **20a** | 2,965 |
| 10 Car and truck expenses (see instructions) ......... | **10** | 565 | b Other business property ...... | **20b** | 1,090 |
| 11 Commissions and fees ....... | **11** | 3,158 | 21 Repairs and maintenance ..... | **21** | |
| 12 Depletion ................. | **12** | | 22 Supplies (not included in Part III) ... | **22** | |
| 13 Depreciation and section 179 expense deduction (not included in Part III) (see instructions) ....... | **13** | 23,703 | 23 Taxes and licenses .......... | **23** | |
| | | | 24 Travel, meals, & entertainment: | | |
| 14 Employee benefit programs (other than on line 19) .... | **14** | | a Travel ................. | **24a** | 26,902 |
| 15 Insurance (other than health) ... | **15** | 1,630 | b Meals and entertainment | 278 | |
| 16 Interest: | | | c Enter nondeductible amount included on line 24b (see instructions) .... | 139 | |
| a Mortgage (paid to banks, etc.) | **16a** | | | | |
| b Other ................. | **16b** | | d Subtract line 24c from line 24b | **24d** | 139 |
| 17 Legal and professional services ................ | **17** | 2,232 | 25 Utilities ................. | **25** | |
| | | | 26 Wages (less employment credits) ... | **26** | |
| 18 Office expense ............. | **18** | 1,754 | 27 Other expenses (from line 48 on page 2) ................. | **27** | 20,242 |

| | | | |
|---|---|---|---|
| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27 in columns ....... ▶ | **28** | 86,818 |

| | | | |
|---|---|---|---|
| 29 | Tentative profit (loss). Subtract line 28 from line 7 ................................ | **29** | 223 |
| 30 | Expenses for business use of your home. Attach Form 8829 ............................ | **30** | |
| 31 | Net profit or (loss). Subtract line 30 from line 29.
  • If a profit, enter on Form 1040, line 12, and also on Schedule SE, line 2 (statutory employees, see instructions). Estates and trusts, enter on Form 1041, line 3.
  • If a loss, you must go to line 32. | **31** | 223 |

**32** If you have a loss, check the box that describes your investment in this activity (see instructions).
  • If you checked 32a, enter the loss on Form 1040, line 12, and also on Schedule SE, line 2 (statutory employees, see instructions). Estates and trusts, enter on Form 1041, line 3.
  • If you checked 32b, you must attach Form 6198.

**32a** ☒ All investment is at risk.
**32b** ☐ Some investment is not at risk.

For Paperwork Reduction Act Notice, see Form 1040 instructions. **Schedule C (Form 1040) 2001**

CAA 1 C12 NTF 2554338 Copyright 2001 Greatland/Nelco LP – Forms Software Only

```
↑ AUG.27. 2004  9:58AM    SACCO AND SACCO                    No.9812  P. 3/5
```

Melissa Korpacz                                              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

Schedule C (Form 1040) 2001                                        Page 2

## Part III   Cost of Goods Sold (see instructions)

**33** Method(s) used to value closing inventory: **a** ☐ Cost  **b** ☐ Lower of cost or market  **c** ☐ Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If "Yes," attach explanation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes   ☐ No

| | | |
|---|---|---|
| **35** Inventory at beginning of year. If different from last year's closing inventory, attach explanation . . . . . . . | **35** | |
| **36** Purchases less cost of items withdrawn for personal use . . . . . . . . . . . . . . . . . . . . . . | **36** | |
| **37** Cost of labor. Do not include any amounts paid to yourself . . . . . . . . . . . . . . . . . . . . . . . | **37** | 5,633 |
| **38** Materials and supplies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **38** | 10,386 |
| **39** Other costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **39** | |
| **40** Add lines 35 through 39 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **40** | 16,019 |
| **41** Inventory at end of year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **41** | |
| **42** Cost of goods sold. Subtract line 41 from line 40. Enter the result here and on page 1, line 4 . . . . . . . . | **42** | 16,019 |

## Part IV   Information on Your Vehicle. Complete this part only if you are claiming car or truck expenses on line 10 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file.

**43** When did you place your vehicle in service for business purposes? (month, day, year) ▶ _____

**44** Of the total number of miles you drove your vehicle during 2001, enter the number of miles you used your vehicle for:

**a** Business _____  **b** Commuting _____  **c** Other _____

**45** Do you (or your spouse) have another vehicle available for personal use? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes   ☐ No

**46** Was your vehicle available for personal use during off-duty hours? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes   ☐ No

**47a** Do you have evidence to support your deduction? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes   ☐ No

**b** If "Yes," is the evidence written? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes   ☐ No

## Part V   Other Expenses. List below business expenses not included on lines 8-26 or line 30.

| | |
|---|---|
| Accomadations | 1,200 |
| Camp supplies | 1,253 |
| Facilities rental | 1,210 |
| Bank charges | 1,739 |
| Dues & Subscriptions | 163 |
| License & registrations | 5,876 |
| Meetings | 396 |
| Postage | 1,276 |
| See Attached | 7,129 |

**48** Total other expenses. Enter here and on page 1, line 27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **48** | 20,242

CAA    1  C12    NTF 2554340    Copyright 2001 Greatland/Nelco LP – Forms Software Only         Schedule C (Form 1040) 2001

EXHIBIT 2

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

# Profit or Loss From Business
### (Sole Proprietorship)

▶ Partnerships, joint ventures, etc., must file Form 1065 or Form 1065-B.
▶ Attach to Form 1040 or Form 1041.    ▶ See Instructions for Schedule C (Form 1040).

