# EXHIBIT A

**WPFL**

*Women's Professional Football League*

## CONFIDENTIAL

### February 23, 2004

**VIA FACSIMILE**
(Original to follow by U.S. Mail)
(Supplemental Notice provided by e-mail)

Ms. Melissa A. Korpacz
P.O. Box 808
Medford, MA  02155

Re:   Notice Of Charges

Dear Ms. Korpacz:

Pursuant to Article VIII, Section 2(B)(1), of the Constitution And Bylaws Of The Women's Professional Football League (the "WPFL Bylaws"), this is to serve as official Notice of certain charges being pressed against you and the New England Storm (hereinafter "respondent").

The written charges submitted by Teams or third-parties were received by this office on the dates indicated, and are copied and attached for your review. The Commissioner's charges are set forth in this Notice. Pursuant to Article VIII, Section 2(B)(2) of the WPFL Bylaws, you are required to file your written response with this Office no later than five (5) business days after your receipt of these charges.

| Tab A | Charges Submitted By Robin Howington, As Former Executive Director of the League and As President of the Houston Energy |
|---|---|

Alleges:   (1)   that respondent committed an illegal act prohibited under state and federal laws by causing charges to be placed on Robin Howington's credit card without authorization, which conduct constitutes a willful violation of Section 11, Item 10 of the WPFL Policy and Procedures Manual;

*NG*

5631 Dorbrandt Street, Houston, Texas 77023
Phone (713) 926-7677  Fax (713) 921-1881
www.womensprofootball.com

*"IT'S OUR TURN TO PLAY!"*

**CONFIDENTIAL**

Ms. Melissa A. Korpacz
February 23, 2004
Page Two



(2)     that respondent committed two illegal acts prohibited under state law by issuing checks to the League that were returned (bounced) due to insufficient funds, which conduct constitutes willful violations of the WPFL Bylaws, specifically Article VII, Section 5 and Article VIII, Section 2(A)(2) thereof;

(3)     that respondent entered the locker room of a Visiting Team without authorization, which conduct constitutes a willful violation of Section 10, Item 1 of the WPFL Policy and Procedures Manual;

(4)     that respondent committed an illegal act within the meaning of state and federal anti-discrimination laws by touching or groping Robin Howington's breasts in front of Houston Energy players, which conduct constitutes a willful violation of the League's sexual harassment policy set forth in Section 11, Item 8 of the WPFL Policy and Procedures Manual;

(5)     that respondent's Team failed to appear for and play a scheduled game during the 2002 season, which conduct constitutes a willful violation of Article VIII, Section 2(A)(5) of the WPFL Bylaws;

(6)     that respondent defied a formal resolution of the board requiring respondent to hire a general manager and to report to the board if such individual separated from the Team for any reason, which conduct constitutes a willful violation of Article VIII, Section 2(A)(3) of the WPFL Bylaws;

(7)     that respondent defied the express instruction of the Executive Director by attempting to pay the Team's 2003 license fee with miscellaneous third-party checks in lieu of sending a single payment from the Team's account (this is or may be related to the bounced check allegations in paragraph 2, above), which defiance constitutes conduct detrimental to the League in willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedure Manual;

**CONFIDENTIAL**

Ms. Melissa A. Korpacz
February 23, 2004
Page Three

    (8)    that respondent failed to maintain acceptable standards of personal behavior in her communications with the Executive Director regarding another Team, which conduct constitutes a willful violation of Section 11, Item 8 of the WPFL Policy and Procedures Manual;

    (9)    that respondent failed to maintain acceptable standards of personal behavior, and engaged in conduct detrimental to the League, in her communications with other board members regarding the Executive Director's discharge of her duties, which conduct constitutes a willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual;

    (10)    that respondent failed to maintain acceptable standards of personal behavior, and engaged in conduct detrimental to the League, in her communications with players concerning the Commissioner's discharge of her duties, which conduct constitutes a willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual; and

    (11)    that respondent failed to maintain acceptable standards of personal behavior, and engaged in conduct detrimental to the League, by threatening the League with retaliatory legal action, which conduct constitutes a willful violation of Article VIII, Section 2(B)(7) of the WPFL Bylaws, and also, Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual.

**Tab B**    **Charges Submitted By Dawn Berndt, As Owner of the Dallas Diamonds**

Alleges:    (1)    that respondent failed to maintain acceptable standards of personal behavior by using profane, offensive and unprofessional language in her communications with a Dallas Diamonds player, which conduct constitutes a willful violation of Section 11, Item 8 of the WPFL Policy and Procedures Manual;

## CONFIDENTIAL

Ms. Melissa A. Korpacz
February 23, 2004
Page Four

    **(2)**    that respondent failed to maintain acceptable standards of personal behavior by using profane, offensive and unprofessional language in her communications with a representative of the Football Network, which conduct constitutes a willful violation of Article X, Section H of the WPFL Bylaws, and also Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual; and

    **(3)**    that respondent committed an illegal act prohibited under state and federal laws by causing charges to be placed on the Diamonds' credit card without authorization, which conduct constitutes a willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual.

