UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NEW ENGLAND STORM, LLC., | ) |
| MELISSA A. KORPACZ, JD | ) |
|    Plaintiffs, | ) |
|  | ) CIVIL ACTION NO: 04-10735-RWZ |
| v. | ) |
|  | ) |
| WOMEN'S PROFESSIONAL | ) |
| FOOTBALL LEAGUE ("WPFL") et al | ) |
|  | ) |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now comes Plaintiffs Melissa A. Korpacz ("Korpacz") and New England Storm, LLC

("Storm") (hereinafter collectively "Plaintiffs") and respectfully submit this Memorandum in

Opposition to Defendants' Motion for Summary Judgment (hereinafter "Defendants' Motion").

As demonstrated below, Defendants' Motion should be denied, because Defendants have

failed to meet the standard for summary judgment in regard to Plaintiffs' entitlement to damages for

Defendants' presumed wrongdoing. Defendants are wrong both on the "undisputed facts" and on

the law.

Defendants claim they are entitled to judgment on Plaintiffs' various causes of action

because Plaintiffs have not proven, and cannot prove, any damages. However, damages are a

question of fact, and there are genuine disputes as to whether the facts sufficiently support a finding

of damage due to the conduct of Defendant Women's Professional Football League ("WPFL") and

the fifteen individual Defendant teams. Therefore, it is not appropriate to grant summary judgment

to Defendants on Plaintiffs' various causes of action.

Moreover, the law requires the Court to consider all of Plaintiffs' asserted causes of action,

and each of Plaintiffs' asserted causes of action as a whole. As such, Defendants' Motion is

premature as it is inappropriate for Defendants to roll out their conclusive arguments with regard to

1

some, but not all, of Plaintiffs' claims, with no supporting documents, when discovery is still ongoing. Defendants have (1) failed to produce the vast majority of evidence that is highly relevant and will prove Plaintiffs' case and (2) failed to voluntarily produce a single document with respect to twelve of the fifteen Defendant Teams. Defendants' withholding of critical evidence and transparent tactics in only addressing a fraction of Plaintiffs' pleaded causes of action would only invite piecemeal analysis and error.

## I. PROCEDURAL HISTORY

Plaintiffs filed their original Verified Complaint in this action on April 12, 2004. Since that time Defendants have filed numerous motions with the Court in an attempt to rid themselves of this lawsuit. Specifically, on May 10, 2004, Defendants' filed their first Motion to Dismiss. On June 16, 2004, Defendants filed a Motion to Transfer Venue. Finally, on July 12, 2004, Defendants filed their second Motion to Dismiss. This Court has denied each of these motions.

During a scheduling conference, which took place between the parties and this Honorable Court on April 14, 2005, Defendants argued, *"even assuming Plaintiffs could prove each of the allegations contained in their Amended Complaint, this case should not go forward because Plaintiffs cannot prove damages."* Upon further discussion the Court and parties agreed to allow Defendants to place before the Court the issue of damages only by way of a summary judgment motion. On April 29, 2004, Defendants' Motion was filed. However, the Motion not only addresses the issue of damages, but also tries to argue the merits of this case. This is in complete contrast to what the parties agreed to, and what the Court ordered. Based on Defendants' previous representations to the Court that their summary judgment motion would be brought based upon the assumption that all of Plaintiffs' allegations regarding liability could be proven, the Court agreed to allow Defendants to file their motion, even though fact discovery was still on-going and far from complete. Accordingly, Plaintiffs have attached to this Memorandum a summary of presumed facts

2

regarding liability taken from Plaintiffs' Amended Complaint, and will only briefly address some of Defendants' assertions regarding liability and choice of law issue(s). *(See Attachment "1" – Summary of Facts and Allegations Taken From Plaintiffs' Amended Complaint)*. Plaintiffs will focus the majority of their argument(s) on the issue agreed to be placed before this Court for summary judgment, damages.

## II. INTRODUCTION

Given the parties' agreement that, for the purposes of this Motion, the facts regarding liability as alleged by Plaintiffs are presumed to be true and that all reasonable inferences must be drawn in Plaintiffs favor, this case arises from the ongoing egregious, brazen conduct of the Defendant Women's Professional Football League (hereinafter "WPFL"), and fifteen individual Defendant Teams who engaged in a pattern of unlawful, abusive, deceptive, tortuous, defamatory and covert behavior directed at Plaintiffs over a period of 13 months. Presumed true are the facts that fifteen of the individual Defendant Teams who engaged in this conduct were (1) not legally affiliated with the WPFL after January 1, 2004 because their contracts officially expired in December 31, 2003, (2) not legally affiliated with the WPFL in 2003 or anytime prior, because they had not executed any contract, license agreements and/or paid any consideration for the purpose of playing in the WPFL, and/or (3) not authorized to vote at Plaintiffs' expulsion hearing because they had representative(s) present at the hearing who were not listed as a WPFL Director or Alternate Director, thus were not authorized to cast a vote or represent their respective Defendant Teams at any hearing or board meeting.

