UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND STORM, LLC., ) | |
| MELISSA A. KORPACZ, JD ) | |
| Plaintiffs, ) | |
| ) | **CIVIL ACTION NO: 04-10735-RWZ** |
| v. ) | |
| ) | |
| WOMEN'S PROFESSIONAL ) | |
| FOOTBALL LEAGUE ("WPFL") et al ) | |
| ) | |

## DECLARATION OF MELISSA KORPACZ IN OPPOSITION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Melissa Korpacz, do hereby declare and state that the following is based upon my personal knowledge and I believe all of my statements to be true, except where based upon information and belief, and as to those statements, I am informed and believe them to be true.

1.  I am the sole owner Plaintiff New England Storm, LLC ("Storm") Women's Professional Football Team, which is also a plaintiff in the above-captioned action.

2.  I submit this Declaration in opposition to Defendants Motion for Summary Judgment.

3.  I am a co-founder of the Women's Professional Football League ("WPFL").

4.  Since 2001 I have spend countless hours in the creation and development of the WPFL and WPFL Promotions including but not limited to Media Relations, Marketing, Promotions, Policy and Procedure, just to name a few.

5.  Defendants to date have failed to provide me with documents from twelve of the fifteen Defendants including but not limited to: the audiotape of my Article VIII

Hearing, Minutes of the Article VIII Hearing, WPFL or individual Defendant Team financials, current team contracts for Indiana Speed, Dallas Diamonds or the Syracuse Sting.

6.  This controversy dates back to prior to the 2003 WPFL season, however, on March 6, 2004, it came to a head when my team, Plaintiff Storm and I were improperly and unlawfully expelled from the WPFL in which I am a Founding Member and one-third owner and have been since 2000.

7.  I initially invested in excess of $53,000.00 with the WPFL and paid an additional $25,000 for my License Agreement.

8.  It has been and is my understanding that all facts regarding liability alleged by Plaintiffs were to be presumed true for the purposes of Defendants' Motion. For this reason, I will not attempt herein to address such issues herein other that for the following, which are misrepresentations in the affidavit of Dawn Berndt, filed by Defendants.

9.  As part of the WPFL Board of Directors, only $10,000 was authorized and segregated to be used for the purpose of obtaining legal counsel with regard to a possible WPFL restructure only.

10. Upon information and belief, Defendants spent WPFL funds, which were segregated for a specific purpose for their own benefit in obtaining legal counsel with respect to the status of their contracts, the status of former Commissioner Vessey's tenure with the WPFL after she was terminated by for the majority of the Member teams.

11. Despite numerous requests for Defendants' Counsel's information, Defendants repeatedly ignored my requests and did not provide me with the opportunity to confer with Defendants' Counsel.

12. The Defendant Team contracts, with the exception of Defendant Houston Energy expired on January 1, 2004. At the November 2003 semi-annual owners meeting, there was no discussion concerning any contract extensions. At that time there was no need for any dialogue regarding contract extensions as the discussion of a possible restructure did not arise until after January 1, 2003. Additionally, pursuant to the Defendant Team contracts, there was no writing signed by both parties indicating that such an extension was discussed or granted.

13. Defendants' "Notice of Charges" was sent to individuals who were not authorized or named Directors or Alternate Directors, such as Debbie Gentz for the Long Beach Aftershock, Kristy Bennenhaley for the Dallas Diamonds, Shelly Squires for the Houston Energy or Kay Carter for the LA Amazons. A Copy of the existing names that were listed as Director or Alternate Directors at the time of Plaintiffs Article VIII Hearing is attached hereto as *Exhibit A*. Attached hereto as *Exhibit B* is the revised list of Directors and Alternate Directors that Defendants updated after my Article VIII Hearing.

14. Defendants issued other defamatory statements regarding me alleging that I stole money, committed identity theft, just to name a few. A copy of which is attached hereto as *Exhibit C*. These documents were issued separate and aside from Defendants Notice of Charges and also were publicized to third parties not listed as a WPFL Director or Alternate Director.

