UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO: 04-10735-RWZ

MELISSA A. KORPACZ, JD and )
NEW ENGLAND STORM, LLC )
    Plaintiffs, )
)
v. )
)
WOMEN'S PROFESSIONAL FOOTBALL LEAGUE )
("WPFL"), et al )
    Defendants. )

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY

Now comes the Plaintiffs Melissa A. Korpacz ("Korpacz") and New England Storm, LLC ("Storm") (hereinafter collectively "Plaintiffs") and respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Stay Discovery. Defendants have only provided limited relevant discovery to date and have utterly failed to produce evidence that is factually known to exist. As such, the granting of such a Motion would be to Plaintiffs' detriment. In support of their opposition, Plaintiffs offer the following statements of fact and law.

### I. DISCOVERY HISTORY

On November 29, 2004, Plaintiffs issued their initial interrogatories and on December 7, 2004, Plaintiffs issued their initial set of document requests, to Defendant WPFL and individual Defendant Teams. That was more than 9 months ago. Shortly thereafter, Defendants complained about Plaintiffs' initial discovery requests and at the

1

urging of the Court, both counsel for the parties met to see if they could narrow the issues. During that meeting, Plaintiffs outlined their entire case in detail and at the conclusion of the meeting, Defendants asked that Plaintiffs re-issue their discovery requests. Plaintiffs agreed to do so. Accordingly, on May 3, 2005, Plaintiffs re-issued their document requests to each Defendant not exceeding 50 requests per Defendant.

After Plaintiffs re-issued their document requests, Defendants requested two separate extensions and Plaintiffs agreed in good faith to grant each of the requests, totaling five-weeks. Despite Plaintiffs' good faith conduct, on July 8, 2005, Defendants failed to produce a single document and instead produced canned objections to each of Plaintiffs' requests in a systematic identical fashion. Plaintiffs then immediately asked for a meet and confer to address Defendants' failure to produce relevant discovery, and since that time, Defendants have submitted minimal, non-responsive documents and have continued to withhold relevant documents factually known to be in existence in an attempt to delay and frustrate the discovery process in this case to Plaintiffs' detriment.

A. **Defendants' Production Is Far From Complete.**

On July 18, 2005, Defendants produced only a handful documents from 8 of 15 Defendants. Defendants not only failed to properly BATES stamp any of those documents, making it virtually impossible for Plaintiffs to refer to or follow them in any sequential order, but their production was primarily non-responsive and far from complete as evidenced by the following:

- Defendant So-Cal Scorpions produced only **14** sheets of paper;
- Defendant Minnesota Vixen produced only **13** sheets of paper;
- Defendant Syracuse Sting produced only **8** sheets of paper;

- Defendant Delaware Griffins produced **87** sheets of paper;
- Defendant Long Beach Aftershock produced only **20** sheets of paper;
- Defendant LA Amazons has only produced **7** sheets of paper;
- Defendants Arizona Caliente, Dayton Rebellion, Indiana Speed and Missouri Avengers **failed to produce a single document**.

After receiving the aforementioned dismal discovery, Plaintiffs immediately requested to met and confer by telephone to discuss Defendants discovery deficiencies and outline specific requested items. At that time, Defendants agreed to speak to each Defendant and produce all additional documents no later than August 12, 2005. *(See Exhibit "A" – Plaintiffs Follow-Up Correspondence To Defendants)*

On August 15, 2005 Plaintiffs received Defendants additional documents, which although Bates stamped, were numbered in non-sequential order and overlapped previous BATES numbering so that hundreds of the same BATES numbers were assigned to different documents. Moreover, on this date, some of the Defendants produced only 2 sheets of paper in total. This in itself, is telling of Defendants' cavalier and non-responsive actions throughout the discovery process. Because of Defendants' numbering error(s) Plaintiffs were forced to send all July 18, 2005 and August 15, 2005 documents back to Defendants for re-numbering in sequential order. *(See Exhibit "B" Plaintiffs Correspondence To Defendants)* Defendants have yet to pre-produce a single document.

