UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10735-RWZ

MELISSA A. KORPACZ and
NEW ENGLAND STORM, LLC

v.

WOMEN'S PROFESSIONAL FOOTBALL LEAGUE, et al.

MEMORANDUM OF DECISION

January 27, 2006

ZOBEL, D.J.

Plaintiff Melissa Korpacz is the owner of plaintiff New England Storm, LLC ("Storm"), a women's football team. Plaintiffs were expelled from defendant Women's Professional Football League ("WPFL") in March 2004. Their amended complaint alleges breach of contract and various torts;[1] defendants have counterclaimed and now move for summary judgment on all of plaintiffs' claims. Summary judgment may be granted where no genuine factual disputes exist as to any material fact. See Fed. R. Civ. P. 56; Lincoln Nat. Life Ins. Co. v. Prodromidis, 862 F. Supp. 10, 12 (D. Mass.

---

[1] Both plaintiffs assert all claims, though some counts pertain only to one. For example, the defamation alleged in Count VI really only concerns plaintiff Korpacz, whereas only plaintiff Storm was a party to the Member License Agreement raised in Count II. Plaintiffs presumably assert all claims jointly because Korpacz is the sole proprietor of Storm. Thus, although it is not entirely accurate to treat all claims as being asserted by both plaintiffs, for purposes of this motion I refer to all claims as such.

1994). The record is viewed in the light most favorable to the nonmovant, and reasonable inferences are drawn in its favor. Id. The motion is allowed.

I.    *Trademark Infringement (Count I)*

Count I alleges false designation of origin in violation of 15 U.S.C. § 1125(a). Plaintiffs claim that since their expulsion from the WPFL, defendants have used without permission certain marks owned by Korpacz in a manner likely to cause confusion. Although the amended complaint stated a claim only for injunctive relief (Am. Compl., at 23), plaintiffs in their opposition also seek damages. (Pls.' Opp., at 19-20). For purposes of this motion, I therefore address plaintiffs' entitlement to both forms of relief.

To sue under § 1125(a), plaintiffs must show (1) ownership of a mark, (2) that defendants used in interstate commerce, (3) in a manner "likely to cause confusion as to the origin of the goods and services." Nat'l Nonwovens, Inc. v. Consumer Prods. Enters., Inc., 397 F. Supp. 2d 245, 257 (D. Mass. 2005). Plaintiffs seeking damages must make an "additional showing": they "must prove actual harm, such as the diversion of sales to the defendant," and generally "must show that . . . defendant's profits would have gone to plaintiff if there was no violation." Aktiebolaget Electrolux v. Armatron Int'l Inc., 999 F.2d 1, 5 (1st Cir. 1993)

It is clear from the record that plaintiffs have not come close to making this additional showing. They have failed to put forth any evidence of actual damages arising from defendants' use of the disputed marks. Their contention that further discovery is needed is meritless, since proof of actual harm (such as lost ticket sales or

advertising revenues) would be in plaintiffs' possession alone. On such a showing, plaintiffs cannot claim damages.

Nor have plaintiffs shown a triable issue of fact as to their entitlement to injunctive relief.[2] As to the WPFL logo, plaintiffs lack standing. It is at the outset puzzling that plaintiffs assert rights to the logo, since the WPFL is the registered trademark owner. (Berndt Aff., Ex. B.). There is, of course, no requirement that plaintiffs be registered owners to sue under § 1125(a), since the statute requires only that they show a "reasonable interest to be protected," R.J. Toomey Co. v. Toomey, 683 F. Supp. 873, 876 (D. Mass. 1988) (internal quotation marks omitted), but as the registered owner, WPFL enjoys a prima facie right to exclusive use of the mark. See 15 U.S.C. § 1115(a); Kardex Sys., Inc. v. Sistemco N.V., 583 F. Supp. 803, 811 (D. Me. 1984). WPFL's right is rebuttable, but the burden is on each plaintiff, as nonregistrant, to "show by a preponderance of the evidence that it . . . appropriated the mark to itself." Id. Plaintiffs have not met this burden. Indeed, they cite no basis for their interest in the WPFL logo other than plaintiff Korpacz's participation in its development. Korpacz's personal involvement, while no doubt meaningful to her, cannot rebut the § 1115(a) prima facie presumption and does not translate into a legally cognizable interest. See PPX Enters., Inc. v. Autofidelity, Inc., 746 F.2d 120, 125 (2d Cir. 1984)