OMB No. 1545-0074

**2002**

Attachment
Sequence No. 09

Name of proprietor
**Melissa Korpacz**

Social security number (SSN)
**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**

A Principal business or profession, including product or service (see the instructions)
**Professional women's football team**

B Enter code from instructions ▶

C Business name. If no separate business name, leave blank.
**New England Storm LLC**

D Employer ID no. (EIN), if any

E Business address ▶ **379 Main Street #3**
City, state, ZIP **Medford, MA 02155**

F Accounting method:  (1) ☒ Cash  (2) ☐ Accrual  (3) ☐ Other (specify) ▶

G Did you "materially participate" in the operation of this business during 2002? If "No," see instructions for limit on losses ..... ☒ Yes  ☐ No

H If you started or acquired this business during 2002, check here .................................................... ▶ ☐

## Part I  Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. Caution. If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see instructions and check here ...... ▶ ☐ | 1 | 82,872 |
| 2 | Returns and allowances................................................... | 2 | |
| 3 | Subtract line 2 from line 1................................................. | 3 | 82,872 |
| 4 | Cost of goods sold (from line 42 on page 2)................................. | 4 | 14,442 |
| 5 | Gross profit. Subtract line 4 from line 3.................................... | 5 | 68,430 |
| 6 | Other income, including Federal and state gasoline or fuel tax credit or refund (see instructions)........ | 6 | |
| 7 | Gross income. Add lines 5 and 6.................................... ▶ | 7 | 68,430 |

## Part II  Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | |
|---|---|---|---|---|---|
| 8 | Advertising.................. | 8 | 5,852 | 19 Pension & profit-sharing plans | 19 | |
| 9 | Bad debts from sales or services (see instructions)..... | 9 | | 20 Rent or lease (see instructions): | | |
| | | | | a Vehicles, machinery, and equipment | 20a | 3,753 |
| 10 | Car and truck expenses (see instructions)........ | 10 | 3,131 | b Other business property ...... | 20b | |
| 11 | Commissions and fees....... | 11 | | 21 Repairs and maintenance ..... | 21 | |
| 12 | Depletion.................. | 12 | | 22 Supplies (not included in Part III)... | 22 | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions)....... | 13 | 2,633 | 23 Taxes and licenses ......... | 23 | |
| | | | | 24 Travel, meals, & entertainment: | | |
| | | | | a Travel ............. | 24a | 44,698 |
| 14 | Employee benefit programs (other than on line 19)....... | 14 | | b Meals and entertainment | 1,085 | |
| 15 | Insurance (other than health)... | 15 | 928 | c Enter nondeductible amount included on line 24b (see instructions) | 543 | |
| 16 | Interest: | | | d Subtract line 24c from line 24b | 24d | 542 |
| a | Mortgage (paid to banks, etc.) | 16a | | 25 Utilities.................. | 25 | |
| b | Other................. | 16b | | 26 Wages (less employment credits)... | 26 | |
| 17 | Legal and professional services.............. | 17 | | 27 Other expenses (from line 48 on page 2)............... | 27 | 10,226 |
| 18 | Office expense........... | 18 | 4,596 | | | |
| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27 in columns ...... ▶ | | | | 28 | 76,359 |
| 29 | Tentative profit (loss). Subtract line 28 from line 7............................. | | | | 29 | (7,929) |
| 30 | Expenses for business use of your home. Attach Form 8829 ..................... | | | | 30 | |
| 31 | Net profit or (loss). Subtract line 30 from line 29. | | | | 31 | (7,929) |

31 Net profit or (loss). Subtract line 30 from line 29.
  • If a profit, enter on Form 1040, line 12, and also on Schedule SE, line 2 (statutory employees, see instructions). Estates and trusts, enter on Form 1041, line 3.
  • If a loss, you must go to line 32.

32 If you have a loss, check the box that describes your investment in this activity (see instructions).
  • If you checked 32a, enter the loss on Form 1040, line 12, and also on Schedule SE, line 2 (statutory employees, see instructions). Estates and trusts, enter on Form 1041, line 3.
  • If you checked 32b, you must attach Form 6198.

32a ☒ All investment is at risk.
32b ☐ Some investment is not at risk.

For Paperwork Reduction Act Notice, see Form 1040 instructions.

Schedule C (Form 1040) 2002

Melissa Korpacz                                                    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

Schedule C (Form 1040) 2002                                                  Page 2

## Part III  Cost of Goods Sold (see instructions)

**33** Method(s) used to value closing inventory:  **a** ☐ Cost  **b** ☐ Lower of cost or market  **c** ☐ Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If "Yes," attach explanation .......................................................... ☐ Yes  ☐ No

| | | |
|---|---|---:|
| **35** Inventory at beginning of year. If different from last year's closing inventory, attach explanation ...... | **35** | |
| **36** Purchases less cost of items withdrawn for personal use .................... | **36** | 3,591 |
| **37** Cost of labor. Do not include any amounts paid to yourself ..................... | **37** | 2,711 |
| **38** Materials and supplies .................................................... | **38** | 8,140 |
| **39** Other costs. ............................................................. | **39** | |
| **40** Add lines 35 through 39 .................................................. | **40** | 14,442 |
| **41** Inventory at end of year ................................................. | **41** | |
| **42** Cost of goods sold. Subtract line 41 from line 40. Enter the result here and on page 1, line 4 ........ | **42** | 14,442 |

## Part IV  Information on Your Vehicle. Complete this part only if you are claiming car or truck expenses on line 10 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file.