**Tab C**    **Charges Submitted By Charleen Daniels, As Owner of the Indiana Speed**

Alleges:    **(1)**    that respondent failed to maintain acceptable standards of personal behavior in her communications with a representative of the Speed's travel agency, which conduct constitutes a willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual;

    **(2)**    that respondent committed an illegal act prohibited under state law by issuing a check to a bus company vendor that was returned (bounced) due to insufficient funds, which conduct constitutes a willful violation of Article VIII, Section 2(A)(3) of the WPFL Bylaws, and also, Section 11, Item 10 of the WPFL Policy and Procedures Manual;

    **(3)**    that respondent misrepresented certain material facts in her communications with United Airlines, which conduct constitutes a willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual;

**CONFIDENTIAL**

Ms. Melissa A. Korpacz
February 23, 2004
Page Five

NG     (4)     that respondent failed to maintain acceptable standards of personal behavior during a post-game party attended by players of an opposing Team, which conduct constitutes a willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual; and

G     (5)     that respondent failed to fulfill her/its contractual obligations to a sister Team, which conduct constitutes a willful violation of Article VIII, Section 2(A)(3) of the WPFL Bylaws, and also constitutes conduct detrimental to the League in violation of Section 11, Item 10 of the WPFL Policy and Procedures Manual.

**Tab D**     **Charges Submitted By Cabrina Gilbert and Beth Markell, As Owners of the Syracuse Sting**

Alleges:     (1)     that respondent failed to fulfill her/its contractual obligations to a sister Team in connection with paying for required travel, which conduct constitutes a willful violation of Article VIII, Section 2(A)(3) of the WPFL Bylaws;
W

G     (2)     that respondent failed to maintain acceptable standards of personal behavior in her communications with sister Teams, which conduct constitutes willful violations of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual;

G     (3)     that respondent committed an illegal act prohibited under state and federal laws by causing charges to be placed on the Syracuse Sting's credit card without authorization, which conduct constitutes a willful violation of Section 11, Item 10 of the WPFL Policy and Procedures Manual;

G     (4)     that respondent committed an illegal act prohibited under state law by converting or appropriating funds belonging to another for her own use and benefit, which conduct constitutes a willful violation of Section 11, Item 10 of the WPFL Policy and Procedures Manual; and

**CONFIDENTIAL**

Ms. Melissa A. Korpacz
February 23, 2004
Page Six


(5)   that respondent failed to maintain acceptable standards of personal behavior in her communications with hotel staff while attending an away game, which conduct constitutes a willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual.


**Tab E**         **Charges Submitted By The Commissioner**

Alleges:    (1)   that respondent committed an illegal act within the meaning of state and federal anti-discrimination laws by touching or groping Robin Howington's breasts in front of Houston Energy players, which conduct constitutes a willful violation of the League's sexual harassment policy set forth in Section 11, Item 8 of the WPFL Policy and Procedures Manual;

(2)   that respondent repeatedly failed to maintain acceptable standards of personal behavior in her communications with the League Office, which conduct constitutes willful violations of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual;

(3)   that respondent repeatedly failed to maintain acceptable standards of personal behavior in her communications with the League Office concerning other Teams and owners, which conduct constitutes willful violations of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual;

(4)   that respondent repeatedly failed to maintain acceptable standards of personal behavior in her communications with the Commissioner's Office concerning other Teams and owners, which conduct constitutes willful violations of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual;

**CONFIDENTIAL**

Ms. Melissa A. Korpacz
February 23, 2004
Page Seven

(5)  that respondent repeatedly failed to maintain acceptable standards of personal behavior in her communications with the Commissioner, which conduct constitutes willful violations of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual;

(6)  that respondent made materially false statements to the Commissioner's Office regarding her compliance with the board's requirement that the New England Storm turn over Team operations to a qualified general manager, which conduct constitutes a willful violation of Section 11, Item 10, and also falls within the provisions of Section 11, Item 13 of the WPFL Policy and Procedures Manual;

(7)  that respondent failed to fulfill her/its contractual obligations to the League by failing or refusing to turn over Team operations to a qualified general manager, which conduct constitutes a willful violation of Article VIII, Section 2(A)(3) of the WPFL Bylaws;

(8)  that respondent deliberately and covertly violated the terms of suspension imposed by the Commissioner on July 9, 2003, which conduct constitutes a willful violation of Article VIII, Section 2(A)(3) of the WPFL Bylaws, and also falls within the provisions of Section 11, Item 13 of the WPFL Policy and Procedures Manual;

(9)  that respondent induced Erich Kennedy, the (2003) general manager of the New England Storm, to make materially false statements to the Commissioner's Office in connection with his certification of compliance with the July 9, 2003 suspension, which conduct constitutes a willful violation of Section 11, Item 10 of the WPFL Policy and Procedures Manual, and also falls within the provisions of Section 11, Item 13 of the WPFL Policy and Procedures Manual;

**CONFIDENTIAL**

Ms. Melissa A. Korpacz
February 23, 2004
Page Eight

(10)    that respondent failed to maintain acceptable standards of personal behavior in her communications with another owner by threatening to hit the owner with a beer bottle, which conduct constitutes a willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual;

(11)    that respondent failed to maintain acceptable standards of personal behavior in her communications with another owner during the awards presentation after the Championship Game, which conduct constitutes a willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual;