Plaintiffs have asserted from the onset of this litigation that the ongoing pattern of abusive, unlawful, deceptive, tortuous and defamatory conduct by Defendants towards Plaintiffs began well before Plaintiffs' unlawful expulsion on March 6, 2004. Nevertheless, Defendants keep ignoring that assertion and continue to try to persuade this Court to begin its analysis of Plaintiffs' causes of

3

action with Plaintiffs' expulsion hearing only and ignore all of Plaintiffs' other allegations dating back to April 2003. It is Plaintiffs' assertion that this would be an error.

Plaintiffs remain steadfast in their contention that all fifteen of the individual Defendant Teams fall into one of the above categories with respect to their affiliation to the WPFL and, as such, had at the time of the expulsions, and continue to have, no authority or legal basis to represent themselves as the WPFL Board of Directors, spend WPFL funds, receive or disseminate defamatory writings regarding Plaintiffs, bring charges against Plaintiffs and/or ultimately call for the Article VIII Hearing and attempt to expel Plaintiffs from the WPFL.

Plaintiffs' pleadings and various supporting evidence previously submitted herein clearly establish that the dispute between the parties began significantly prior to Plaintiffs' unlawful expulsion on March 6, 2004. For example, Plaintiffs previously submitted evidence that certain Defendant Teams began colluding to remove Plaintiff Korpacz and Plaintiff Storm from the WPFL to benefit their own hidden agendas and disclosed their intent to others. (*See Exhibit "1" to Plaintiffs Opposition of Defendants Motion to Transfer Venue – The Declaration of Dawn Sisler, a copy of which is also attached hereto as Exhibit "2" and incorporated herein by reference*).

Despite the aforementioned, Defendants still continue to ignore Plaintiffs' allegations dating back prior to their unlawful expulsion and attempt to persuade this Court that the "crux" of this case resolves around Plaintiffs' unlawful expulsion. This is simply not the case. While Plaintiffs agree that they were unlawfully expelled from the WPFL, that was only the end result of an ongoing pattern of abusive, defamatory, deceptive and tortuous behavior initiated by Defendants, the reality is that the majority of Plaintiffs allegations involve conduct that occurred *prior* to Plaintiffs' unlawful expulsion, conduct which Defendants totally ignore in their Motion.

## III. ARGUMENT

### A. Defendants Have Failed To Meet The Standard For Summary Judgment

Given that this Motion is based upon the presumption that all issues regarding liability alleged by Plaintiffs are presumed to have been established by Plaintiffs to be relevant and true, given that the facts must be viewed in the light most favorable to Plaintiffs, the non-moving parties, and given that the Court must resolve all doubts in Plaintiffs' favor, there can be no question, based on the existing record, that Plaintiffs are entitled to damages, and that therefore, Defendants' Motion must be denied.

It is well settled that, in a motion for summary judgment, the moving party bears the burden of demonstrating that no genuine issues of material fact exist. Fed.R.Civ.P. 56(c). In the present case, despite the fact that the parties agreed that Plaintiffs' allegations regarding liability would be presumed true, Defendants have utterly failed to meet the burden for summary judgment for several reasons. First, Defendants' Motion and supporting memorandum are riddled with misleading, false and conclusive allegations with no supporting evidence except for a single affidavit from an owner of a named Defendant Team and a ringleader in Plaintiffs' unlawful expulsion. Second, from the onset of this litigation, Plaintiffs, through their pleadings, exhibits and witness declarations, have continued to raise genuine issues of fact, which Defendants, as displayed in their Motion and memorandum, either simply choose to ignore all together or deny, yet fail to produce any evidence to support their denials. Lastly, Defendants themselves have raised genuine issues of material fact by submitting the Affidavit of Dawn Berndt.

It is ironic how Defendants' Motion asserts that Plaintiffs have failed to demonstrate any evidence of issues of fact regarding damages and that because of this, they have met their summary judgment burden because Plaintiffs' evidence is *merely colorable or not significantly probative. (See Defendants' Motion p. 5)*. This could not be further from the truth. The truth of the matter is

5

that Defendants have  (1) completely ignored all of the claims that Plaintiffs have alleged in their
Amended Complaint dating back *prior* to Plaintiffs' unlawful expulsion, and (2) failed to produce
one scintilla of evidence beyond a single affidavit to dispute the lengthy list of Plaintiffs' allegations
as set forth in their pleadings.