3

15. The WPFL Logo and Trademark was negotiated, paid for and registered at a time when of the Defendant Teams were affiliated with the WPFL, with the exception of fellow Founding Member Team, Defendant Houston Energy.

16. I have recently lost my apartment due to my financial situation after being unlawfully expelled from the WPFL. For a period of three months I had to reside with friends and family until I could get back on my feet.

17. I recently lost all New England Storm items that were being stored in a storage facility. Among the items auctioned were equipment, uniforms, medical and game day items, just to name a few. I estimate the total loss to be in excess of $40,000.00.

18. I have suffered emotionally since my unlawful expulsion and have been placed on medication by my primary physician.

19. I am unable to obtain employment in a similar field and am unable to obtain similar incoming revenue as generated through the New England Storm since 2000.

20. As a Founding Member of the WPFL, I received 750,000 units in WPFL Promotions in return for development and creation of the WPFL. There is value in Promotions units as they were given in exchange for my time, effort and creativity in establishing the WPFL.

21. I created and produced the original WPFL Binder and have not been compensated for such.

22. On the front page of each of the WPFL Binders from the date of its creation until the day of my Article VIII Hearing there was a Confidentiality Agreement, which

indicated that the information contained therein was proprietary and belonged to the Founding Members. Defendants unilaterally removed the Founding Member names on the date of my Article VIII Hearing. Defendants did not have my permission to give away my proprietary interests. Copies of the original and edited Confidentiality Agreements are attached hereto as *Exhibit D*.

23. I did not grant the Defendant Teams permission to utilize my football eyes logo or "It's Our Turn To Play" slogan in any manner beyond the initial press release. I did not authorize the Defendant Teams to place it on merchandise, game tickets, programs, etc.

24. I have suffered emotionally and financially because of Defendants ongoing conduct directed toward my team, the New England Storm and me.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27 day of May 27, 2005 at Boston, Massachusetts.

Melissa A. Korpaez

5

Exhibit A

ALL-STATE LEGAL 800-222-0510   E0411   RECYCLED









Home
Teams
Schedule
News
Multimedia
Merchandise
Tickets
Sponsors
Administration
Contact

OFFICIAL HOME OF THE WOMEN'S PROFESSIONAL FOOTBALL LEAGUE

## WPFL CONTACT INFORMATION

*For information about the league please contact:*

**Dawn Berndt** - Executive Director (817) 690-3126

**Jennifer Cada** - Associate Executive Director (602) 679-3960

**Cabrina Gilbert** - Director of Football Operations (315) 395-8229

**Jody Taylor** - Director of Media Relations (858) 699-0176

**Ann Bagala** - Director of Team Expansion (858) 453-6424

## WPFL BOARD OF DIRECTORS

| Team Name | Board Representatives | |
|---|---|---|
| Houston Energy | Robin Howington | |
| New York Dazzles | Neil Sheler | |
| Los Angeles Amazons | Aubrey Duncan | Robert Edwards |
| Dallas Diamonds | Dawn Berndt | |
| Syracuse Sting | Cabrina Gilbert | |
| Indiana Speed | Charleen Daniels | |
| Minnesota Vixen | Board Member 1 | Kim Wright |
| Arizone Caliente | Jennifer Cada | Board Member 2 |
| Northern Ice | Theresa Glass | |
| Long Beach Aftershock | Esther Pichardo | Theonita Cox |
| SoCal Scorpions | Christina Suggett | Alvin Johnson |
| Toledo Reign | Elizabeth Razzoog | Ann Bagala |
| Delaware Griffins | Alena Malatesta | Angie Maddox |

Do you have a question or comment about the WPFL?

The WPFL league office welcomes your opinions and suggestions. Please note that although your emails will be read and are appreciated, the WPFL staff may not be able to respond to all of them.