In all, after Defendants' last production on August 12, 2005 Defendant's Indiana and Arizona produced less than 11 sheets of paper combined. Specifically:

- Defendant Indiana only produced **8** documents,
- Defendant Arizona only produced **3** documents,

3

- Defendant LA only produced **19** documents,
- Defendant Syracuse only produced **25** documents,
- Defendant So Cal only produced **33** documents,
- Defendant Delaware produced **87** documents (all of which were a duplicate copy of Dallas Diamonds documents),
- Defendant Minnesota only produced **2** documents, and
- Defendant Long Beach only produced **2** documents.

Based on the aforementioned, Defendants cannot seriously expect Plaintiffs or this Court to believe their production is complete.

B. **Defendants Are Simply Re-Producing The Same Documents Over And Over.**

As mentioned above, Defendants produced 87 documents from Defendant Delaware Griffin. However, this production was nothing more than a duplicate copy of previously submitted documents from another Defendant Team, Dallas Diamonds. Specifically, on April 5, 2005, Defendant Dallas produced 281 documents and although primarily non-responsive and nothing more than duplicate copies of charges, responses and emails generated by Plaintiff Korpacz, on July 18, 2005, Defendants produced documents purportedly for the Delaware Griffins that were nothing more than a duplicate copy of Defendant Dallas Diamonds previously submitted documents on April 5, 2005, Bates numbered 175-263. These documents are identical in layout, format, content, and all other respects. It is apparent that Defendants are playing games and attempting to bombard Plaintiffs with the same documents time and again to make their production look voluminous, responsive and complete. It is nothing of the sort. On August 19, 2005 Plaintiffs immediately contacted Defendants regarding their conduct and again followed

up with a correspondence outlining the documents still not produced. *(See Exhibit "C" – Plaintiff Correspondence To Defendants)* To date, Defendants have failed to respond or address the issue(s).

### C. Despite Repeated Requests, Defendants Have Failed To Produce Critical Evidence.

Since March 2005, Plaintiffs have requested critical evidence from Defendants factually known to exist or once exist as detailed below. Nevertheless, Defendants continue to either ignore Plaintiffs' requests or refuse to produce certain documents.

For example, it has been Defendants' contention that Plaintiffs were properly expelled from the WPFL and received a full and fair hearing. On the other hand, it has been Plaintiffs' contention that they did not receive a full and fair hearing and will additionally prove Plaintiffs claim(s) of breach of contract, defamation, tortuous interference with advantageous and contractual relations and trademark infringements, and that these facts will be evidenced from the audiotape of Plaintiffs' Article VIII Hearing as well as other documents in Defendants' possession.

Beginning in March 2005, Plaintiffs have continued to request the audiotape of Plaintiffs' Article VIII Hearing. *(See Exhibits "D" – "F" Plaintiffs Emails To Defendants Requesting Specific Items, Including Audiotape of Plaintiffs Article VIII Hearing Among Other Items )*. Defendants have claimed that they do not have it the tape or any minutes of Plaintiffs' unlawful hearing. Plaintiffs find this ironic in that Defendants continue to argue to this Court that Plaintiffs received a fair and full hearing and were properly expelled from the WPFL, yet they are unable to produce the audiotape or any minutes reflecting the substance of the Hearing. It is no surprise that Plaintiffs

have maintained from the onset of this litigation that despite all of Defendants' other unlawful actions as alleged in Plaintiffs' Amended Complaint, Defendants specifically violated Plaintiffs' rights time and again up to and during Plaintiffs' Article VIII Hearing.

Another example is Defendants refusal to produce the Confidentiality Agreements signed by each Defendant Team up to and including those Confidentiality Agreements signed at Plaintiffs' Article VIII Hearing. The Confidentiality Agreements pre Article VIII Hearing indicate that the information contained within the WPFL Binder prepared by Plaintiff Korpacz contained proprietary information belongs to the "*WPFL*", "*specifically Melissa Koracz, Dee Kennamer and Robin Howington.*" Nevertheless, prior to Plaintiffs' Article VIII Hearing, Defendant Teams unilaterally removed the aforementioned proprietary clause and Founding Member names from the Confidentiality Agreements without permission and had all individuals present sign the newly designed Confidentiality Agreement. *(See Exhibit "G" Attached Hereto - Declaration of Fellow Founding Member Dee Kennamer Originally To Be Filed With Plaintiffs Motion For Reconsideration)* These documents are critical in showing that 1) Plaintiff Korpacz and her fellow Founding Members are and were referred to as the "WPFL" and 2) Defendants knowingly removed Plaintiffs Korpacz' name from confidential and proprietary information and then proceeded to unlawfully law claim to it.