---

[2] Assessing plaintiffs' entitlement to injunctive relief requires analysis of the merits. Both parties' papers address the merits, even though defendants framed their motion as limited to the issue of damages alone. In the interests of judicial economy, I have considered all of the parties' arguments.

(interest in mark must be based on more than "mere subjective belief" (internal quotation marks omitted)). Plaintiffs accordingly lack standing as to the WPFL logo.

As to the other disputed marks—the Football Eyes logo and the "It's Our Turn to Play" slogan—no reasonable jury could find a violation of § 1125(a). In a March 2002 email, plaintiff Korpacz explicitly invited other WPFL teams to "[f]eel free to manipulate the words and place your logo in it and send it out to newspapers." (Berndt Aff., Ex. C). This email diluted any exclusive protectable interest Korpacz might have had in the marks. By inviting others to use the marks, she essentially ceded partial ownership in the marks. See Star Fin. Servs., Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 9 (1st Cir. 1996) (trademark ownership arises from use). As partial owners, defendants cannot have infringed the marks. Even assuming defendants were never owners of the marks, Korpacz's email essentially acquiesced in their use of the marks, which would likewise bar any infringement action against them. See 15 U.S.C. § 1115(c)(9) (equitable doctrine of acquiescence applies in infringement actions); Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, 165 F.2d 693, 695 (4th Cir. 1948) (where plaintiff actively encouraged and urged defendant to use disputed mark, doctrine of acquiescence barred plaintiff from claiming infringement). Plaintiffs contend that the email authorized defendants' use of the marks only for a limited period, but they offer no proof to support that assertion. Indeed, plaintiffs' amended complaint refers to defendants' unauthorized use "[s]ince Plaintiffs' unlawful expulsions," suggesting that defendants were free to use the marks from March 2002, when the email was sent, until March 2004, when plaintiffs were expelled. (Am. Compl., at 22 (emphasis added)).

Because no reasonable jury could find that defendants infringed either the WPFL logo (which they own) or the football-eyes logo and accompanying slogan (which they were invited to use), summary judgment is allowed on Count I.

II.  *Breach of Contract, Tortious Interference with Advantageous Business Relationships, and Tortious Interference with a Contractual Relationship (Counts II, III, and IV)*

Counts II, III, and IV are related. Count II alleges that the WPFL breached the Member License Agreement (into which the parties entered when the WPFL was formed), through various violations of the WPFL bylaws and through the wrongful expulsion of plaintiffs from the WPFL. Counts III and IV allege resulting harms—i.e., tortious interference with plaintiffs' business relations and contracts that followed from their expulsion from the WPFL. Defendants argue that plaintiffs have not shown any actual damages and thus cannot prevail on any of these claims.

As a preliminary matter, the parties disagree on choice of law. Such disputes, however, need be resolved only if an "actual conflict exists." See Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004). Because no conflict exists,[3] the

---

[3] A conflict exists as to the proper measure of damages for tortious interference actions. In Texas, the proper measure of damages is net lost profits, see Maxvill-Glasco Drilling Co. v. Royal Oil & Gas Corp., 800 S.W.2d 384, 386 (Tex. App. 1990), while in Massachusetts, the plaintiff may seek either lost profits or defendant's unjust enrichment, whichever is greater. See Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 169-71 (1979). However, both states require proof of actual harm in order to recover at all. The conflict is therefore irrelevant in this case.