**43** When did you place your vehicle in service for business purposes? (month, day, year) ▶ _____ .

**44** Of the total number of miles you drove your vehicle during 2002, enter the number of miles you used your vehicle for:

**a** Business _____  **b** Commuting _____  **c** Other _____

**45** Do you (or your spouse) have another vehicle available for personal use? ................................ ☐ Yes  ☐ No

**46** Was your vehicle available for personal use during off-duty hours? ................................... ☐ Yes  ☐ No

**47a** Do you have evidence to support your deduction? ...................................... ☐ Yes  ☒ No

**b** If "Yes," is the evidence written? ................................................ ☐ Yes  ☐ No

## Part V  Other Expenses. List below business expenses not included on lines 8–26 or line 30.

| | |
|---|---:|
| Accomadations | |
| Camp supplies | |
| Facilities rental | |
| Bank charges | 3,470 |
| Dues & Subscriptions | 3,134 |
| License & registrations | 600 |
| Meetings | 20 |
| Postage | 2,003 |
| Telephone | 999 |
| | |
| | |
| | |
| See Attached | |

**48** Total other expenses. Enter here and on page 1, line 27 ................................. | **48** | 10,226

JVA    2  C12    TWF 1265    Copyright Forms (Software Only) – 2002 TWNL                    Schedule C (Form 1040) 2002

# EXHIBIT 3



*Women's Professional Football League*

*From the Desk of —*
*Melissa A. Korpacz — Owner*

March 7, 2005

Brian Gross
Cooley, Manion and Jones
21 Custom House Street
Boston, MA 02110

**RE:     Calculation of Damages**

Dear Mr. Gross:

To the extent required by the applicable Federal and Local Rules, below please find Plaintiffs Calculation of Damages to date.  Plaintiffs reserve the right to supplement the below pending discovery.

| | |
|---|---|
| **Loss of Income** - | $90,000.00 |
| **Legal Fees** - | $70,000.00 |
| **Conversion** - *(Remaining amount in WPFL bank account at the conclusion of the 2003 season)* | $50,000.00 |
| **Loss of Intellectual Property** - | $200,00.00 *(It's our Turn To Play)* $200,000.00 *(WPFL Logo)* $200,000.00 *(WPFL Binder)* |
| **Defamation of Character** - | $200,000.00 |
| **Tortuous Interference with Contractual and Advantageous Relations** – | $300,000.00 |

Best Regards,

Melissa A. Korpacz
Owner –NE Storm, LLC
WPFL – Founding Member




EXHIBIT 4

Page 1 of 2





SEASON 6.
The WPFL is Ready To Rock for 2004

Keep watching as we transition to a new web site as well as a new exciting season for the WPFL.
ARE YOU READY?

**For Immediate Release
March 8, 2004**

## Team Expelled From the WPFL

At a semi annual meeting of the WPFL Board of Directors, the board, after deliberation expelled Missi Korpacz and the New England Storm from the WPFL.
The expulsion resulted from violations of the WPFL by-laws and policies and procedures.
The Board wishes Ms. Korpacz well in her future endeavors.
The WPFL is the original and longest operating women's professional football league in the nation, with over 17



**>WPFL FEATURED IN**



**BUY IT HERE**

**>THE FEMALE ATHLETE'S BODY BOOK**

**WPFL STA**

American C

**Northern
Team**
x Northern Ice
· Indiana Speed
· Minnesota Vixen
· Dayton Diamond

**Western
Team**
x Long Beach After
· Arizona Caliente
· San Diego Sunfire
· So. Cal. Scorpions
· Los Angeles Amaz
· Arizona Knightha

National C.

**Eastern I
Team**
x Florida Stingrays
· Syracuse Sting
· New England Stor
· Toledo Reign

**Southern
Team**
x Dallas Diamonds
· Houston Energy
· Missouri Prowlers
x -Clinched Division T







THE
FEMALE ATHLETE'S
BODY BOOK

**BUY IT HERE**

professional football league in the nation, with over 17 teams nation wide slotted for the 2004 season.

For info on the league or locations for tryouts of a team near you, please visit the league website at www.womensprofootball.com.

### # # #



THE WOMEN'S PROFESSIONAL FOOTBALL LEAGUE - Copyright 20

http://www.womensprofootball.com/

3/10/2004

EXHIBIT 5

# CONSTITUTION AND
# BY-LAWS
# OF
# WOMEN'S PROFESSIONAL FOOTBALL LEAGUE

## ARTICLE I

### Name and Principal Office

**Section 1.**  The organization's name is "Women's Professional Football League," a non-profit corporation formed under the laws of the State of Texas, referred to herein as "WPFL" or the "League."

**Section 2.**  The Board of Directors of the WPFL shall designate at its annual meeting the WPFL principal and branch offices.  Initially, the principal office shall be located at 5631 Dorbrandt Street, Houston, Harris County, Texas.

## ARTICLE II

### Purposes and Objectives

The purposes and objectives of the WPFL will be to:

**Section 1.**  Operate and carry out administration of a national professional football league for female players; promote the interests of women's professional football, the interests of each individual WPFL Team, and the interests of the individual players.

**Section 2.**  Do anything and everything reasonably and lawfully necessary, proper, suitable, and convenient for the purpose stated above.

## ARTICLE III

### Definitions

**Section 1.  By-Laws.**  By-Laws means this Constitution and By-Laws.

**Section 2.  License.**  License means the document representing the Member Team's membership or an Associate Team's association with the League.

**Section 3.  Currency.**  All references to monetary sums as set forth herein and in all communications from the WPFL shall refer to United States currency.

**Section 4.  Good Standing.**  Teams in Good Standing shall be defined as those Teams that are no more than $2,500 in arrears in any dues, assessments, or monetary sums owing to the WPFL.

**Section 5.  Director.**  Director means a person designated by a Member Team or Associate Team to represent it on the WPFL Board of Directors, as established by these By-Laws.

**Section 6.  Member Team.**  Member Team is the designation given to an operating entity (excluding Associate Team) within a specifically designated territory that has been granted, by the WPFL Board of Directors, approved by the Member Teams, and holds a current Member License to participate in the WPFL.

**Section 7.  Associate Team.**  Associate Team is the designation given to an operating entity within a specifically designated territory that has been granted, by the WPFL Board of Directors, and holds a current Associate License to participate in the WPFL.

**Section 8.  WPFL Team, Team or Teams.**  WPFL Team, Team or Teams, without specific notation of Member Team or Associate Team, means both Member Team(s) and Associate Team(s).

**Section 9.  Owner.**  Owner refers to the owner or owners of a Member Team or Associate Team.

**Section 10.  Player.**  Player means a woman football player that is under contract to a Member Team or Associate Team pursuant to a contract in an approved WPFL form.