(12)    that respondent instigated a conflict between two sister Teams for her own personal gain or satisfaction, which conduct constitutes a willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual, and also falls within the provisions of Section 11, Item 13 of the WPFL Policy and Procedures Manual;

(13)    that respondent failed to maintain acceptable standards of personal behavior in her communications with the staff of her host stadium, which conduct constitutes a willful violation of Section 11, Item 8 and Section 11, Item 10 of the WPFL Policy and Procedures Manual, and also falls within the provisions of Section 11, Item 13 of the WPFL Policy and Procedures Manual; and

(14)    that respondent has failed to fulfill her/its contractual obligations to the League by continually defying the authority vested in the Office of Commissioner, which conduct constitutes a willful violation of Article VIII, Section 2(A)(3) of the WPFL Bylaws, and also falls within the provisions of Section 11, Item 13 of the WPFL Policy and Procedures Manual.

**CONFIDENTIAL**

Ms. Melissa A. Korpacz
February 23, 2004
Page Nine


Please forward your original response to the League office at 5631 Dorbrandt Street, in Houston, Texas. A copy also should be sent to the Executive Director. At least one copy must be filed with the Office of the Commissioner. You are welcome to submit a copy to this Office by fax.

As you know, the board is required to convene a hearing on the charges after your written response has been received and other board members have been notified. The hearing on the charges is tentatively scheduled to take place at 9:00 a.m., on March 6, 2004, in Phoenix, Arizona.

Please know I am dedicated to upholding the Constitution and Bylaws of the WPFL, which includes a commitment to due process for you and all other interested parties.

Sincerely,

Lisa I. Vessey
WPFL Commissioner


Attachments

cc:   Executive Director (via e-mail)
      Associate Executive Director (via e-mail)

05/14/04  06:42 FAX                                                                  ☒011

Case 1:04-cv-10735-RWZ    Document 69-2    Filed 04/29/2005    Page 11 of 34
                                                  7132220938        T-969  P.011/028  F-574
05-13-2004  05:35pm    From-FRANKLIN CARDWELL JONES

# EXHIBIT A

Commissioner Vessey,

It is with much sadness and frustration that I am filing the following charges against Missi Korpacz of the New England Storm. Missi has had late license fees for the last 2 seasons. She has bounced 2 checks to this league. She has lost 3 teams and staff in the last 4 years. She has used other teams credit cards without authorization. She was 7 months late in paying her officials for the 2002 season, and that was paid by then because you (the commissioner) said you would take disciplinary action if past debts were not paid. She was late in paying her fine for not showing up at the Syracuse game, the board had to have another meeting on getting her an extension, which we did. We (the league) office have receive letters and phone calls in the past 3 years complaining about her poor and unprofessional treatment of players, staff, coaching staff and other WPFL owners. When some of these charges occurred, she was our Executive Director, who also was acting as our Commissioner, since we did not have one. I have never had business dealings with such an unprofessional, hostile, hot-tempered person before. This board has spent numerous hours in trying to help improve relations between Missi Korpacz and fellow team owners and individuals outside of the WPFL. It seems as though it is always something with Missi or her team and this has caused this league many of lost productive hours. Even though we have provided countless hours in helping and supporting Missi, I believe she has caused serious harm to the WPFL and women's football.

Respectfully,
Robin Howington
Houston Energy
President

## Charges made against Missi Korpacz of the New England Storm by Robin Howington of the Houston Energy

1) March of 2002—Violation—Unauthorized credit card charges on Robin's credit card at Radisson Hotel in Houston during semi-annual league meeting.
   a) To authorize or use someone else's credit card is against the law.
   b) Reference: Policy & Procedures Manual-Section 11, Item 10-Conduct detrimental to the league.
   c) Missi was asked why she authorized my credit card to pay for rental on a TV/VCR and her response was she did not authorize it. The hotel staff pointed her out to me and said she was the one who authorized the charge on my card. This rental staff did not realize she was not I, since my card was the one paying for charges pertaining to the league meeting they thought she was I.

2) May of 2002—Violation—Two $2500.00 bounced checks given to league office for license fees for 2002 season.
   a) Bouncing a check is against the law.

b) Reference: WPFL By-laws-Article VII, Section 5=Licence fees are due & payable on May 1 of each year.
c) Reference: WPFL By-laws-Article VIII, Section 2, Item 2=A teams membership in the WPFL may be suspended or terminated at any time by the affirmative vote of the board of directors if a team fails to pay license fees, owed to the WPFL in the aggregate of $2500.00 or more within 10 days after written notice.

3) September of 2002—Violation—Mutual Respect Policy
   a) Reference: WPFL Policy & Procedures Manual-Section 11, Sexual Harassment
   b) Missi drove down with Dawn from Dallas to see a Houston Energy home game. When she arrived at the stadium she came in the Energy locker room without permission and found me changing into my equipment. While my hands were in the air putting on my jersey, Missi grabbed my breasts and said she did not realize that I was that big. This was done in front of several of my players. I told her not to ever do that again. After she left, one of my players asked me who she was and I told them she was the Executive Director of the league.
   c) The WPFL Policy and Procedure Manual clearly states that a violation of our Mutual Respect Policy, specifically Sexual Harassment, will result in immediate termination from the WPFL.