In fact, the Affidavit of Dawn Berndt submitted by Defendants (1) only addresses a fraction of
Plaintiffs' allegations, (2) makes conclusive statements with no factual basis or evidence in support
thereof, and (3) is in complete contrast with Plaintiffs' previously submitted pleadings, evidence,
and witness affidavits supporting Plaintiffs' allegations of Defendants' ongoing conduct. *(See
Exhibits "3" through "5" – Affidavits of Dee Kennamer, Natalie Gorman and Rufino Uribe)*.

"Summary Judgment will not typically be granted when the complaint on which the judgment is
sought involves…complex situations, or credibility issues." Benson v. Allphin, 544 F. Supp 464
(N.D. Ill 1982). As noted above, Defendants' sole supporting Affidavit of Dawn Berndt clearly
establishes credibility questions, as it is the complete opposite of what Plaintiffs' evidence has
indicated by way of affidavits, declarations, evidence and pleadings.  This, in and of itself, should
prevent Defendants from obtaining summary judgment as it raises serious questions of credibility
between the witnesses to be addressed by the trier of fact.

Moreover, while Defendants attempt to lay out their list of undisputed facts, they have not only
misstated numerous facts, but also once again choose to ignore the vast majority of the claims that
Plaintiffs have asserted from the onset of this litigation. As this Court can surmise from Plaintiffs'
Exhibit 1 attached hereto, there are litanies of disputed facts that still remain to be addressed by
Defendants. Nevertheless, given the standard for summary judgment and despite the parties' prior
agreement regarding Defendants' presumed liability, Plaintiffs are forced to address Defendants'
statement of *undisputed* facts in a separate exhibit so as not to be assumed to be true by this Court.
*(See Exhibit "6" - Plaintiffs Response to Defendants Statement of Undisputed Facts)*.

6

Lastly, there remains the issue of ongoing discovery. Motions for summary judgment will be denied when the moving party withholds access to potentially favorable information. Catanzaro v. Masco Corp., 408 F. Supp. 862 (D. Del 1976). Moreover, Rule 56(f) of the Federal Rules of Civil Procedure states that a party may seek deferral of a summary judgment ruling if they are unable to respond due to on-going discovery. As such, Defendants' Motion should be denied because discovery is still on-going and there is material evidence that Defendants have yet to produce which will not only show that there are disputed issues of facts regarding Plaintiffs' entitlement to damages, but will prove Plaintiffs' various causes of action. This material evidence is within Defendants' exclusive control and includes but is not limited to: the audiotape of Plaintiffs' Article VIII Hearing, all current Defendant Team Contracts, Defendant Team financials, current WPFL financials, all board minutes, and other documents too numerous to list.

Lastly, Defendants have utterly failed to produce a single piece of evidence or document from twelve of the fifteen Defendants. Specifically, Defendants have failed to produce a scintilla of evidence or documents from Defendants Long Beach Aftershock, The Toledo Reign, Delaware Griffins, Syracuse Sting, Houston Energy Football, Inc., Indiana Speed, Missouri Avengers, Minnesota Vixens, Dayton Rebellion, Arizona Caliente, Los Angeles Amazons, and the Southern California Scorpions.

Accordingly, based upon Defendants' failure to produce documents from the aforementioned Defendant Teams and in light of the fact that discovery is still on going, regardless of Defendants' assertions regarding damages, this Court should deny Defendants' Motion.

## B. Defendant's Mistake of Law

As a general rule of law, courts sitting in diversity must apply the substantive law of their forum state. Hanna v. Plumer, 380 U.S. 460, 471 (1965); Erie Railroad Co. v. Thompkins, 304 U.S. 64, 70 (1938). Nevertheless, in some instances, circumstances may arise where a court considers

applying the laws of another state. Generally, however, courts will only make a choice of law determination if there is an actual conflict of laws and where application of the different laws would lead to various results. This is one of those cases. Royal Business Group v. Realist Inc., 933 F.2d 1056, 1064 (1st Cir. 1991).

It is also well settled that courts sitting in diversity are required to apply their own state's choice of law principles. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). However, Massachusetts has not elected any particular choice of law doctrine and as such, traditionally speaking, has applied the law of the jurisdiction where the injury occurred. Cosme v. Whitin Mach. Works, 417 Mass. 643, 645 (Mass. 1994). That jurisdiction is clearly Massachusetts in this case.