Send your correspondence to:
Womens Professional Football League
5631 Dorbrandt Street
Houston, TX 77023
713-926-7677

or e-mail us at:
info@womensprofootball.com



WPFL Auctions

Exhibit B



 

**OFFICIAL HOME OF THE WOMEN'S PROFESSIONAL FOOTBALL LEAGUE**

Home

Teams

Schedule

News

Multimedia

Merchandise

Tickets

Sponsors

Administration

Contact

## WPFL CONTACT INFORMATION

*For information about the league please contact:*

**Dawn Berndt** - Executive Director (817) 690-3126

**Esther Pichardo** - Associate Executive Director

**Cabrina Gilbert** - Director of Football Operations (315) 395-8229

**Jody Taylor** - Director of Media Relations (858) 699-0176

**Ann Bagala** - Director of Team Expansion (858) 453-6424

## WPFL BOARD OF DIRECTORS

| Team Name | Board Representatives | |
|---|---|---|
| **Houston Energy** | Stacy Agee | Karen Mones |
| **New York Dazzles** | Neil Sheier | Kim Sciotti |
| **Los Angeles Amazons** | Aubrey Duncan | Kay Carter |
| **Dallas Diamonds** | Dawn Berndt | |
| **Syracuse Sting** | Cabrina Gilbert | |
| **Indiana Speed** | Charleen Daniels | Kim Wright |
| **Minnesota Vixen** | John Chapin | Board Member 2 |
| **Arizona Caliente** | Jennifer Cada | Gerry Turley |
| **Northern Ice** | Theresa Glass | Theonita Cox |
| **Long Beach Aftershock** | Esther Pichardo | Alvin Johnson |
| **SoCal Scorpions** | Christina Suggett | Ann Bagala |
| **Toledo Reign** | Elizabeth Razzoog | Angie Maddox |
| **Delaware Griffins** | Alena Malatesta | Melissa McVaugh |
| **Missouri Avengers** | Becky Buchanan | |
| **Albany Ambush** | Diana Metcalf | Meghan Ireland |

Do you have a que
about the

The WPFL league
your opinions ar
Please note tha
emails will be
appreciated, the W
be able to respor

Send your corre
Womens Profes
Leag
232 Belmc
Hurst, T)
1-866-WP

or e-mai
info@womensp



**WPFL At**
only o

click

**EXHIBIT C**

# THE MANY FAZES OF MISSI

### *A Guide to Understanding*

*In an effort to help those that have no understanding of the many layers of Missi Korpaz, this handy guide is a true lifesaver and should be handed to each new incoming team. This would aid in the adjustment time it takes for new teams to get to the 'truth' of the Missi Mystic.*

## FAZE ONE: GOLDEN IDOL

After indoctrinating new teams that she is a "founding member" and something to behold, Missi continues to elevate herself to a goddess like state. With promises of money and power, Missi woo's the new teams into thinking that she actually has power to give them anything more than a WPFL polo shirt.

**RESULT:** New owners follow Missi to the ends of the WPFL world, doing her bidding and dirty work while she basks in the adulation.

## FAZE TWO: POOR VICTIM

This portion of the awareness usually comes when chinks in Missi's armor and the subtle realization that there are only 3 teams out of 22 that will sit with her, vote with her, go to lunch during annual meetings with her, and don't roll their eyes when her name comes up. Obvious underhanded gestures now seem to come to the forefront as well with this awareness.

**RESULT:** New owners know that there is something fishy in New England, but she's trying. And if more owners would see that, should could turn it around.

## FAZE THREE: SAVE FACE

When the backstabbing is at its full throttle and all the warnings have been ignored by the new owner, it's time to take the reins and save face. The new owner is now waist deep and considered a "Korpaz Krony". It's too late to get out, without getting some of the blame on you.

**RESULT:** The new owner my take Missi by the hand and become her therapist. They would rather dig in deeper than admit that they were so horribly wrong.

## FAZE FOUR: GO TOWARD THE LIGHT!

It's done....she's turned on the new owner, burned them but good! Stolen money, their reputation, and ruined their business relationships with their sponsors. She's had the new owner invest their life savings to back scams that she had hoped would pay off in her gaining the Catharine Masters like throne of monarchy over the peasants of the WPFL. The new owner, used and tossed aside, now sits broken and buried in cell phone bills of hour long, midnight calls from Medford and watches as the new season brings forth a new owner that Missi can now draw into her web.