The audiotape and Confidentiality Agreements were known to exist and Defendants have failed to explain why they have not produced them or why they apparently disappeared. It is important to note however, that these are just two of the many pieces of evidence as listed below that are critical to Plaintiffs' case and Plaintiffs have maintained from the beginning that the audiotape will prove their claims.

6

In addition, on August 8, 2005, and again on August 22, 2005, Plaintiffs notified Defendants that their production was far from complete and that the following items had yet to be produced: *(See Exhibits "A" and "C" Attached Hereto)*

- All WPFL minutes from 2002 until March 2003, including all minutes generated at Plaintiffs' Article VIII Hearing;
- All documents referring or relating to the alleged extension of Defendant Teams' 2003 contracts including all written agreements to support Defendants contention that they were purportedly extended;
- The signature page with each Directors' signature approving the purported "revised" WPFL Founding Member Bylaws Defendants are now using;
- All notices and consent to actions referring or relating to the suspension of any WPFL Board meeting, including Plaintiffs' Article VIII Hearing;
- Each individual Defendant Teams Director and Alternate Director appointments;
- Each Defendant Team contract from 2002 until present, including 2003 contracts signed by Indiana, Syracuse and Dallas;
- All WPFL Confidentiality Agreements from 2002 until present including each individual Defendant Teams' Confidentiality Agreements from 2002 until present;
- All documents referring or relating to the proposed WPFL restructure;
- All corresponding financials (i.e. monies paid to Defendant WPFL) by each of the incoming 2004 teams including but not limited to Defendants Delaware, Missouri, and Dazzle;
- All documents supporting Defendants' contentions in Defendants' Answer to Plaintiffs' Amended Complaint including but not limited to:
  - The alleged Suspension Policy referred to in paragraph 59, including documents regarding the alleged approval; and
  - Plaintiff Korpacz' alleged removal from Executive Office.
- All documents generated to or from the law firm of Franklin, Cardwell and Jones prior to March 8, 2003 including but not limited to:
  - All money paid to said firm by Defendant WPFL;
  - All correspondences regarding any/all matters presented to said firm for review or consultation by Defendant WPFL or any of their representatives, etc.

Needless to say, Defendants still refuse to respond or produce the aforementioned requested items, of which all go to the heart of Plaintiffs' case. These documents are claimed by Defendants to have existed and/or known by Plaintiffs to have existed and if

7

they are no longer in existence, Defendants have failed to comply with Plaintiffs' requests and identify the details of their destruction.

### D. Defendants Have Failed To Produce Documents Generated By Individual Defendants Other Than Documents Which Were Generated By Plaintiff Korpacz Herself.

Most disturbing to Plaintiffs is the fact that despite repeated requests, Defendants continue to refuse to produce documents generated or authored by them and instead continues to reproduce Plaintiffs' charges and responses to those charges or documents authored by Plaintiff Korpacz herself. It strains credibility to suggest that none of the Defendants ever authored a single document referring or relating to Plaintiff Korpacz or Plaintiff Storm. Yet, none have been produced to date by Defendants.

### E. Plaintiffs Are Still in The Process Of Issuing Discovery Requests.

Plaintiff Korpacz is in the process of issuing additional re-issued Interrogatories at the request of Defendants and Request for Admissions to Defendants. This is being done at the request of Defendants that Plaintiff re-issue her initial Interrogatories. As such, Plaintiffs should not now be penalized for agreeing to Defendants' request that Plaintiffs initial Interrogatories be re-issued.

Lastly, given that Defendants have continuously delayed and frustrated the discovery process to hinder Plaintiffs from adequately receiving all discoveries in a timely manner, which is necessary and pertinent to Plaintiffs proving their case and their ongoing blatant dilatory tactics used to frustrate and delay discovery to the Plaintiffs detriment Plaintiffs are now forced to move for this Motion to Compel and will be doing so forthwith.