5

dispute need not be resolved, and I will rely on the law of both states.[4] Copenhaver v. Berryman, 602 S.W.2d 540, 543 (Tex. Civ. App. 1980) (breach of contract actions available only where "damages or loss actually sustained"); Arthur D. Little, Int'l v. Dooyang Corp., 928 F. Supp. 1189, 1201 (D. Mass. 1996) (same); Linkage Corp. v. Trs. of Boston Univ., 425 Mass. 1, 21 (1997) (without evidence of damages, plaintiffs cannot recover for tortious interference claim); Gillum v. Republic Health Corp., 778 S.W.2d 558, 565 (Tex. App. 1989) (same). In both Texas and Massachusetts, plaintiffs cannot prevail on either their breach of contract or their tortious interference claims without showing actual damages sustained. This they have not done.

First, plaintiffs have not shown damages in the form of lost profits—the usual measure of damages in a breach of contract and tortious interference actions. Lost profits must be shown with reasonable certainty, though mathematical precision is not required. E.g., Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 413 (2003); Edmunds v. Sanders, 2 S.W.3d 697, 705 (Tex. App. 1999). Plaintiffs must demonstrate either historic profitability or the actual existence of future contracts, which were lost due to defendants' conduct, and the value of which can be readily discerned. E.g., Herbert A. Sullivan, Inc., at 413-14; Edmunds, 2 S.W.3d at 705. In this case, the record contains no evidence of plaintiffs' historic profitability and indeed shows the opposite. Proof of plaintiff Storm's past profitability is limited to three P&L statements—two of which show a profit of less than $300, and one of which shows a

---

[4]With the exception of Count VII, no actual conflict exists on the remaining claims, and I therefore follow this approach throughout.

loss of $8,000. Evidence of plaintiff Korpacz's past profitability is entirely absent. Plaintiffs claim that "it would be easy . . . to make up an actual dollar amount based upon salaries in similar professions," but make no attempt to do so. (Pls.' Opp., at 15). Their vague assertion that Korpacz has been using Storm funds for her living expenses is not proof of lost profits. As for lost business opportunities or contracts, plaintiffs refer to sponsorships and tryout fees, but provide no specific revenue and cost figures from which net profitability[5] might be ascertained. (Id. at 16).

Plaintiffs offer a number of other bases upon which they might be awarded damages, but these are similarly unavailing. For example, plaintiffs cite a previous settlement offer made by defendants as proof that plaintiffs are entitled to damages of at least that amount. (Id. at 11-12). It is well established, however, that settlement offers are "not admissible to prove liability for . . . the claim or its amount." Fed. R. Evid. 408. Plaintiffs also contend that Korpacz is entitled to recoup $78,000 that she allegedly invested in the WPFL, $40,000 for equipment costs, and an unspecified amount for investments in WPFL Promotions. The record, however, contains no proof of such expenditures. Instead, the evidence indicates that plaintiffs paid no initiation fee to WPFL, that Korpacz received her WPFL Promotion shares for free and continues to hold those shares, and that someone else purchased equipment for Storm. Indeed, the record shows that at least some of the $78,000 plaintiffs claim to have invested in WPFL were, in fact, paid to another entity, World Wide Sports, which is not a party to

---

[5]Plaintiffs' assertion that gross receipts rather than net profits should be measured is plainly incorrect. See Edmunds, 2 S.W.2d at 705; Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc., 440 N.E.2d 29, 48 (Mass. App. 1982).

this action. (Pls.' Opp., Ex. 17). Even if plaintiffs were entitled to recover investments in WPFL or Storm equipment, they have not adequately shown that such investments were ever made.

Finally, Korpacz contends that she is entitled to recover for emotional distress or pain and suffering. In Texas, such damages are unavailable in tortious interference cases, see Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 817 & n.22 (Tex. 2005), while in Massachusetts, such damages are available only where "actual damage to an economic relationship or prospective relationship" is shown, see Ratner v. Noble, 617 N.E.2d 649, 650 (Mass. App. 1993). No such showing has been made here. As for breach of contract cases, noneconomic damages are generally unavailable in both states, and plaintiffs have not shown they fall within the exceptions. See Delgado v. Methodist Hosp., 936 S.W.2d 479, 485-86 (Tex. App. 1996) (unavailable except where foreseeable, i.e., the necessary and natural result of breach); St. Charles. v. Kender, 646 N.E.2d 411, 414 (Mass. App. 1995) (unavailable in the absence of physical harm).