**Section 11.  Territory.**  Territory shall mean the geographical area within a 75-mile radius around the city designated in the Member Team's License or Associate Team's License within which the Team shall have the exclusive right (with exception by waiver) during the term of the License to operate a women's football team participating in the WPFL.

**Section 12.  Approved by the Board.**  Any motion or action requiring approval by the Board shall mean that a simple majority of voting Directors must vote in favor of the motion or action.    Directors representing Teams not in Good Standing and Directors abstaining will not be included in voting Directors for determination of a simple majority.

**Section 13.  Quorum.**  A quorum is 50% of the Directors holding office at any given time that represent Teams in Good Standing.

1

## ARTICLE IV

### Board of Directors and Management Team

**Section 1.**

A. A Board of Directors ("Board") shall manage the business of the WPFL. The Board must approve all business of the WPFL.

B. No business may be conducted without a quorum.

C. Board meetings will be conducted under *Robert's Rules of Order*.

D. The Board of Directors will consist of one Director from each Team and the Board Chairperson.

E. Each Team shall appoint one Director and may appoint one Alternate Director. An Alternate Director may attend Board Meetings, but shall vote and exercise a Director's powers only in the absence of the represented Team's Director.

F. The Board shall select a Commissioner. The Commissioner will be an employee of the WPFL and must be independent of any Team ownership. The Commissioner shall serve as the Chairman of the Board and conduct all Board of Directors meetings, but shall vote only in the event of a tie vote of the Team Directors. The Commissioner will act as the spokesperson for the league.

G. The Board shall select a Secretary. The Secretary will be an employee and officer of the WPFL. The Secretary must be a Director or Alternate Director and will be responsible for recording the minutes of Board meetings and maintaining all corporate legal records.

H. The Board shall select a Treasurer. The Treasurer will be an employee and officer of the WPFL. The Treasurer must be a Director or Alternate Director and will be responsible for maintaining all corporate financial records and tax reporting.

I. The Board shall select an Executive Director. The Executive Director will be an employee and officer of the WPFL. The Executive Director must be a Director or Alternate Director and will be responsible for maintaining day-to-day operations and administration of the League.

J. The Board shall select an Associate Executive Director. The Associate Executive Director will be an employee and officer of the WPFL. The Associate Executive Director must be a Director or Alternate Director and will assist the Executive Director with her or his duties.

K. Each Director, Alternate Director, and Commissioner shall hold office until her or his resignation or removal by the Board or respective Team.

L. Secretary, Treasurer, Executive Director and Associate Executive Director shall hold office for one year the term being from January 1 through December 31 of any given year. Election of officers shall be on the agenda of every annual meeting.

M. Annual meetings will be scheduled during the week following the annual WPFL Championship.

N. No one, other than the Commissioner, Directors and Alternate Directors may attend Board Meetings without the express invitation of the Board.

O. A Director may hold more than one office as long as the defined duties do not conflict.

P. If any Team of the WPFL resigns from the League or if a Team's License is revoked, the term of it's Director and Alternate Director shall immediately terminate.

Q. The Team responsible for any Director's appointment may remove, with or without cause, that Director or Alternate Director. Upon removal of a Director or Alternate Director, The Team must immediately provide written notification to the Secretary.

R. If a Team's Director and Alternate Director shall both be absent from a Board meeting, the absent Director may designate, in writing to the Secretary, a proxy that is valid only for said Board meeting. The proxy must name the proxy and clearly define her or his rights and duties. The Alternate Director by definition automatically temporarily assumes the authority of the Director in her or his absence from a Board meeting. Each team must submit in a writing to the Secretary it's appointments as Director and Alternate Director.

S. For voting purposes at Board Meetings, only Directors representing Teams in Good Standing shall be entitled to vote.

T. A committee system will be used in researching and presenting recommendations to the Board. Each committee will have a chair or leader designated as the Director of *Committee Name*. The Director of *Committee Name* will act as spokesperson for the Committee in making presentations to the Board. The Committee chair may be a Director or Alternate Director. Anyone the Committee chair deems appropriate may serve on a committee. Committees may be added or removed as deemed necessary.

2

**Section 2.** The parties responsible for the administration and management of the WPFL shall be employees and agents of the WPFL.

**Section 3.** The Board must approve the annual budget of the WPFL.

**Section 4.**

    a) In the event the Commissioner, Secretary, Treasurer or Associate Executive Director resigns, becomes incapacitated, or becomes unable to perform the duties of their position, the Executive Director will call, within 90 days, a special meeting of the Board to select a replacement. The Executive Director will serve as acting Commissioner until such time as a qualified replacement is selected.

    b) In the event the Executive Director resigns, becomes incapacitated, or becomes unable to perform the duties of that position, the Commissioner will call, within 90 days, a special meeting of the Board to select a replacement. The Associate Executive Director will serve as Executive Director until such time as a qualified replacement is selected.

**Section 5.** The Commissioner, Directors, Alternate Directors, and officers shall be indemnified by the WPFL against expenses actually and necessarily incurred by them in connection with defense of any action, suit or proceedings to which they are made a party, by reason of their being or having been selected to serve as such, except to the extent they are adjudged in such action, suit or proceedings to be liable for negligence or misconduct in the performance of her, his or their duties. Such right of indemnification is not exclusive of any rights to which she, he or they may be entitled elsewhere herein or pursuant to any agreement.

**Section 6.** The Commissioner or any officer may be removed from office for:

    A.    Physical or mental incapacity or incompetence to perform the duties of that office, as determined by the Board.

    B.    Conduct detrimental to the WPFL, including, but not limited to, failure to abide by these By-Laws, as determined by the Board.