4) November of 2002—Violation—Boards Decision and Punishment not upheld
   a) Missi Korpacz and the New England Storm were found guilty of violating Article VIII, Section 2, Item 5 of the By-Laws, which is failure to have your team show up at a game. After her third team and staff leaving the Storm, the board tried to help Missi gain control of her team so that we did not have to worry about this happening in the 2003 season. The board gave her a directive to hire and keep a General Manager and told her that she could not fire or get rid of this GM without the board's approval. This was set into place instead of suspension or expulsion. A few months later I got word that he was no longer with the Storm, I asked Missi and she said he quit. I asked why we were not notified and she said she forgot. I also asked if I could have his phone number to verify whether he quit or was fired, she said it was not my concern or business.

5) May 2003—Violation—Mutual Respect Policy
   a) Reference: Policy & Procedure Manual—Section 11—Mutual Respect Policy
   b) A mutual respect violation is defined as verbal, visual, or physical conduct that unreasonably interferes with work performance or creates an intimidating, hostile or offensive working environment.
   c) Missi called the league office and asked if it was okay to send in player tryout checks in order to pay her license fee. I told her no, because it would be cleaner to have one check from her or the New England Storm. I did not want the league to have to go around collecting league fees, because a player tryout fee did not clear and also have to remember who those checks where for. She sent them anyway. When I asked her why, she said Dee (Treasurer) would deposit them. She did not respect my position as Executive Director nor my business advice and went to who ever she could to get what she wanted. Missi does what Missi wants to do when Missi wants to do it. It is up to everyone else to conform.

5) September, October, November 2003—Violation—Mutual Respect Policy
   a) Reference: Policy & Procedure Manual—Section 11—Mutual Respect Policy
   b) A mutual respect violation is defined as verbal, visual, or physical conduct that unreasonably interferes with work performance or creates an intimidating, hostile or offensive working environment.
   c) I received phone call after phone call over the months above from Missi telling me that she would stop at nothing to get the Florida Stingrays and Lizz Bartolo out of this league. I told her not call this office unless she had some WPFL business to discuss. At the end of December, First of January I was notified by Lizz and Angela that they no longer wanted to own the Florida Stingrays and wanted to get approval from the league on the ownership transfer. They both told me that they have never been part of something with so much unbelievable drama. They said that Missi had it out for them from the get go and that it made their presence in the WPFL very hard to be successful.

6) November 2003—Violation—Mutual Respect Policy
   a) Reference: Policy & Procedure Manual—Section 11—Mutual Respect Policy
   b) A mutual respect violation is defined as verbal, visual, or physical conduct that unreasonably interferes with work performance or creates an intimidating, hostile or offensive working environment.
   c) For the first time since the WPFL's existence, I left the November meeting early for business reasons. After leaving the meeting, I received several phone calls from fellow board directors telling me about Missi accusing or questioning, misallocation or misappropriation of WPFL funds by myself. I did not write any checks that were not approved by the board in our annual budget or voted on by the board. I have no problem with any director or officer from the WPFL questioning our books. The problem I do have, is that this was brought up when I was not present and could not defend myself or answer any questions. I confronted Missi after the meeting was over and she said "I know that you had done nothing wrong, I was just mad at you." This is a professional business to me and I do not appreciate someone trying to discredit me. I have always tried to do people and things right in life. Respect and integrity is something that is continually earned; I will not let someone like Missi tear down what I have worked hard for all my life.

7) February 20, 2004—Violation—By-Laws
   a) Reference: By-Laws—Article X—Item H &I
   b) The article above reads: To make a statement publicly that is not in the WPFL's best interest (All complaints must be made to the commissioner in writing and may not be given publicity, either directly or indirectly).
   c) Missi informed me on the date above that all of her 35 players were ready to hop on a plane and come to the league meeting because they were so upset at how our commissioner was treating her. The commissioner was investigating Missi and the players, coaches, and some staff should not even be told of these events. The league office, officers and commissioner has done no such thing, but yet Missi keeps letting her team hear how bad she is being treated. This is bad business and could cause problems for Missi and the league latter.

8) February 20, 2004—Violation—Mutual Respect Policy
   a) Reference: Policy & Procedure Manual— <u>Mutual Respect Policy</u>
   b) I received a phone call from Missi on the date above trying to convince me that something needs to be done to the commissioner of our league. She said, if the board does not get the commissioner under control and leave the Storm and herself alone, or if the board tries to suspend the Storm for a season that she would have an injunction put on the WPFL so that all teams could not play football. I told her that she would not stop the Energy from playing football and that, we would be playing, despite her treats. I will not be bullied into doing something that I do not agree with. Missi likes to call and get people to rally with her on issues without telling them the whole story or the truth.