Massachusetts has taken a more functional approach in considering choice of law issues and in many instances addressed such issues by assessing various choice-influencing considerations, including those provided in the Restatement (Second) of Conflict of Laws (1971), in determining which state has a more significant interest in the outcome of the matter and ultimately in applying their state law. Bushkin Assoc. v. Raytheon Corp., 393 Mass. 622, 631-636 (1985). As such, the application of the Massachusetts choice of law rules require significant consideration by this Court and is not as clear cut as Defendants allege it to be.

## 1. Defendants' Application of The Internal Affairs Doctrine Is Misapplied.

Defendants argue that the doctrine of *internal affairs* applies in this case, and that Texas Law is exclusively applicable in this case because the "crux of Plaintiffs' case is that they were unlawfully expelled from the WPFL for violating the WPFL Bylaws and various rules of corporate governance". *(See Defendants' Memorandum In Support Of Their Motion for Summary Judgment – p. 6)*. That is simply not the case.

8

In order for Texas Law to be applied exclusively in this matter, Defendants would have to prove that each and every claim asserted by Plaintiffs falls within the internal affairs doctrine, and they cannot. Although Plaintiffs certainly contend that their expulsion was unlawful and in violation of the WPFL Bylaws, this egregious act by Defendants is only one of many instances of unlawful behavior alleged in Plaintiffs' Amended Complaint, which have no relevance to the corporate structure of the WPFL.

In fact, this case involves multiple causes of action which fall outside of the WPFL corporate structure and which rest exclusively on the commercial behavior of the WPFL *as well as* the individual Defendants. Specifically, Plaintiffs have alleged breach of contract, defamation, tortuous interference with contractual and business relations, conversion, collusion and trademark infringement, all of which involve not only WPFL executives' conduct, but also individual Defendant Teams' conduct. Although these causes of action may indirectly implicate details of the WPFL Articles of Incorporation, Bylaws or corporate governance, they are not and cannot be determined strictly and solely based on these factors. As such, this case is not governed exclusively by the internal affairs doctrine. Rather, this is a complex case which requires the Court's analysis count by count of how they pertain to each individual Defendant in order to determine which state's law should be applied.

Moreover, Defendants are in error that Texas law exclusively applies because the WPFL, a single Defendant, is incorporated in Texas. The WPFL is only one of the Defendants named in Plaintiffs' Amended Complaint, the others of which are residents of various states across the country other than Texas.

## 2. Massachusetts Law Is The Applicable Law In This Case.

While Defendants continue to argue that any injury to Plaintiffs in this case took place solely in Arizona, where Plaintiffs' expulsion hearing was held, that is simply not the case. Given

Massachusetts' functional approach to addressing conflict of laws issues, the reality is that, based on Defendants' on-going conduct which resulted in Plaintiffs being injured primarily in Massachusetts as well as multiple states over a long period of time, Massachusetts has a rational basis for applying its own state substantive law.

Plaintiffs have asserted from the onset that Defendants' behavior dates back a period of over 13 months and was originated from many states including but not limited to each of the states where the Defendant teams are incorporated, and the unlawful expulsion of Plaintiffs in Arizona was only one of many unlawful actions committed by Defendants and it is not the sole issue here. Plaintiffs submit that Massachusetts has more significant contacts and a more substantial interest in applying Massachusetts substantive law to the issues in this case in that:

1. Plaintiff Korpacz is a resident of Massachusetts and Massachusetts has an interest that their residents are compensated for the wrongdoing of others;

2. Plaintiff Storm has its principal place of business in Massachusetts;

3. Plaintiff Korpacz, one of the WPFL's Founding Members, lived and worked in Massachusetts;

4. Massachusetts is the place of the injuries suffered by Plaintiffs were felt;

5. The WPFL was founded in Massachusetts when Plaintiff Korpacz called for a meeting in Boston, Massachusetts between herself and two fellow co-founders. *(See Exhibit "14" – Original Press Release and Founding Members Letter Generated from Boston, Massachusetts)*;

6. A vast majority to the WPFL documents have been created here in Massachusetts including but not limited to the WPFL Franchise Manual;

7. The WPFL slogan "It's Our Turn To Play" was created in Massachusetts *(See Affidavit of Martin Donohue Submitted With Plaintiffs Motion For Pre-Judgment Attachment)*; and

8. Defendants have done business within the Commonwealth. *(See Exhibit "15" – WPFL Media Guide Designed and Generated by Massachusetts Companies).*

## C. **Damages**

Massachusetts has long recognized that damages are recoverable by anyone who has suffered loss, harm or injury (whether to their person, property or rights) through an unlawful act of another. Turcotte v. DeWitt, 333 Mass. 389, 389 (Mass. 1955). Further, courts in the Commonwealth have held that in some circumstances, a plaintiff may recover damages even though they may not have suffered any actual loss or harm. Leardi v. Brown, 394 Mass. 151, 159-160 (Mass.1985).