**RESULTS:** The new owner approaches one of the other teams and strikes up a new connection to the majority. They are welcomed, with open arms. The only thing they may have to endure is a well placed, "We tried to tell you."

CONFIDENTIAL

**Lisa Vessey**

| | |
|---|---|
| From: | JestrGrrl@aol.com |
| Sent: | Thursday, February 26, 2004 7:33 AM |
| To: | lvessey@goldstickassociates.com |
| Subject: | Here ya go... |



THE MANY FAZES OF
MISSI.doc

I think, now that I've had some time to mull it over, you're in phaze 5
- just 'DONE with it all'. LOL Welcome to the otherside. :)

Cabrina Gilbert
co-Owner Syracuse Sting
Women's Pro Football Team
www.SyracuseSting.com

CONFIDENTIAL

## COMMISSIONER'S NOTICE OF DEMAND TO SHOW CAUSE
## WHY DEE KENNAMER, MISSI KORPACZ AND ROBIN HOWINGTON
## SHOULD NOT BE FOUND TO HAVE VIOLATED THEIR FIDUCIARY DUTIES

To:     WPFL League Office

Date:    January 22, 2004

Pursuant to Article V, Section 4(a) of the WPFL bylaws, and the authority inherent in the Office of Commissioner, this is to serve as the Commissioner's Demand To Show Cause, by which the Commissioner directs Dee Kennamer, Missi Korpacz and Robin Howington (hereinafter "respondents") to appear before the board and testify as to why they should not be found to have violated their fiduciary duties as officers and employees of the League.

This Office commenced an investigation upon learning from Robin Howington that certain essential legal documents are not available for inspection, or never were in existence, regarding the organization and management of the WPFL, as well as its dealings with other related entities, including WPFL Promotions, LLC and the WPFL Irrevocable Trust. These documents were requested by this Office and the Advisory Committee in response to discussions that occurred during the annual meeting. Despite due demand, nothing has been produced except an unsigned draft "Organization Agreement" which the Commissioner is informed and believes was propounded after the annual meeting.

Further investigation has revealed that the official books and records of the League maintained by respondents during the time period January 1, 2002 through December 31, 2003 may not fully comply with the laws governing tax-exempt organizations and also may not be in accordance with generally-accepted accounting principles. Improper commingling of funds with a for-profit entity is evident, as are select payments to officers and related parties, which payments appear to have been made in disregard of proper control procedures and without explicit board approval.

In addition, there is probable cause to believe that respondents, while serving as officers of the League, caused the League to engage in disadvantageous transactions for their own personal benefit without disclosing all material facts to existing and new members of the League.

**COMMISSIONER'S NOTICE OF RULING TO SHOW CAUSE
WHY DEE KENNAMER, MISSI KORPACZ AND ROBIN HOWINGTON
SHOULD NOT BE FOUND TO HAVE VIOLATED THEIR FIDUCIARY DUTIES**

Specifically, respondents caused the League to transfer over sixty percent (60%) of the League's operating funds[1] to a for-profit entity, WPFL Promotions, LLC -- which respondents own and control, and which is in existence for the sole purpose of profiting from the promotion and broadcast of WPFL football games -- without a contract, without sufficient proof that Promotions would provide reasonable value in exchange for the funds, and without obtaining or documenting the affirmative vote of a majority vote of disinterested directors after full disclosure of all conflicts of interest.

This Office previously distributed materials which demonstrate how a tax-exempt organization should handle conflicts of interest. Comparing these guidelines to the sketchy practices employed by respondents, it appears that respondents were not sufficiently diligent in guarding against their own conflicts, which ended up diminishing the resources of the League without serving any purpose other than to benefit select members by giving them ostensible control over League operations to further their own financial interests. Respondents also appear to have been remiss in ignoring potential violations of the tax laws.

This Office has recommended that the Executive Director hire counsel in view of the possibility that the League's tax-exempt status has been jeopardized by respondents' pursuit of private inurement. The Executive Director desires that the League obtain the benefit of counsel's advice before convening a hearing on respondents' apparent breaches of fiduciary duty.