## II.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay Discovery should be denied.

Respectfully submitted,
Plaintiff Melissa Korpacz

Dated: August 29, 2005

*/s/ Melissa AK*
Melissa A. Korpacz. - Pro Se
P.O. Box 808 Medford, MA  02155
781-866-9700 (phone)

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for each other party by facsimile and first class mail on August 29, 2005:

Brian D. Gross
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA  02110

*/s/ Melissa A-K*

Exhibit A



*Women's Professional Football Team*

*From the Desk of –*
*Melissa A. Korpacz*

August 8, 2005

Attorney Brian Gross
Cooley, Manion and Jones
21 Custom House Street
Boston, MA 02110

Dear Brian:

This letter is a follow up to our Rule 37.1 conference conducted on July 26, 2005. Specifically, you have agreed to speak to each Defendant in an attempt to locate additional documents responsive to Plaintiffs' document requests. You also agreed to produce any additional documents by August 12, 2005. Additionally, to the extent that Defendant Teams claim they have no additional documents they will each sign an affidavit indicating such.

During our conference, Plaintiffs were able to give a brief synopsis reflecting a general list of missing items however, Plaintiffs have indicated that each team has different and specific items requested which may not appear on the below list and require Defendants to supplement the below list for each Defendant separately.

Defendants have agreed to produce the following documents including but not limited to:

- All WPFL minutes from 2002 until March 2003, including all minutes generated at Plaintiffs Article VIII Hearing;
- All notices and consent to actions referring or relating to the suspension of any WPFL Board meeting, including Plaintiffs Article VIII Hearing;
- Each individual Defendant Teams Director and Alternate Director appointments;
- Each Defendant Team contract from 2002 until present, including 2003 contracts signed by Indiana, Syracuse and Dallas;
- All WPFL Confidentiality Agreements from 2002 until present including each individual Defendant Teams Confidentiality Agreements from 2002 until present;
- The signature page with each Directors signature approving the "revised" WPFL Bylaws;
- All documents referring or relating to the proposed WPFL restructure;
- All documents referring or relating to the alleged extension of Defendant Teams 2003 contracts including all written agreements to support Defendants contention;
- All corresponding financials (i.e. monies paid to Defendant WPFL) by each of the incoming 2004 teams including but not limited to Defendants Delaware, Missouri, and Dazzle;
- All documents supporting Defendants contentions in Defendants Answer to Plaintiffs Amended Complaint including but not limited to:
  - The alleged Suspension Policy referred to in paragraph 59, including documents regarding the alleged approval; and
  - Plaintiff Korpacz' alleged removal from Executive Office.
- All documents generated to or from the law firm of Franklin, Cardwell and Jones prior to march 8, 2003 including but not limited to:
  - All money paid to said firm by Defendant WPFL;
  - All correspondences regarding any/all matters presented to said firm for review or consultation by Defendant WPFL or any of their representatives, etc.

While we are aware of each Defendant Teams position in that they have produced all documents in their possession, we are particularly troubled by the facts that:

1. Defendants Arizona Caliente, Dayton Rebellion, Indiana Speed and Missouri Avengers **have failed to produce a single document**;

2. Defendant Houston has produced documents that have been altered and/or information covered so as Plaintiffs cannot decipher (See BATES HOU0038) and their overall production is far from complete.

3. Defendant So-Cal Scorpions has produced only **14** documents, which are primarily non-responsive to Plaintiffs document requests and their overall production is far from complete.

4. Defendant Minnesota Vixen has produced only **13** documents and their production is far from complete.

5. Defendant Syracuse Sting has produced only **8** documents and their production is far from complete.

6. Defendant Delaware Griffins has produced **87** documents that are simply copies of documents already in Plaintiffs possession as Plaintiff Korpacz primarily generated them. Moreover, the responses from this Defendant are non-responsive and their production is far from complete.

7. Defendant Long Beach Aftershock has produced only **20** documents and their production is far from complete.

8. Defendant LA Amazons has only produced **7** documents and their production is far from complete.

Overall, it is Plaintiffs' position that Defendants' production is far from complete. Moreover, each Defendant has failed to produce a single document, which they themselves have generated. The documents, which are being sent to Plaintiffs time and again, are the documents that Plaintiff Korpacz generated herself. As such, a letter from Plaintiffs will follow regarding the individual teams deficiencies.