In sum, plaintiffs have failed to put forth evidence of any damages to which they would be entitled should they prevail on Counts II, III, or IV. Defendants are therefore entitled to summary judgment on these counts.

III.    *Conversion (Count V)*

The amended complaint asserts that defendants wrongfully converted WPFL funds "for their own personal use and gain." (Am. Compl., at 27). The problem, however, is that plaintiffs have completely failed to show that any of the funds in the WPFL account belonged to them personally. In the absence of such evidence, neither

Massachusetts nor Texas courts will entertain a conversion action.  See Soto v. Sea-Road Int'l, Inc., 942 S.W.2d 67, 72 (Tex. App. 1997) (plaintiff must prove that at the time of alleged conversion, she owned, had legal possession of, or was entitled to possess the property); Walsh v. Menton, 2 Mass. L. Rptr. 584, 1994 WL 879470, at *2 (Mass. Super. 1994) (plaintiff must show that at the time of alleged conversion, she had actual possession of, right to immediate possession of, or control in).  Defendants are therefore entitled to summary judgment on Count V.

IV.    *Defamation (Count VI)*

Count VI alleges defamation.  Two categories of statements appear to be at issue:[6] (1) the February 23, 2004 Notice of Charges against plaintiffs (Berndt Aff., Ex. A), and (2) various other WPFL Notices and emails among WPFL members (Pls.' Opp., Ex. 13, 16, 20).  As a matter of law, none of these statements are defamatory.

There is no dispute that all recipients of the February 23, 2004 Notice of Charges were WPFL members; most were individuals charged with its governance.[7] Under both Massachusetts and Texas defamation law, defendants may assert a qualified privilege where the publisher and recipient have a common interest, such as a

---

[6] Although defendants refer to a March 8, 2004 press release announcing plaintiffs' expulsion from the WPFL, plaintiffs do not refer to that press release.  In any event, the press release was not false, since plaintiffs were expelled from the WPFL after officers determined they had violated WPFL Bylaws.  The statement thus was not actionable as defamation.  See Albright v. Morton, 321 F. Supp. 2d 130, 134 (D. Mass. 2004); Cain v. Hearst Corp., 878 S.W.2d 577, 580 (Tex. 1994).

[7] Defendants assert that all recipients were WPFL Board members; plaintiffs contend that other WPFL members also received the Notice.  (See Korpacz Decl.,¶ 13).

shared business interest, and the communication is "of a kind reasonably calculated to further it." Catrone v. Thoroughbred Racing Ass'ns of North Am., Inc., 727 F. Supp. 717, 724 (D. Mass. 1989); see also Houston v. Grocers Supply Co., Inc., 625 S.W.2d 798, 800 (Tex. App. 1981). In this case, the WPFL Commissioner and the WPFL members shared an interest in the successful governance of the WPFL and the resolution of disciplinary problems. A qualified privilege therefore attached to the Notice. A defendant may of course lose the qualified privilege if the publication was reckless or malicious, see Catrone, 727 F. Supp. at 724; Houston, 625 S.W.2d at 800, but no such evidence exists here. On the contrary, the record is replete with numerous complaints made to the WPFL Commissioner about plaintiffs' conduct. The Notice formalized these complaints and initiated official action on what was clearly a contentious history among the parties. No malice has been shown. Accordingly, the Notice was privileged.

Other statements referred to by plaintiffs as defamatory are not actionable either. Some of these statements are formal Notices issued by the WPFL Commissioner to the WPFL League Office, concerning various disciplinary complaints by and against plaintiffs (Pls.' Opp., Ex. 13), while some are emails among WPFL members raising concerns about plaintiff Korpacz's conduct in league-related business (id., Ex. 20). Again, a qualified privilege attaches to these statements, since the publisher and recipients shared an interest in WPFL governance and disciplinary matters. Nothing in the record indicates the statements were made maliciously or

recklessly; they instead appear to be good-faith, if at times contentious, attempts to resolve ongoing internal WPFL issues. Thus, the statements were privileged.