**Section 7.** No Director, Alternate Director, officer or employee of the WPFL may have a financial interest, direct or indirect, in any other women's professional football league, nor be permitted to represent any player playing in or negotiating to play in the WPFL, without the written consent of the Board of Directors. Other than those Teams initially sponsored by WPFL Promotions, LLC until licenses are granted, no person having a financial interest in any Team may have a financial interest in any other Team or may have any other financial interest in any other women's professional football league, without the express written consent of the Board of Directors; provided, however, that this Section 7 shall not prohibit any of the foregoing from owning five percent (5%) or less of the outstanding publicly traded stock of any publicly held company.

### ARTICLE V

### Commissioner

**Section 1.** Subject to these By-Laws, the WPFL Board of Director or their agents will have the full authority to manage and bind the WPFL and to designate the Commissioner of the WPFL.

**Section 2.** The WPFL and each Team hereby vests the Commissioner full authority to carry out the respective duties delegated by these By-Laws.

**Section 3.** If any Director, Alternate Director, WPFL Officer, Team Officer, player, coach, official or owner, director or employee of a Team receives an offer and/or has knowledge of any offer, directly or indirectly, by insinuation or implication, to control, to fix or to bet money or anything of value on the outcome or score of any WPFL game in any manner whatsoever, and fails to report the same immediately to the Commissioner, then the Commissioner is authorized, after fifteen (15) days' notice and hearing, to act in any one of, or combination of, the following manners:

    A.    To suspend for a specified period of time; and

    B.    To suspend and bar indefinitely; and

    C.    To cause a Team to cancel and terminate any employee contracts; and

    D.    To order the immediate sale of Team stock or comparable equity interest; and

    E.    To levy an appropriate fine.

**Section 4.** a) The Commissioner is authorized, after 15 days notice and investigation, as she or he shall deem necessary, to levy a fine, suspend, revoke a license, cancel a contract or revoke a draft choice against any Team, player, coach, employee, Team officer, owner, any Director, referee, or Team personnel for violation of any provision of these By-Laws or approved Policies and Procedures or for any action detrimental to the best interests of the WPFL or women's professional football.

b) The Commissioner will notify, within forty-eight (48) hours, the Team or any person he has fined. A Team or person has ten (10) days, after notice, to pay said fine. If the fine is not paid within ten (10) days, the Commissioner may deduct the fine from any funds held by the WPFL, WPFL Promotions, LLC, or the WPFL Irrevocable Trust for the benefit of Team or the person fined, or take such action as is provided for under these By-Laws or the WPFL's Policy and Procedures Manual.

c) Within ten (10) days of notice, anyone may appeal an action by the Commissioner. The Board may modify or reverse the Commissioner's action by the vote of two-thirds (2/3) of a quorum of the Directors. If any such appeal is unsuccessful, such fine must be paid upon the later of the expiration of the ten (10) day period or two (2) business days following the Board's decision.

**Section 5.** The Commissioner may revoke any fine or suspend any disciplinary action imposed.

**Section 6.** The Commissioner shall serve as spokesperson for the League. The Commissioner must release all information to the media. The Commissioner shall issue to each Team and to the public, at regular intervals, press releases containing information about the WPFL and the Teams, including player transactions, attendance and other matters useful to promote the best interest of the WPFL and the Teams.

**Section 7.** Only the Commissioner may issue information to the public concerning business conducted at WPFL Board of Directors meetings.

**Section 8.** The Commissioner shall hear and finally decide any dispute (a) to which a player, Director, or any Team is a party or (b) between Teams, concerning any business matter, which the disputing party has certified, or which the Commissioner has determined to involve a question pertaining to the policy or standards of the WPFL as set forth in WPFL Policy and Procedures Manual, or (c) in protest of application of WPFL Rules. In all matters, the Commissioner shall make such investigation, call such witnesses and demand such papers, as deemed necessary.

**Section 9.** Except as otherwise provided in these By-Laws, the decision or action in every matter is final, binding, and conclusive and without appeal with the WPFL. In addition, any Team or agent or employee thereof, who brings suit or any proceeding against the WPFL or the Commissioner or any other employee of the WPFL, individually or in her or his official capacity, or against the WPFL, any Team, or any Team employee, director or officer, agrees to pay the attorney's fees and costs of defending any such action or proceeding if the person or Team who brings the suit does not completely prevail in the suit or proceeding.

**Section 10.** Except as otherwise set forth herein, the Commissioner, in reliance on the advice of the General Counsel of the WPFL, shall have sole authority to interpret these By-Laws and to adjudicate any actions arising hereunder, and her or his findings and decisions shall be final and conclusive, and all matters arising hereunder shall be construed to be exclusively intra-League affairs and not subject to other authority.

### ARTICLE VI

#### Secretary

**Section 1.** The Secretary shall be an employee or agent of the WPFL assigned to perform such duties as (a) maintenance of the records of the WPFL, (b) record minutes of all meetings of the Board of Directors, and (c) record minutes of all hearings.

**Section 2.** The Board of Directors shall approve all Board Meeting Minutes and any such minutes shall be distributed to all Directors by e-mail or mail within fourteen (14) business days of each meeting.

### ARTICLE VII

#### Membership and Transfer of Membership

**Section 1.** Each Team shall have full and complete control over its internal affairs and property, its officers, employees and players, except as its rights, duties, and obligations are or may be fixed or limited by the License Agreement with the WPFL or these By-Laws, the WPFL Policy and Procedures Manual or by any agreement to which this League may be a party or by any legislation or rules made or adopted pursuant thereto.

**Section 2.** The Board is authorized to issue licenses to Member Teams and Associate Teams. A new Team may be admitted to the WPFL only with the approval of a majority of the Board of Directors.

**Section 3.** a) WPFL shall issue a Member License to each Member Team in Good Standing, which License shall remain, the Member Team's until the termination of its Membership in the WPFL. Such License shall not be transferable without approval of the Board.

4

b) WPFL shall issue an Associate License in the WPFL to each Associate Team in Good Standing, which License shall remain the Associate Team's until the termination of its Association with the WPFL or expiration of it's license agreement. Such License shall not be transferable.

c) WPFL may issue a Member Team License in an Associate Team's territory to become effective on the first day subsequent to the expiration of the Associate Team's license agreement. The Associate Team will be notified within 5 business days of the WPFL's receipt of a valid offer to purchase a Member License for an Associate Team's license territory. The Associate Team will have 90 days to submit to the WPFL office a valid offer to purchase a Member License for the respective license territory. In the event that the Associate Team does not submit a valid offer to purchase a Member License for its license territory, the WPFL may enter into a contract to sell a Member License to the prospective license territory to the other offering party. In the event the Associate Team, upon referenced notice, submits a valid offer to purchase a Member License for the respective territory, the WPFL board will consider both the Associate Team and the other prospective buyer. The appropriate initiation fee must accompany an offer for it to be considered valid under this section.

d) A Member Team may request approval from WPFL to move to a new franchise territory by giving WPFL written notice of the request. WPFL shall have the discretionary authority to grant the request; provided, however, that no request will be granted if the License Territory requested conflicts with the License Territory of an existing Member Team. No move may be authorized after May 1 for that year's season.

**Section 4.** Each Member Team must pay an **initiation fee** when admitted into the League. The initiation fee may be adjusted annually by approval of a two-thirds (2/3) majority vote of the Member Teams. Associate Teams are not required to pay an initiation fee when admitted into the League.

**Section 5.** Each Member Team and Associate Team must pay an **annual license fee.** The license fee may be adjusted annually with approval of the Board. The license fee will be due upon execution of an Associate License for new Associate Teams. In all other cases, the annual license fee will be due and payable on May 1 of each year.

**Section 6.** The proposed name, nickname, logo, colors, and uniform design, and any modifications thereto, for each Member Team and Associate Team must be submitted in writing and in detail to the WPFL for Board approval.

**Section 7.** Subject to their respective License Agreement, each Team must notify the WPFL in writing of all transactions that might affect the transfer, sale, encumbrance, or assignment of a Team or which may materially alter the ownership of said Team. The Commissioner shall make such investigation, as is deemed necessary or desirable, a written summary of which will be furnished to the applicant and the Board. The Board of Directors must approve any such transaction unless two-thirds (2/3) of the Board of Directors votes to prohibit the transaction for cause that must be stated clearly in any such Board of Directors' rejection notice. Any remedy proposed by the Board of Directors to permit the transaction to proceed must accompany the notice. If any person holding an equity interest in a Team dies, her or his equity may pass by will or through intestacy, without the approval of the Board of Directors of the WPFL. Furthermore, any person owning an interest in a Team, directly or indirectly may transfer her or his interest to anyone already owning an interest in said Team without obtaining the approval of the Board of Directors, as long as such transaction is within the parameters of the License Agreement.

## ARTICLE VIII

### Withdrawal, Termination and Expulsion

**Section 1.** Any Team may withdraw from membership in the WPFL by tendering its written notice of withdrawal to the Commissioner and simultaneously terminating its License Agreement, making full payment of all license fees, fines, assessments, profit participation or other debts owned to the WPFL, or to the any other Team, however, such withdrawal may only be made before sixty (60) days prior to opening day for any season and after one day (1) following the date of the League Championship Game.

If any Team withdraws from the WPFL for any purpose, all right, title and interest in the WPFL, any rights in television and media contracts shall become the immediate property of the WPFL, the WPFL Irrevocable Trust or WPFL Promotions, LLC, as appropriate; and the withdrawing Team's share of all monies held by WPFL, the WPFL Irrevocable Trust or WPFL Promotions, LLC as agent for the withdrawing Team shall be forfeited.

**Section 2.**
A. A Team's membership in the WPFL may be suspended or terminated at any time by the affirmative vote of a majority of the entire Board of Directors, subject to subparagraph B below if:
1. The Team willfully violates any provision of these By-Laws, the rules and regulations of the WPFL set forth in the WPFL Policy and Procedures Manual, or the terms and conditions of the License Agreement with the WPFL under which the Team is granted rights to participate in the WPFL;

2. The Team fails to pay license fees, fines, assessments, profit participation or other debts owned to the WPFL or WPFL Promotions, LLC in the aggregate of $2,500 or more within ten (10) days after written notice from WPFL of such failure to pay;

3. The Team fails or refuses to fulfill its contractual obligations to the WPFL, another Team, players, coaches, or any other third party in such a way as to adversely affect the WPFL or the Teams;

4. The Team states in writing its intent to disband, or in fact disbands, or dissolves its business organization, or ceases its operation at any time;

5. The Team willfully fails to present itself and its players at the time and place it is scheduled to play in a WPFL regular season, playoff, or exhibition game.

B. A Team's membership in the WPFL may be suspended or terminated if any event described in the prior Section 2 Subsection A. Items 1. through 5. occurs, provided the following procedures are followed:

1. Any Team or the Commissioner may prefer charges that a Team has violated one or more of such Items 1. through 5. The charge must be made in writing and must be filed with the Commissioner. No later than ten (10) business days after the charges are filed, WPFL must serve, by registered mail, or overnight express courier, or telefacsimile, or e-mail, a copy of the charges to the Team against whom the charges were made.

2. The Team charged has five (5) business days after receipt of the charges to file its written answer with the Commissioner. The WPFL must then transmit the charges and answer to each Director and must call a special Board of Directors meeting to hear and rule on the charges.

3. The Commissioner shall preside the meeting.

4. At the hearing, the Team charged may appear by counsel. Strict rules of evidence do not apply, and all relevant and material evidence submitted may be received and considered.

5. After considering the evidence, the Board of Directors shall determine whether the charges have been sustained. A determination that the charges brought against a Team are valid shall require the affirmative vote of a majority of a quorum.

6. If the Board of Directors sustains the charges, the Board of Directors shall determine whether (a) to suspend the Team, or (b) to expel the Team from the WPFL, or (c) direct that the Team be suspended or expelled only if the Team fails to pay a stated fine in a stipulated manner and by a stipulated date. This fine may be required to be paid, in whole or in part, to any other Team or Teams or to the WPFL for damages sustained by reason of such act or acts of omission or commission by the offending Team.

7. The decisions of the Board of Directors made in accordance with these procedures are final and without further appeal. If the membership of offending Team is terminated pursuant to this Article, the membership of the Team shall automatically terminate.

## ARTICLE IX

### Competition

**Section 1.** The Women's Professional Football League ("WPFL") Rule Book shall be the rules used for play and applied by the referees.

**Section 2.** Only Certified WPFL Referees shall officiate WPFL games.

**Section 3.** The Board shall appoint a Football Operations Committee to investigate and make recommendation regarding rules of play, playing divisions, schedules, travel policy and procedure, information exchange, player drafts, qualification of officials, etc. The committee chair will be titled Director of Football Operations. The Director of Football Operations will be the spokesperson for the committee in presenting recommendations to the Board. Specific items the Football Operations Committee will present to the Board of Directors to be determine by majority vote include, but are not necessarily limited to: rules of play, the number of players permitted on a Team's game day roster, taxi squad and injured reserve list, player eligibility, player drafts, travel procedures, divisions, game schedule, qualification of officials, playoff format, and approved game ball.

## ARTICLE X

### General Violations and Prohibitions

It shall be a violation of these By-Laws and shall be deemed conduct detrimental to the WPFL and women's professional football for any player, employee, owner, director, official or referee or any personnel connected in any way with a Team or the WPFL:

A. To own stock or have more than a 5% financial interest directly or indirectly in more than one WPFL Team, or in any other women's professional football organization or team, except as allowed by Article IV hereof, without the prior consent of the WPFL Board.

B. To loan money to or become surety or guaranty for any other Team without the prior consent of the WPFL Board.

C. To loan money to or become a surety or guarantor for any WPFL referee.

D. To tamper with a player on the roster or reserve list of another Team.

E. To tamper with players of college teams who are not eligible under WPFL rules.

F. To enter an official's dressing room at any time (except to provide beverages and snacks on game day by non-management staff).

G. To publicize or take part in the promotion of any other Women's Professional Football All-League or All-Star team.

H. To make any statement publicly that is not in the WPFL's best interest (All complaints must be made to the Commissioner in writing and may not be given any publicity, either directly or indirectly).

I. To give any publicity to any disciplinary action taken by the Commissioner or the WPFL Board (the Commissioner, in her or his sole discretion, may issue a statement to the media she or he believes to be in the best interest of the WPFL).

## ARTICLE XI

### Rights Reserved to the Board of Directors

**Section 1.** From time to time, the Director of Football Operations as spokesperson for the Football Operations Committee may propose to the Board of Directors rules and regulations governing the eligibility or ineligibility of players for exhibition, regular season and playoff games. The enactment of said rules and regulations and their inclusion in the WPFL Policy and Procedures Manual shall be subject to approval by the Board.

**Section 2.** From time to time, the Director of Football Operations as spokesperson for the Football Operations Committee may propose to the Board of Directors rules and regulations governing the rights of Teams with respect to their players, including provisions for player drafts, the procedure for waiver of players as well as their acquisition by other Teams claiming the player following waiver, and the placement and removal of players from injured reserve lists. The enactment of said rules and regulations and their inclusion in the WPFL Policy and Procedures Manual shall be subject to approval by the Board.

**Section 3.** Contracts between a Team and its players and coaches must be in a form approved by the Board of Directors. All personnel contracts must be submitted for approval before entering into the agreement.

## ARTICLE XII

### League Games

**Section 1.** The WPFL Policy and Procedures Manual shall set forth the regulations to be followed at WPFL games for referees, scorekeepers, official times, statistical personnel, coaches, and trainers.

**Section 2.** The Board shall determine the playoff format, number of Teams eligible, seeding of Teams in first round and any seeding tie-breaking procedures. Any playoff format established by the Board shall continue in effect from season to season unless changed before the start of the season by approval of the Board.

**Section 3.** The WPFL shall license the exclusive right to promote and market the playoff games, the championship game, and the All-Star game to WPFL Promotions, LLC.

**Section 4.** The Director of Football Operations, in coordination with WPFL Promotions, LLC and consistent with the WPFL's obligations under any television or other broadcast contract, shall set the date and time for all playoff games, including the championship game, subject to approval by the Board. Refusal to play a game scheduled renders the offending Team, at the discretion of the Board, liable to a forfeit of the game, a fine, or both.

7

**Section 5.** The Board shall implement policy to be used for selection of All-Star teams.

**Section 6.** A Protest may only be made regarding a) **misapplication of rules** or b) **player eligibility** (which includes roster violations). The Head Coach must indicate to the Head Referee before the end of the game, the intent to file a protest regarding misapplication of rules. The Director or Head Coach must also submit a written misapplication of rules protest to the Commissioner (including the basis of the protest and any pertinent information) within 48 hours of the end of the game. The Director must submit a written player eligibility protest to the Commissioner (including the basis of the protest and any pertinent information) within 48 hours of becoming aware of the alleged player ineligibility. In no event will a protest be allowed for any previous season game subsequent to regular season opening day.

    a.  Such protest must be accompanied by a check in the amount of One Thousand Dollars ($1,000) payable to the WPFL. If the protest is allowed, the fee is returned; if the protest is denied, the fee is forfeited.

    b.  The protest must include the specific rule misapplied and the circumstances of the play in question or the name of the player whose eligibility is questioned.

    c.  Upon receipt of the protest, the Commissioner must notify the opposing Team and require both Teams to file such evidence as each desires. The Commissioner will decide the issue within five (5) days after receipt of the evidence.

    d.  Any Team may offer evidence with respect to another Team's protest.

    e.  The Commissioner may gather other evidence she or he deems appropriate.

    f.  The Commissioner's decision is final and not subject to appeal.

## ARTICLE XIII

### Broadcasting and Television

**Section 1.** International, national, regional, and network television or other broadcast coverage of pre-season, regular season and All-Star games and events and playoffs shall be negotiated and contracted for by WPFL Promotions, LLC on behalf of the WPFL and the Teams. All net income derived from these contracts shall be property of WPFL Promotions, LLC.

**Section 2.** Rights as outlined above shall include over-the-air free television, cable television, pay-per-view, Internet transmission or any other form of broadcast rights to all games.

**Section 3.** A Team may contract for broadcasting and/or television coverage of the Team's own home games. However, every broadcast or television contract entered into by a Team must preserve the right of preemption as may exist in the WPFL's international, national, regional, or network contracts. All proceeds derived by any Team from local broadcasting or television contracts shall belong entirely to the Member Team.

**Section 4.** Each home Team shall grant the visiting Team the right to permit or license the telecast or broadcast of the game then being played between them, subject to the preemption schedule of the WPFL's international, national, regional or network contracts.

**Section 5.** WPFL Promotions, LLC shall have the right to reschedule the starting time of any game in order to accommodate an international or national telecast, provided at least 72 hours written notice is provided to the Teams participating in the televised game with the rescheduled starting time and WPFL Promotions, LLC pays any additional travel costs required to get the Teams to the game location.

## ARTICLE XIV

### Merchandising, Licensing and Trademarks

**Section 1.** Each Team shall maintain or develop and register a trademark, trade name, service mark or collective mark to identify that Team. Each Team will co-license to the WPFL and WPFL Promotions, LLC the right to use such trademark, trade name, service mark or collective mark in national marketing and promotions.

**Section 2.** The right to license, produce, manufacture, publicize, market, sell, process and promote any and all Team merchandise, media exposure or activity on a national basis, shall be the exclusive right of WPFL Promotions, LLC. The foregoing notwithstanding, absent the existence of any pre-existing written restrictions on a Team from entering into a specific merchandising or sub-licensing program, each Team shall have the right to enter into local merchandising agreements.

## ARTICLE XV

### Board of Directors Meetings

**Section 1.** The annual meeting of the WPFL Board of Directors will be held each year after the championship game in the City where the championship game is played. The Secretary will notify all Directors of the time and place at least ten (10) days prior to the meeting.

**Section 2.** The Commissioner or Executive Director may call a special meeting of the Board of Directors at a time and place designated with notification to Directors at least five (5) days prior. Special meetings may be held by conference call or similar mode of communication.

**Section 3.** Notice by the Secretary is not required for any Board of Directors meeting duly scheduled at a Board of Directors Meeting.

**Section 4.** At all Board of Directors Meetings, each Team in Good Standing shall receive one (1) vote, to be cast by that Team's Director, or in her or his absence by her or his alternate, or by written proxy as permitted herein.

**Section 5.** A majority of the Directors of the Board representing Teams in Good Standing shall constitute a quorum for meetings of the Board. A quorum shall not be destroyed by the departure of any Director or Directors.

**Section 6.** All votes shall require the affirmative vote of a majority of voting Directors, unless otherwise stated in these By-Laws.

## ARTICLE XVI

### Notices

**Section 1.**

    A.    Any notice required by these By-Laws is sufficient if in writing and addressed and e-mailed or mailed via United States Postal Service (with any required postage prepaid) to the last known e-mail address or mailing address of the addressee, or if personally serviced, or if delivered by telefacsimile, unless these By-Laws specifically require some different notice.

    B.    The Board of Directors may adjourn any meeting without the requirement of a further notice to reconvene.

    C.    Any required notice must reach each Director in due time. For the annual meeting only, due time shall be ten (10) days prior to the meeting. For a special meeting it is five (5) days.

**Section 2.** Notice of any special meeting must include the purpose or purposes of the meeting and its time and place.

## ARTICLE XVII

### Miscellaneous

**Section 1.** All By-Laws previously adopted are hereby repealed.

**Section 2.** The Board of Directors may establish such regulations, as are necessary and proper to implement any and all of the objectives or purposes of these By-Laws.

**Section 3.** Any action that the Board of Directors can take or adopt which because of its urgent nature cannot await the next Board of Directors meeting may be taken or adopted by a writing describing the action and signed or telegraphically consented to by all of the Directors.

## ARTICLE XVIII

### Amendment

**Section 1.** With exceptions of any Article or Section referring to the license agreement by and between the WPFL and WPFL Promotions, LLC, these By-Laws may be amended at any Board of Directors Meeting by the affirmative vote of the Board.

**Section 2.** Any article of section referring to the license agreement by and between the WPFL and WPFL Promotions, LLC may be amended or repealed at any Board of Directors Meeting only by the unanimous affirmative vote of all the Directors.

### ARTICLE XIX

#### Language and Currency

**Section 1.**  The official language of the WPFL shall be English, and all communications shall be sent to Teams in English.  In addition, all written communications from the Teams to the League shall be in English.

**Section 2.**  The official currency of the League shall be United States currency (dollars), and therefore, all initiation fees, license fees, fines, assessments and payments due to or from the Teams shall be payable in United States currency.

Acceptance and affirmation of this revised Constitution and By-Laws is approved by the majority of the Board of Directors and is evidenced by the following signings.

**Affirmation:**


_____    _____
Robin D. Howington, Director                      Date
Houston Energy


_____    _____
Donna M. Roebuck, Director                       Date
Austin Rage


_____    _____
Melissa A. Korpacz, Director                       Date
New England Storm


_____    _____
Dawn Berndt, Director                               Date
Dallas Diamonds


_____    _____
Rufino Uribe, Director                               Date
Arizona Knighthawks


_____    _____
Elizabeth Markell, Director                         Date
Syracuse Sting


_____    _____
Charleen Daniels, Director                          Date
Indiana Speed


_____    _____
Holly Barrett, Director                               Date
Wisconsin Riveters