9)

# EXHIBIT B

DATE: February 21, 2004

TO: Commissioner Vessey

RE: Response to your 2/17/04 Report of Investigation

I wish to formally charge New England Storm Owner, Missi Korpacz, with the following three charges:

1.) During a home game with the New England Storm in 2002, Missi became angry at my team when one of her players unfortunately got injured. Missi became further agitated and alleged that a comment was made by one of my players, Sue Horton. When the teams were slapping hands at the conclusion of the game, Missi addressed Sue using profane, offensive, and unprofessional language. This is a clear violation of the WPFL Mutual Respect Policy. (WPFL Policy and Procedures: Section 11 - Personal Conduct, Item 8 - Misconduct)

2.) During the trip to New England for our October game, I had scheduled an appointment with the Football Network to receive and discuss a proposal for the league. I was to meet them with my general manager, Amy Ashkinazy, to discuss beginning a working relationship. It was to be a fact finding and information exchange meeting. Missi found out about the meeting, and called the Football Network the day before my scheduled meeting. During the course of her conversation, Missi used profane, offensive, and unprofessional language. The next day when Michael Kerrigan from the Football Network met with Amy and I, his first words were, "Who is Missi Korpacz and why did she call and cuss me out?" He was not pleased with the interaction, and the end result has been a refusal of the Football Network to work with the WPFL. This is a violation of the Mutual Respect Policy, and is clearly conduct detrimental to the WPFL, a violation of the By-laws. (WPFL Policy and Procedures: Section 11 - Personal Conduct, Item 8 - Misconduct and Item 10 Conduct Detrimental to the League), and, (Constitution and By-laws: Article X, letter H.)

3.) The Championship Game was played in Dallas in 2002. As is customary, the home venue organizes the board meeting. I reluctantly held the hotel conference room on my team credit card, but I was assured that the WPFL would be paying the actual bill so that my card would not be charged. Missi was the Executive Director of the league at the time and was fully aware that the league did not have a credit card. Without my knowledge, she proceeded to tell the front desk to charge her personal hotel room to the card holding the conference room. (This was confirmed by the hotel front desk staff.) This charge was made to my credit card fraudulently, without my authorization. Additionally, as of this date, and after numerous attempts to settle this situation, Missi still owes me $20 from this incident. This conduct is not only a violation of the WPFL Mutual Respect Policy. (WPFL Policy and Procedures: Section 11 - Personal Conduct, Item 8 - Misconduct), but it violates Federal and State laws governing Credit Card Fraud (potential example: US Title 18, Part I, Chapter 47, Sec 1029).

Sincerely,

Dawn Berndt
Owner Dallas Diamonds

# EXHIBIT C

## Lisa Vessey

| | |
|---|---|
| **From:** | Charleen Daniels [inspeed0@yahoo.com] |
| **Sent:** | Sunday, February 22, 2004 8:03 PM |
| **To:** | lvessey@goldstickassociates.com; markell123@aol.com |
| **Cc:** | sandi@vcdesignstudio.com |
| **Subject:** | Charges against New England Storm |

Dear WPFL Commissioner:

The Indiana Speed are filing charges against the New England Storm for incidents starting in August 2002 and continuing until December 2002. The evidence in the charges are going to have to faxed to you the first on the week. I will be able to get to the Speed files on Monday February 23, 2004.

Here is a synopsis of the charges. First, she harassed and abused our travel agency who was handling the flight plans for the Speed/Storm game. Also, a check from the New England Storm bounced to the bus company from the game on or about August 31, 2002.

Sandi Groth has the details of the arrangement made at the time. She will be providing a statement as to the conversations with Ms. Korpacz. Also, if required, our travel agent can provide a statement as to the harassment from Ms. Korpacz.

There was also misrepresentation by Ms. Korpacz to United Airlines. This is regarding the refund check from the trip the New England Storm made to Indiana. This can be proven through our travel agent. Seeing as Uniworld Travel was the "customer" of United, the refund check would be sent to Uniworld and then forwarded to the Speed. This will make more sense as to the statement provided from Sandi Groth.

There was also disrespect from Ms. Korpacz at the post game party. This came from the players at the post game. I was unable to attend due to being at the hospital with 2 players. I can say I was displeased with the fact that we did not see or receive a call from any New England staff as to the concern of our players. It was conveyed to me that Ms. Korpacz popped open a bottle of champagne to celebrate their first win of the season. All this was done in front of both teams. Might I add that the Speed had been on a bus for 23 hours, stuck on the Hudson Bay Bridge, and the game got started late because of holiday traffic. The bus was due to the fact that the Speed did not have the money to pay for 1/2 a flight to New England and pay for New England to come to Indiana. Part of this was the arrangement made between Sandi Groth and Missi Korpacz. Ms. Korpacz was aware of the facts the Speed had been through.

I would like to say that Ms. Korpacz's conduct violated the WPFL ByLaw's Article X Section H and the WPFL Mutual Respect Policy.

At the time all this started the WPFL did not have a Policy and Procedure Manual in place to follow. Those became a source of conduct on or about September 7, 2002.

It was also ruled at the meeting in November of 2002, that if the New England Storm recovered any monies from the players who did not show up for the Indiana Speed trip, the Speed was to recoup 1/2 the monies. To this date, we have not received a statement of any amount received. I would like to have any proof that the Storm did in fact follow up with the legal ramifications Ms. Korpacz had spoke of in November 2002.

2/23/04

Charleen Daniels
Co-Owner
Indiana Speed, LLC

Do you Yahoo!?
Yahoo! Mail SpamGuard - Read only the mail you want.

2/23/04

# EXHIBIT D

Date: February 21, 2004

To:  Commissioner Vessey

We have received and reviewed your February 17, 2004 Report of Investigation regarding Missi
Korpacz.  The following are formal charges that the Syracuse Sting wish to make against Missi
Korpacz:

1.)  In August of 2003 we were involved in discussions with Sarah McClain from the Dayton
Rebellion about how to handle when a team receives a bus sponsorship, as Dayton had
received a sponsorship for their New England game.  Sarah reported that Missi had insisted
that they split the sponsorship savings.  Then on August 27, 2003 we received an e-mail (Bus
Sponsor #1) from Missi requesting to change the policy of providing for and purchasing your
own home game transportation because she had landed a bus sponsor.  On August 28, 2003 we
responded via e-mail (Bus Sponsor #2) with the heart of the message being:

*"Since you have found it fair and acceptable to insist that the Dayton Rebellion split their
bus sponsorship savings with you 50/50, we feel that it is only fair and acceptable for us to
receive the same consideration... In addition, because this request is coming after the start of
the season, we assert that the current WPFL protocol must be followed, requiring the home
team to fund the transportation of the visiting team.  We are not comfortable placing
ourselves at risk with any other alternative situation.  If we pay our own way to Boston...we
then, solely shoulder the complete risk of not having a team show up for our home opener."*

We ended the e-mail with a suggestion of how we could be in compliance with the policy,
and yet still share the sponsorship benefit in the same way she had instructed Sarah.

On Friday August 29, 3003 at 8:14 am, Missi sent an e-mail (Bus Sponsor #3) explaining her
arrangement with Sarah in much different terms than Sarah had explained to us.  Beth
proceeded to call Sarah that morning around 9:00am.  Sarah confirmed that Missi had called
her at around 8:00am that morning and had changed the terms of the arrangement
dramatically from what they had been negotiating before.

We left on the team bus for Indiana, but sent Missi an e-mail (Bus Sponsor #4) on September
3, 2003 upon our return stating that we knew that she had changed the terms with Sarah, but
it was still our contention that the WPFL Policy had to be followed.

On September 3, 2003, Missi returned our e-mail (Bus Sponsor #5).  The e-mail contains the
following ultimatum as well as other inflammatory statements:

*"Here is the choice you have...either accept my $950.00 for your bus or I will go back to my
bus company and let them know that I do not want their bartering sponsorship and ask them
for a $2000.00 invoice and I will submit that to you instead.  Make the decision and let me
know.  Accept the 950.00 or I will go to my bus and get a 2,000 quote and get cash from them
instead."*

This level of coercion, and deceptive manipulation is a clear violation of the WPFL Mutual
Respect Policy, and can no longer be tolerated! (WPFL Policy and Procedures: Section 11 -
Personal Conduct, Item 8 - Misconduct)

2.) Following the October 20, 2002 game with New England that did not take place, we became aware of a credit card charge for $550 from Missi's Bus Company. The company had charged our credit card for 1/2 payment even though the trip didn't take place. We exchanged several phone calls and e-mails with Missi as well as the Bus Company to try to resolve this issue. Jerry from the Bus Company claims that they attempted to seek payment from Missi on 10/18/02. He states that she told them to "take the payment from the same credit card that paid for their first trip." However, on 10/21/02, Missi was paid a sum of $2255 in cash at Hooligan's Restaurant in Syracuse. This money was counted twice for accuracy by both Beth Markell and Cabrina Gilbert, and was then immediately given to Missi who was asked by Beth to count it on the spot for accuracy. Syracuse Captain, Shannon Lamie, went with Beth to witness the exchange of money and can attest to the statement's accuracy. We are out not only the $550 that was charged on the credit card for a bus that didn't make the 10/20/02 trip, but we are also out the $1675 cash payment that was given to Missi on 9/21/02 to pay for that same 10/20/02 trip! This charge was made to our credit card fraudulently, without authorization. Additionally, as of this date we have not been able to recover any of the $1675 cash payment. We are still trying to get the credit card situation resolved in small claims court, or with the Federal Trade Association. This conduct is not only a violation of the WPFL Mutual Respect Policy, (WPFL Policy and Procedures: Section 11 - Personal Conduct, Item 8 - Misconduct), but has potential legal implications for Credit Card Fraud.

3.) The New England Storm was scheduled to play in Syracuse on September 29, 2001. We arranged for the team to spend the night at our sponsor hotel, The DoubleTree Club Hotel. Check in time was at 3:00pm, and game time was at 7:00pm. In discussing travel plans, Missi was alerted to the fact that the Syracuse University Orangemen were playing a home game the same evening as our game. She was alerted to the implications this had on traffic, attendance, and hotel check-in, specifically, that the Syracuse University players receive a late check out from our hotel, and therefore early check-in was not going to be available for the New England Storm players. New England arrived that morning at 11:30am and began to press the desk staff for early check-in. The situation further elevated about an hour or so later when Missi arrived separately from the team and began a tirade in the hotel lobby. I reminded Missi of our conversation about the check-in situation, but she continued to berate the hotel staff and made a scene in the lobby. She pulled her team from the hotel and went to the Ramada Inn next door despite the fact that half the team had already checked into the available rooms. This created a situation for the housekeeping staff, which had to clean those rooms twice. This is a violation of the Mutual Respect Policy, and is clearly conduct detrimental to the WPFL, a violation of the By-laws. (WPFL Policy and Procedures: Section 11 - Personal Conduct, Item 8 - Misconduct and Item 10 Conduct Detrimental to the League), and, (Constitution and By-laws: Article X.)

The following is a transcript of a letter from the DoubleTree Club Hotel's Reservation/Desk Manager. I have faxed a copy of the Original to you for inclusion:

05/14/04  06:45 FAX                                                                    ☑024

05-13-2004   05:37pm   From-FRANKLIN CARDWELL JONES   Case 1:04-cv-10735-RWZ   Document 69-2   Filed 04/29/2005   Page 24 of 34   T-950  P.024/034  F-574

*Dear Beth:*

*I would like to begin by saying how much the DoubleTree Club Hotel values its relationship with the Syracuse Sting, and would like to express our sincerest hope that this relationship will continue for many years to come. This being said, I would like to address the incident that occurred with the New England Storm on September 29, 2001.*

*As you know, the DoubleTree Club Hotel prides itself on maintaining the highest standard of customer service. We are committed to the professional and courteous resolution of situations that arise for our guests. However, the volatile behavior displayed by the New England Storm owner, the verbal threats made toward my staff, and her unwillingness to resolve this issue in a reasonable manner, has led the management to request that you find alternative accommodations for this particular team should they return to town in the future. We believe that this would be in the best interest of our guests and our staff.*

*Again, we look forward to a continued relationship with the Syracuse Sting for many years to come and we hope that you can understand our concerns and position on this matter.*

*Sincerely,*
*Christie Krause*
*Reservation/Desk Manager*

(See Faxed copy of original document on DoubleTree letterhead.)


Respectfully Submitted,
Cabrina Gilbert & Beth Markell
Co-Owners, The Syracuse Sting


**Supporting Documents:**
Bus Sponsor #1 e-mail
Bus Sponsor #2 e-mail
Bus Sponsor #3 e-mail
Bus Sponsor #4 e-mail
Bus Sponsor #5 e-mail
CC Payment #1 e-mail
CC Payment #2 e-mail
CC Payment #2 & #3 e-mail
CC Payment #4 e-mail
DoubleTree Document (via fax)

# EXHIBIT E

## Lisa Vessey

| | |
|---|---|
| **From:** | squires12 [squires12@mail.ev1.net] |
| **Sent:** | Thursday, February 19, 2004 10:58 AM |
| **To:** | markell123@aol.com; lvessey@goldstickassociates.com |
| **Cc:** | info@houstonenergyfootball.com |
| **Subject:** | New England Complaint |



Nba letter.doc

Commissioner Vessey and Executive Director Beth Markell,

I have attached a letter below in regards to conduct displayed by Missi Korpacz, owner of the New England Storm.

Thank you for your time and if you have further questions regarding these issues please call me at 713-926-7677 on the Houston Energy/WPFL phone line.

Shelley Squires
Houston Energy

Sent via the EV1 webmail system at mail.ev1.net

February 18, 2004


Commissioner Vessey,

My name is Shelley Squires and I am the team manager for Houston Energy. I also
volunteer my time in the WPFL office answering phone calls, e-mails and various other
tasks needed to assist Robin with her duties. I would like to submit information
regarding Missi Korpacz, owner of New England Storm. I believe that Missi is a
detriment to women's football and the WPFL. I feel that if she continues to associate
herself with this league and represent the WPFL, she will run this league into the ground.
I will now explain why I have come to this conclusion and I believe you will feel the
same after reading this letter.

I have been a player for the WPFL and Houston Energy all 4 years of our existence and
have witnessed an unbelievable display of conduct on behalf of Missi. I have been at the
office on days that Missi would call the league office and waste hours and hours of
Robin's time dealing with ridiculous matters and frivolous complaints and accusations.
Missi has a tendency to talk out of both sides of her mouth pitting one team owner
against another in order to accomplish something that benefits MISSI. I feel for our next
Executive Director, Beth Markell because I know what she will be dealing with for the
2004 WPFL season if you allow Missi into this league again. A large portion of Robin
retiring from Executive Director was due to Missi's constant phone calls and lies. If
Missi continues on this path she will drive everyone away from the WPFL. She made
comments that she would stop at nothing to have the Florida Stingrays removed from this
league and apparently it worked by them selling their team. I know Florida had their
problems as do all new teams but when you have someone as vindictive as Missi after
you, you will not win.

I was also present at one of the games Missi attended when she walked into the locker
room looking for Robin. Robin was in the process of changing into her uniform and was
wearing a sports bra. Missi proceeded to grab Robin's breasts and stated "Damn Robin I
didn't know you were that big". Missi did this in the middle of the locker room in front
of several players embarrassing Robin in front of her team. I have several problems with
this occurring because Missi came into our locker room without authorization from
anyone associated with Houston Energy. After this occurred, I asked who that was and
was told it was the Executive Director of the WPFL, which at that time was Missi
Korpacz. What kind of representation do you think this had on me and several Energy
players?

I often check messages on the WPFL/Houston Energy phone line and have listened to
constant nagging, obscenities, insults and rude behavior from messages left by Missi. I
believe she needs professional help and has bigger problems to deal with instead of
running a football team in the WPFL. I strongly suggest that the WPFL deal with this
thorn (Missi Korpacz) before she destroys everything this league has established.

I have also heard from four different teams regarding Missi using their credit card without authorization to charge hotel costs or airline charges. The teams were Houston Energy, Dallas Diamonds, Florida Stingrays and Syracuse Sting. I heard several messages from players and vendors claiming that Missi had not paid her bills. I know that this is hearsay but when you receive complaint after complaint regarding the same person, you tend to eventually believe them.

I was in the office after the league meeting in Kenosha following the championship game when the phone was ringing off the wall with team owners letting Robin know that Missi stood up in the meeting and stated she believed there was misappropriation of the funds for WPFL regarding checks that Robin wrote. Robin is a very honest person and never wrote a check for the league without the item being budgeted or approved by the Board. Missi did this behind her back in an attempt to make Robin look bad in front of the Board. Missi later stated she did not believe Robin did anything wrong but did this because she was mad at her. Does the WPFL have a mutual respect policy that it abides by or does the league allow misconduct of this sort? Missi deals with matters in a childish and unprofessional way and it is becomes very clear once team owners actually get to know her.

The league office receives numerous complaints and unresolved issues regarding the New England Storm each season. Missi is on her third team of players because they like other team owners get tired of dealing with Missi and just give up. I know this because I field phone calls and emails from players around the league. I would invite you to request Missi's file at the WPFL office that is four times as thick as any other team. This file includes various emails, complaints and issues involving New England.

You may be wondering why this letter is coming from me instead of Robin. I am writing this because unlike Missi, Robin is a good hearted person and believes the best in people. Robin is also in business with Missi in WPFL Promotions and feels this would be a conflict of interest. I appreciate your time as I am sure you too are sick of dealing with Missi Korpanz issues and I believe you will make a good and logical decision that will further opportunities for women playing football.

Respectfully,


Shelley Squires
Houston Energy

# EXHIBIT B

05-13-2004   05:22pm   From-FRANKLIN CARDWELL JONES                7132220836        T-855  P-009/010  F-572

Int. CL: 35

Prior U.S. Cls.: 100, 101 and 102

## United States Patent and Trademark Office

Reg. No. 2,683,763
Registered Feb. 4, 2003

## SERVICE MARK
## PRINCIPAL REGISTER



WOMEN'S PROFESSIONAL FOOTBALL LEAGUE
    (TEXAS NON-PROFIT CORPORATION)
5631 DORBRANDT STREET
HOUSTON, TX 77023

FOR: ASSOCIATION SERVICES, NAMELY PRO-
MOTING THE INTEREST OF MEMBER ALL-FE-
MALE PROFESSIONAL FOOTBALL TEAMS;
OPERATING AND MANAGING THE BUSINESS
OF OTHERS, NAMELY SCHEDULING GAMES
FOR MEMBER TEAMS; PROMOTING SPORTS
COMPETITIONS AND EVENTS OF OTHERS,
NAMELY MEMBER TEAMS, IN CLASS 35 (U.S.
CLS. 100, 101 AND 102).

FIRST USE 1-1-1999; IN COMMERCE 6-1-2001.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "WOMEN'S PROFESSIONAL FOOT-
BALL LEAGUE", APART FROM THE MARK AS
SHOWN.

SER. NO. 78-104,798, FILED 1-25-2002.

BARBARA A. LOUGHRAN, EXAMINING ATTOR-
NEY

09-13-2004  05:22pm  From-FRANKLIN ... WELL JONES          7132220038          T-956  P-010/010  F-572



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-3513

Oct 23, 2002

## NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   78/104,798

2. Mark:
   WPFL WOMEN'S PROFESSIONAL FOOTBALL LEAGUE
   Etc. and design

3. International Class(es):
   35

4. Publication Date:
   Nov 12, 2002

5. Applicant:
   Women's Professional Football League

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a certificate of registration.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA  15250-7954
Phone: (202)512-1800

By direction of the Commissioner.

PCFD10 (REV 07/2000)

# EXHIBIT C

## Brian D. Gross

| | |
|---|---|
| **From:** | WPFLNewEngland@aol.com |
| **Sent:** | Thursday, March 21, 2002 5:52 PM |
| **To:** | alamocitybattle@texasmail.org; Aztitansgm@aol.com; droach@ibm4pcs.com; gm@austinragefootball.net; owner@dallasdiamondsfootball.com; oilpatch@ev1.net; inspeed4@yahoo.com; joe@missouriprowlers.com; lasports@msn.com; owner@newenglandstorm.com; inspeed0@yahoo.com; Steeres02@aol.com; Markell123@aol.com; SYRStingFootball@aol.com |
| **Subject:** | Football Eyes |

Hi All...attached are the football eyes that ran in a newspaper here in Boston.  Feel free to manipulate the words and place your logo in it and send it out to newspapers...you may be surprised...they just may run it!  Try something creative like placing you tryout into in the ad and placing "press release" at the top...that way you may get them to run it free of charge if it is considered a press release.

MK

4/28/2005



# Women's Professional Football.
# It's our turn to play.

For tickets visit www.NewEnglandStorm.com



Last Home Game, Sept. 22, Hormel Stadium, Medford, MA