Damages may be of several types: compensatory, liquidated, nominal or punitive. It is well settled in Massachusetts, with respect to compensatory damages, that a litigant can not only recover for the loss which has already occurred, but may also be entitled to future losses, to be determined by the trier of fact. Cuddy v. L & M Equipment Co., 352 Mass. 458, 462 (Mass. 1967). Furthermore, compensatory damages can encompass both tangible losses, such as money or harm to earning capacity, as well as intangible losses, such as mental pain and suffering and/or injury to a person's character and/or reputation.

Defendants claim they are entitled to summary judgment on Plaintiffs' trademark infringement allegations and various common law claims, because Plaintiffs have not proven that the they have sustained any actual monetary damages attributed to Defendants' on-going and unlawful conduct. This assertion is false. Regardless of which state law is applied, Plaintiffs can and will prove damages as detailed below.

### A. **Defendants Offer of Judgment**

As this Court is aware, Defendants made Plaintiffs an Offer of Judgment of $50,000 in this case. This offer in and of itself is at least a tacit admission by Defendants that Plaintiffs are entitled to damages at least $50,000. This offer by itself thus compels the denial of Defendants' Motion.

11

### B. Original Investment and WPFL Promotions

In Massachusetts, in cases for breach of contract the goal is to place the injured party back in the same position he or she would have been in had the contract, been performed. Buchholz v. Green Bros. Co., 272 Mass. 49, 54 (Mass. 1930). In this case, the Court is required to presume that Defendants have breached numerous contracts not only with Plaintiff Korpacz and Plaintiff Storm, but also breached their contract with WPFL Promotions, an entity in which Plaintiff Korpacz and fellow Founding Members each held 750,000 units in lieu of payment for their time, work and effort in creating the WPFL.

There is no dispute that Plaintiff Korpacz is one of three co-founders of the WPFL. There is also no dispute that Plaintiff Korpacz invested substantial time and effort into the creation of such, as noted by certain Defendant Teams. *(See Exhibit "16" – Various Emails Noting Founding Members Investment of Time and Labor).* So for Defendants to now claim, in the face of their presumed unlawful conduct, that Plaintiff Korpacz is not entitled to some monetary damage to compensate her for her time and effort in the development and establishment of the WPFL for over three years is simply an insult.

Ms. Korpacz co-founded the WPFL in 2001 and from that date forward continued to develop the WPFL in the hopes that one day the Founding Members would be compensated for their hard work and original investments. Ms. Korpacz continued to develop the WPFL along with her fellow co-founders in an attempt to further the cause for women in football and all female sports across the United States. It was always the intent of the Founding Members to be able to one-day recoup the initial revenue invested with the original WPFL.

Plaintiff Storm was one of many teams who in their first year of existence lost in excess of $50,000.00. Specifically, as demonstrated in the attached Exhibit 17, Plaintiffs themselves initially invested $53,159.98 into the original WPFL. *(See Exhibit "17" – Income Statements from original*

12

*WPFL indicating Plaintiffs contribution to the WPFL).* In addition, Plaintiff Korpacz invested another $25,000 for Plaintiff Storm's License Agreement with the WPFL. Based upon Defendants' breaches, the loss of this investment alone is enough to require the denial of Defendants' motion.

At the end of the 2000 season, once the Founding Members discovered that their initial investments had been swindled, they stepped up, and created the new WPFL and WPFL Promotions with the specific intent to not only recoup what they originally lost, but also with the intent that the Founding Members would spend their time, money and effort in establishing the new WPFL, WPFL Promotions and WPFL Trust with the notion that they would receive their return on investment via WPFL Promotions as the league itself grew. Thus, the Founding Members created the three entities. (*See Exhibit "18" – Article of Organization and Incorporation for Each of the Founding Member Entities).* As such, each Founding Member was issued 750,000 units in WPFL Promotions. *(See Exhibit "19" – Certificate of Units from WPFL Promotions).*

WPFL Promotions was a for-profit entity, which contracted with the WPFL for the exclusive right to market the WPFL and produce the WPFL playoff and championship games. All Defendants were aware of the WPFL Promotions entity and its relationship with the WPFL, as identified in Defendants' contracts and the WPFL Bylaws. The intent of the Founding Members was to create this for-profit entity in which additional Teams would benefit and receive units once they joined the WPFL as a Member Team at a cost of $25,000.00. As of the November 2003 meeting, there were five Member Teams and discussion of additional teams to sign on as Member Teams for the 2004 season, thus making the units of WPFL Promotions more valuable. The Founding Members never distributed any funds from WPFL Promotions to themselves and instead chose to reinvest those funds so that WPFL Promotions would continue to grow. The idea was that the more teams that became Member Teams, the more successful WPFL Promotions would become.

13

Nevertheless, as evidenced by the attached exhibits, and as the presumed facts for purposes of this Motion establish, former Commissioner Vessey waged a campaign of terror against WPFL Promotions and the Founding Members and continuously threatened teams not to participate in WPFL Promotions and induced teams to breach their contract with WPFL Promotions. This was all done knowing full well that the three Founding Members had placed their entire investments in WPFL Promotions, and expectations for a return on due investments, in the units issued to each of them. *(See Exhibit "20" – Various emails from former Commissioner Vessey with Respect to the Demise of WPFL Promotions).*

While there is no "hard number" to point to with respect to the value of Plaintiff Korpacz' dedication, time and effort in creating the WPFL and WPFL Promotions, there is clearly a loss that Plaintiffs have suffered as a result of Defendants' ongoing tortuous behaviors and collusive acts to rid Plaintiff Korpacz of the WPFL and ultimately destroy WPFL Promotions. As such, the estimated units' worth is based upon Plaintiff Korpacz' work performed and the actual dollar amount to be awarded is a question of fact for a jury. However, with respect to the Plaintiffs' initial $53,000 investment into the WPFL and $25,000 License Fee, there is little room for doubt that Plaintiffs have suffered an actual loss at minimum of $78,000.00 without this Court even having to read on.

## C. Losses Suffered By Plaintiff Korpacz

Over the course of three years, Plaintiffs have generated no less than $82,000.00 per year in revenue as a result of being able to play in the WPFL and perform according to the contract between the parties. *(See Exhibits "21" through "23" - Plaintiffs Tax returns for the years 2001, 2002 and 2003).* Defendants argue that because line 26 of Plaintiffs' tax returns does not indicate that Plaintiff Korpacz ever received a salary, she had no damage or loss as a result of being expelled from the WPFL. This argument must fail for several reasons.

14

First, Plaintiffs' tax returns for the New England Storm were filed under Form 1040 - sole proprietorship, and as such, there was no need to list any amount under line 26 wages with respect to Plaintiff Korpacz herself. The only salary that would be listed in this category would be if Plaintiff Korpacz were paying employees, which she was not. The tax returns were filed as a sole proprietorship listing the business name as the "New England Storm" and the proprietor as "Melissa Korpacz." Therefore, the entities, New England Storm and Melissa Korpacz, are one and the same.

Second, it is unreasonable for Defendants to suggest that Plaintiff Korpacz did not utilize funds from her own business to live day to day, especially given the fact that once Plaintiffs were unlawfully expelled from the league, Plaintiff Korpacz lost her car, her apartment and was literally without a home for over three months, living with family and friends.

Plaintiff Korpacz is also entitled to be compensated for the loss and lessening of her ability to work as a result of Defendants' presumed and actual breaches. Shea v. Pettie, 287 Mass. 454, 456 (Mass. 1934). While certainly it would be easy for Plaintiffs to make up an actual dollar amount based upon salaries in similar professions, the actual income loss to Plaintiff Korpacz as a result of being driven from her chosen profession should be an amount determined by the trier of fact and that simply because that amount cannot be determined with mathematical certainty, alone will not bar Plaintiffs from recovering. Stuart v. Town of Brookline, 412 Mass. 251, 253 (Mass. 1992)

### D. Losses Suffered By New England Storm

It is inaccurate for Defendants to continue to look solely at the overall profit and loss of the New England Storm and claim that because Plaintiff Storm had little to no net profit Plaintiffs are not entitled to damages. The amount shown as the gross receipts Plaintiffs took in for the previous years should be recoverable as damages, and the fact that there are little to no net profit is irrelevant. There is little question that the amount that Plaintiffs have received over the years could have reflected a higher net profit, had Plaintiffs known that Defendants were going to unlawfully expel

15

them or oust them from the league which Plaintiff Korpacz co-founded. However, it was Plaintiffs' choice, and right to continue to reinvest the gross receipts received into Plaintiff Storm. Surely, if Plaintiffs had known that Defendants were going to breach their contracts, collude to expel them and virtually take away Plaintiff Korpacz' livelihood and chosen profession, she would not have continued to reinvest in her team and showed and retained an increased net profit. Because that is not what Plaintiffs chose to do should not bar them from recovery.

Moreover, since Plaintiffs' unlawful expulsion from the WPFL, they have lost a majority of their investment in items such as equipment, uniforms, game day refrigerators, medical equipment, and the like, due to their inability to pay for storage fees. The approximate value of these items Plaintiffs conservatively place at $40,000.00. This is an additional actual loss suffered by the Plaintiffs due to Defendants' conduct.

The law states that Plaintiffs are entitled to recover damages for any lost business opportunities as a result of Defendants' behavior. Air Technology Corp. v. General Electric, 347 Mass. 613, 627 (Mass. 1965). Plaintiffs not only lost out on sponsorships that were with them in the previous years, but also missed out on the opportunity to receive a significant amount of money based upon the players who were going to tryout for the Storm for the 2004 season. *(See Exhibits "24" - Copy of Plaintiff Storm's 2003 Season Program with Listed Sponsors and 2004 Player Tryout Pre-Registration Forms)*. As of the date of Plaintiffs' Article VIII Hearing, Plaintiffs had received over 95 pre-registration forms from athletes planning to try out for the 2004 season. This number far exceeds the previous years of expected turnout of athletes interested in playing for Plaintiff Storm. Plaintiffs charge a tryout fee of $75.00 per athlete and as such at minimum lost out on $7,125.00 due to Plaintiffs unlawful expulsion.

16

### E. Conversion

Plaintiffs have contended from the onset of this litigation that Defendants contracts expired on January 1, 2004. At that time, there was $36,918.38 remaining in the WPFL bank account *(See Exhibit "25" – WPFL Accounting)*. Defendants unlawfully converted any and all funds spent thereafter and Plaintiff Korpacz, one of the three Founding Members is at least entitled to a portion thereof. While Defendants in their affidavit contend that the funds were never segregated for any specific purpose, this could not be further from the truth.

In fact, the WPFL on a conference call had allocated $10,000.00 to be spent with the law firm of Carlton, Wilde and Jones, for the purpose of discussing the potential WPFL restructure *only*, not so that certain Defendants and former Commissioner Vessey could spend WPFL funds for advice on expelling Plaintiffs' in the WPFL. *(See Affidavit of Melissa A. Korpacz Submitted with This Opposition Motion)*. They were absolutely unauthorized to act in such a manner and if they were able to spend funds deposited into the WPFL account by other teams, then Plaintiff Korpacz should have been afforded the same opportunity to consult with counsel at the expense of WPFL funds, which she was not.

### F. Defamation

Under the Restatement of Torts, where a publication falsely imputes (a) a criminal offense; (b) a loathsome disease; (c) matter incompatible with the plaintiff's business, trade, profession, or office; or (d) serious sexual misconduct, damages may be presumed. Restatement (Second) of Torts § 570 (1970). A corporation may also recover for injury to its corporate reputation and as with an individual plaintiff, as is the case here, need not establish out of pocket damages, but may assert a claim for injury to its reputation for honesty and competence. Dexter's Hearthside Restaurant, Inc. v. Whitewall Co., 24 Mass. App. Ct. 217, 220 (Mass. App. Ct., 1987). Additionally, a corporate officer may recover if the defamatory statement specifically referred to, or could reasonably be

17

interpreted as having referred to him or her as an individual. Elm Medical Lab, Inc., v. RKO Gen, Inc., 403 Mass. 779, 782 (Mass. 1989)

Given the presumed and actual facts, there is little doubt that Defendants' numerous allegations regarding Plaintiff Korpacz are libelous per se and that Plaintiffs have suffered as a result thereof. Plaintiffs have demonstrated through their pleadings and various affidavits that Defendants repeatedly issued statements that Plaintiff Korpacz committed crimes prior to the Notice of Charges that Defendant continue to refer to and that Defendants knew to be untrue

Under Massachusetts Law, a plaintiff can recover for actual injury including mental suffering, damage to one's reputation, humiliation and alienation. Sharrett v. Housing Innovations, Inc., 365 Mass. 141, 148 (Mass. 1974). Since Plaintiffs' unlawful expulsion, Plaintiff Korpacz has suffered a tremendous amount of emotional turmoil. *(See Exhibit "26" – Affidavit of Iris Mello LMFT Regarding Emotional Distress Suffered by Plaintiff Korpacz)*. In addition, the day after Defendants' outrageous written defamatory conduct began on January 22, 2003, Plaintiff Korpacz was prescribed an anti-depressant medication to help her cope with the emotional distress Defendants brought on to her. Then, on April 7, 2003, Plaintiff Korpacz was prescribed yet another anti-depressant in an effort to help her deal with the emotional turmoil caused by Defendants. *(See Exhibit "27" – Patient Prescription Record for Plaintiff Korpacz)*. To date, Plaintiff Korpacz is on both anti-depressants and still trying to cope with the difficult emotional turmoil caused by the conduct of Defendants.

Just as Plaintiffs can place a dollar figure on Plaintiff Korpacz' medical bills to date, a jury can place a dollar amount on the damage done to Plaintiff Korpacz due to the emotional suffering she has experienced and continues to experience, which has interfered and undoubtedly will continue to interfere with her earning capacity. Although Defendants continue to point out that line 26 of Plaintiffs' tax return indicated Plaintiff Korpacz received no wages, a trier of fact need not look at

18

lost wages in determining impairment to one's earning capacity, Cross v. Sharaffa, 281 Mass. 329, 331 (Mass. 1933). Accordingly, the overall emotional suffering and damage to Plaintiff Korpacz' earning capacity is a question for the trier of fact.

## G. Future Losses

Because Defendants have utterly failed to produce current financials for the WPFL or Defendant Teams, Plaintiffs cannot place a dollar amount on the future earnings that Plaintiffs may be entitled to. Plaintiffs can say without doubt that since the creation of the WPFL by the Founding Members participation in the league has grown from 4 teams in 2001, to 8 teams in 2002. 11 teams in 2003 and now potentially 19 teams in 2004, each are paying a license fee of $6,000.00. As such, the revenue, which would have been generated by WPFL Promotions and due to the Founding Members, is substantial and a question of fact for the jury.

## H. Trademark and Copyright Infringement

While Defendants have indicated that Plaintiffs gave Defendant Dallas Diamonds permission to use the football eyes logo for a single press release, they have failed to produce any additional evidence even remotely suggesting that any Defendant had permission to utilize the football eyes logo or slogan "It's Our Turn To Play" on any merchandise, tickets, game programs, etc. This is because no such permission was ever given. Because Defendants' uses of the logo and slogan have been unauthorized and unlawful and must be presumed to be such for purposes of this Motion, Plaintiffs are entitled to at least a portion of all revenue generated in connection with Plaintiffs' trademarks. Pursuant to the Lanham Act, Plaintiffs are entitled to recover any damages sustained, as well as Defendants' profits. 15 U.S.C. S. § 1117. Nevertheless, it is virtually impossible for Plaintiffs to now put a dollar figure on these damages when Defendants have failed to produce any financials, which would indicate the amount of revenue generated with the use of Plaintiffs' trademarks.

19

With respect to the WPFL trademark itself, there is indisputable evidence that the Founding Members were the ones who negotiated and paid for the WPFL logo and all this was done when none of the Defendant Teams were affiliated with the WPFL. It is beyond comprehension how Defendants can even remotely argue that the WPFL logo belongs to them. However, again, without the current financials of the WPFL, Plaintiffs can only speculate as to how much they are entitled to out of league earnings based upon the items generated with the WPFL logo on it and overall league revenue.

## IV. CONCLUSION

Plaintiffs have shown that Defendant's Motion is fatally flawed, if not frivolous. Discovery is still on going and Defendants have not produced all relevant information relating to Plaintiffs' allegations, and only by artificially blinding Plaintiffs to the information they are entitled to could Defendants ever suggest Plaintiffs cannot prove actual damage. Plaintiffs have met their burden in demonstrating, at minimum, that Plaintiffs have suffered *actual* damages as well as injuries, which should be determined by the trier of fact with respect to dollar amount attributed to those non-economic injuries such as the value of Plaintiffs the (1) units in WPFL Promotions, (2) work in creating and maintaining the WPFL, (3) the creation of the WPFL Binder, just to name a few. Those are in themselves questions of fact and should compel a denial of Defendants' Motion.

Respectfully submitted,
Plaintiff Melissa Korpacz

Dated: May 27, 2005

Melissa A. Korpacz. - Pro Se
P.O. Box 808 Medford, MA 02155
781-866-9700 (phone)
617-951-3927 (fax)

20

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for each other party by first class mail on May 27, 2005:

Brian D. Gross
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110

Carlton D. Wilde, Jr.
FRANKLIN, CALDWELL & JONES, PC
1001 McKinney, 18th Floor
Houston, TX 77002

21