Accordingly, the Commissioner hereby recommends that the board adopt a resolution authorizing the Executive Director to hire an attorney, and also setting a special meeting of the board, no later than thirty (30) days after counsel has been hired, for the purpose of hearing the explanations and defenses of respondents. A second meeting of the board should be set sometime thereafter, without the attendance of respondents, so the board can determine whether respondents, or any one them, should be found to have violated fiduciary duties, and if so, what remedies are fair and appropriate under the circumstances.

---

[1] One of the abbreviated financial reports reviewed by the Commissioner reveals that at least $45,000.00 (and possibly as much as $50,000.00) was paid to WPFL Promotions out of total League revenues that amounted to only $79,500.00.

## COMMISSIONER'S FINAL RULING ON THE GRIEVANCE FILED
## BY THE NEW ENGLAND STORM AGAINST THE FLORIDA STINGRAYS

To:      WPFL League Office

Date:    January 22, 2004

This is to serve as the Commissioner's final ruling, within the meaning of Article V, Section 8 of the WPFL bylaws, on the letter complaint submitted by the New England Storm and received by this Office on or about October 15, 2003.

The letter complaint alleges willful misconduct that could be viewed as coming within the provisions of Article VIII of the WPFL bylaws. However, the letter mentions only the Commissioner's authority under Article V, Section 4(a) of the bylaws. Therefore, this Office shall treat the complaint as a request for the Commissioner's action under Article V, Section 4(a) of the bylaws; or in the alternative, as a request for resolution of a dispute between Teams pursuant to Article V, Section 8 of the bylaws.

An investigation was conducted within fifteen (15) days of receipt of the letter complaint, consistent with the provisions of Article V, Section 4(a) of the bylaws. The Florida Stingrays submitted a written response on or about October 24, 2003. After interviewing witnesses, including Beth Markell, this Office determined that the allegations made by the New England Storm are sustained in part as follows:

1.      The Stingrays did not comply with the requirement set forth in Section 10, paragraph 10 of the WPFL Policy and Procedures Manual, which provides that a Home Team is responsible for providing lodging at a hotel rated three stars or better, unless a lower-standard property is agreed to by the Visiting Team in advance or approved by the League Office. The Commissioner additionally determines that the violation was willful in that the owners knew the hotel they had selected was substandard and yet they insisted upon the arrangement because they stood to gain financially from the hotel's sponsorship. This Office furthermore finds that Lizz Bartolo and Angela Belden made materially false statements during the investigation to the effect that they were unaware of any complaints about the hotel prior to receiving grievances filed by the Dallas Diamonds and the New England Storm.

2.      The Stingrays failed to comply with that part of Section 10, paragraph 9 of the WPFL Policy and Procedures Manual which requires a Home Team to work with the Visiting Team in good faith to secure travel arrangements. Whereas the evidence is insufficient to conclude that the vehicles provided by the Stingrays were grossly inadequate or in violation of federal or state regulations, this Office finds that the Stingrays were indifferent to the needs

**COMMISSIONER'S FINAL RULING ON THE GRIEVANCE FILED
BY THE NEW ENGLAND STORM AGAINST THE FLORIDA STINGRAYS**

of a sister Team and failed to use reasonable care to ensure that visiting players, coaches and staff would be spared needless aggravation and discomfort.

The other complaints made by the New England either were substantially disputed, or were too indefinite or immaterial to warrant a finding of intentional wrongdoing. These findings were communicated to Missi Korpacz over the telephone some time in or around the week of November 10, 2003, as well as on several occasions thereafter.

The owners of the Florida Stingrays have resigned since the Commissioner's initial findings were discussed with the respective parties. Therefore, there is no means to enforce this ruling unless and until the new owners of the Stingrays present their application for membership in the League. This Office recommends that, in the event an application is received, the board adopt a resolution conditioning the offer of an associate license upon (1) the applicants' payment of compensation to the New England Storm in the amount of $500.00; (2) approval by the Executive Director of the Team's proposed lodging for Visiting Teams during the 2004 season; (3) the applicants' verification in writing that Team management has been informed of, and agrees to abide by, the League's bylaws and the Leagues's Policy and Procedures Manual throughout the 2004 season; and (4) the applicants' verification in writing that the Team has discontinued any and all business relationships or dealings with Lizz Bartolo, John Bartolo or Angela Belden, or any entity they may be associated with (including the men's team owned or operated by John Bartolo), and will not conduct business with any of these individuals without the prior consent of the board.

This Office is particularly troubled by the conduct of both parties to this dispute. Whereas substantial evidence has been presented that the Stingrays violated certain provisions of the League bylaws and the Policy and Procedures Manual, there also is substantial evidence that Missi Korpacz instigated or inflamed the disputes with the Stingrays' owners, thereby committing her own violations of the League's mutual respect policy. The Commissioner witnessed two such incidents during the Championship weekend. Where, as here, the complaining and responding parties are each guilty of misconduct, this Office has no choice but to admonish both sides. Missi Korpacz will be advised accordingly.

A separate ruling will follow to address the Stingrays' counter-complaint that Missi Korpacz misrepresented her identity to Continental Airlines for the purpose of causing unauthorized charges to be paid by Angela Belden's credit card.

## COMMISSIONER'S FINAL RULING ON THE GRIEVANCE FILED
## BY THE NORTHERN ICE AGAINST THE FLORIDA STINGRAYS

To:     WPFL League Office

Date:   January 22, 2004

This is to serve as the Commissioner's final ruling, within the meaning of Article V, Section 8 of the WPFL bylaws, on the letter complaint submitted by the Northern Ice and received by this Office on or about November 10, 2003.

The Northern Ice's letter complaint is ambiguous insofar as it does not specify whether Article VIII procedures and remedies are being invoked, even though the complaint alleges willful misconduct that could be viewed as coming within the provisions of Article VIII. Because the letter mentions only the Commissioner's authority, this Office shall treat the complaint as a request for the Commissioner's action under Article V, Section 4(a) of the bylaws; or in the alternative, as a request for resolution of a dispute between Teams pursuant to Article V, Section 8 of the bylaws.

An investigation was conducted within fifteen (15) days of receipt of the letter complaint, consistent with the provisions of Article V, Section 4(a) of the bylaws. After interviewing witnesses, including Robin Howington, this Office determined that the allegations made by the Northern Ice are substantially in dispute. The Northern Ice asserts that a member of the Stingrays' organization engaged in offensive behavior in violation of the mutual respect policy of the League. The evidences sustains the allegation that a confrontation occurred between a man in the Stingrays' entourage and a representative of the Northern Ice. However, there are conflicting versions of what actually was said, and whether disrespect was displayed by both individuals.

The preponderance of the evidence indicates that the alleged offender was not an official member of the organization but is the father of a Stingrays' player who was upset because his daughter had been ejected from the Championship Game. The question then arises: even assuming the allegations regarding this man's offensive behavior are true, what responsibility does a Team have for the unsportsmanlike conduct of its fans? It is the view of this Office that a Team cannot be held strictly liable for the conduct of any person not under its actual control. There is insufficient evidence in this case to conclude that the Florida Stingrays possessed such control over the individual in question, or had any reason to believe prior to the incident that this individual would behave in an inappropriate manner if permitted to attend the Championship Game and related events.

## COMMISSIONER'S FINAL RULING ON THE GRIEVANCE FILED
## BY THE NORTHERN ICE AGAINST THE FLORIDA STINGRAYS

This Office nevertheless has determined that the interests of the League and women's professional football would be best served by adopting a zero-tolerance policy when it comes to insulting or offensive behavior directed toward any participant in this League. Accordingly, on or about November 12, 2003, this Office instructed the owners of the Florida Stingrays to take all necessary and appropriate steps to ensure that the mutual respect policy was faithfully enforced in the future, including sending a notice to the ejected player informing her that her father was permanently banned from attending any WPFL games on the Northern Ice's field. Theresa Glass was informed of this ruling by telephone some time prior to the holidays. The exact date cannot be provided because calling card records are not available.

The owners of the Florida Stingrays have resigned since the Commissioner's directive was issued. Therefore, there is no means to enforce this ruling unless and until the new owners of the Stingrays present their application for membership in the League. This Office recommends that, in the event an application is received, the board adopt a resolution conditioning the offer of an associate license upon the applicants' providing proof of compliance with the previously-imposed directive, in addition to verifying in writing that all members of the organization have been informed of, and agree to abide by, the League's mutual respect policy.

For the record, this Office acknowledges the dissatisfaction expressed by several owners regarding the manner in which the Northern Ice's complaint was presented. Indeed, substantial evidence was presented which indicated that Theresa Glass and Theonita Cox were influenced, perhaps unduly, by Missi Korpacz, who previously had filed a grievance against the Stingrays and was exchanging barbs with the Stingrays' owners throughout the Championship weekend. It appears that Missi not only furnished the computer on which the Northern Ice's letter was typed, but also, Missi was observed assisting in the drafting. This Office is troubled by the implications of this collaboration.

Instigating disputes for the purpose of annoying or harassing a sister Team is itself a violation of the bylaws. Robin Howington reported that Missi had said she "would stop at nothing to get the Florida Stingrays out of this League." This Office does not condone such attitudes and hereby cautions all directors to guard against the appearance of improper collusion which could be construed as violating the spirit, if not the letter, of the competition provisions of the bylaws, as well as the obligations of good faith and fair dealing that accompany a contractual relationship such as this.

Exhibit D



### Women's Professional Football League
### CONFIDENTIALITY AGREEMENT

The undersigned acknowledges that the information provided by the Women's Professional Football League (hereinafter "WPFL"), in its franchise handbook is confidential. The undersigned therefore agrees not to disclose any information contained in this manual and /or obtained during the course of any WPFL Owner's Meeting without the express written permission of the WPFL Chairperson of the Board.

This manual contains confidential and proprietary information belonging to the WPFL, specifically, Dee A. Kennamer, Melissa A. Korpacz, Robin D. Howington. It is understood that the use of this manual is intended solely and exclusively for the internal use of the WPFL, its Officers, its Member Teams, and team personnel. Any reproduction of this manual, in whole or in part, without the express written consent of the Chairperson of the Board of the WPFL, is strictly prohibited.

It is acknowledged by the undersigned that all aforementioned information other than information, which is in the public domain, is in all respects confidential in nature.

_____          _____
Signature                                 Date

Neil R. Scheier MD              New york
Printed Name                            Franchise

_____          08/11/03
1st WPFL Board Member                Date

_____          _____
2nd WPFL Board Member                Date

CONFIDENTIAL



### Women's Professional Football League
### <u>CONFIDENTIALITY AGREEMENT</u>

The undersigned acknowledges that the information provided by the Women's Professional Football League (hereinafter "WPFL"), in its franchise handbook and as discussed at any WPFL Board of Directors meeting, is confidential. The undersigned therefore agrees not to disclose any information contained in this handbook and /or obtained during the course of any WPFL Board of Directors' Meeting without the express written permission of the WPFL Commissioner or the Executive Director of the WPFL Board of Directors.

The WPFL By-laws and Policy and Procedures Manual contain confidential and proprietary information belonging to the WPFL, specifically the WPFL Board of Directors. It is understood that the use of the By-laws and Policy and Procedures Manual is intended solely and exclusively for the internal use of the WPFL, including Officers, Teams, and team personnel. Any reproduction of the By-laws or Policy and Procedure Manual, without the express written consent of the WPFL Commissioner or the Executive Director of the WPFL Board of Directors, is strictly prohibited.

It is acknowledged by the undersigned that all aforementioned information other than information, which is in the public domain, is in all respects confidential in nature.

_____

Franchise/Team Name (if applicable)

<br>

_____          _____

Signature                                                                      Date

<br>

_____

Printed Name

<br>

_____          _____

Signature                                                                      Date

<br>

_____

Printed Name

<br>

*Confidential Property of the WPFL  (updated 3/2004)*                    *Page 1 of 1*