Lastly, this letter is to confirm that Plaintiffs intend to file a Motion to Compel with respect to the following documents, which Defendants indicated they refused to produce:
1. All correspondences between or generated by WPFL Executive Officers referring or relating to plaintiff Korpacz or Plaintiff Storm;
2. Any/all correspondences referring or relating to WPFL Executive Officer departure(s) from the WPFL or Executive position including but not limited to:
   a. Former Commissioner Lisa Vessey;
   b. Former WPFL Treasure and Defendant Houston Energy owner Robin Howington;
   c. Former Associate Executive Director Jennifer Cada; or
   d. Former Secretary Charleen Daniels.

Best Regards,
Missi Korpacz

*P.O. Box 808 Medford, MA 02155*
*Phone: 781-866-9700   email: Info@NewEnglandStorm.com*
*www.NewEnglandStorm.com*

Exhibit B



*Women's Professional Football Team*

*From the Desk of –*
*Melissa A. Korpacz*

August 22, 2005

Attorney Brian Gross
Cooley, Manion and Jones
21 Custom House Street
Boston, MA 02110

Dear Brian:

   Enclosed please find documents produced by Defendants July 18, 2005 (non-numbered) and August 12, 2005. Please note that in light of the fact that Defendants failed to BATES Stamp their July 18th production, their additional documents produced on August 12, 2005 are in disarray and a majority of the BATES numbers for each Defendant is off in sequential numbering. As such, Plaintiffs cannot make sense of the numbering from the August 12th documents. For example, the WPFL documents submitted on August 12, 2005 were marked as BATES WPFL000905-1032. This is obviously incorrect because on March 4, 2005, Defendants already produced WPFL documents BATES stamped 905-932 (see enclosed March 4, 2005 letter from Defendants). Then on April 5, 2005 another set of WPFL documents were received already BATES stamped 933-1098. So now there are different documents with the same BATES numbers 905-1032. As such, the August 12th WPFL numbering is incorrect. Please correctly renumber the August 12, 2005 WPFL documents and kindly resend them to Plaintiffs along with the affidavit.

   As stated above, since Defendants July 18, 2005 documents were not BATES stamped for any of the Defendant Teams, the August 12, 2005 documents received are not in sequential order for each Defendant Team. Some examples are:

- Long Beach documents marked BATES BEACH0022-0026 was submitted on August 12, 2005, yet Plaintiffs do not have documents 1-21 for Defendant Long Beach.
- Minnesota documents marked MINN0016-0017 was also submitted on August 12, 2005, yet Plaintiffs do not have documents 1-15, and so on.

   As you can see, this is extremely confusing and time consuming for Plaintiffs to try to figure out what documents we have, what numbers or documents may be duplicated, etc. As such, please take Defendants enclosed July 18th and August 12th documents and re-issue them and properly BATES stamp each in sequential order so there are not gaps, overlapping of numbers or documents. Additionally, please re-issue the WPFL documents so there are no duplicate numbers for different documents. If you have any questions, please do not hesitate to contact us. Thank you for your prompt attention to this matter.

Best Regards,

Missi Korpacz

**EXHIBIT C**



*Women's Professional Football Team*

*From the Desk of –*
*Melissa A. Korpacz*

August 22, 2005

Attorney Patrick Tracey
Cooley, Manion and Jones
21 Custom House Street
Boston, MA 02110

Dear Patrick:

This letter is to follow up our August 19, 2005 telephone conversation. Specifically, the following items were discussed:

1. Defendants agree to withdraw their August 17, 2005 Motion to Stay Discovery and will re-file said Motion now that Plaintiffs have been placed on notice as of August 19, 2005.

2. Defense Counsel will provide Affidavits for the WPFL and New York Dazzle regarding their production of documents.

3. In response to Defendants inquiry, Plaintiffs are willing to settle this matter for $250,000.00.

4. Defendants will immediately provide a copy of the Subpoena issued upon Charlene Daniels as former Secretary of Defendant WPFL as well as any and all other documents relating to said matter.

While we are aware of Defendant Teams position in that they have produced all documents in their possession, we are particularly troubled by certain facts as detailed below and it remains Plaintiffs' position that Defendants' production is far from complete and as such we are forced to file a motion to compel. As stated previously, each Defendant has failed to produce a single document, which they themselves have generated and instead are duplicating and sending time and again documents that Plaintiff Korpacz mainly generated. One example of Defendants tactics can be seen in the August 12, 2005 Delaware Griffin documents, which are nothing more than identical duplicate copies of Defendant Dallas Diamond documents 175-263. These documents are the mirror image of each other in layout, format, content, etc. It is Plaintiffs position that this behavior is completely unacceptable and an abuse of the discovery process and we are forced to bring it to the attention of the Court.

Lastly, despite Defendants August 12, 2005 production of documents and referring to the last paragraph contained within Defendants August 12, 2005 correspondence where Defendants claim to have produced notices, consents and appointments. This could not be further from the truth. In fact, Defendants have failed to produce a single consent t action or any Board appointments for that matter. In all, Defendants overall production is still far from complete and pursuant to our telephone conversation and previous communications, the following have not been produced, including but not limited to:

- All WPFL minutes from Plaintiffs Article VIII Hearing;
- All notices and consent to actions referring or relating to the suspension of any WPFL Board meeting, including Plaintiffs Article VIII Hearing;
- Each individual Defendant Teams Director and Alternate Director appointments;
- Defendants Indiana, Syracuse and Dallas signed 2003 contracts;
- All WPFL Confidentiality Agreements from 2002 until present including each Defendant Teams Confidentiality Agreements signed on the day of Plaintiffs Article VIII Hearing;
- The signature page with each Directors signature approving the "revised" WPFL Bylaws;
- All documents referring or relating to the proposed WPFL restructure;
- All documents referring or relating to the alleged extension of Defendant Teams 2003 contracts including all written agreements to support Defendants contention;
- All financials (i.e. monies paid to Defendant WPFL) by each of the incoming 2004 teams including but not limited to Defendants Delaware, Missouri, and Dazzle;
- All documents supporting Defendants contentions in Defendants Answer to Plaintiffs Amended Complaint including but not limited to:
    - The alleged Suspension Policy referred to in paragraph 59, including documents regarding the alleged approval; and
    - Plaintiff Korpacz' alleged removal from Executive Office.
- All documents generated to or from the law firm of Franklin, Cardwell and Jones prior to march 8, 2003 including but not limited to:
    - All money paid to said firm by Defendant WPFL;
    - All correspondences regarding any/all matters presented to said firm for review or consultation by Defendant WPFL or any of their representatives, etc.

If you have any questions, please do not hesitate to contact us. Thank you for your prompt attention to this matter.

Best Regards,


Missi Korpacz

*P.O. Box 808  Medford, MA  02155*
*Phone:  781-866-9700    email:  Info@NewEnglandStorm.com*
*www.NewEnglandStorm.com*

Exhibit D

```
-------- Original Message --------
Subject: RE: Emailing: VESSEY 23.BATES.pdf, VESSEY 22.BATES.pdf, VESSEY 24.BATES.pdf
From: "NE Storm Front Office" <info@newenglandstorm.com>
Date: Mon, March 28, 2005 9:04 am
To: <BGross@cmj-law.com>
```

Brain, as per my telephone messages and requests for information, please advise us to the status of the tape of the Article VIII Hearing? You indicated previously that you could not obtain the tape because Charlene was not responding and she lives in Indiana. I am aware that the owners' meeting was held in Indiana the weekend prior to the mediation, yet we have received no tape to date. If you were unable to obtain it then, please advise as to the status of the subpoena you were to issue weeks ago. Thank you for your prompt attention to this matter.

Missi

--
New England Storm, LLC
Women's Professional Football Team
P.O. Box 808
Medford, MA  02155
Phone:  781-866-9700
www.NewEnglandStorm.com

Squirrelmail                                                                  Page 1 of 1

```
-----Original Message-----
From: NE Storm Front Office [mailto:info@newenglandstorm.com]
Sent: Tuesday, March 29, 2005 1:12 PM
To: Brian D. Gross
Cc: tok@c-m.com; ktg@c-m.com
Subject: 2nd Request for Status on Tape.
```

Brian,
Please see the below request sent to you yesterday morning for information on the status of the March 2003 Board Meeting Tape.  We are still awaiting a response regarding the Tape, please advise.  Thank you.

M. Korpacz