Finally, plaintiffs cite a February 26, 2004 email from a WPFL member to the Commissioner, describing in somewhat parodic fashion the cycle of enthusiasm and disillusionment experienced by various team members in their relationships with Korpacz. (Pls.' Opp., Exs. 13). The primary difficulty with this email is that it falls outside the scope of the defamation alleged in the amended complaint. The complaint describes the alleged defamatory statements as the "release of Plaintiff Korpacz'[s] Article VIII charges." (Am. Compl., at 27). The February 26 email, however, nowhere mentions Article VIII, nor does it refer to disciplinary rules or proceedings. While federal courts employ a more liberal pleading standard than was traditionally applicable in common law defamation actions, see Davidson v. Cao, 211 F. Supp. 2d 264, 276 (D. Mass. 2002), defendants are still entitled to know what statements are being challenged as defamatory, see Phantom Touring, Inc. v. Affiliated Pubs., 953 F.2d 724, 728 n.6 (1st Cir. 1992). Plaintiffs are thus "limited to [their] complaint in defining the scope of the alleged defamation." Id. Challenges to additional statements should be made by amendment of the complaint, rather than by attaching documents to summary judgment papers. See id. Because this email cannot reasonably be construed as falling within the scope of alleged defamation, it is not properly before the court.

The alleged defamatory statements are not actionable as a matter of law; summary judgment as to Count VI is therefore allowed.

V.   *Chapter 93A (Count VII)*

Count VII alleges that defendants engaged in unfair and deceptive business practices in violation of Mass. Gen. L. ch. 93A, § 11. Defendants claim that because Texas law applies, chapter 93A is unavailable to plaintiffs; in the alternative, defendants contend that even under Massachusetts law, plaintiffs are not entitled to bring a 93A action. Because I agree with defendants as to the second proposition, I need not address the first.

Chapter 93A actions may only be maintained if the allegedly unfair practices occurred "primarily and substantially within the Commonwealth." M.G.L. ch. 93A, § 11. No particular set of factors controls this inquiry; rather, courts engage in a holistic, fact-based analysis focused upon "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 473 (2003). Whether or not conduct took place primarily and substantially within the Commonwealth is a question of law, as to which defendants bear the burden. See Zyla v. Wadsworth, Div. of Thomson Corp., 360 F.3d 243, 255 (1st Cir. 2004).

The "center of gravity" in this case is plaintiffs' March 2004 expulsion from the WPFL, which took place in Arizona at a meeting of the WPFL. (Am. Compl., at 19-21). Other allegedly wrongful conduct also occurred outside of the Commonwealth. Plaintiffs are the only parties domiciled in Massachusetts; the WPFL and the other WPFL team defendants are located in other states. (Amended Compl., at 2-3). Lisa Vessey, the WPFL Commissioner, resides in Illinois. (Id. at 7). To the extent that plaintiffs' 93A claim is based on communications among these parties, such

communications occurred outside of Massachusetts. Indeed, plaintiffs themselves concede that the allegedly defamatory statements were published in states "other than Massachusetts" and that the laws of those states should govern defendants' liability. (Pls.' Surreply, at 5). Plaintiffs nowhere cite a specific action or transaction that occurred within the state of Massachusetts. See Zyla, 360 F.3d at 255. Although plaintiffs themselves reside in Massachusetts and any losses they may have suffered would have been incurred here, defendants' conduct occurred outside of the state. See Garshman Co. v. GE, 176 F.3d 1, 7 (1st Cir. 1999). Accordingly, 93A is unavailable.

VI.   *Conclusion*:

Defendants' motion for summary judgment (# 66 on the docket) is allowed on all counts. Judgment may be entered for defendants.

|   |   |
|---|---|
| _____<br>DATE | /s/ Rya W. Zobel_____<br>RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |